THE DISTRICT OF COLUMBIA SUPERIOR COURT

KENNETH DICKERSON, *4205 Illinois Ave New WDc 20011*
WILMA GAINES, *7801 Royal Fern Court Clinton MD 20735*
CHARLES HARDEN, ET. AL *902 Playford Land Silver Spring MD*

Plaintiffs, *District of Columbia Office of The Atty General) 441 4th St. N.W. 6th Floor WDC-* v.

HON. ADRIAN FENTY,
MAYOR,
DISTRICT OF COLUMBIA, et al.
1350 Pennsylvania Avenue, NW,
Suite 221,
Washington, DC 20004

*Serve;* MICHELE RHEE,
CHANCELLOR,
DISTRICT OF COLUMBIA
PUBLIC SCHOOLS,
825 N. Capitol St., NE,
Washington, DC 20002,

Defendants.

**CLASS ACTION**

CIVIL ACTION NO. U0U4756-09

FILED
CIVIL ACTIONS BRANCH
JUN 30 2009
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

Serve: Adrian Fenty, Mayor D.C.
1350 Penn Ave, N.W.
Suite 221
Washington, D.C. 20004

## COMPLAINT FOR WRONGFUL DISCHARGE, DEFAMATION VIOLATION OF RIGHT TO PRIVACY, THE D.C. HUMAN RIGHTS ACT

Come now Plaintiffs Kenneth Dickerson, Wilma Gaines, Charles Harden, Antonia Peters,

Andre Roach, Jacqueline Williams, Wellington Wilder, and potential claimants not yet added to

the Class of Plaintiffs ("Class"), on behalf of themselves and all others similarly situated, by and



1

through counsel, John F. Mercer, Esq., and state their and the class' complaint against Defendants in the above matters as follows:

1.     This action arises under D.C. Code § 11-921,and common law; SCR-3, SCR-23 (Class Actions); Pursuant to D.C. Code § 12-309, the complaint is timely filed within one ("1) year of filing of Notice of Claim to Hon. Adrian Fenty, Mayor, District of Columbia, pursuant to D.C. Code § 12-309; D.C. CMPA 1978, (as amended); CDCR 5-1000, et. seq; D.C. Code § 2-1401, 2-1402.11; other laws and regulations of the District of Columbia and the United States.

This Court has jurisdiction over all claims for relief, including state claims under the supplemental and ancillary jurisdiction of the federal court.   Venue is proper in this Court as shall be set forth herein below.

### THE PARTIES

2.     Plaintiff, Kenneth Dickerson, is a resident of the District of Columbia. He lives at 4203 Illinois Avenue, N.W., Washington D.C. 20011. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

3.     Plaintiff, Wilma Gaines, is a resident of Maryland.  She lives at 7801 Royal Fern Court, Clinton, Maryland 20735.  At all times pertinent to this Complaint, Plaintiff was a resident of the state of Maryland and was employed by the Defendant Agency.

4.     Plaintiff, Charles Harden, is a resident of Maryland.  He lives at 902 Playford Land, Silver Spring, Maryland. At all times pertinent to this Complaint, Plaintiff was a resident of the States of Maryland and was employed by the Defendant Agency.

5.     Plaintiff, Antonia Peters, is a resident of Washington, D.C. She lives at 529 Ingraham Street, N.E. Washington, D.C. 20011. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

2

6.     Plaintiff, Andre Roach, is a resident of Maryland. He lives at 9804 Woodyard Circle, Upper Marlboro, Maryland 20772. At all times pertinent to this Complaint, Plaintiff was a resident of the State of Maryland and was employed by the Defendant Agency.

7.     Plaintiff, Jacqueline Williams, is a resident of Maryland. She lives at 11100 White House Road, Upper Marlboro, Maryland 20774. At all times pertinent to this Complaint, Plaintiff was a resident of the State of Maryland and was employed by the Defendant Agency.

8.     Plaintiff, Wellington Wilder, is a resident of the District of Columbia. He lives at 1419 South Capitol Street, S.W., Washington, D.C. 20003. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

9.    Other complainants not yet named are believed to be residents of the District of Columbia, Virginia, and/or Maryland. At all times pertinent to this complaint, Plaintiffs were residents of the aforementioned states and the District of Columbia and were employed by the Defendant Agency, until their removals from employment which became effective on June 30, 2008.

10.     Defendant, District of Columbia is a municipality acting herein by and through the District of Columbia Public Schools ("Defendant," "Agency," "the District" or "DCPS"), an agency of the government of the District of Columbia which at all times hereunder, acted by and through its "Chancellor," Michelle Rhee, (hereinafter "Rhee") and various other employees and agents of DCPS and the District of Columbia. DCPS is an "employer" pursuant to and D.C. Code 1-2502, and was so situated during all times pertinent herein. Its principal office is located at 825 North Capital Street, NE, Washington, DC 20002.

11.    That Rhee is an employee of DCPS and serves as its Chief Executive Officer. Her/his office is located at 825 North Capital Street, NE, Washington, DC 20002.  At all times during the events set out in this complaint, Rhee was employed with the DCPS and acted as an agent of DCPS.

## CASE SUMMARY

12.    On or around May, 2007, Rhee was engaged by the District of Columbia to perform as the chief executive officer for District of Columbia Public Schools. Her title is Chancellor of District of Columbia Public Schools ("DCPS"). In her capacity as Chancellor, she had (and has) authority to make operational decisions for DCPS inclusive of personnel matters affecting the DCPS educational service (including staff, administrative employees, contractors and others providing services to DCPS.)  Rhee's authority emanates from the D.C. Code and the D.C. Code of Regulations ("CDCR"), CDCR 5, et.seq.

13.    Shortly after her engagement, Defendant Rhee engaged personnel to serve as her senior executive management officers (the "Officers"). Included among these Officers were employees in areas of personnel management, legal, financial and other DCPS departments. The Officers assisted Defendant Rhee in developing, determining and executing DCPS personnel policy.

14.    Between the date of her installation in 2007 and May 2008, Rhee and the Officers (the "Defendants") decided that certain current incumbent DCPS educational administrators performing as principals and assistant principals (the "Incumbents" "Plaintiffs"), the number of which is believed to be seventeen (17) or more, would not be reappointed to their positions for the fall of the upcoming 2008-2009 school year. The Defendants' objective was to effect a "mass firing" of the Incumbents in order to replace them with persons of her choice. The decision of

4

Defendants to replace Incumbents was not based upon merit or failure of performance but for the purpose of a premeditated administrative "regime change" And "mass firing."

15.     On a May 5, 2008, Defendants served each of the Incumbents with written notice they would not be reappointed to their respective positions as principal and that there terms would expire on June 30, 2009.

16.     This mass firing would be carried out by manipulating accepted personnel mechanisms to achieve illegal and wrongful purposes. The Defendants used the guise of general poor student performance to justify and make the mass firing appear legitimate and necessary.  Knowing such information to be false, Defendants attributed student performance to incompetence and lack of effort and professionalism of the Incumbents.

17.     In keeping with their predetermined plan to remove the Incumbents, prior to issuance of the notices of May 5, 2008, the Incumbents were advised that their school's performances would be evaluated and that student academic improvement would be a factor in their performance ratings. However, the ultimatum delivered by the Defendants based upon proposed evaluation improvement was a pretext. Current and previous performances notwithstanding, the Defendants had already determined the Incumbents were to be removed.

18.     As part of the mass firing it was carefully determined by Rhee and the Officers that age [would be] one of the essential determining factors to be applied in replacing the Incumbents. The Incumbents were all over forty years old (most of them being older than fifty). Their replacements averaged in their thirties.

19.     It was determined by the Defendants that the mass firings would be carried out irrespective of intervention of the Incumbents' collective bargaining unit (the "Council of School Officers"). i.e., and determined by Defendants did not have to bargain with the CSO because the

Incumbents were subject to annual reappointment in accordance with CDCR 5-520, et. seq., and the aggressiveness of their mass firing would freeze other Incumbent principals and assistant principals and weaken their resolve to fight.

20.     In carrying out the mass firings, the Defendants engaged in intimidation, defamation, conspiracy, malicious abuse of process, discrimination based upon race, age and sex and wrongful discharge. They caused irreparable harm to the Incumbents collectively and individually; the Defendants and to the professional careers of the Incumbents in the present and future.

## THE CLASS

21.     The Incumbents are "Plaintiffs" and "Class Members" as defined under D.C. Superior Court Civil Rule 23 et.seq, and heretofore shall be referred to as "Plaintiffs" in this action and the Defendants collectively shall be referred to as "DCPS."

## STATEMENT OF FACTS

22.     Plaintiff's are African American males and females over forty ("40") years of age.

23.     Plaintiffs, at the time of the actions described herein were employed by DCPS as annually appointed principals and assistant principals assigned to DCPS schools;

24.     At the time of the matters complained of herein, each of the Plaintiffs had either risen from the rank of teacher ET-15 to his/her appointment as a principal or assistant principal or had been directly employed by DCPS as a principal At the time of the matters described herein each of the Plaintiffs had performed as a principal or assistant principal with DCPS for more than five years. Up to the date of notice of their removal each Plaintiff reasonably believed and expected to be reappointed to their respective positions unless their assigned school was scheduled for closing or he or she had received notice of a significant performance deficiency;

6

25.     In late 2007, the Plaintiffs were notified that they would receive performance evaluations

by the end of the academic year, (June, 2008.)  DCPS alleged the evaluations were for the

purpose of determining proficiency and would include ranking based on student reading and

mathematics test scores, student attendance, and student improvement in various other academic

and scholastic areas.

26.     Some of the Plaintiff's were administered evaluations during the 2007-2008 academic

year and were notified that if their ratings did not "show improvement" they would be removed

from their positions.

27.     It is undisputed by the parties that each of the Plaintiffs who received improvement

notices, made efforts to improve their scholastic ratings by taking various actions they believed

and were told would be necessary for improvement of their respective schools.  Each Plaintiff, in

fact experienced improvement of his/her respective statistics in the required evaluation

categories;   However, neither DCPS (nor other known educations systems) have proven

methods of substantial student improvement based upon short term policies and actions. In

addition, most educators agree that substantial improvement of student performance requires

more than efforts made by assistant principals and principals only. Notwithstanding their

respective schools' improvements each of the plaintiffs was ultimately not reappointed to his or

her administrative position. The reasons given for the withholding of reappointment were

pronounced as "low performing schools."

28.     Others of the Plaintiffs were not subject to evaluations at all and yet, were told by DCPS

they were being removed due to failure to meet performance standards and criteria  for which

they were not evaluated and for which, if they had been evaluated would not have been proven to

be indicators of poor administrative performance.

7

29.     On or about May 5, 2008, each Plaintiff was notified by delivery that they would not be reappointed to their respective positions of employment with the DCPS on June 30, 2008 and each of the Plaintiffs was removed in a mass firing on June 30, 2009 (See Exhibit One "Notice"). Ostensibly, the removals were effected upon the Plaintiff's based upon their status as annually appointed employees pursuant to CDCR 5-520; However, actions following the Notice revealed that the Plaintiffs were removed for "cause" and the cause was identified as failure to improve the statistical performance of students at their respective schools.

30.     Prior to delivery of the Notice May 5, 2008, the DCPS' Chancellor and Officers predetermined that the Plaintiffs would not be reappointed based upon the fact that DCPS already engaged employees to occupy the positions left vacant due to the mass firing. Accordingly, at the time the Plaintiffs received the May 5, Notice a group of replacements, already selected and under forty (40) years old were available to fill the vacant positions.  Absent negative or materially unacceptable performance evaluations, however, DCPS announced publicly the Plaintiffs had failed to perform adequately as established in evaluations and 'or student performances.

31.     Each of the Plaintiffs was removed from their employment by DCPS.  The reasons given for removed were alleged poor performance. These reasons were baseless pretext. Prior to the Plaintiffs having been served with notices of removal from DCPS, DCPS had surreptitiously engaged replacements to occupy the Plaintiff's due to be vacant positions;

32.     The Plaintiffs collectively raised grievances concerning their mistreatment by DCPS through the Counsel of School Officers ("CSO," Plaintiffs' collective bargaining organization pursuant to CDCR 5-700).   Immediately thereafter, DCPS intensified its  campaign of hostile, malicious, and retaliatory actions, including: efforts to isolate Plaintiffs from other employees;

8

defame Plaintiffs amongst co-workers, neighboring school systems and maliciously interfere with Plaintiff's rights to unemployment compensation by alleging Plaintiff's were removed from their employment due to " misconduct;"

33.     But for the actions of DCPS the Plaintiff's would have been successful in acquiring suitable alternative employment however DCPS engaged in public distortions which cause the Plaintiffs to be perceived as pariahs, trouble makers, and lazy, ineffective administrators thereby denying Plaintiffs advancement opportunities and opportunities for hire outside DCPS.

34.     In violation of DCPS personnel rules CDCR 6-3111.1- 6-3111.6), DCPS callously and maliciously violated the Plaintiff's right to privacy by publishing and exposing the Plaintiffs' personnel records and the alleged reasons for Plaintiffs' removal from employment without the Plaintiffs' permission (CDCR 6-3113.3 (d));

35.     At the same time the Plaintiffs were suffering the adverse activities of DCPS, other employees of DCPS similarly situated to the Plaintiffs, but different in respect race and age (i.e., white and age under 40) from Plaintiffs, but similarly situated with Plaintiffs, were supported in career advancement opportunities and afforded opportunities for the administrative positions from which the Plaintiffs had been removed, and given retirement benefits not afforded Complainants.

36.     DCPS used facially legitimate employment policies (i.e., performance ratings); withholding positive information of the Plaintiffs' positive performances including special recognition, awards, commendations and community practices in a deceitful and treacherous manner to harm Plaintiffs and create a false, misleading employment record for Plaintiffs such that their opportunities for advancement and opportunity to acquire administrative positions in

9

other jurisdictions equivalent to their former DCPS positions in other jurisdictions would be diminished.

37.      The mistreatment from which the Plaintiffs suffered consisted of (1) reprisal for their participation in protected activities; (2) failure of DCPS to develop, adhere to and properly use personnel policies and practices pertaining to selections and removals of personnel serving the District of Columbia (D.C. CMPA); (3) purposeful and unfair collusion against Plaintiffs Complainants by DCPS and other agents unknown; (4) civil conspiracy for the purpose of an unfair and arbitrary "regime change" perpetuated by mass dismissal; (5) defamation to Complainants' career and business reputations; (6) wrongful discharge/ termination;  (7) violation of federal and D.C. Human Rights laws regarding race and age; and (8) violation of federal retirement law (ERISA).

38.      On or around Fall 2007, Michelle Rhee, and other DC and DCPS agents unknown at this time, predetermined the selections for Complainants' replacements in their respective positions.  Because of Defendants' manipulation, DCPS failed to credit the Plaintiffs' performance evaluations, qualifications, and work experience needed to retain their positions. Instead, those appointed to replace Complainants were chosen based upon illegal cronyism, corruption/ conspiracy, and favoritism.

39.      Had a non-discriminatory and properly guided process of selection for the Position been conducted, the Complainants' rich work experience, performance evaluations, improvement in the ratings of their respective schools, student test scores, and student attendance would have been considered.

10

## COUNT ONE: DISCRIMINATION BASED ON RACE AND AGE

40.     That Count One incorporates by reference paragraphs One through Forty-Seven of the Complaint.

41.     Complainants are African-American males and females over forty years of age, and have accumulated retirement benefits as a result of five or more years service to for DCPS.

42.     Complainants were employed by the District of Columbia Public Schools, classified under the personnel records of DCPS as either a principal or assistant principal, and were wrongfully terminated effective June 30, 2008. Others, while similarly situated with Complainants, but white, younger, and not near retirement, were appointed to the positions from which Complainants were removed in violation of D.C. Code § 2-1401, 2-1402.11;

## COUNT TWO: VIOLATION OF D.C. HUMAN RIGHTS ACT WITH RESPECT TO RACE AND AGE

43.     That Count Two incorporates by reference paragraphs One through Fifty of the Complaint.

44.     That in violation of D.C. CMP, DCPS has engaged in removing employees on the basis of age and race and replacing them with others based upon race and age in violation of D.C. Code § 2-1401, 2-1402.11;;

## COUNT THREE: WRONGFUL DISCHARGE

45.     That Count Three incorporates by reference paragraphs One through Forty-Four of the Complaint.

46.     Each of the Claimants had been an administrator of DCPS for five or more years.

47.     Complainants' performance evaluations do not coincide with the reasons given for their respective terminations.

11

48.     Instead of complying with D.C. CMPA and CDCR 5-520, et. seq., DCPS developed a plan to execute a mass firing of Plaintiffs, incumbent DCPS school administrators, from their positions of employment for arbitrary and illegal reasons having nothing to do with Plaintiffs' respective competency, past performance, talent, skills, dedication, and other like qualities, capabilities, and aptitudes.

49.     DCPS' actions in effecting a premeditated "mass firing" of the Plaintiffs and their surreptitious and dishonest actions supportive thereof was violated of public policy the D.C. CMPA and CDCR 5-520, et. seq.

## COUNT FOUR: DEFAMATION AND BUSINESS DEFAMATION

50.     That Count Four incorporates by reference paragraphs One through Forty-Nine.

51.     DCPS executed a public campaign to tarnish the Plaintiff's careers and ruin their reputations in the specific communities wherein Plaintiffs were employed as administrators, by issuing statements (implicit and explicit) to the media and in public meetings that the Plaintiffs were responsible for causing their schools to be "under-achieving schools."

52.     DCPS intentionally executed a campaign to ruin the Plaintiffs' business reputations by making false accusations that they had engaged in misconduct that justified their dismissals.

## COUNT FIVE: CIVIL CONSPIRACY

53.     That Count Five incorporates by reference paragraphs One through Fifty-Two.

54.     DCPS engaged in a predetermined plan to dismiss Plaintiffs' due to race, age, and other surreptitious and illegal reasons, including unfair and untrue allegations of incompetence and lack of professional skills in order to  wrongfully disallow them to compete for positions for which they were qualified and wrongly deprived of a fair opportunity to remain in or compete.

12

## COUNT SIX VIOLATION OF THE RIGHT TO PRIVACY

55.     That Count Six incorporates by reference paragraphs One through Fifty-Four.

56.     DCPS unlawfully engaged in deliberate violation of the Plaintiffs' rights to privacy by disclosing personnel information and issue information concerning their confidential employment records.

57.     DCPS unlawfully disclosed private records and issues private information for the purpose of defending wrongful action take to deprive Plaintiff's of their positions of employment in violation of CDCR 6-3113.

## COUNT SIX: VIOLATION OF FEDERAL RETIREMENT LAW (ERISA)

58.     That Count Six incorporates by reference paragraphs One through Fifty-Seven.

59.     DCPS intentionally interfered with their retirement benefits by forcing the Plaintiffs out of their respective positions, causing them to seek early retirement from DCPS.

**Wherefore the premises considered, the Plaintiff's acting as a Class pray** that this Court grant judgment to Plaintiffs:

(a). in the amount of Thirty-Four Million Dollars for compensatory damages for lost wages; and lost benefits (including medical, health, vacation, sick leave, retirement, and all other applicable benefits);

(b).   emotional distress damages in the amount of Thirty-Four Million Dollars

(c).   reinstatement of their respective employment positions as administrators;

(d).   promotions to the administrative positions they would have been in, but for DCPS' wrongful interference with their respective employment contracts, with back pay;

(e).   attorney fees and costs of litigation;

13

(f). an order enjoining the Agency and the Defendants from further Acts of discrimination, abuse of process, and wrongful interference with employment contracts, retirement benefits, et al.

Respectfully submitted,

John F. Mercer, Esq.
Bar # 184549
Mercer Law Associates, PLLC.
1629 K Street, N.W., Suite 300
Washington, D.C. 20036
Telephone:  202.466.3830
Mobile:  240.535.8758
Email: jmjmercer@aol.com
Attorney for the Plaintiff

## JURY TRIAL DEMAND

Complainants demand a jury trial in this matter pursuant to Rules D.C. Superior Court Rules.

John F. Mercer

14



**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

**Office of the Chancellor**
825 North Capitol Street, NE • 9ᵗʰ Floor
Washington, DC 20002-4232
Tel: (202) 442-4090 • Fax: (202) 442-5315
www.k12.dc.us

May 5, 2008

Re:   Notice of Non-Reappointment as
      Principal for the 2008-2009 School Year

Wilma Gaines
7801 ROYAL FERN CT
CLINTON, MD, 20735

Dear Wilma Gaines:

I am writing to provide you with notice of my decision not to reappoint you to the position of principal with the District of Columbia Public Schools (DCPS) for the 2008-2009 school year. The action is effective at the close of business on June 30, 2008.

From now until June 30, 2008, you are expected to continue to perform your current duties as principal. You will continue to be paid at your current salary and you will accrue both annual and sick leave.

DCPS will honor any valid retreat rights that you may possess. If you believe you have these rights and wish to exercise them, you must provide written notification by May 19, 2008 to Richard Shackell, Director of School Staffing, 825 N. Capitol Street, NE, 6ᵗʰ Floor, Washington, DC 20002. We recommend that you obtain a receipt indicating that your written notification was in fact delivered. Mr. Shackell may also be reached at (202) 442-4090. However, you may only exercise your retreat rights by providing written notification to Mr. Shackell by May 19, 2008. If you do not provide written notification by May 19, 2008, your employment with DCPS will terminate on June 30, 2008.

From now until June 30, 2008, your Instructional Superintendent will work closely with you and your school community with respect to budgeting, staffing, purchasing and other key actions necessary to successfully close-out the current school year and position your school for a smooth school opening in August. To this end, your Instructional Superintendent will share with you a list of transition projects which must be completed prior to June 30ᵗʰ. Your Instructional Superintendent will also work with you to notify your school communities that there will be a change in leadership at your school for the 2008-2009 school year.

Your Instructional Superintendent will also work with you to arrange for the return of all school property in your possession, including but not limited to all building keys, office keys, passwords

EXHIBIT ONE

or account codes. You will be required to return this property prior to June 30, 2008 as determined by your Instructional Superintendent.

If you have any additional questions related to the transition of your school, please contact your Instructional Superintendent. Questions related to retreat rights should be directed to Mr. Shackell as specified above. Any other questions related to employment benefits to which you may be entitled (including health care under COBRA) should be directed to Jaininne Edwards (Jaininne.edwards@dc.gov or 442-5385, HR Specialist).

Thank you for your service on behalf of the children of the District of Columbia Public Schools.

Sincerely,

Michelle A. Rhee
Chancellor

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington,  D.C.  20001  Telephone:  879-1133

KENNETH DICKERSON, ET. AL.

*Plaintiff*

Civil Action No. 0004756-09

VS.

Michele Rhee, Chancellor,
DCPS Gen. Coun. 825 No. Cap. St., N.E.

*Defendant*

## SUMMONS

To  the  above  named  Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government  you have 60 days after  service of this summons to serve your Answer. A copy of the Answer must be mailed  to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**   If plaintiff has no attorney, a copy of the Answer must be mailed  to the plaintiff at the  address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue.  N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment   by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

John F. Mercer

Name of Plaintiff's Attorney

Mercer Law Assoc. PLLC.

Address

1629 K St., N.W. Suite 300, D.C. 20036

202.349.1686

Telephone

By _____
            Deputy Clerk

Date June 30, 2009

PUEDE  OBTENERSE  COPIAS  DE  ESTE  FORMULARIO  EN  ESPANOL  EN  EL  TRIBUNAL  SUPERIOR  DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98            **NOTE:**  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

CA Form 1

## Superior Court of the District of Columbia

### CIVIL DIVISION

Kenneth Dickerson
ei Al

500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

*Plaintiff*

vs. Atty General
District of Columbia
441 4th St. N.W.
WDC

*Defendant*

Civil Action No. 0004756-09

serve: Gail Rivers

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

John Mercer
Name of Plaintiff's Attorney

1629 K St. N.W.
Address

WDC

(202) 349.1686
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date 06 - 30 - 09

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456(May 83)

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001   Telephone: 879-1133

KENNETH DICKERSON, ET .AL.

*Plaintiff*

VS.

HON. ADRIAN FENTY,
1350 PENN AVE., N.W. SUITE 221, D.C. 20004

441 4th St. N.W      *Defendant*
WDC

Civil Action No. U004766-09

### SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

John F. Mercer

Name of Plaintiff's Attorney

Mercer Law Assoc. PLLC.

Address

1629 K St., N.W. Suite 300, D.C. 20036

202.349.1686

Telephone

By _____
                    Deputy Clerk

Date June 30, 2009

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98       **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH

### INFORMATION SHEET

KENNETH DICKERSON, ET. AL.

Case Number: _U0J4756-C9_

vs

Date: _____

HON. ADRIAN FENTY

☑ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: (please print)<br>      John F. Mercer | Relationship to Lawsuit<br>  ☑ Attorney for Plaintiff |
| Firm Name:<br>   Mercer Law Associates, PLLC. | ☐ Self (Pro Se)<br>Other: _____ |
| Telephone No.:            Six digit Unified Bar No.:<br>         240.535.8758                184549 | |

TYPE OF CASE:    ☐ Non-Jury          ☐ 6 Person Jury      ☑ 12 Person Jury
Demand:$ 68,000,000.00                    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: NA_____   Judge: NA_____    Calendar #: NA_____

Case No.: NA_____   Judge: NA_____    Calendar #: NA_____

---

NATURE OF SUIT:    (Check One Box Only)

A. CONTRACTS
☑ 01 Breach of Contract            ☐ 07 Personal Property
☑ 02 Breach of Warranty            ☐ 09 Real Property-Real Estate
☐ 06 Negotiable Instrument         ☐ 12 Specific Performance
☐ 15 _____

COLLECTION CASES
☐ 14 Under $25,000 Pltf. Grants Consent
☐ 16 Under $25,000 Consent Denied
☐ 17 OVER $25,000

B. PROPERTY TORTS
☐ 01 Automobile                    ☐ 03 Destruction of Private Property    ☐ 05 Trespass
☐ 02 Conversion                    ☐ 04 Property Damage                    ☐ 06 Traffic Adjudication
☐ 07 Shoplifting, D.C. Code § 27-102(a)

C. PERSONAL TORTS
☑ 01 Abuse of Process              ☐ 09 Harassment                        ☐ 17 Personal Injury – (Not Automobile,
☐ 02 Alienation of Affection       ☑ 10 Invasion of Privacy                       Not Malpractice)
☐ 03 Assault and Battery           ☑ 11 Libel and Slander                 ☐ 18 Wrongful Death (Not malpractice)
☐ 04 Automobile-Personal Injury    ☑ 12 Malicious Interference            ☐ 19 Wrongful Eviction
☑ 05 Deceit (Misrepresentation)    ☑ 13 Malicious Prosecution             ☐ 20 Friendly Suit
☐ 06 False Accusation              ☐ 14 Malpractice Legal                 ☐ 21 Asbestos
☐ 07 False Arrest                  ☐ 15 Malpractice Medical (including wrongful death)  ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                         ☐ 16 Negligence-(Not Automobile,       ☐ 23 Tobacco
                                          Not Malpractice)                ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/June 09

## INFORMATION SHEET, Continued

| C. OTHERS | | |
|---|---|---|
| **I.**<br>☐ 01 Accounting<br>☐ 02 Att. Before Judgment<br>☐ 04 Condemnation (Emin. Domain)<br>☐ 05 Ejectment<br>☐ 07 Insurance/Subrogation<br>    Under $25,000 Pltf.<br>    Grants Consent<br>☐ 08 Quiet Title<br>☐ 09 Special Writ/Warrants<br>    DC Code § 11-941 | ☐ 10 T.R.O./Injunction<br>☐ 11 Writ of Replevin<br>☐ 12 Enforce Mechanics Lien<br>☐ 16 Declaratory Judgment<br>☐ 17 Merit Personnel Act (OEA)<br>    (D.C. Code Title 1, Chapter 6)<br>☐ 18 Product Liability<br>☐ 24 Application to Confirm, Modify,<br>    Vacate Arbitration Award<br>    (D.C. Code § 16-4315) | ☐ 25 Liens: Tax/Water Consent Granted<br>☐ 26 Insurance/Subrogation<br>    Under $25,000 Consent Denied<br>☐ 27 Insurance/Subrogation<br>    Over $25,000<br>☐ 28 Motion to Confirm Arbitration<br>    Award (Collection Cases Only)<br>☐ 26 Merit Personnel Act (OHR)<br>☐ 30 Liens: Tax/Water Consent Denied |
| **II.**<br>☐ 03 Change of Name<br>☐ 06 Foreign Judgment<br>☐ 13 Correction of Birth Certificate<br>☐ 14 Correction of Marriage<br>    Certificate | ☐ 15 Libel of Information<br>☐ 19 Enter Administrative Order as<br>    Judgment [D.C. Code §<br>    2-1802.03(h) or 32-1519(a)]<br>☐ 20 Master Meter (D.C. Code §<br>    42-3301, et seq.) | ☐ 21 Petition for Subpoena<br>    [Rule 28-I (b)]<br>☐ 22 Release Mechanics Lien<br>☐ 23 Rule 27 (a)(1)<br>    (Perpetuate Testimony) |

_____          6/30/05
Attorney's Signature                              Date



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

KENNETH DICKERSON
    Vs.                            C.A. No.     2009 CA 004756 B
DISTRICT OF COLUMBIA OFFICE OF ATTY GENERAL

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MAURICE ROSS
Date:  June 30, 2009
Initial Conference: 9:00 am, Friday, October 02, 2009
Location:  Courtroom 518
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001                    Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

Filed
D.C. Superior Court
09 Sep 17 P06:45
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | |
|---|---|
| KENNETH DICKERSON,<br>ET AL. : • | |
| : | |
| Plaintiffs, : | |
| : | **CLASS  ACTION:** |
| v. : | |
| : | |
| DISTRICT OF COLUMBIA, et. al : | |
| : | **2009 CA 004756 B** |
| : | **Hon. Maurice Ross** |
| Defendants. : | |

## MOTION TO REINSTATE THE CIVIL ACTION, ACCEPT PLAINTIFF'S FIRST AMENDED COMPLAINT AND ISSUE PROCESS AND POINTS AND AUTHORITIES IN SUPPORT THEREOF

Comes now the Plaintiffs by and though Counsel John F. Mercer, Esq., praying that this Court reinstate the forgoing action pursuant to D.C. Superior Court Civil Rules for the following reasons.

## I. STATEMENT OF FACTS

1. The forgoing action was timely filed as a civil class action pursuant to D.C. Sup. Ct. R P. 5, on June 30, 2009.

2. That subsequent to its filing and prior to serving the Defendants, Plaintiffs engaged in a good faith effort to organize members of the class, not previously found, to more fully support their complaint with factual affidavits.

3. That Plaintiffs were unable to secure supporting affidavits of class members until more than forty days (40) days after issuance of the original summons.

4. That on August 28, 2009, Plaintiffs' Counsel ("Counsel") began the process of filing Plaintiffs' "First Amended Complaint" (the "Pleading") containing additional class

1

members, supporting affidavits and other materials. Unfortunately, the Pleading was accepted, then subsequently rejected by the electronic filing "host," CaseFilingXpress ("CFX"), due to errors caused by confusion of Counsel's password and user ID with those of another attorney. This confusion resulted from an error made by CFX in April 2009, CFX in mistakenly assigning Counsel User/ID numbers previously assigned to another D.C. Lawyer with the surname "Mercer." ("Stephen C. Mercer"). (See Exhibit 1) After having filed the Pleading, Counsel recognized that the credit card account number of Stephen C. Mercer's had been used to register the Pleading. Consequently, Counsel contacted CFX to correct the filing error.  However, the time at that point being after midnight (August 29), CFX personnel were unavailable to assist. Nevertheless, Counsel recorded a voice mail message with CFX through its telephone "help line" explaining the circumstances.

5. That on Saturday, August 29, a CFX employee returned Counsel's call. At the time she returned the call, the CFX employee was neither at the CFX office nor on duty. She told Counsel she would resolve the matter on Monday, August 31.

6. That on Monday, August 31, 2009, Counsel, while on his way to the D.C. Superior Court for trial, received a call from Stephen C. Mercer. Mr. Mercer informed Counsel that he had spoken to personnel of CFX who had explained the miss-filing and told him they were going to reverse the ten dollar credit card payment.

7. Counsel was in trial the entire day of August 31 at D.C. Superior Court and did not retrieve his email until the next day, September 1.  The morning of September 1, Counsel found an email from CFX providing a new ID number and advising Counsel to re-submit

2

the filing using that new ID.  Counsel was unaware that the withdrawal of the mistaken payment would result in the reversal of the filing.

8.   That on September 5, 2009, Counsel re-filed Plaintiffs' a substitute First Amended Complaint using his newly issued user ID and password.  The complaint was accepted as Filing Trace Number ED301JO21168689. (Exhibit 3)

9.   That on September 10, 2009, based upon the filing of Plaintiffs' First Amended Complaint on September 5, 2009, Plaintiffs sought to renew service of process. Their request to renew service was rejected based upon failure of the Plaintiffs to issue timely service upon the defendants or to request new summons timely. Accordingly the civil action had been dismissed due to failure to timely seek reissuance of process.

10.  That Plaintiff's had, in accordance with D.C. Sup. Ct. R  P. 15, filed an amended complaint on August 29, 2009.  However, in doing so, Plaintiffs' Counsel inadvertently used an incorrect "User ID number."  But for the issuance of a wrong ID number by CFX the Pleading would have been accepted and registered. In fact, the Pleading had been registered, filed and provided a confirmation number before being withdrawn and reversed due to payment under the wrong account.

11. That the First Amended Complaint should be accepted *nunc pro tunc* as having been filed on August 29, 2009. That while "[t]he decision whether to vacate a dismissal under Rule 41(b) is clearly a matter of trial court discretion," *Wagshal v. Rigler*, 711 A.2d 112, 114 (D.C. 1998) (citation omitted), this discretion is not unlimited.  Rather, "it must be undertaken with a proper consideration of all relevant factors…" *Id.* (citations omitted). A trial court's "exercise of discretion under Rule 41(b) must, for Rule 4(m) dismissals, include (1) consideration of the reasons for Plaintiff's failure to comply with the rule, and

3

(2) prejudice to the plaintiff and lack of prejudice to the defendant accruing from the

dismissal." *Id.* at 114 (citing *Bulin v. Stein*, 668 A.2d 810, 815 (D.C. 1995)). "[O]ther

factors are relevant" as well, including "plaintiff's efforts to comply with the civil-

procedure rules generally." *Wagshal*, 711 A.2d at 114 (citation omitted).

12. That Plaintiffs will be greatly prejudiced if their complaint is dismissed without

adjudication due to Counsel's inadvertent filing of the Pleading due to inadvertent use of

an electronic filing User ID Number mistakenly assigned him by the electronic filing

host.

13. That the un-served defendants will not be prejudiced by the resultant delay in filing.

14. That should Plaintiff's case be reinstated and new service of process issued, Plaintiffs

shall promptly and properly seek reissuance of process from the Clerk of the Court and

serve the Defendants.

WHEREFORE THE PREMISES CONSIDERED,

Plaintiffs pray that the civil action be reinstated, *nunc pro tunc,* as of August 29, 2009, and

service of process be reissued.

Respectfully submitted,

John F. Mercer
Mercer Law Associates, PLLC.
Counsel for the Plaintiffs
1629 K Street, N.W.
Suite 300
Washington, D.C. 200036
Tel: 202.349.1686
Mobile: 240.535.8758
Fax: 240.206.8485
Email: jmjmercer@aol.co

4

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forging Motion shall be electronically issued to Hon. Maurice Ross, Associate Judge, D.C. Superior Court this 14th Day of September 2009 and shall be delivered to his chambers on September 15, 2009.

John F. Mercer

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

KENNETH DICKERSON, et.al.       : •
       :
       :
       :
       :
Plaintiffs,       :
       :      <u>CLASS ACTION:</u>
      v.       :
       :
DISTRICT OF COLUMBIA, et. al.       :
       :      2009 CA 004756 B
       :      Hon. Maurice Ross
Defendants.       :

### <u>ORDER</u>

This Court, having considered the Plaintiffs' Motion To Reinstate the Case and based upon good cause shown, the Plaintiffs' Motion shall be granted and it is, this _____ day of September 2009,

ORDERED that Civil Action 2009 CA 004756 B shall be reinstated, and Plaintiffs' substitute First Amended Complaint shall be accepted by the Clerk of the Court and filed, *nunc pro tunc,* to August 29, 2009, and it is,

FURTHER ORDERD that the Clerk of the Court shall reissue service of process and pursuant to Court Rules, Plaintiffs shall timely serve process upon the defendants. ,

_____
Judge, D.C. Superior Court

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Civil Division
### 500 Indiana Avenue, NW
#### Washington, D.C. 20001

September 3, 2009

CASE NAME:    KENNETH DICKERSON  vs  DISTRICT OF COLUMBIA
CASE NO.    2009 CA 004756 B

Plaintiff having failed to file an affidavit evidencing service on the defendant within the time frame allowed by Rule 4 (m), the Clerk hereby enters a dismissal of the complaint without prejudice.

versus

_____

All defendant

_____

_____

## ORDER OF DISMISSAL



D. C. Superior Court
500 Indiana Avenue NW
Room 5000-Q
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

Mr JOHN F F MERCER
TEC LAW GROUP PLLC
1000 CONNECTICUT AVE NW
WASHINGTON, DC 20036

2009 CA 004756 B

CAOOD-4m.doc

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Civil Division
### 500 Indiana Avenue, NW
Washington, D.C. 20001

September 3, 2009

CASE NAME:   KENNETH DICKERSON  vs  DISTRICT OF COLUMBIA
CASE NO.   2009 CA 004756 B

Plaintiff having failed to file an affidavit evidencing service on the defendant within the time frame allowed by Rule 4 (m), the Clerk hereby enters a dismissal of the complaint without prejudice.

versus

_____

_____

_____

## ORDER OF DISMISSAL



D. C. Superior Court
500 Indiana Avenue NW
Room 5000-Q
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

DISTRICT OF COLUMBIA
1350 Pennsylvania Avenue, N.W.
Suite 221
WASHINGTON, DC 20004

2009 CA 004756 B

SEE REVERSE SIDE FOR
OPENING INSTRUCTIONS

SEE REVERSE SIDE FOR
OPENING INSTRUCTIONS

343844

CAOOD-4m.doc

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Civil Division
### 500 Indiana Avenue, NW
#### Washington, D.C. 20001

**September 3, 2009**

CASE NAME:   KENNETH DICKERSON  **vs**  DISTRICT OF COLUMBIA
CASE NO.    2009 CA 004756 B

Plaintiff having failed to file an affidavit evidencing service on the defendant within the time frame allowed by Rule 4 (m), the Clerk hereby enters a dismissal of the complaint without prejudice.

versus

_____

_____

_____

## ORDER OF DISMISSAL



D. C. Superior Court
500 Indiana Avenue NW
Room 5000-Q
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

MICHELE RHEE
825 N. Capitol Street, N.E.
WASHINGTON, DC 20002

2009 CA 004756 B

SEE REVERSE SIDE FOR
OPENING INSTRUCTIONS

CAOOD-4m.doc

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**CIVIL DIVISION**

FILED
CIVIL ACTIONS BRANCH
AUG 2 9 2009
Superior Court
of the District of Columbia
Washington, D.C.

KENNETH DICKERSON,                    :
WILMA GAINES,                         :
JANETTE JOHNS- GIBSON,                :
MARY Q. GRANT,                        :
CHARLES HARDEN, JR., ET AL.           :
                                      :
                                      :
                                      :
Plaintiffs,                           :
                                      :     <u>CLASS ACTION:</u>
                                      :
        v.                            :
                                      :
DISTRICT OF COLUMBIA,                 :
OFFICE OF THE ATTORNEY                :
        GENERAL                       :
441 4TH Street, NW, 6TH Floor,        :
Washington, DC 20001                  :
                                      :
————————————————HON. ADRIAN FENTY,
        :
MAYOR,                                :
DISTRICT OF COLUMBIA, et al.          :     **CIVIL ACTION:**
NO._____                         :     2009 CA 004756 B
1350 Pennsylvania Avenue, NW,         :
Suite 221,                            :     **Hon. Maurice Ross**
Washington, DC 20004                  :
                                      :
                                      :
MICHELE RHEE,                         :
CHANCELLOR,                           :
DISTRICT OF COLUMBIA                  :
PUBLIC SCHOOLS,                       :
825 N. Capitol St., NE,               :
Washington, DC 20002,                 :
                                      :
Defendants.                           :

Serve:  Hon. Adrian Fenty, Mayor D.C.
1350 Pennsylvania Avenue, NW,
Suite 221
Washington, DC 20004

1



R. P. 15(a); D.C. Code § 12-309; D.C. Comprehensive Merit Personnel Act ("CMPA") 1978, (as amended); CDCR 5-1000, et seq.; D.C. Code §2-1401, 2-1402.11, and other laws and regulations of the District of Columbia and the United States. This Court has jurisdiction over all claims for relief, including state claims under the supplemental and ancillary jurisdiction of the federal court. Venue is proper in this Court as shall be set forth herein below.[1]

## THE PARTIES

2.      Plaintiff, Kenneth Dickerson, is a resident of the District of Columbia. He lives at 4203 Illinois Avenue, NW, Washington, DC 20011. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

3.      Plaintiff, Wilma Gaines, is a resident of Maryland. She lives at 7801 Royal Fern Court, Clinton, Maryland 20735. At all times pertinent to this Complaint, Plaintiff was a resident of the state of Maryland and was employed by the Defendant Agency.

4.      Plaintiff, Janette Johns-Gibson, is a resident of the District of Columbia. She lives at 301 G Street, SW, Apt. 423,Washington, DC 20024. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

5.      Plaintiff, Charles Harden, Jr. is a resident of Maryland. He lives at 902 Playford Lane, Silver Spring, MD 20901. At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

---

[1] This "First Amended Complaint" was initially filed by Plaintiffs on August 29, 2009. However, it was electronically misfiled and subsequently discarded.

## E-Filing Rejection Spreadsheet

| Sup. Init. | | Confirmation Number | File Date | Brief Explanation of Clerk's Reason(s) for Rejection |
|---|---|---|---|---|
| A* | D* | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

6.     Plaintiff, Harriet Kargbo, is a resident of Maryland.  She lives at 1522 Sherwood Court, Cheverly, MD 20785.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

7.     Plaintiff, Treva Lindsay, is a resident of Maryland.  She lives at 3703 Silver Park Court, Suitland, MD 20746.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

8.     Plaintiff, Antonia Peters, is a resident of the District of Columbia.  She lives at 529 Ingraham Street, NE, Washington, DC 20011.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

9.     Plaintiff, Andre Roach, is a resident of Maryland.  He lives at 9804 Woodyard Circle, Upper Marlboro, MD 20772.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

10.     Plaintiff, Jacqueline Williams, is a resident of Maryland.  She lives at 11100 White House Road, Upper Marlboro, MD 20774.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland  and was employed by the Defendant Agency.

11.     Plaintiff, Wellington Wilder, is a resident of the District of Columbia.  He lives at 1419 South Capitol Street, SW, Washington, DC 20003. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia  and was employed by the Defendant Agency.

12.     Plaintiff, Donna Edwards, is a resident of the District of Columbia.  She lives at 6920 32nd Street, NW, Washington, DC 20015.  At all times pertinent to this Complaint,

4

Plaintiff was a resident of the District of Columbia and was employed by Defendant Agency.

13. Plaintiff, Carol Barbour, is a resident of Maryland. She lives at 4718 Captain Bayne Court, Upper Marlboro, MD 20772. At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

14. Plaintiff, Marta Guzman, is a resident of the Commonwealth of Virginia. She lives at 3800 Dade Drive, Annandale, VA 22003. At all times pertinent to this Complaint, Plaintiff was a resident of Virginia and was employed by the Defendant Agency.

15. Plaintiff, Mary Q. Grant, is a resident of Maryland. She lives at 8107 Maplegate Place, Glenn Dale, MD 20769. At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

16. Plaintiff, Richard Patterson, is a resident of Maryland. He lives at 14314 Arctic Avenue, Rockville, MD 20853. At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

17. Other complainants not yet named are residents of the District of Columbia, Virginia, and/or Maryland. At all times pertinent to this Complaint, Plaintiffs were residents of the aforementioned states and were employed by the Defendant Agency, until their terminations from employment became effective on June 30, 2008.

18. Defendant, District of Columbia, is a municipality acting herein by and through the District of Columbia Public Schools ("Defendant," "Agency," "the District," or "DCPS"), an agency of the government of the District of Columbia which at all times hereunder, acted by and through its Chancellor, Michelle Rhee, (hereinafter "Rhee") and

5

various other employees and agents of DCPS and the District of Columbia. DCPS is an "employer" pursuant to 42 U.S.C. § 2000e, and D.C. Code 1-2502, and was so situated during all times pertinent herein. Its principal office is located at 825 North Capital Street, NE, Washington, DC 20002.  That DCPS is a separate, cabinet-level agency subordinate to the Mayor.  The Mayor governs the public schools in the District of Columbia and has, among other things, authority over all personnel, labor negotiations, collective bargaining, and other education-related matters pursuant to "The Public Education Reform Amendment Act of 2007" (""PERAA").

19.     That Rhee is an employee of DCPS and the District of Columbia, and serves as its Chief Executive Officer. Her office is located at 825 North Capital Street, NE, Washington, DC 20002.  At all times during the events set out in this complaint, Rhee was employed with DCPS and acted as an agent of DCPS.  The Chancellor reports directly to the Mayor, and has personnel authority as delegated by the Mayor pursuant to PERAA.

## CASE SUMMARY

20.     On or around June 2007, Rhee was engaged by the District of Columbia to perform as the Chief Executive Officer for District of Columbia Public Schools. Her title is Chancellor of District of Columbia Public Schools ("DCPS").  In her capacity as Chancellor, she had (and has) authority to make operational decisions for DCPS, inclusive of personnel matters affecting the DCPS educational service (including staff, administrative employees, contractors and others providing services to DCPS).  Rhee's authority emanates from the D.C. Code and the D.C.  Code of Regulations ("CDCR", CDCR 5, et seq.).

6

21.     Shortly after her engagement, Defendant Rhee engaged personnel to serve as her senior executive management officers (the "Officers"). Included among these Officers were employees in areas of personnel management, legal, financial and other DCPS departments. The Officers assisted Defendant Rhee in developing, determining, and executing DCPS personnel policy.

22.     Between the date of her installation in June 2007 and May 2008, Rhee and the Officers (collectively, the "Defendants") decided that certain current incumbent DCPS educational administrators performing as Principals and Assistant Principals (hereafter, the "Incumbents" or "Plaintiffs"), the number of which is believed to be thirty-three ("33") or more, would not be reappointed to their positions for the fall of the upcoming 2008-2009 school year. The Defendants' objective was to effect a "mass firing" of the Incumbents in order to replace them with persons of her choice. The decision of Defendants to replace Incumbents was not based upon merit or failure of performance, but engineered for the purpose of a premeditated administrative "regime change" and "mass firing."

23.     On or about May 5, 2008, Defendants served each of the Incumbents with written notice indicating that they would not be reappointed to their respective positions as Principal or Assistant Principal, and that their terms would expire on June 30, 2008.[2]

24.     This "mass firing" would be carried out by manipulating accepted personnel mechanisms to achieve illegal and wrongful purposes. The Defendants used the guise of general poor student performance to justify and make the mass firing appear legitimate

---

[2] See Exhibits 1-5- Affidavits of: (1) Mary Q. Grant; (2) Marta Guzman; (3) Richard Patterson; (4) Jacqueline Williams; and (5) Notice of Non-reappointment to Richard Patterson, dated May 5, 2008.

Filed
D.C. Superior Court
09 Oct 19 A11:08
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| **KENNETH DICKERSON, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CLASS  ACTION:** |
| v. | : | |
| | : | |
| **DISTRICT OF COLUMBIA, et. al.,** | : | |
| | : | **2009 CA 004756 B** |
| | : | **Hon. Maurice Ross** |
| **Defendants.** | : | |

### ORDER

This Court, having considered the Plaintiffs' Motion to Reinstate the Case and based upon good cause shown, the Plaintiffs' Motion shall be granted and it is, this 19th day of October 2009,

ORDERED that Civil Action 2009 CA 004756 B shall be reinstated, and Plaintiff's substitute First Amended Complaint shall be accepted by the Clerk of the Court and filed, *nunc pro tunc,* to August 29, 2009; and it is,

FURTHER ORDERD that the Clerk of the Court shall reissue service of process and pursuant to Court Rules, Plaintiffs shall timely serve process upon the defendants by December 20, 2009, and file proof of the same with the Clerk of the Court; and it is

FURTHER ORDERED, that the parties shall appear at 9:00 A.M. on Friday, January 29, 2010, for an Initial Scheduling Conference.

*Maurice A. Ross*

Judge, D.C. Superior Court

Copies to:

John F. Mercer, Esquire
*Counsel for Plaintiff*

Office of the Attorney General
  for the District of Columbia
441 4th Street, NW
6th Floor
Washington, DC  20001

Ms. Michelle Rhee
825 North Capitol Street, NE
Washington, DC  20002

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

**October 20, 2009**

CASE NAME:    KENNETH DICKERSON et al Vs. DISTRICT OF COLUMBIA et al

CASE NO.    2009 CA 004756 B

The above-captioned Civil Actions case has been scheduled for Scheduling Conference Hearing on the date and time shown below.   The attorneys and any party not represented by an attorney must appear before Judge MAURICE ROSS.

**HEARING DATE: Friday, January 29, 2010**
**TIME: 9:00 am**
**LOCATION:   500 Indiana Avenue N.W.**
                **Courtroom 518**
                **WASHINGTON, DC  20001**

## PLEASE BRING THIS NOTICE WITH YOU WHEN YOU APPEAR.

Civil Division



D. C. Superior Court
500 Indiana Avenue, N.W.
Room 5000-Q
 Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

DISTRICT OF COLUMBIA
1350 Pennsylvania Avenue, N.W.
Suite 221
WASHINGTON, DC
20004

2009 CA 004756 B

CANOH-1.DOC
10/20/2009

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

**October 20, 2009**

CASE NAME:    KENNETH DICKERSON et al Vs. DISTRICT OF COLUMBIA et al

CASE NO.    2009 CA 004756 B

The above-captioned Civil Actions case has been scheduled for Scheduling Conference Hearing on the date and time shown below.   The attorneys and any party not represented by an attorney must appear before Judge MAURICE ROSS.

**HEARING DATE: Friday, January 29, 2010**
**TIME: 9:00 am**
**LOCATION:   500 Indiana Avenue N.W.**
**Courtroom 518**
**WASHINGTON, DC  20001**

## PLEASE BRING THIS NOTICE WITH YOU WHEN YOU APPEAR.

Civil Division



D. C. Superior Court
500 Indiana Avenue, N.W.
Room 5000-Q
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

MICHELE RHEE
825 N. Capitol Street, N.E.
WASHINGTON, DC
20002

2009 CA 004756 B

CANOH-1.DOC
10/20/2009

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

**October 20, 2009**

CASE NAME:   KENNETH DICKERSON et al Vs. DISTRICT OF COLUMBIA et al

CASE NO.    2009 CA 004756 B

The above-captioned Civil Actions case has been scheduled for Scheduling Conference Hearing on the date and time shown below.   The attorneys and any party not represented by an attorney must appear before Judge MAURICE ROSS.

**HEARING DATE: Friday, January 29, 2010**
**TIME: 9:00 am**
**LOCATION:   500 Indiana Avenue N.W.**
**Courtroom 518**
**WASHINGTON, DC  20001**

## PLEASE BRING THIS NOTICE WITH YOU WHEN YOU APPEAR.

### Civil Division



D. C. Superior Court
500 Indiana Avenue, N.W.
Room 5000-Q
 Washington D.C. 20001

```
First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726
```

Mr JOHN F F MERCER
TEC LAW GROUP PLLC
1000 CONNECTICUT AVE NW
SUITE 600
WASHINGTON, DC
20036

CANOH-1.DOC
10/20/2009

(cvrs)



CA Form 1

# Superior Court of the District of Columbia

## CIVIL DIVISION
### 500 Indiana Avenue, N.W.,  Room JM-170
### Washington, D.C.  20001  Telephone:  879-1133

KENNETH DICKERSON
WILMA GAINES
JANET JOHNS-GIBBONS
MARY GRANT

*Plaintiff*

vs.

HON ADRIAN FENTY,
MAYOR,
DIST OF COLUMBIA et al
1350 PENN AVE N.W
#221
WDC 20004

*Defendant*

Civil Action No. 2009 CA 004756 B

**SUMMONS**

To the above named Defendant:

   You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

   You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

JOHN MERCER
Name of Plaintiff's Attorney

1629 K ST. N.W #300
Address
WDC  20036

202. 349. 1684
Telephone

By _____
Deputy Clerk

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

CV(6)-456/Nov 03

eFiling for Courts - Electronic Service of Copies

Proof of Service

Jurisdiction: D.C. Superior Court
Cause Number: 2009 CA 004756 B
Trace Number: OD301J020045330
Court Assignment: Civil Actions
Style/Case Name: Kenneth Dickerson , et al. v. District of Columbia
Date and Time of Service: 10/19/2009 11:08:08 AM
Serving Party Name: Maurice Ross
Documents:
09 CA 4756 Order Grant Mtn Reinstate Case.pdf


Parties of Record                          Delivery Type
Maurice Ross                               Electronic
Filer Services
John F. Mercer                             Electronic
CaseFile Xpress



CA Form 1

# Superior Court of the District of Columbia

## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

KENNETH DICKERSON
WILMA GAINES
JANET JOHNS- GIBBONS
MARY GRANT                      *Plaintiff*

vs.                                                    Civil Action No. 2009 CA 004756 B

DIST OF COLUMBIA
OFFICE OF THE AHY GENERAL
441 4th ST N.W.            *Defendant*
6TH FLOUR
WDC 2000)

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Case: 2009 CA 004756 B                          *Clerk of the Court*

JOHN MERCER
Name of Plaintiff's Attorney

1629 K ST N.W. #300                 By _____
Address                                                     Deputy Clerk
WDC 20036

202.349.1686                          Date __11/22/09__
Telephone

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

### NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

CMF

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Kenneth Dickerson et al
_____
Plaintiff

Civil Action No.: 2009 CA 004756 B

Vs.

Dist of Columbia et al
_____
Defendant

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, Julius Fletcher _____ having been duly authorized to make service of the
Summons, Complaint and Initial Order in the above entitled case, hereby depose and say:

That my age and date of birth are as follows: 55 / 11/25/53 _____

That the residential or business address is: 6001  7th Pl. N.W.  WDC _____

That at 2:45 ____ o'clock (a.m. or p.m.) on the 22ND day of Oct 2009 ___,
                                                              (defendant's name)

☐ I served the above named defendant _____
personally by leaving a copy of the Summons, Complaint and Initial Order at _____
_____

☑ I served the above name defendant MAYOR ADRIAN FENTY (defendant's name) by
leaving a copy of the Summons, Complaint, and Initial Order at his/her place of abode or business at
1350 Penn Ave #419 WDC with MS ERICA EASTER _____ a person of approximately
35 ____ years of age who stated that he/she resides therein with the defendant.

If return receipt does not purport to be signed by the parties named in the Summons, then state specific
facts from which the Court's can determine that the person who signed the receipt meets the appropriate
qualifications for receipt of process as required by SCR (Civil) 4(e)(2).
**SPECIFIC FACTS:**

_____
                                                    Signature                    20

Subscribed and sworn before me this _____ day of _____

                                                    Notary/Deputy Clerk

Form CV-3035/Nov 08

Case: 2009 CA 004756 B

CnK

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Kenneth Dickerson et al
_____
*Plaintiff*

Michele Rhee, Vs. CHANCELLOR
Dist of Columbia Public Schools
_____
*Defendant*

Civil Action No.: 2009 CA 004756 B

## **AFFIDAVIT OF SERVICE BY PROCESS SERVER**

I, Julius Pletcher _____ having been duly authorized to make service of the
Summons, Complaint and Initial Order in the above entitled case, hereby depose and say:

That my age and date of birth are as follows: 55 / 11/25/53

That the residential or (business address) is: 6001 7th PL N.W. WDC

That at 3:12 o'clock (a.m. or (p.m)) on the 22ND day of OCT 2009,
_____ (defendant's name)

☐ I served the above named defendant _____

personally by leaving a copy of the Summons, Complaint and Initial Order at _____

☑ I served the above name defendant Michele Rhee _____ (defendant's name) by

leaving a copy of the Summons, Complaint, and Initial Order at his/her place of abode or business at

825 N. Capitol St N.E. #9095 with Ericka Moody _____ a person of approximately

27 years of age who stated that he/she resides therein with the defendant.

If return receipt does not purport to be signed by the parties named in the Summons, then state specific
facts from which the Court's can determine that the person who signed the receipt meets the appropriate
qualifications for receipt of process as required by SCR (Civil) 4(e)(2).
**SPECIFIC FACTS:**

OCT 2    2009
_____
Signature

Subscribed and sworn before me this _____ day of _____ 20 _____

_____
Notary/Deputy Clerk

Form CV-3035/Nov 08



CA Form 1

# Superior Court of the District of Columbia
### CIVIL DIVISION
**500 Indiana Avenue, N.W., Room JM-170**
**Washington, D.C. 20001 Telephone: 879-1133**

KENNETH DICKERSON
WILMA GAINES
JANET JOHNS-GIBBONS
MARY GRANT

*Plaintiff*

vs.

MICHELE RHEE
CHANCELLOR,
DIST OF COLUMBIA
PUBLIC SCHOOLS
825 N. CAPITOL ST. N.E.
WDC 20002

*Defendant*

Civil Action No. 2009 CA 004756 B

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Case: 2009 CA 004756 B
0003671.5981
DKT: CIVAS

*Clerk of the Court*

JOHN MERCER
Name of Plaintiff's Attorney

1629 K ST NW #300
Address
WDC 20036

202. 349. 1686
Telephone

By _____
Deputy Clerk

Date 10/22/09

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

CV(6)-456(May) 03

*AK*

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Kenneth Dickerson et al
_____
                    *Plaintiff*

                              Civil Action No.: 2009CA004756B

                    **Vs.**

Dist of Columbia
Office of Atty General
_____
                    *Defendant*

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, Julius Fletcher _____ having been duly authorized to make service of the Summons, Complaint and Initial Order in the above entitled case, hereby depose and say:

That my age and date of birth are as follows: 55 / 11/25/53

That the residential or business address is: 6001 7th Pl NW WDC

That at 1.31 o'clock (a.m. or p.m.) on the 22nd day of Oct 2009 _____ (defendant's name)

☐ I served the above named defendant _____ personally by leaving a copy of the Summons, Complaint and Initial Order at _____

_____

☐ I served the above name defendant Office of The Atty General (defendant's name) by leaving a copy of the Summons, Complaint, and Initial Order at his/her place of abode or business at

441 4th St NW 6th Floor WDC with Mr Caplan _____ a person of approximately

37 years of age who stated that he/she resides therein with the defendant.

If return receipt does not purport to be signed by the parties named in the Summons, then state specific facts from which the Court's can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process as required by SCR (Civil) 4(e)(2).

**SPECIFIC FACTS:**

                                        OCT 2  2009  *Signature*

Subscribed and sworn before me this _____ day of _____ 20____

                                            *Notary/Deputy Clerk*

Form CV-3035/Nov 08

Filed
D.C. Superior Court
09 Nov 17 P03:41
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

KENNETH DICKERSON,              :
WILMA GAINES,                    :
JANETTE JOHNS-GIBSON,      :
MARY Q. GRANT,                 :
CHARLES HARDEN, JR., et al.      :
                                    :

       Plaintiffs,                 :       Case No.: 2009 CA 004756 B
                                    :       Next event: ISC- 1/29/2010
            v.                   :       Judge: Maurice Ross
                                    :

DISTRICT OF COLUMBIA,        :
OFFICE OF THE ATTORNEY GENERAL,:
441 4th Street, NW,               :
6th Floor,                        :
Washington, DC 20001          :
                                    :

HON. ADRIAN FENTY, MAYOR,    :
DISTRICT OF COLUMBIA,        :
1350 Pennsylvania Avenue, NW,    :
Suite 221,                     :
Washington, DC 20004          :
                                    :

MICHELLE RHEE, CHANCELLOR,   :
District of Columbia Public Schools,    :
825 N. Capitol St., NE,           :
Washington, DC 20002          :
                                    :

Defendants.                    :

## <u>ORDER</u>

       Upon consideration of Plaintiffs' Consent Motion for Enlargement of Time to File

a Response to Defendants' Motion for Relief/ Motion to Vacate the Court's October 19,

2009 Order, it is by the Court this <u>17</u>th day of November 2009,

       ORDERED:  that Plaintiffs' Motion for Enlargement of Time to File a Response

to Defendant's Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order

is hereby **GRANTED**, and it is,

FURTHER ORDERED:  that Plaintiffs' response to Defendants' Motion for

Relief/ Motion to Vacate the Court's October 19, 2009 Order shall be filed on or before

December 3, 2009.


_____
Judge Maurice Ross

Copies to:

John F. Mercer, Esquire
*Counsel for Plaintiff*

Leah Brownlee-Taylor, Esquire
*Counsel for Defendants*

Filed
D.C. Superior Court
09 Nov 12 P07:59
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

KENNETH DICKERSON,          :
WILMA GAINES,             • :
JANETTE JOHNS-GIBSON,     :
MARY Q. GRANT,           :
CHARLES HARDEN, JR., et al.     :
                               :
       Plaintiffs,            :        Case No.: 2009 CA 004756 B
                               :        Next event: ISC- 1/29/2010
             v.           :        Judge: Maurice Ross
                               :
DISTRICT OF COLUMBIA,      :
OFFICE OF THE ATTORNEY GENERAL,:
441 4th Street, NW,           :
6th Floor,
Washington, DC 20001         :
                               :
HON. ADRIAN FENTY, MAYOR,     :
DISTRICT OF COLUMBIA,
1350 Pennsylvania Avenue, NW,     :
Suite 221,
Washington, DC 20004         :
                               :
MICHELLE RHEE, CHANCELLOR,    :
District of Columbia Public Schools,
825 N. Capitol St., NE,          :
Washington, DC 20002         :
                               :
       Defendants.           :

## PLAINTIFFS' CONSENT MOTION FOR ENLARGMENT OF TIME TO FILE A RESPONSE TO DEFENDANTS' MOTION FOR RELIEF/ MOTION TO VACATE THE COURT'S OCTOBER 19, 2009 ORDER

Plaintiffs, Kenneth Dickerson, Wilma Gaines, Janette Johns-Gibson, Mary Q.

Grant, Charles Harden, Jr., et al. (hereinafter "the Class"), by and through counsel, John

F. Mercer, Esq., and pursuant to Super. Ct. Civ. R. 6 (b), respectfully move this Court for

an enlargement of time to file a response to Defendants' Motion for Relief/ Motion to

Vacate the Court's October 19, 2009 Order, up to and including December 3, 2009.

1

Defendants have consented to the herein requested relief, and no party will suffer any

undue prejudice should the Court grant the requested relief.

Detailed grounds for these Plaintiffs' motion are set forth in the attached

memorandum of points and authorities in support thereto.

Respectfully submitted,

JOHN F. MERCER
Counsel for Plaintiffs

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENT MOTION FOR ENLARGEMENT OF TIME TO FILE A RESPONSE TO DEFENDANTS' MOTION FOR RELIEF/ MOTION TO VACATE THE COURT'S OCTOBER 19, 2009 ORDER**

In support of Plaintiffs' Consent Motion for Enlargement of Time to File a Response to Defendants' Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order, Plaintiffs herein submit and rely upon the following authorities:

1. Defendants filed the Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order, in the instant action on November 6, 2009.

2. Defendants' Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order, consists of 9 pages of allegations.  These plaintiffs need additional time to respond to the allegations set forth in the Motion.

3. Super. Ct. Civ. R. (6)(b)(1) provides that "[the Court may], for cause shown, at any time in its discretion, with or without motion or notice, order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order."

4. These Plaintiffs move to extend the time to file a responsive pleading to Defendants' Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order until December 3, 2009.  Due to the press of other business, specifically three pending motions and substantial other submissions due in the U.S. Supreme Court (Ceasar v. Nord), the U.S. District Court for District of Columbia, (Lewis v. Fenty), EEOC (Smith v.USDOJ and Ceasar v. CPSC) prior to or very close to the deadline for response to Defendants' Motion, now move to extend the time to file a responsive pleading to the defendants' Motion.

3

5.  Defendants' Counsel consents to this requested relief, contingent upon the consent of Plaintiffs' Counsel to extend Defendants' time for filing a response until December 17, 2009. These Plaintiffs believe that they have satisfied the requirements of Rule 6 (b)(1), and neither party will be unduly prejudiced by the grant of the requested relief.

Respectfully submitted,

JOHN F. MERCER
Counsel for Plaintiffs
Mercer Law Associates, PLLC
1629 K Street, N.W.
Suite 300
Washington, D.C. 20036-5548
(240) 535-8758 (m)

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion for enlargement of time has been sent electronically, by email, to the office of the Defendant's counsel, Leah Brownlee Taylor, Esq., Associate Attorney General of the District of Columbia, 441 4th Street, N.W., 6th Floor South Washington, D.C. 20001, this 12th day of November 2009.

John F. Mercer

5

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

KENNETH DICKERSON,     • :
WILMA GAINES,     :
JANETTE JOHNS-GIBSON,     :
MARY Q. GRANT,     :
CHARLES HARDEN, JR., et al.     :
    :
       Plaintiffs,     :
    :
       v.     :
    :
DISTRICT OF COLUMBIA,     :
OFFICE OF THE ATTORNEY GENERAL,:
441 4th Street, NW,     :
6th Floor,     :
Washington, DC 20001     :
    :
HON. ADRIAN FENTY, MAYOR,     :
DISTRICT OF COLUMBIA,     :
1350 Pennsylvania Avenue, NW,     :
Suite 221,     :
Washington, DC 20004     :
    :
MICHELLE RHEE, CHANCELLOR,     :
District of Columbia Public Schools,     :
825 N. Capitol St., NE,     :
Washington, DC 20002     :
    :
Defendants.     :

Case No.: 2009 CA 004756 B
Next event: ISC- 1/29/2010
Judge: Maurice Ross

## ORDER

Upon consideration of Plaintiffs' Consent Motion for Enlargement of Time to File a Response to Defendants' Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order, it is by the Court this _____ day of _____, 2009,

ORDERED:  that Plaintiffs' Motion for Enlargement of Time to File a Response to Defendant's Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order is hereby GRANTED, and it is,

6

FURTHER ORDERED:  that Plaintiffs' response to Defendants' Motion for Relief/ Motion to Vacate the Court's October 19, 2009 Order shall be filed on or before December 3, 2009.

_____
Judge Maurice Ross

7

## CERTIFICATE PURSUANT TO SUPER. CT. CIV. R. 12-I(a)

I hereby certify that on November 12, 2009, the undersigned communicated with

Leah Brownlee Taylor, Defendants' Counsel, regarding the relief herein sought, and

consent was granted.

JOHN F. MERCER
Counsel for Plaintiffs

8

Filed
D.C. Superior Court
09 Nov 05 P01:06
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

|  |  |
|---|---|
| KENNETH DICKERSON,<br>WILMA GAINS<br>JANETTE JOHNS-GIBSON<br>MARY Q. GRANT,<br>CHARLES HARDEN, JR. et al.<br><br>     Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>OFFICE OF THE ATTORNEY GENERAL<br>441 4th Street, NW<br>6th floor<br>Washington, DC 20001.<br><br>HON. ADRIAN FENTY, MAYOR<br>DISTRICT OF COLUMBIA<br>1350 Pennsylvania Avenue NW<br>Suite 221,<br>Washington, DC<br><br>MICHELLE RHEE,<br>Chancellor,<br>District of Columbia Public Schools,<br>825 N. Capitol St. NE<br>Washington, DC 20002<br><br>    Defendants. | Case No.: 2009 CA 004756 B<br>Next event: ISC- 1/29/2010<br>Judge: Maurice Ross |

### DEFENDANTS' MOTION FOR RELIEF/MOTION TO VACATE THE COURT'S OCTOBER 19, 2009 ORDER

Defendants District of Columbia, Mayor Adrian Fenty, and Chancellor Michelle Rhee

("Defendants") move this Court, by and through undersigned counsel and pursuant to Super. Ct.

Civ. R 54 (b) and  Super. Ct. Civ. R  60(b), for relief from the Court's October 19, 2009 order. As grounds for this motion, the defendants state as follows:

(1)      The Court's October 19, 2009 order was issued in error because the Court granted Plaintiffs' motion to reinstate, which failed to comply with Superior Court Rule 12-I.  Plaintiffs did not seek the consent of the defendants before filing their motion to reinstate.

(2)      The Court granted Plaintiffs' motion to reinstate without considering the prejudice to the defendants, or the defendants' position on the plaintiffs' motion. The defendants were prejudiced by the Court's reinstatement because as of August 30, 2009, Plaintiffs' complaint was largely time-barred, entitling the defendants to dismissal of some of Plaintiffs' claims.

These grounds are more fully set forth in the accompanying memorandum of points and authorities, which are attached hereto and incorporated herein. A proposed order is attached for the Court's review.

## CERTIFICATE OF SCR-CIVIL 12-I NOTICE

I hereby certify that on or about October 27, 2009, I contacted plaintiffs' counsel, and he opposed the defendants' motion for relief/motion to vacate the Court's October 19, 2009 order.

_____/s./ Leah Taylor_____
Leah Brownlee Taylor
Assistant Attorney General, D.C

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants' Motion for Relief/Motion to Vacate, Memorandum of Points and Authorities in Support thereof, and Proposed Orders were sent via electronic transmission, this 5th day of November, 2009 to:

John Mercer, Esq.
1629 K Street NW
#300
Washington, DC 20036

_____/s/ Leah Taylor_____
Leah Brownlee Taylor
Assistant Attorney General, D.C.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| KENNETH DICKERSON,<br>WILMA GAINS<br>JANETTE JOHNS-GIBSON<br>MARY Q. GRANT,<br>CHARLES HARDEN, JR. et al.<br><br>    Plaintiffs,<br>v.<br><br>DISTRICT OF COLUMBIA,<br>OFFICE OF THE ATTORNEY GENERAL<br>441 4th Street, NW<br>6th floor<br>Washington, DC 20001.<br><br>HON. ADRIAN FENTY, MAYOR<br>DISTRICT OF COLUMBIA<br>1350 Pennsylvania Avenue NW<br>Suite 221,<br>Washington, DC<br><br>MICHELLE RHEE,<br>Chancellor,<br>District of Columbia Public Schools,<br>825 N. Capitol St. NE<br>Washington, DC 20002<br><br>    Defendants. | Case No.: 2009 CA 004756 B<br>Next event: ISC -1/29/2010<br>Judge: Maurice Ross |

**DEFENDANTS' MEMORANDUM OF POINTS OF AUTHORTIES IN SUPPORT ITS MOTION FOR RELIEF FROM THE COURT'S OCTOBER 19, 2009 ORDER**

## ARGUMENT

### I.   STANDARD UNDER  SCR-54 (B) AND SCR- 60 (B)

This Court should reconsider its October 19, 2009 decision reinstating the Plaintiffs' complaint and grant the defendant relief from its order under Super. Ct. Civ. R.  54 (b).  Super. Ct. Civ. R.  54 (b) provides that a court's " . . . order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties". Super. Ct. Civ. R.  54 (b).  Although the Superior Court Civil Rules do not technically address motions for reconsideration, when a motion for reconsideration, or a motion for relief is made before the court enters a final, appealable order, such a motion may "be entertained by the trial court at any reasonable time until a final, appealable order has been entered." *See District of Columbia Hous. Fin. Agency v. Harper*, 707 A.2d 53,57  (D.C. 1998); *see also Williams v. Vel Rey Properties*, 699 A.2d 416, 419 (D.C. 1997), *see also* Super. Ct. Civ. R.  54 (b).  "Motions to reconsider interlocutory orders--in contrast to motions for reconsideration of final judgments--are within the discretion of the trial court ...." *United Mine Workers v. Pittston Co.,* 793 F. Supp. 339, 344-45 (D.D.C.1992), *aff'd,* 299 U.S. App. D.C. 339, 984 F.2d 469 (D.C. Cir. 1993).  Moreover, the Supreme Court has long recognized the power of the lower court at any time prior to entry of its final judgment, to reconsider any portion of its

decision and reopen any part of the case. *Marconi Wireless Telegraph Co. v. United States*, 1943, 320 U.S. 1 (1943).

In addition to Superior Court Rule 54 (b), Superior Civil Rule of Procedure 60 (b) allows a court to relieve a party's legal representative from a final judgment, order or proceeding if " . . . (5) the judgment ... is no longer equitable that the judgment should have prospective application or (6) any other reason justifying the relief from the operation of the judgment." *See* Super. Ct. Civ. R. 60 (b)(5) and (6). Here, for all the aforementioned reasons set forth below, the defendants have more than demonstrated that relief from the Court's October 19, 2009 order is substantially justified.

## II.    THE COURT COMMITTED ERROR IN ITS ORDER BECAUSE PLAINTIFFS FAILED TO SEEK THE CONSENT OF COUNSEL IN VIOLATION OF RULE 12-I.

On September 14, 2009, Plaintiffs moved this court to reinstate Plaintiffs' case. Plaintiffs failed to seek the consent of the defendants under SCR 12- I. SCR 12- I states "(a) Before filing any motion, except motions filed pursuant to Rule 11, the moving party shall first ascertain whether other affected parties will consent to the relief sought." SCR 12- I. This rule is unequivocal. Plaintiffs failed to seek the consent of the defendants and represented to the Court that the "defendants will not be prejudiced by the resultant delay in filing". *See* Motion to Reinstate at 4. Plaintiffs' representation does not accurately characterize the defendants' position on Plaintiffs' motion to reinstate and, in fact, is disingenuous. Had Plaintiffs' sought the defendants' consent, as they were required to do, the defendants would have advised the Plaintiffs that the defendants *are* prejudiced by the delay in filing and oppose Plaintiff's motion to reinstate, as discussed in detail below.

- 6 -

III.   **THE DEFENDANTS' ARE PREJUDICED BY THE COURT'S REINSTATEMENT OF A DISMISSED COMPLAINT THAT WAS LARGELY TIME BARRED AS OF AUGUST 30, 2009.**

Plaintiffs filed their initial action on June 30, 2009. Plaintiffs' complaint alleges age and race discrimination under the District of Columbia Human Rights Act (DCHR) and defamation. *See* June 30, 2009 Complaint, generally. Plaintiffs' claims are subject to a one year statute of limitation. *See* D.C. Code § 2-1403.16 (a); *see also* D.C. Code 12-301 (2001), respectively. Pursuant to SCR Civil 4(m), they were required to effectuate service by August 29, 2009. SCR Civil 4(m) provides that "within 60 days of the filing of the complaint, the plaintiff must file either an acknowledgement of service or proof of service of the summons, the complaint and any order directed by the Court to the parties at the time of filing." SCR Civil 4(m). If a plaintiff fails to effectuate proper service or request more time to do so within sixty days of filing the complaint, the plaintiff's case must be dismissed. The language of SCR Civil 4(m) is explicit and leaves no room for discretion. It states, "Failure to comply with the requirements of this Rule *shall* result in the dismissal without prejudice of the complaint. The Clerk shall enter the dismissal and shall serve notice thereof on all the parties entitled thereto." SCR Civil 4(m) (emphasis added).

On September 9, 2009, this Court dismissed the Plaintiffs' complaint for failure to effectuate service pursuant to SCR- 4(m). *See* Docket entry 9/9/09. On or about August 29, 2009, the Plaintiffs' attempted to file an amended complaint, but plaintiffs' counsel filed the amended complaint using an erroneous login and credit card number. *See* Motion to Reinstate at Exhibit 3. Plaintiffs' erroneous filing was evident on the face of the August 29, 2009, 1:09:57 am filing confirmation which contains the wrong attorney filer's name, the wrong business address, and apparently the wrong credit card number. *Id.* Plaintiffs could have, or should have

- 7 -

refiled their amended complaint on August 29, 2009, upon noticing the erroneous filing, but failed to do so.  As such, this Court dismissal of the Plaintiffs' complaint on September 9, 2009 date was not improper.

On October 19, 2009, however, this Court granted the Plaintiffs' motion to reinstate their case and motion to file their Amended Complaint nunc pro tunc to August 29, 2009.  Plaintiffs failed to seek the consent of the defendants and the defendants were effectively denied the opportunity to be heard on Plaintiffs' motion for reinstatement. *See* Motion to Reinstate, generally.  Reinstatement of the Plaintiffs' complaint severely prejudiced the defendants because Plaintiffs' action was dismissed by the Court and Plaintiffs' complaint was largely time barred as of August 30, 2009, which would have entitled the defendants to dismissal of most of Plaintiff's claims.  Plaintiffs' failure to comply with the Superior Court Rules of Civil Procedure and the resulting prejudice to the defendants, i.e., the reinstatement of a complaint that was largely time-barred, mandates that the Court vacate its October 19, 2009 order reinstating the Plaintiffs' action.

For all the foregoing reasons, the defendants respectfully request that their Motion for Relief/Motion to Vacate be granted.  A proposed Order is attached.

Respectfully submitted,


PETER J. NICKLES
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

    /s/  Ellen Efros
Ellen Efros (250756)
Assistant Deputy Attorney General/Chief, Equity
I

_/s/  Leah Brownlee Taylor_
Leah Brownlee Taylor  (488966)
Assistant Attorney General
441 4th Street, Northwest
6th Floor South
Washington, D.C. 20001
202-724-7854

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| KENNETH DICKERSON, ) | |
| WILMA GAINS ) | |
| JANETTE JOHNS-GIBSON ) | |
| MARY Q. GRANT, ) | |
| CHARLES HARDEN, JR. et al. ) | |
| ) | |
|     Plaintiffs, ) | Case No.: 2009 CA 004756 B |
| v. ) | Next Event: ISC-1/29/2010 |
| ) | Judge: Maurice Ross |
| DISTRICT OF COLUMBIA, ) | |
| OFFICE OF THE ATTORNEY GENERAL ) | |
| 441 4th Street, NW ) | |
| 6th floor ) | |
| Washington, DC 20001. ) | |
| ) | |
| HON. ADRIAN FENTY, MAYOR ) | |
| DISTRICT OF COLUMBIA ) | |
| 1350 Pennsylvania Avenue NW ) | |
| Suite 221, ) | |
| Washington, DC ) | |
| ) | |
| MICHELLE RHEE, ) | |
| Chancellor, ) | |
| District of Columbia Public Schools, ) | |
| 825 N. Capitol St. NE ) | |
| Washington, DC 20002 ) | |
| ) | |
|     Defendants. ) | |
| ) | |

ORDER

Upon consideration of the Defendants' Motion for Relief/Motion to Vacate, the

memorandum of points and authorities in support thereof, any opposition thereto, the facts, the

law and the record herein, it is this __day of _____2009, and it is,

- 10 -

**ORDERED:** that the defendants' Motion for Relief is **GRANTED** and the Court's

October 19, 2009 order is hereby vacated.

_____

Judge Ross
Superior Court Judge

Support: (877) 433-4533



**CaseFile**Xpress
secure legal efiling

**Your Account | Submit a Filing | Review Filings / eService | Jurisdictions | Filing Reports | eService Profile | Sign Out**

## ⤴ Submit a Filing

**1. Jurisdiction** | 2. Filing | 3. Attorneys | 4. Party Information | 5. Fees | 6. Upload File | 7. Submit Filing



| | |
|---|---|
| **Jurisdiction/Case** | |
| Filing Attorney: | sbmercer |
| Jurisdiction: | |

**Original Petition:**  Yes  ⦿ No

**Cause/Case Number:** [_____]

**Court Assignment:** < Please select a jurisdiction above >

**Filing Type:** File with the Court and Serve Counsel

**Continue ▶**

### Tips & Guidelines

**Filing Attorney**
Delegates may file on behalf of an attorney (the filing attorney). If you are a delegate filing for an attorney, please be sure to choose the correct Filing Attorney's User Id.

**Existing Case**
You must eFile all existing Civil I and Civil II cases, with the exception of the complaint, affidavits of service, sealed documents, and writs. If this is the first time you have eFiled, you will receive a message that the data for the cause number could not be found. This is not an error. Enter the information required on the Filing Information page and click continue.

**Discovery**
If you want to eServe Discovery to opposing counsel, you may select the filing type "Discovery - Service on Counsel Only", and CFX will electronically serve your discovery documents. Discovery service will not be sent to the court or the clerk.

**Complaints Not Accepted**
Original filings are not currently being accepted and MUST be paper filed.

contact online support

EXHIBIT 1

Copyright 2003 - 2008, CaseFileXpress, Inc. All rights reserved.

http://www.casefilexpress.com/cfxdc/SubmitFilingAttorneySelection.aspx

4/28/2009

ED301J021167619

**From:** Info <info@cfxpress.com>
**To:** jmjmercer@aol.com
**Subject:** ED301J021167619
**Date:** Mon, Aug 31, 2009 9:14 am

Hello,

We are contacting you regarding the filing referenced above.  It seems that at some point you had incorrect
login information and actually submitted your filing through someone else's account.  Since the filing was
submitted through another attorney's account, you will need to contact the court (202-879-1134) and have
them reject the filing, then you will need to re-submit the filing through your account.  Your account information
is as follows:

User ID          jmercer
Password      jm5358758

Thanks,
CaseFileXpress
Office: 1-877-433-4533
Fax: 1-866-475-5470
Please consider the environment before printing this email

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended
recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure
or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and
destroy all copies of the original message.

EXHIBIT 2

Filing Acknowledgement

Support: (877) 433-4533





CaseFileX

secure legal efiling

Your Account | Submit a Filing | Review Filings / eService | Jurisdictions | Filing Reports | eService Profile | Sign Out

## ➡ Submit a Filing



Have a Question?
Try Our Live Chat
• • ● OFFLINE

☑   Your submission was successful! Your trace number is **ED301J021167619**. The details of your filing are shown below. To view a printable version of your filing summary, **click here.**

To view the status of this and other submissions, click the "Review Filings" tab above.

**Submit another filing**

| Timestamp: |
| --- |
| 08/29/2009 1:09:57 AM (Eastern (U.S. and Canada)) |

**This is not your official receipt. Your receipt may be viewed in Review Filings after your Filing Status changes to "Confirmation".**

| Description of Fee | Amount |
| --- | --- |
| eFiling Processing Fees | $6.22 |
| Court Filing Fees | $0.00 |
| CaseFileXpress Filing Fee | $4.00 |
| Total cost of filing: | $10.22 |

| Personal Information | |
| --- | --- |
| **Filer:** | sbmercer |
| **Attorney of Record:** | sbmercer |
| **Name:** | John mercer |
| **Law Firm or Organization:** | Stephen B. Mercer, Esq., P.C. |
| **Bar Number:** | 184549 |
| **Filer Position:** | Attorney |
| **Address:** | 11 North Washington Street Suite 520 Rockville, MD 20850 |
| **Phone:** | (301) 637-5775 |
| **Fax:** | (301) 838-0322 |
| **Email:** | jmjmercer@aol.com |

| Payment Information | |
| --- | --- |
| **Payment Method:** | Credit Card |
| **Address:** | 541 Brent Road Rockville, MD 20850 |
| **Credit Card Type:** | VISA |
| **Credit Card #:** | XXXX XXXX XXXX 5979 |
| **Cardholder Name:** | Stephen B. Mercer |

| Filing Information | |
| --- | --- |
| **Case Title:** | Kenneth Dickerson , et al. v. District of Columbia |
| **Sealed Case:** | No |
| **County Name:** | D.C. Superior Court |
| **Court Type:** | District |
| **Court Name:** | Civil Actions |
| **Cause/Case Number:** | 2009 CA 004756 B |
| **Document Type:** | Amended Complaint Filed |
| **Judge(s):** | |
| **Special Instructions:** | No |
| **Client Matter #:** | 001 |
| **Other Services Requested:** | Not Available At This Time |

| Document Information | |
| --- | --- |
| **File Name:** | DCPS Amend Compl PDF Final 28 Aug 09.pdf |
| **Attachments (1):** | |
| | DCPSAmd Cmpl Exh One M Grant Aff 28 Aug 09.pdf |

EXHIBIT 3

Copyright 2003 - 2009, CaseFileXpress, Inc. All rights reserved.

1

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

KENNETH DICKERSON,        • :
WILMA GAINES,            :
JANETTE JOHNS- GIBSON,    :
MARY Q. GRANT,          :
CHARLES HARDEN, JR., ET AL.  :
                       :
                       :

Plaintiffs,              :
                       :     <u>CLASS  ACTION:</u>
     v.            :
                       :

DISTRICT OF COLUMBIA,    :
OFFICE OF THE ATTORNEY  :
    GENERAL           :
441 4TH Street, NW, 6TH Floor,  :
Washington, DC  20001     :
                       :

——————————————————:HON. ADRIAN FENTY,
    :
MAYOR,               :
DISTRICT OF COLUMBIA, et al.  :     CIVIL ACTION:
NO._____         :      2009 CA 004756 B
1350 Pennsylvania Avenue, NW,  :
Suite 221,            :      Hon. Maurice Ross
Washington, DC 20004    :
                       :

MICHELE RHEE,         :
CHANCELLOR,         :
DISTRICT OF COLUMBIA    :
PUBLIC SCHOOLS,      :
825 N. Capitol St., NE,     :
Washington, DC 20002,    :
                       :
Defendants.          :

Serve:  Hon. Adrian Fenty, Mayor D.C.
1350 Pennsylvania Avenue, NW,
Suite 221
Washington, DC 20004

1

Serve: Office of the Attorney General
441 4th Street, NW, 6th Floor,
Washington, DC 20001

Serve: Michelle Rhee,
Chancellor,
District of Columbia
Public Schools,
825 N. Capitol St., NE,
Washington, DC 20004

## FIRST AMENDED COMPLAINT FOR WRONGFUL DISCHARGE, DEFAMATION, VIOLATION OF RIGHT TO PRIVACY, CIVIL CONSPIRACY, VIOLATION OF FEDERAL RETIREMENT LAW, DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AND D.C. HUMAN RIGHTS ACT.

Comes now the Plaintiffs Kenneth Dickerson, Wilma Gaines, Janette Johns-Gibson, Mary Grant, Marta Guzman, Charles Harden, Jr., Treva Lindsay, Antonia Peters, Andre Roach, Jacqueline Williams, Wellington Wilder, Harriet Kargbo, Richard Patterson, Donna Edwards, Carol Barbour, and potential claimants not yet added to the Class of Complainants ("Class"), on behalf of themselves and all others similarly situated, by and through counsel, John F. Mercer, Esq., and state their and the class' amended complaint against Defendants in the above matters as follows:

1.      This action arises under D.C. Code § 11-921; and common law, SCR-3, SCR-23 (Class Actions); 42 U.S.C. §§ 2000e 5(f)(1)-2000e 5(f)(3); 28 U.S.C. § 1331, et.seq.; 29 U.S.C. 623; 28 U.S.C. § 1391; 28 U.S.C. § 1441; D.C. Code § 12-309; and D.C. Code § 2-1403.16. The original Complaint is timely filed within one ("1) year of filing of Notice of Claim to Hon. Adrian Fenty, Mayor, District of Columbia, pursuant to D.C. Sup. Ct.

2

R. P. 15(a); D.C. Code § 12-309; D.C. Comprehensive Merit Personnel Act ("CMPA") 1978, (as amended); CDCR 5-1000, et seq.; D.C. Code §2-1401, 2-1402.11, and other laws and regulations of the District of Columbia and the United States. This Court has jurisdiction over all claims for relief, including state claims under the supplemental and ancillary jurisdiction of the federal court. Venue is proper in this Court as shall be set forth herein below.[1]

**THE PARTIES**

2.      Plaintiff, Kenneth Dickerson, is a resident of the District of Columbia. He lives at 4203 Illinois Avenue, NW, Washington, DC 20011. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

3.      Plaintiff, Wilma Gaines, is a resident of Maryland. She lives at 7801 Royal Fern Court, Clinton, Maryland 20735. At all times pertinent to this Complaint, Plaintiff was a resident of the state of Maryland and was employed by the Defendant Agency.

4.      Plaintiff, Janette Johns-Gibson, is a resident of the District of Columbia. She lives at 301 G Street, SW, Apt. 423, Washington, DC 20024. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

5.      Plaintiff, Charles Harden, Jr. is a resident of Maryland. He lives at 902 Playford Lane, Silver Spring, MD 20901. At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

---

[1] This "First Amended Complaint" was initially filed by Plaintiffs on August 29, 2009. However, it was electronically misfiled and subsequently discarded.

6.      Plaintiff, Harriet Kargbo, is a resident of Maryland.  She lives at 1522 Sherwood Court, Cheverly, MD 20785.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

7.      Plaintiff, Treva Lindsay, is a resident of Maryland.  She lives at 3703 Silver Park Court, Suitland, MD 20746.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

8.      Plaintiff, Antonia Peters, is a resident of the District of Columbia.  She lives at 529 Ingraham Street, NE, Washington, DC 20011.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

9.      Plaintiff, Andre Roach, is a resident of Maryland.  He lives at 9804 Woodyard Circle, Upper Marlboro, MD 20772.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

10.     Plaintiff, Jacqueline Williams, is a resident of Maryland.  She lives at 11100 White House Road, Upper Marlboro, MD 20774.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland  and was employed by the Defendant Agency.

11.     Plaintiff, Wellington Wilder, is a resident of the District of Columbia.  He lives at 1419 South Capitol Street, SW, Washington, DC 20003.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia  and was employed by the Defendant Agency.

12.     Plaintiff, Donna Edwards, is a resident of the District of Columbia.  She lives at 6920 32nd Street, NW, Washington, DC 20015.  At all times pertinent to this Complaint,

4

Plaintiff was a resident of the District of Columbia and was employed by Defendant Agency.

13.    Plaintiff, Carol Barbour, is a resident of Maryland.  She lives at 4718 Captain Bayne Court, Upper Marlboro, MD 20772.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

14.    Plaintiff, Marta Guzman, is a resident of the Commonwealth of Virginia.  She lives at 3800 Dade Drive, Annandale, VA 22003.  At all times pertinent to this Complaint, Plaintiff was a resident of Virginia and was employed by the Defendant Agency.

15.    Plaintiff, Mary Q. Grant, is a resident of Maryland.  She lives at 8107 Maplegate Place, Glenn Dale, MD 20769.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

16.    Plaintiff, Richard Patterson, is a resident of Maryland.  He lives at 14314 Arctic Avenue, Rockville, MD 20853.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

17.    Other complainants not yet named are residents of the District of Columbia, Virginia, and/or Maryland.  At all times pertinent to this Complaint, Plaintiffs were residents of the aforementioned states and were employed by the Defendant Agency, until their terminations from employment became effective on June 30, 2008.

18.    Defendant, District of Columbia, is a municipality acting herein by and through the District of Columbia Public Schools ("Defendant," "Agency," "the District," or "DCPS"), an agency of the government of the District of Columbia which at all times hereunder, acted by and through its Chancellor, Michelle Rhee, (hereinafter "Rhee") and

5

various other employees and agents of DCPS and the District of Columbia. DCPS is an "employer" pursuant to 42 U.S.C. § 2000e, and D.C. Code 1-2502, and was so situated during all times pertinent herein. Its principal office is located at 825 North Capital Street, NE, Washington, DC 20002.  That DCPS is a separate, cabinet-level agency subordinate to the Mayor.  The Mayor governs the public schools in the District of Columbia and has, among other things, authority over all personnel, labor negotiations, collective bargaining, and other education-related matters pursuant to "The Public Education Reform Amendment Act of 2007" (""PERAA").

19.     That Rhee is an employee of DCPS and the District of Columbia, and serves as its Chief Executive Officer. Her office is located at 825 North Capital Street, NE, Washington, DC 20002.  At all times during the events set out in this complaint, Rhee was employed with DCPS and acted as an agent of DCPS.  The Chancellor reports directly to the Mayor, and has personnel authority as delegated by the Mayor pursuant to PERAA.

## CASE SUMMARY

20.     On or around June 2007, Rhee was engaged by the District of Columbia to perform as the Chief Executive Officer for District of Columbia Public Schools.  Her title is Chancellor of District of Columbia Public Schools ("DCPS").  In her capacity as Chancellor, she had (and has) authority to make operational decisions for DCPS, inclusive of personnel matters affecting the DCPS educational service (including staff, administrative employees, contractors and others providing services to DCPS).  Rhee's authority emanates from the D.C. Code and the D.C.  Code of Regulations ("CDCR", CDCR 5, et seq.).

6

21.     Shortly after her engagement, Defendant Rhee engaged personnel to serve as her senior executive management officers (the "Officers").  Included among these Officers were employees in areas of personnel management, legal, financial and other DCPS departments.  The Officers assisted Defendant Rhee in developing, determining, and executing DCPS personnel policy.

22.     Between the date of her installation in June 2007 and May 2008, Rhee and the Officers (collectively, the "Defendants") decided that certain current incumbent DCPS educational administrators performing as Principals and Assistant Principals (hereafter, the "Incumbents" or "Plaintiffs"), the number of which believed to be thirty-three ("33") or more, would not be reappointed to their positions for the fall of the upcoming 2008-2009 school year.  The Defendants' objective was to effect a "mass firing" of the Incumbents in order to replace them with persons of her choice.  The decision of Defendants to replace Incumbents was not based upon merit or failure of performance, but engineered for the purpose of a premeditated administrative "regime change" and "mass firing."

23.     On or about May 5, 2008, Defendants served each of the Incumbents with written notice indicating that they would not be reappointed to their respective positions as Principal or Assistant Principal, and that their terms would expire on June 30, 2008.[2]

24.     This "mass firing" would be carried out by manipulating accepted personnel mechanisms to achieve illegal and wrongful purposes.  The Defendants used the guise of general poor student performance to justify and make the mass firing appear legitimate

---

[2] See Exhibits 1-5- Affidavits of: (1) Mary Q. Grant; (2) Marta Guzman; (3) Richard Patterson; (4) Jacqueline Williams; and (5) Notice of Non-reappointment to Richard Patterson, dated May 5, 2008.

7

and necessary.  Knowing such information to be false, Defendants launched a national campaign attributing student performance in D.C. to incompetence and lack of effort, effectiveness, and professionalism of the Incumbents,[3] in spite of the fact that issues and concerns with Plaintiffs' performance should have been addressed in their annual performance reviews.[4]

25.     In keeping with their predetermined plan to remove the Incumbents, prior to issuance of the notices of May 5, 2008, the Incumbents were advised that their school's performances would be evaluated, and that student academic improvement would be a factor in their performance ratings.  However, the ultimatum delivered by the Defendants based upon such proposed evaluation improvement was a pretext.  Current and previous performances notwithstanding, the Defendants had already determined the Incumbents would be removed.

26.     As part of the mass firing, it was carefully determined by Rhee and the Officers that age and proximity to retirement would be among the essential determining factors to be applied in replacing the Incumbents. Twenty-eight ("28") of the thirty-three ("33") non-reappointed Incumbents were all over forty years old[5] (most of them being older than fifty).[6] Their replacements averaged in their thirties.

---

[3]  See Exhibits 6 and 7- Kate Bolduan, "'100 mph' School Chief Seeks 'Radical Changes,'" *CNN*, September 9, 2008; Bill Turque, "Rhee Has Dismissed 24 Principals," *Washington Post*, May 16, 2008.
[4]  Article XI- Evaluation, §§ A1-8 of the Collective Bargaining Agreement with Council of School Officers.
[5]  See Exhibit 8- Letter from Megan Hoppe, Federal Investigator, U.S. Equal Employment Opportunity Commission, to Claimant Richard L. Patterson, dated February 6, 2009.
[6]  See Exhibit 9- Claimant Richard L. Patterson's Response (February 19, 2009) to Investigator Megan Hoppe's Letter of February 6, 2009.

27.     It was determined by the Defendants that the mass firings would be carried out irrespective of intervention of the Incumbents' collective bargaining unit (the "Council of School Officers" or "CSO"), and further determined by Defendants that they did not have to bargain with the CSO because the Incumbents were subject to annual reappointment in accordance with CDCR 5-520, et seq., and the aggressiveness and desired impact of their mass firing would freeze other Incumbent principals and assistant principals and weaken their resolve to fight.

28.     In carrying out the mass firings, the Defendants engaged in intimidation; defamation; conspiracy; malicious abuse of process; discrimination based upon race, age, and sex; and wrongful discharge.  They caused irreparable harm to the Incumbents collectively and individually; and to the professional careers of the Incumbents in the present and future.

29.     The Plaintiffs' collective bargaining unit, the Council of School Officers ("CSO") filed class grievances, but was unable to bring about a favorable resolution on the Plaintiffs' behalves.


### THE CLASS

30.     The Incumbents are "Plaintiffs" and "Class Members" as defined under D.C. Superior Court Civil Rule 23, et seq., and heretofore shall be referred to as "Plaintiffs" in this action.  The Defendants collectively shall be referred to as "DCPS."


### STATEMENT OF FACTS


9

31.    Plaintiffs are African American and Hispanic males and females over forty-("40") years of age.

32.    Plaintiffs, at the time of the actions described herein were employed by DCPS as annually appointed principals and assistant principals assigned to DCPS schools.

33.    At the time of the matters complained of herein, each of the Plaintiffs had either risen from the rank of teacher ET-15 to his/ her appointment as Principal or Assistant Principal, or had been directly employed by DCPS as a principal or assistant principal. At the time of the matters described herein, each of the Plaintiffs had performed as Principal or Assistant Principal with DCPS for at least five ("5") or more years.  Up to the date of notice of their Non-reappointment, each Plaintiff reasonably believed and expected to be reappointed to their respective positions, unless their assigned school was scheduled for closing, or he/ she had received prior notice of a significant performance deficiency.

34.    In late 2007, the Plaintiffs were notified that they would receive performance evaluations by the end of the academic year, (June, 2008).  DCPS alleged that the evaluations were for the purpose of determining proficiency, and would include ranking based on student reading and mathematics test scores, student attendance, and student improvement in various other academic and scholastic areas.

35.    Some Plaintiffs were administered evaluations during the 2007-2008 academic year and were notified that if their ratings did not "show improvement" they would be removed from their positions.

36.    Others of the Plaintiffs were not administered mid-year or final evaluations at all. And yet, they were also told by DCPS, that they would be removed due to failure to meet

10

performance standards and criteria, for which they were not evaluated, and for which, if they had been evaluated, would not have been proven to be indicators of poor administrative performance.                    •

37.     It is undisputed by the parties that each of the Plaintiffs who received improvement notices, made efforts to improve their scholastic ratings by taking various actions they believed, and were told by DPCS, would be necessary for improvement of their respective schools.  Each Plaintiff, in fact, experienced improvement of his/ her respective statistics in the required evaluation categories.  However, neither DCPS (nor other known education systems) have proven methods of substantial student improvement based upon short-term policies and actions.  In addition, most educators agree that substantial improvement of student performance requires more than efforts made by assistant principals and principals only.  Notwithstanding their respective schools' improvements, each of the Plaintiffs was ultimately not reappointed to his/ her administrative position.

38.     Simultaneous with their demand for improved academic performance during the 2007-2008 school year, DCPS had notice and knowledge that the Plaintiffs' respective schools were understaffed and lacked sufficient resources.  Notwithstanding, DCPS failed to take timely and appropriate action to fill vacant teacher, administrator and service provider positions and withheld and/or delayed requested and needed classroom and building resources.

39.     On or about May 5, 2008, each Plaintiff was notified by delivery that they would not be reappointed to their respective positions of employment with DCPS, effective on June 30, 2008, and each of the Plaintiffs was removed in a mass firing on June 30, 2008

11

(See Exhibit One, "Notice"). Without prior notice of a meeting, on or about May 5, 2008 the Plaintiffs were called and told to report to their respective Cluster Assistant Superintendent. When they arrived, a designated DCPS Human Resource employee was also present. No reason for Non-reappointment was specified in the oral or written May 5, 2008 Notice, except that this was by decision of Chancellor Michelle Rhee. Ostensibly, the removals were effected upon the Plaintiffs based upon their status as annually appointed employees, pursuant to CDCR 5-520. However, subsequent to serving Plaintiffs with the Notice of Non-reappointment and setting the June 30, 2008 effective date, DCPS' actions revealed that the Plaintiffs were removed for "cause," and the "cause" was identified as failure to improve the statistical performance of students at their respective schools.

40.     Prior to delivery of the Notice of May 5, 2008, DCPS' Chancellor and Officers predetermined that the Plaintiffs would not be reappointed based upon the fact that DCPS had already engaged employees to occupy the positions left vacant due to the mass firing. Accordingly, at the time the Plaintiffs received the May 5th Notice, a group of replacements, already selected, and under forty- ("40") years old, and with far less experience were available to fill the prospective vacant positions. Absent negative or materially unacceptable performance evaluations, however, DCPS announced publicly that the Plaintiffs had failed to perform adequately as established in evaluations and/or student performances. These reasons were baseless pretext.

41.     Each of the Plaintiffs' employment by DCPS as a principal or assistant principal ended on June 30, 2008. Prior to the Plaintiffs' receipt of Notices of Non-reappointment, DCPS had surreptitiously engaged replacements to occupy the Plaintiffs' soon-to-be

12

vacant positions.  After executing the mass firing, DCPS not only filled each Plaintiffs'

position without delay, but the prior identified and still pending vacant teacher and

school-based positions were filled expeditiously, and previously requested classroom and

building resources were funded, and made readily available to Plaintiffs' successors and

respective schools.

42.     The Plaintiffs collectively raised grievances concerning their mistreatment and

misrepresentation by DCPS through the Council of School Officers ("CSO," i.e.,

Plaintiffs' collective bargaining unit pursuant to CDCR 5-700) without resolution in

favor of the Plaintiffs.  Subsequently, the CSO informed Plaintiffs that the collective

bargaining organization had done all it could on behalf of the members regarding DCPS'

Non-reappointments with respect to the collective bargaining agreement ("CBA").

43.     Simultaneous to CSO's intervention, DCPS intensified its campaign of hostile,

malicious, and retaliatory actions, including: (1) efforts to isolate Plaintiffs from other

employees; (2) efforts to defame Plaintiffs amongst co-workers, neighboring school

systems, and social / community groups; (3) and malicious interference with Plaintiffs'

rights to unemployment compensation and retirement benefits by allegations that

Plaintiffs were removed from their employment due to "Misconduct" or for cause; (4)

evasiveness regarding Plaintiffs' Retreat Rights to other positions; (5) lack of payment

due Plaintiffs during the transition period; and (6) unresponsiveness to Plaintiffs'

inquiries about leave, retirement benefits, and account statements.

44.     But for the actions of DCPS, the Plaintiffs would have been successful in

acquiring suitable alternative employment.  However, DCPS engaged in public

distortions that caused the Plaintiffs to be perceived as pariahs, troublemakers, and lazy,

13

ineffective administrators, thereby denying Plaintiffs advancement opportunities and

opportunities for hire outside DCPS.

45.     In violation of DCPS personnel rules CDCR 6-3111.1-6-3111.6, DCPS callously

and maliciously violated Plaintiffs' right to privacy by publishing and exposing

Plaintiffs' personnel records and the alleged reasons for Plaintiffs' removal from

employment without the Plaintiffs' permission (CDCR 6-3113.3(d)).  Additionally, in the

process of violating Plaintiffs' right to privacy, DCPS removed and/or lost documents

contained in some of Plaintiffs' personnel files, including performance ratings,

recognitions, and letters of support and commendation.

46.     At the same time the Plaintiffs suffered the adverse activities of DCPS, other

DCPS employees similarly situated to the Plaintiffs, but different in respect to race, age,

and experience  (i.e., white, and aged under forty ("40")), were supported in career

advancement opportunities and afforded opportunities for administrative positions from

which the Plaintiffs had been removed.  They were also given bigger salaries, relocation

and retirement benefits not afforded Plaintiffs.

47.     DCPS used facially legitimate employment policies (i.e., performance ratings),

withholding positive information of the Plaintiffs' positive performances including

special recognition, awards, commendations, and community practices in a deceitful and

treacherous manner to harm Plaintiffs and create a false, misleading employment record

for Plaintiffs such that their opportunities for advancement and opportunity to acquire

administrative positions equivalent to their former DCPS positions in D.C. and other

jurisdictions would be diminished.  Plaintiffs have applied for and sought reemployment

14

with numerous prospective employers in this and other jurisdictions, and have been denied and/or ignored.

48.     The mistreatment from which the Plaintiffs suffered consisted of: (1) reprisal for their participation in protected activities; (2) failure of DCPS to develop, adhere to, and properly use personnel policies and practices pertaining to selections and removals of personnel serving the District of Columbia (D.C. CMPA); (3) purposeful and unfair collusion against Plaintiffs by DCPS and other agents unknown at this time; (4) civil conspiracy for the purpose of an unfair and arbitrary "regime change" perpetuated by mass dismissal; (5) ) defamation to Plaintiffs' career and business reputations; (6) wrongful discharge/ termination;  (7) violation of federal and D.C. Human Rights laws regarding discrimination based on race and age; and (8) violation of federal retirement law (ERISA).

49.     On or around Fall 2007, Michelle Rhee, and other DC and DCPS agents unknown at this time, predetermined the selections for Plaintiffs' replacements in their respective positions.  Because of Defendants' manipulation, DCPS failed to credit the Plaintiffs' performance evaluations, qualifications, and work experience needed to retain their positions.  Instead, those appointed to replace Plaintiffs were chosen based upon illegal cronyism, corruption, conspiracy, and nepotism.

50.     Had a non-discriminatory and properly guided process of selection for the Positions been conducted in compliance with DCPS policies and procedures, the Plaintiffs' rich work experience, performance evaluations, improvement in the ratings of their respective schools, student test scores, and student attendance would have been considered.  Instead, the Defendants conspired and abused their authority  by planning

15

and manipulating the process of Non-reappointment of the Plaintiffs, as if they had unencumbered authority, which they did not. The Defendants distorted the application of the City Council's ratification of unilateral power to reappoint by implementing the mass firing in such a fashion as to circumvent civil service, due process, and notice protections attached and guaranteed to Plaintiffs as part of their annual appointment status requiring service without tenure.[7]

51.     During the academic year 2007-2008, Plaintiffs signed Declarations of Intent to continue working for DCPS for the upcoming 2008-2009 academic year. Subsequent to receiving the May 5, 2008 Notice of Non-reappointment, some Plaintiffs met the criteria for "Involuntary Retirement" and felt compelled to retire. But for the actions of DCPS, the Plaintiffs would not have retired prior to the academic year 2008-2009. This decision jeopardized Plaintiffs' retirement benefits and subjected them to penalties reducing the monthly and annual benefits amount allotted to them.

52.     After receiving the May 5, 2008 Notice of Non-reappointment, many eligible Plaintiffs attempted to exercise their retreat rights pursuant to CDCR 5-520.3. DCPS unlawfully denied, created barriers and/or delayed Plaintiffs' ability to exercise these rights to which they were entitled.


## COUNT ONE: DISCRIMINATION BASED ON RACE AND AGE

53.     That Count One incorporates by reference paragraphs One through Fifty-Two of the Complaint.

---

[7] See Exhibit 10, Council of the District of Columbia Committee of the Whole Report, December 18, 2007, regarding the discussion of Bill 17-450, the "Public Education Reform Amendment Act of 2007."

16

54.     Plaintiffs are African-American and Hispanic males and females over forty-
("40") years of age, and have accumulated retirement benefits as a result of five ("5")
years or more service to DCPS.          •

55.     Complainants were employed by the District of Columbia Public Schools,
classified under the personnel records of DCPS as either Principal or Assistant Principal,
and were wrongfully terminated effective June 30, 2008. Others, while similarly situated
with Complainants, but white, younger, less experienced, and/or not near retirement,
were appointed to the positions from which Complainants were removed in violation of
D.C. Code § 2-1401, 2-1402.11.


**COUNT TWO: VIOLATION OF D.C. HUMAN RIGHTS ACT WITH RESPECT
TO RACE AND AGE**

56.     That Count Two incorporates by reference paragraphs One through Fifty-Five of
the Complaint.

57.     That in violation of D.C. CMPA, DCPS has engaged in removing employees on
the basis of age and race and replacing them with others based upon race and age in
violation of D.C. Code § 2-1401, 2-1402.11.


**COUNT THREE: WRONGFUL DISCHARGE**

58.     That Count Three incorporates by reference paragraphs One through Fifty-Seven
of the Complaint.

59.     Each of the Claimants had been an administrator of DCPS for five ("5") or more
years.


17

60.     Complainants' performance evaluations do not coincide with the process and reasons given for their respective terminations.

61.     Instead of complying with DCMR, CMPA, and CDCR 5-520, et seq., DCPS developed a plan to execute a mass firing of Plaintiffs, incumbent DCPS school administrators, from their positions of employment for arbitrary, capricious, and illegal reasons having nothing to do with Plaintiffs' respective competency, past performance, talent, skills, dedication, and other like qualities, capabilities, and aptitudes.

62.     DCPS' actions in effecting a premeditated "mass firing" of the Plaintiffs and their surreptitious and dishonest actions supportive thereof were contrary to and in violation of public policy, the DC CMPA, CDCR 5-520, et seq., and the Collective Bargaining Agreement ("CBA").

## COUNT FOUR: DEFAMATION AND BUSINESS DEFAMATION

63.     That Count Four incorporates by reference paragraphs One through Sixty-Two.

64.     DCPS executed a public campaign to tarnish the Plaintiffs' careers and ruin their reputations nationally and in the specific communities wherein Plaintiffs were employed as administrators, by issuing statements (implicit and explicit) to the media and in public meetings that the Plaintiffs were responsible for causing their schools to be "under-achieving schools."

65.     DCPS intentionally executed a campaign to ruin the Plaintiffs' business reputations by making false accusations that they had engaged in misconduct that justified their dismissals.

18

## COUNT FIVE: CIVIL CONSPIRACY

66.     That Count Five incorporates by reference paragraphs One through Sixty-Five.

67.     DCPS engaged in a predetermined plan to dismiss Plaintiffs due to race, age, and

other surreptitious and illegal reasons, including unfair and untrue allegations of

incompetence and lack of professional skills in order to wrongfully disallow them to

compete for positions for which they qualified and to wrongly deprive them of a fair

opportunity to remain in or compete.


## COUNT SIX: VIOLATION OF FEDERAL RETIREMENT LAW (ERISA)

68.     That Count Six incorporates by reference paragraphs One through Sixty-Seven.

69.     DCPS intentionally interfered with their retirement benefits by forcing the

Plaintiffs out of their respective positions, causing them to seek early retirement,

involuntary retirement, or reduced retirement benefits from DCPS.


**Wherefore the premises considered, the Plaintiffs acting as a Class pray** that this

Court grant judgment to Plaintiffs:

(a). in the amount of Fifty Million ($50,000,000.00) Dollars for compensatory damages

for lost wages and lost benefits (including medical, health, vacation, sick leave,

retirement, and all other applicable benefits);

(b). emotional distress damages in the amount of Thirty-Four Million Dollars

("$34,000,000.00");

(c). reinstatement of their respective employment positions as administrators;

(d). promotions to the administrative positions they would have been in, but for the

19

DCPS' wrongful interference with their respective employment contracts, with back pay;

(e). attorney fees, costs, and expenses of litigation;

(f). an order enjoining the Agency and the Defendants from further Acts of

discrimination, abuse of process, and wrongful interference with employment contracts,

retirement benefits, et al.

Respectfully submitted,

John F. Mercer, Esq.
Bar # 184549
Mercer Law Associates, PLLC.
1629 K Street, N.W., Suite 300
Washington, D.C. 20036
Telephone:  202.349.1686
Mobile:  240.535.8758
Email: jmjmercer@aol.com
Attorney for the Plaintiffs

20

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial in this matter pursuant to D.C. Sup. Ct. R. 38(b) and Fed. R. Civ. P. 5(b).

John F. Mercer

ExH 1

## Affidavit and Statement of DCPS Class Claimant

## DR. MARY Q. GRANT

•

I, Dr. Mary Q. Grant, former principal of Takoma Educational Center for grades Pre-K through 8, have been/was employed with the District of Columbia Public Schools ("DCPS") for a total of 28 years and 1 months. I am 55 years old, and have the following educational background.

I was initially employed with DCPS as a Science Teacher at Brown Junior High in 1978 (grades 7-9) and later a Health and Physical Education Teacher at Scott Montgomery Elementary and Barnard Elementary (grades K-6).  In 1982, I reported to Lincoln Junior High School as a Science Teacher later I was selected for the Administrative Intern Program in 1988 under the leadership of Dr. Floretta Dukes McKenzie Former Superintendent of DCPS.  The intern program prepared me for the leadership for the Local School and Central Administration after a full year of training.

My training and knowledge focused on management, budgeting, instructional programs, personnel issues, school facilities, and implementation of other educational programs. In additional I have qualifications that include:

- Experienced in training in the development of projects involving fact-gathering, analysis, testing, and evaluation.
- Ability to lead and direct a multidisciplinary workforce in planning and conducting highly sensitive and complex reviews or studies focusing on major management challenges.
- Supervising and evaluating instructional and non-instructional staff.
- Promoting an educational environment that encourages change and conflict resolution.
- Using technology for effective school management.
- Curricular decisions driven by data and best practices.

1

ExH 1

- Instruction and assessment appropriate for teaching and learning styles, and student needs.
- Professional development that focuses on improving student learning.
- Budget planning and resource allocation for local school operation and hiring of staff.
- Direct and maintain total facility management.
- Mediating concerns of students, staff, parents and the community.
- Developing a positive district climate and culture.
- Understanding and relating to the various stakeholders in the community.

I have worked in the Washington, DC Metropolitan area as a public school administrator for more than twenty-five years and a public school teacher for five years. Using data to teach and to provide differentiated learning experiences in the classroom, to plan, implement and assess after school programs and to strategically plan professional development and parent training are only a few means by which I and my staff strived to establish, maintain and improve achievement and close the achievement gap.

## PROFESSIONAL EXPERIENCES

### District of Columbia Public Schools:

**Elementary/Middle School Principal**
District of Columbia Public Schools                    **August 1998 – August 2008**

- Administered/supervised the instructional programming and provide instructional leadership for the staff, students and community
- Analyzed and disaggregated data to make instructional, programming and management decisions
- Observed and evaluated all faculty and staff continuously
- Site-based managed, to include full design and appropriation of school budget
- Established a safe and inviting climate conducive to all stakeholders
- Defined roles and expectations for school staff, students and parents collaboratively with all stakeholders
- Engaged in ongoing professional development as the instructional leader
- Established and maintained strategic partnerships with the community and other stakeholders

**Elementary School Assistant Principal**                    **August 1992 – August 1998**

- Administered and supervised instructional programming and provided instructional leadership for the staff, students and community

2

- Observed and evaluated all faculty and staff
- Realigned and reorganized school resources to provide optimal learning opportunities for students and the most efficient assignments for the staff
- Prepared financial budgets and expenditures on behalf of the school, including School Operating Resources, Title I funds, School Improvement and Accountability funds and local fundraisers and contributions from business partners
- Monitored, observed and evaluated instruction continuously
- Established a safe and inviting climate conducive to all stakeholders
- Defined roles and expectations for school staff, students and parents collaboratively with all stakeholders
- Identified and implemented needed modifications
- Administered changes resulting from local and statewide decisions
- Engaged in ongoing professional development as the instructional leader; planned and facilitated professional development for faculty and staff

**High School Assistant Principal**                    **August 1988 – August 1992**

- Worked with all stakeholders at the direction of the Principal to maintain a safe and orderly environment with proactive discipline
- Worked collaboratively with parents, students, staff and community stakeholders
- Observed teachers at the direction of the principal
- Served as chairperson of the School Instructional Team
- Served as chair of the public relations team
- Continuously participated in personal professional development and conducted professional development training for teachers
- Wrote and presented the school safety plan
- Took on leadership and management responsibilities at the direction of the principal

**Administrative Internship**                    **August 1987 – August 1988**

- Worked collaboratively with parents, students, staff and community stakeholders
- Observed teachers at the direction of the principal
- Wrote and presented the school safety plan
- Presented workshops to parents on how to assist their children with reading and mathematics
- Took on leadership and management responsibilities willingly at the direction of the principal
- Served as chairperson for the Child Study Team
- Prepared/supervised the preparation of reports, records and all required paperwork appropriate to the school's operations

3

**Saturday School - Organized tutoring for parents & students**

- Worked cooperatively with parents, to include giving workshops to assist them in helping their children at home

**Science & Physical Education Teacher***          **September 1978 – 1988**

- Planned, implemented and assessed instruction for students
- Students earned the highest scores in the department for two consecutive years
- Held conferences and workshops with parents to drive instruction and empower parents to assist their students with reading and literature assignments at home
- Held athletic study hall for athletes and cheerleaders
- Forensics team co-sponsor
- Taught summer school and coordinated summer programs
- Served on division-wide Curriculum and Instruction Committees annually


**Educational Credentials**

- Virginia State University  -  Health & Physical Education  (B.S.)
- Howard University – Administration & Supervision (M.Ed)
- Harvard Summer Institute (Continuing Education)
- Nova Southeastern University  -  Organizational Leadership (Ed.D)


    During my tenure as an administrator with DCPS, I received the following

awards, honors, recognitions and achievements locally and nationally.


**Special Assignments, Recognition and Awards**

- Coordinator for the Principals Academy, 2004
- Commander's Community Service Award  2005
- Instructional Leadership Award  2005 - 2006
- Screened and interviewed candidates for the Principalship for the District of Columbia Public School System, 2005 – 2006
- Appointed by Superintendent of District of Columbia Public Schools to the Joint Advisory Council , Plan to Provide Services to English Language Learner Students, 2007 – 2008
- Community Service Award, Fourth District Police Precinct, 2007
- Alumnus, Breakthrough Principals' Academy, 2007 – 2008 academic year
- Technology Trainer for Administrators  & Staff  2004
- Appointed Assessment Trainer for Administrators  2005
- Staff Development Trainer

4

- Superintendent's New Teachers Committee  2000 - 2006
- Superintendents Summer Conference Committee 2000 - 2006
- Professional Principals' Evaluation Plan Co-Chair – Committee Member & Trainer Principals 2001
- National Mentor Principal – 2000 • 2007
- Facilitator at Conferences  -  NABSE, NCNW, Delta Sigma Theta Sorority, Inc., DCPS, Civic and Community organizations  1998 – Present
- National Alliance of Black School educators (NABSE) Board Member 2006 – Present
- Delta Sigma Theta Sorority, Inc – Life Membership
- Washington, DC Continental Society, Inc.  - President
- National Coach & Mentor Certification License  (NAESP 2003)
- State Representative for DCPS (NAESP) 2005 - 2007
- President (Past) DCAESP 2001 - 2005
- Outstanding Leadership Award  2004
- Oxford University – Superintendent's Round Table in London  2003
- Educational International Travel – France Switzerland, Italy, Germany, etc.
- Superintendent's New Teachers Planning Committee  1999 – Present
- Superintendent's Administrative Evaluations Committee (Chair)  2003
- Presenter, Speaker and Trainer – Conferences & Universities

Throughout my tenure as an administrator, there was a system of evaluation for the position of principal which included standards and goals which allowed me to obtain an outstanding rating as a leader.   The evaluations were administered by the Assistant Superintendent.   Upon Michelle Rhee's take over evaluations were not given to me that final year.

I received notification of my termination from DCPS on May 5, 2009.  The reason given for the termination was I was not the right fit for that school.  Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least, questionable.  I was never given notification that my

5

performance as principal was unsatisfactory.  The agreement between the CFO and

DCPS states that individuals would be provided assistance to make the necessary

improvement.  Also supplies and building repairs would be made at the local school to

build a better school climate and that never happened.


After Michelle Rhee became Chancellor of DCPS, rules and regulations were

violated, budgets were unfairly distributed to schools and Federal funds illegally sent.

### *Incidents*

- Often principals were verbally attacked doing administrative professional
  development meetings.  Principals were ordered to sit in a location designed by
  Rhee separating the local school administrators from individuals that they felt
  were not their selective group of principals.
- Hired consultants would make comments to us stating that it's this way or the
  highway during professional development meetings.
- September 2007 principals were required to meet with Rhee for a one on one
  meeting.  She informed the media that it was a wonderful opportunity to meet
  with each person in order to meet the school need and support. Most principals
  were attacked about their test scores, attendance, school climate, incident rate
  among students, etc.   Some principals were very upset by the greeting they
  received.  Rhee stated to me that her concern with me was political it had nothing
  to do with academics and how I successful ran the school.  Present was Richard
  Ballard, Instructional Superintendent and her secretary.

6

- The Takoma ANC Commissioner complained about the field lights not being on at night to help brighten the community by way of e-mail I responded by thanking her and letting her know that there was a budget cut and maybe the city had decided to cut them off to save money since the schools had just been informed that all budget money was taken sway.  The commissar e-mailed Rhee about the cut in the budget and wanted answers.  Rhee found out about it and attacked me by way of e-mail letting me know that I should not have told them about the budget cut.

- I received call from Francisco Millet's office (Instructional Superintendent) on May 5, 2008 at 2:00 P.M. to meet with him.  Present was Peter Weber the Director of Human Services.  I had no prior knowledge of that meeting when I was told that I would not be reassigned as principal for the 2008-2009 school year.  No one would tell me the reason why and that it was the CEO power let anyone go when she felt the need.  I have never had a discipline letter of reprimand or a letter for need improvement.

- Millet took me to the side to say several things (1) don't let them fire you, just leave (2) that he would testify under auth regarding statements made by Rhee even when the supervisor disagreed with the removal of principals and (3) comments made by Rhee about individual principals that she wanted to get rid of because of age and just because she did not like them.

- A week later Mr. Millet was removed because he supported a principal in the Washington Post who was under attacked by Rhee.

- Millet never met with me regarding my evaluation.

7

- My dismissal letter date was June 30, 2008. I am the only principal that was dismissed with retreat rights that was placed in a teaching position. The strategy to get rid of me was also due to the fact that principals looked up to my leadership and therefore again they wanted to use me as an example and move me out.

- I wanted to exercise my retreat right as stated in the letter respond in 5 days. I was denied a right to apply placement in any administrative position. The letter also stated that I was to contact Mr. Schakell in HR for placement and retreat rights and that we had to find a vacant position in a school ourselves as teachers. I was told I could not apply for an Assistant Principals position or any other position. I identified a vacant position at Takoma as science teacher but was denied.

- Mid-Year evaluation indicated I was on target.

- At the being of the school year I was asked by the Director of Student Services (Dr. Diane Powell) to make a presentation to all schools on my success with student attendance.

- One of Rhee's strategies is going to the homes of any individual person that would host her to talk about how she planned to remove the principal and parents would inform the school of these secret meetings.

- My health became very bad and my doctor made strong recommendations that I go on leave which I ended up doing.

- Comments in the media by Fenty and Rhee destroyed my opportunity to move up in another positions socially as well as my work career.

8

- I was also denied medical leave and directed to report back to work after providing all medical documentation but later after receiving legal assistance I was able to take leave during school year 2008 – 2009.

- I began having problems with money that was due to me.  Including Rhee attempts to have us to retire but interfering with my attempt to obtain another job in another state.

- Additional I as well as my colleagues' experienced problems getting money/checks that was due to us.

- After applying for several jobs and the school district was interested and informed me of such Rhee blocked our/my attempts to get those jobs.

- It is my belief that after the filing of this document that there will be another attempt to remove me from DCPS.

After notifying and meeting with the Council of School Officers, American Federation of School Administrators-Local 4/AFL-CIO regarding non-reappointment issues as a group, the Representatives informed us that the Union had done all it could to pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C. Public Schools.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information.  At no time did I give written or oral consent for DCPS to share documents or information contained in my personnel file.

9

After I was terminated, DCPS continuously published statements alleging that the

DCPS administrators who had been terminated were ineffective and at fault for the

underperformance of students in their respective schools.  I feel these statements were

damaging to my reputation as evidenced by my career record, as well as the performance

evaluation ratings issued by DCPS.  These statements have also affected my ability to

find work or be reappointed to an administrative position in the United States.


I have copies of letters and documentation of many events and communications

that I will forward after have an opportunity to pull them together (asps).

STATE OF
MARYLAND
PRINCE GEORGE'S Ct.

**Name of Potential Claimant**

I, Mary Q. Grant, swear or affirm that this statement of 10 pages is true to the best
of my information and belief.

Signed before me this 26 day of August, 2009.

Notary Public

My commission expires _11-1-2010_

10

EXH 2

Affidavit and Statement of DCPS Class Claimant, Marta Guzman

I, _Marta Guzman, previously, Principal of Oyster Bilingual; currently Oyster-Adams Bilingual, (Grade Unknown) have been/was employed with the District of Columbia Public Schools ("DCPS") for a total of _____five___ years and ___0____ months. I am _59_____ years old, and have the following educational background.

I have a Master of Arts Degree in Education (Supervision and Administration) from San Jose State University, in California. I also hold a Bachelor of Arts Degree in Spanish Literature from the University of the Americas in Puebla, Puebla, Mexico. Additionally I have completed 12 credit hours in Linguistics at George Mason University and 12 credit hours in Gifted and Talented Education.   I hold an Administrative Services Credential/K-12 from the District of Columbia Public Schools.

I was initially appointed as an administrator by DCPS on August 19, 2002.   This is the only position that I held in the system.  The promotion occurred when I was given the responsibility of principal at both the Oyster campus and the Adams campus and growing the dual language immersion program to include the middle school; thus, having the responsibility of two campuses, K-8 school.

When I was appointed as principal of Oyster Bilingual and then Adams campus, the written standards of performance applied to the position included 7 Standards of Leadership.  The documents listing the standards and my final evaluations for the 5 year employment period are attached.

During my tenure as an administrator with DCPS, I received the following awards and distinctions.  2004 Latino Leadership in Education Award given by the Council of Latino Agencies and the Mayor's Office on Latino Affairs.  I also had the honor of

1

EXH 2

achieving the National Blue Ribbon School Award in November, 2006.  We received this award because the data demonstrated outstanding academic achievement during a three year period (during this time I was serving as the principal at Oyster Bilingual).

Throughout my tenure as an administrator, there was a system of evaluation for the position of principal, which included site visits mid-year ratings and end of year ratings.  The system provided for a certain number of points to be given for each standard met.  My evaluations are attached.  The evaluations were administered by the Assistant Superintendent assigned to the cluster.  The following provides information about the name, title, grade of each of my assistant superintendents.

2002-2003 – Dr. William Whilhoyte, Assistant Superintendent, Cluster II from August – November, 2002

2002-2003 – Dr. John McCoy, Assistant Superintendent

2003-2004 – Dr. John McCoy, Assistant Superintendent

2004-2005 – Francisco Millet, Assistant Superintendent

2005-2006 – Patricia Tucker, Assistant Superintendent

2007-2008 – Francisco Millet, Assistant Superintendent

The result of my ratings and evaluations showed outstanding and very effective depending on the year.  I have attached the results of all ratings and evaluations during my respective tenure w/ DCPS.

Also as an administrator, I was issued adverse employment actions consisting of one reprimand issued by Francisco Millet for tardiness in arriving to a meeting.  This was the only action that was ever filed against me during my tenure.

2

I received notification of my termination from DCPS on May 5, 2008. The reason given for the termination was a notice of non renewal that stated Michelle Rhee's decision to not reappoint. Copies of your notification of termination/ removal/ determination not to reappoint attached.)

After notifying and meeting with the Council of School Officers, American Federation of School Administrators-Local 4/AFL-CIO regarding non-reappointment issues as a group, the Representatives informed us that the Union had done all it could to pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C. Public Schools.

At no time did I give written or oral consent for DCPS to share documents or information contained in my personnel file.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least, questionable. After I was terminated I received a phone call from a neighboring school district. I was told that I would be scheduled for an interview—when I didn't receive a call back I called to ask and was told that if they were interested they would contact me. I was never contacted. I then began to train for a consultant position. After completing most of the training I was told that I would be called if they determined that a position was available in the Washington Area. I was not called. When I called to inquire I was told that they would contact me in the future if I was needed. During the time of both of these actions there were articles that appeared on the web as well as in the Washington Post that specifically addressed me as having been "fired". They made reference to "the Chancellor dismissed the principal of her children's own school.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information. I am aware of the fact that my personnel file did not contain my evaluations nor the letters of support that were sent in by the parents. When I asked if

3

there was another file at the Cluster office I was told that each employee has only one file. I asked where the missing documents were and was told they were "lost".

After I was terminated, DCPS published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools. I feel these statements were damaging to my reputation as evidenced by my career record, as well as the performance evaluation ratings issued by DCPS. These statements have also affected my ability to find work or be reappointed to an administrative positions. I have inserted evidence of publication of your respective termination and the reasons given for the termination. These statements have affected my ability to find work as an administrator or be reappointed with DCPS.) I have submitted applications to the following: Commonwealth of Virginia, State application, Rosetta Stone, Heritage Education, Educational Testing Service Kaplan Learning, Nobel Learning Communities, Northern Virginia Community College, TeachScape, Victoria Trans-cultural Clinical Center. In addition, I have attempted to work with FOCUS in the development of a Charter School, and I have also sent letters to serve as a Multi-Lingual Consultant in the area of second language learning. The continuous comments made my Michelle Rhee to the public have damaged my reputation, and made it impossible for me to find employment.

4

_____
**Name of Potential Claimant**

I, _Marta Guzman, (insert name) swear or affirm that this statement of 5 pages (insert number of pages) is true to the best of my information and belief.

Signed before me this 2 7 day of August, 2009.

_____
Notary Public

My commission expires _____

BASIRA SIDDIQ
Notary Public
Commonwealth of Virginia
7013173
My Commission Expires Dec 31, 2010

5

### Affidavit and Statement of DCPS Class Claimant,
Richard L. Patterson

I, Richard L. Patterson, Principal, River Terrace Elementary School  was

employed with the District of Columbia Public Schools ("DCPS") for a total of  11  years

and  6 months. I am 62 years old, and have the following educational background

M.A. Educational Administration and Supervision   University of the District of

Columbia

B.S.  Elementary Education   District of Columbia Teachers College

I was initially employed with DCPS as a Teacher/ Elementary (probationary), Class 15-

Teachers Salary Act, Group A/ Step 1  Salary: $7,800

Date of Initial Employment: September, 1970   Taught mathematics, reading, science,

and social studies to Sixth Grade Students.

I left D.C. Public Schools employment in February, 1973 to work in the private sector. I

returned to DCPS employment  as an administrator on August 18, 1999. I was initially

appointed as an elementary school administrator and assigned to Janney Elementary

School. I remained at Janney until June, 2001.  In July, 2001 I was assigned to River

Terrace Elementary School where I remained until my non-reappointment effective July

1, 2008.

When I was appointed as  Principal, there were written standards of performance applied

to the position. I do not have copies of those standards from the 1999-2000 school year.

The identified performance targets for the 2000-2001 included:  Academic Achievement

(50), School Climate (5), Leadership (10), Parent and Community Involvement (10),

Human Resource Management (15) and Fiscal Resource Management (10).  For the

2004-2005 school year the standards for principal evaluation were revised: I. Leadership

for Instruction (28), II. Leadership for Organization Management and Accountability

EXH 3

(20), III. Leadership for School Climate (16), IV. Leadership for Professional Development (16), V. Leadership for Parent and Community Involvement (16), VI. Leadership for Effective Communication (12), VII. Leadership for Special Education (12). The numerals represent the maximum number of points an administrator could earn.

Throughout my tenure as an administrator, there was a system of evaluation for the position of Principal, which included: Standards for Principals, Indicators to Support the Standards, Self Assessment completed by the Principal in the Fall and Spring, Review of Expectations, Goals/Plans in a Pre-appraisal Conference with the Assistant Superintendent (Fall of the Year), Principal Achievement Plan/Local School Improvement Plan, Mid-year Review of Accomplishments in Conference with the Assistant Superintendent, Plan of Improvement (as needed), End-of-the-Year Evaluation in Conference with the Assistant Superintendent and Monitoring Performance Criteria – Site Visits and Supporting DocumentationThe evaluations were administered by the assistant superintendents or instructional superintendents, the individual responsible for administering my evaluation during the 2007-2008 school year was Ms. Barbara Adderley, Instructional Superintendent. The result of my ratings and evaluations showed Meets Expectations. Evaluation ratings:

| | | | |
|---|---|---|---|
| 1999-2000 | Satisfactory | 2003-2004 | no documentation |
| 2000-2001 | Satisfactory | 2004-2005 | Effective |
| 2001-2002 | Satisfactory | 2005-2006 | Very Effective |
| 2002-2003 | Marginally Satisfactory | 2006-2007 | Meets Expectations |
| | | 2007-2008 | Meets Expectations |

Note: I do not have documentation for the school years :1999-2000, 2001-2002, 2003-2004, and 2006-2007. No final evaluation conference was held with me for

2

the 2007-2008 school year. The End-of-Year Evaluation document bears the instructional superintendent's (Barbara Adderley) signature only.

I received notification of my termination from DCPS on <u>May 5, 2008</u> . I was notified on that date by telephone call from Ms. Barbara Adderley 's administrative assistant to report to Ms. Adderley's office at 4 pm. No explanation or reason was provided for the meeting. Upon arrival, I met with Ms. Adderley and a representative from Chancellor Michelle Rhee's office. I was handed a letter to read which notified me of Chancellor Rhee's decision not to reappoint me to the position of principal with the DC Public Schools for the 2008-2009 school year, effective June 30, 2008.   No reason was given for the termination.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least, questionable.  During the course of a principal's meeting led by Ms. Adderley she advised those principals present that there was a possibility that some individuals would not continue as principal for the next school year (2007-2008). After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information.  The principals evaluation process was not adhered to. The final evaluation conference was not held and no verbal statement was made as to my end-of-year rating. I was terminated without discussion/review of performance for the school year. Ms. Adderley held principal selection interviews at River Terrace while I was actively carrying out my responsibilities as principal. This was humiliating and reflected Chancellor Rhee's attitude that non-returning principals were no longer of consequence or valued. After I was terminated, DCPS published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools.  I feel these statements were

3

damaging to my reputation as evidenced by my career record, as well as the performance

evaluation ratings issued by DCPS.  These statements have also affected my ability to

find work or be reappointed to an administrative positions.


Richard L. Patterson
**Name of Potential Claimant**

*Rich R Patterson*

     I, Richard L. Patterson, swear or affirm that this statement of   4   pages is true to
the best of my information and belief.


Signed before me this 24th day of August, 2009.

Notary Public

My commission expires   8/21/12

EMMY E. FRENZ
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES 8-21-2012

4

EXH 4

## Affidavit and Statement of DCPS Class Claimant, Jacqueline Williams

I, Jacqueline Williams, Interim Principal, Grade 6 Step 5 was employed with the District of Columbia Public Schools ("DCPS") for a total of 29 years and 9 months. I am 56 years old, and have the following educational background includes a B.A. from Howard University, M.A. from Trinity College, and Certificate of Advanced Graduate Study from Howard University.

In September 1978, I was initially employed with DCPS as an ET-15 Step 1, Teacher of Mathematics and assigned to Sousa Jr. High School. My responsibilities in this position includes: planning and developing a course of study in Algebra and Geometry according to curriculum guidelines of school district; tailored lesson plans (short and long term) for individual students' levels; used a repertoire of effective instructional strategies to support student achievements; planned and prepared the organization of the classroom; monitor student progress and potential; communicate clearly; build relationships with students and parents;  attended faculty meeting. PTA meetings. staff development workshops; submitted students' grade and attendance and performed related duties as required. I became permanent after the probationary period ended and was promoted/transitioned to the position of ET-15 Teacher of Mathematics at Eastern SHS in 1988. Shortly thereafter, I became the Chairperson of the Mathematics Dept. and Coordinator of  Venture in Education at Eastern SHS SY'90-'91 and SY'91-'92. After that experience I was awarded a position as an Administrative Intern at Wilson HS for SY'97-'98.

p.2

EXH 4

On August 24, 1998, I was initially appointed as an administrator by DCPS on August 24, 1998 as Acting Assistant Principal at Wilson HS in the same capacity as Assistant Principal at Wilson HS in 2000. However on November 1, 2004, I was appointed Acting Principal at Eastern SHS and I requested to return to Wilson HS for the SY'06-'07. I was appointed Interim Principal at Wilson HS for SY'07-'08.

In my appointed as Assistant Principal of Wilson HS, Acting Principal at Eastern SHS, and Interim Principal at Wilson HS the written standards of performance applied to the position included: Standard 1: Leadership for Instruction; Standard 2: Leadership for Organization, Management and Accountability; Standard 3: Leadership for School Climate; Standard 4: Leadership for Professional Development; Standard 5: Leadership for Parent and Community Involvement; Standard 6: Leadership for Effective Communication; and Standard 7: Leadership for Special Education. Chancellor Rhee asked for a guarantee on the Adequate Yearly Progress Target (AYP) percentage increase of students Proficient or above in Reading and Math.

During my tenure as an administrator with DCPS, I received the following awards and distinctions for SY'04-'05: Certificates for untiring commitment to the students of Eastern SHS; appreciation for hosting the January Superintendent's Monthly meeting; and DCSTARS training. For SY'05-'06: Certificates for celebrate National Women's History Month; US Dept of Justice certificate of appreciation; FBLA of appreciation; appreciation from DCALA; Reading Across The Curriculum Project, and appreciation from NBCSL.

Throughout my tenure as an administrator, there was a system of evaluation for the positions of Acting Principal, Assistant Principal and Interim Principal, which included Pre-Conference, Mid-Year Evaluation, and Annual Evaluation. The evaluations were administered by Asst. Supt for Acting Principal and Interim Principal and the Local School Principal for the Asst. Principal position. Mrs. Maria Tukeva, Asst. Supt for SHS was the evaluator when I was Acting Principal at Eastern SHS; Dr. Stephen Tarason was the evaluator when I was Assistant Principal at Wilson HS, and Ms. Patricia Tucker, Asst Supt for Div. 5, was the evaluator when I was the Interim Principal at Wilson HS. The result of my evaluations reflected the following ratings for my last three years with DCPS SY'05-'06 ME (Meets Expectations) SY'06-'07 none given and SY'07-'08 Mid-Year ME(Meets Expectations) no final evaluation given.

Also as an administrator, I was issued adverse employment actions: None. I received notification of my termination from DCP on May 5, 2008. I was informed to report to Ms. Tucker's office. Ms. Tucker informed me that I was not reappointed as Principal at Wilson HS and I would be terminated effective June 30, 2008, however, I could exercise my retreat rights. I asked if I would be able to return to my last position as an Assistant Principal. She looked at the HR representative and was informed that I could not. After notifying and meeting with the Council of School Officers, American Federation of School Administrators – Local 4/AFL-CIO regarding non-reappointment issues as a group, the Representatives informed us that the Union had done all it could to

pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C. Public Schools.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least questionable. There was no written justification for non-appointment, no formal end of the year evaluations done.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information. At no time did I give written or oral consent for DCPS to share documents or information contained in my personnel file.

After I was terminated, DCPS published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools. I feel these statements were damaging to my reputation as evidenced by my career record, as well as the performance evaluation ratings issued by DCPS. These statements have also affected my ability to find work or be reappointed to an administrative position.

*Jacqueline Williams*

Jacqueline Williams

I, Jacqueline Williams, swear or affirm that this statement of _5_ pages is true to the best of my information and belief.

Signed before me this _27th_ day of August, 2009.

CHARLENE W. MARTIN
Notary Public, State of Maryland
Prince George's County
My Commission Expires July 14, 2012

9·d

Notary Public _Charlene A. Martin_

My commission expires _July 14, 2012_

_Notarial Certificate attached_

CHARLENE W. MARTIN
Notary Public, State of Maryland
Prince George's County
My Commission Expires July 14, 2012

9 d

pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C.

Public Schools.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred,

which I believe to be wrongful, or in the very least questionable. There was no written

justification for non-appointment, no formal end of the year evaluations done.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or

procedures were violated as to performance evaluations by DCPS and distribution of

personnel information. At no time did I give written or oral consent for DCPS to share

documents or information contained in my personnel file.

After I was terminated, DCPS published statements alleging that the DCPS

administrators who had been terminated were ineffective and at fault for the

underperformance of students in their respective schools. I feel these statements were

damaging to my reputation as evidenced by my career record, as well as the performance

evaluation ratings issued by DCPS. These statements have also affected my ability to find

work or be reappointed to an administrative position.



Jacqueline Williams

I, Jacqueline Williams, swear or affirm that this statement of _5__ pages is true to

the best of my information and belief.

Signed before me this __2-7th__ day of August, 2009.

CHARLENE W. MARTIN
Notary Public, State of Maryland
Prince George's County
My Commission Expires July 14, 2012

NOTARY
PUBLIC

9·d

EXH 5



**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

**Office of the Chancellor**
825 North Capitol Street, NE • 9th Floor
Washington, DC 20002-4232
Tel: (202) 442-4090 • Fax: (202) 442-5315
www.k12.dc.us

May 5, 2008

Re:     **Notice of Non-Reappointment as**
        **Principal for the 2008-2009 School Year**

Richard Patterson
14314 ARCTIC AVE
ROCKVILLE, MD, 20853

Dear Richard Patterson:

I am writing to provide you with notice of my decision not to reappoint you to the position of principal with the District of Columbia Public Schools (DCPS) for the 2008-2009 school year. The action is effective at the close of business on June 30, 2008.

From now until June 30, 2008, you are expected to continue to perform your current duties as principal. You will continue to be paid at your current salary and you will accrue both annual and sick leave.

DCPS will honor any valid retreat rights that you may possess. If you believe you have these rights and wish to exercise them, you must provide written notification by May 19, 2008 to Richard Shackell, Director of School Staffing, 825 N. Capitol Street, NE, 6th Floor, Washington, DC 20002. We recommend that you obtain a receipt indicating that your written notification was in fact delivered. Mr. Shackell may also be reached at (202) 442-4090. However, you may only exercise your retreat rights by providing written notification to Mr. Shackell by May 19, 2008. If you do not provide written notification by May 19, 2008, your employment with DCPS will terminate on June 30, 2008.

From now until June 30, 2008, your Instructional Superintendent will work closely with you and your school community with respect to budgeting, staffing, purchasing and other key actions necessary to successfully close-out the current school year and position your school for a smooth school opening in August. To this end, your Instructional Superintendent will share with you a list of transition projects which must be completed prior to June 30th. Your Instructional Superintendent will also work with you to notify your school communities that there will be a change in leadership at your school for the 2008-2009 school year.

Your Instructional Superintendent will also work with you to arrange for the return of all school property in your possession, including but not limited to all building keys, office keys, passwords

EXH. 5

or account codes. You will be required to return this property prior to June 30, 2008 as determined by your Instructional Superintendent.

If you have any additional questions related to the transition of your school, please contact your Instructional Superintendent. Questions related to retreat rights should be directed to Mr. Shackell as specified above. Any other questions related to employment benefits to which you may be entitled (including health care under COBRA) should be directed to Jaininne Edwards (Jaininne.edwards@dc.gov or 442-5385, HR Specialist).

Thank you for your service on behalf of the children of the District of Columbia Public Schools.

Sincerely,

Michelle A. Rhee
Chancellor



# PERSONNEL ACTION



| Transaction Code:  888 | | | | Originating Agency: GA - Public Schools | |
|---|---|---|---|---|---|

| SSN | Employee | Salutation | Date of Action | Effective Date |
|---|---|---|---|---|
| 218482264 | PATTERSON, RICHARD L | Mr | 6/30/2008 | 6/30/2008 |

| Department | Address | DOB | Physical Handicap | Vet Pref |
|---|---|---|---|---|
| Public Schools | 14314 ARCTIC AVE | 02/04/1947 | 4 | 0 |
| | ROCKVILLE, MD 20853 | | | |

| Nature of Action | NTE Date | Authority | Employment Date |
|---|---|---|---|
| INVOLUNTARY SEPARATION | | Title 5 DC Municipal | 08/18/1999 |

| Service Comp Date | DC Service Comp Date | Fegli-R | Fegli-O | Health Benefits |
|---|---|---|---|---|
| 08/18/1999 | 08/18/1999 | 1 - Covered | | 2G2 |

| From Title and Number | Pay Plan | Series | Grade | Step | Salary | Time Service(TOD) |
|---|---|---|---|---|---|---|
| PRINCIPAL,ES | ET | 012004 | 61 | 06 | $101,725.00 | 80 |
| 0108772 | Org Unit | PROGRAM DEVELOPMENT | | | | |
| | Org Code | 71100306 | | | | |

| To Title and Number | Pay Plan | Series | Grade | Step | Salary | Time Service(TOD) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | Org Unit | | | | | |
| | Org Code | | | | | |

| Pay Group | Retirement | Service Code | CBU |
|---|---|---|---|
| B2 | TEACHER 8% | K02 | PAD |

| Employment Type | Position Type | Termination Type |
|---|---|---|
| FULL - PERMANENT | EDUCATIONAL | 888 - INVOLUNTARY SEPARATION |

| Fund | Agency | Year | RespCenter | PDS | PSF | MRU | ARC | DRC | Activity |
|---|---|---|---|---|---|---|---|---|---|
| 100 | GA | 2008 | 5100 | | | 00 | AAFQ | 0304 | AZ05 |

☐ Subject to Satisfactory Medical Examination and X-Ray

☐ Subject to Completion of _____ Year _____ Period Beginning

**Remarks:**
To continue health coverage (TCC) Temporary Continuation of Coverage, you must enroll within 60 days from your effective date.
Thank you for your services with DCPS.

| Department Head | Date | Approving Officer  Signature | Approval Date |
|---|---|---|---|
| | 090108 | Dorianne Potter | 6/30/08 |

λ

'100 mph' school chief seeks 'radical changes' - CNN.com

*Exhibit 1*   **EXH 6**



🖨 PRINT THIS

Powered by 🔴 Clickability

# '100 mph' school chief seeks 'radical changes'

- Story Highlights
- D.C. schools chief Michelle Rhee closed 23 schools, fired 36 principals in first year
- "We are always going to put the best interests of kids above the rights ... of adults"
- Critic says Rhee has created "more chaos and more dysfunction"
- Mayor backs his appointee, says when schools fail, "you need to shake things up"

From Kate Bolduan
CNN

**WASHINGTON (CNN)** -- Michelle Rhee says she runs at 100 miles per hour. As the chancellor of one of the nation's lowest-performing school districts, she says she has no choice -- too much bureaucracy to cut through, too many problems to fix after decades of neglect.

Rhee closed 23 schools in her first year as the head of the District of Columbia's public schools, fired 36 principals and cut 15 percent -- about 121 jobs -- from the central office staff. And she's making no apologies.

"I think it's that sense of urgency that has been lacking for far too long in our public schools," Rhee told CNN as she began her second year on the job in late August.

"We are always going to put the best interests of kids above the rights, privileges and priorities of adults."

- Watch fighting for "radical changes" »

Rhee said "radical" changes were needed because only 12 percent of the District's eighth graders are proficient in reading and just 8 percent are proficient in math, but was quick to add that they're already seeing improvement. She highlighted gains in elementary reading and secondary level math and reading in the past year that outstripped all of the four prior years put together.

An annual report card by Education Week, a newspaper that follows the nation's education system, earlier this year ranked the District's school system last, giving it a D+ overall and an F for student achievement in kindergarten through 12th grade. Those grades were based on data prior to Rhee's arrival.

"We need to see radical changes because the outcomes for kids that are happening right now are robbing them of their futures," said Rhee, a Democrat who supports President Bush's landmark education law known as No Child Left Behind.

- Watch Rhee describe telling employee: "You need to find another job" »

"We have scores of kids in this city who don't have the advocates that they need in their lives who are able to maneuver and jockey through the public school system. And we can't allow those children to languish in classrooms where teachers are not performing."

Her plan is ambitious: To completely transform the District's system within eight years for its 50,000 children. The plan focuses on top-down accountability, quantitative results like standardized test scores and, ultimately, working to close what she describes as "the achievement gap between wealthy white kids and poor minority kids."

"I think it's absolutely possible within an eight-year period," she said. - Watch D.C. schools need "urgency" »

Rhee, who is Korean-American, is operating in a largely African-American district. It is a district where 57 percent of the students qualify for the free or reduced lunch program. Rhee said when she first arrived on the job in 2007 she first heard whispers of: "She's not from D.C., she's not African-American: Is she going to be able to relate to students and their

**EXH 6**

families?"

"I think that all dissipated quite quickly after I started getting out into the community and talking to people," said Rhee, a 38-year-old mother of two children attending local public schools. "I think one of the things that comes across very clearly is the fact that I'm very passionate about this work. I'm very focused on it."

But her plan to turn the failing school district on its head has met protest every step of the way, even from teachers.

"I think the people who view her aggressive actions as a positive thing, I think they are missing the boat because if it results in more chaos and more dysfunction, it's not the solution that we need," said Kerry Sylvia, a teacher at Cardozo Senior High School in her ninth year.

Sylvia says the District has seen far too many superintendents over the years and fears Rhee is just another in the long list of those who come in touting their reforms and then leave.

She does offer praise for Rhee holding teachers and administrators accountable for their lack of performance. However, she doesn't always care for Rhee's style, saying Rhee makes it seem like "there's a lot of lazy teachers."

"She's pitting adults against children. She couches things in terms of 'I'm not here to keep jobs for adults. I'm not here to keep people's paychecks. I am here for the children,' " Sylvia said. "Well, guess what? I'm here for the children too."

Before taking on her current role, Rhee founded The New Teacher Project, a non-profit organization that recruits quality teachers to high-poverty schools. Rhee holds a master's degree in public policy from Harvard University.

One of the most controversial programs Rhee has introduced is a joint venture between D.C. schools and Harvard that pays middle school students cash – up to $100 a month – for good behavior and attendance.

Rhee says such pilot programs have worked in other cities. She says the District's students have far too many bad incentives on the streets, from hustling to drug dealing, and need something to keep them focused.

"We're preparing them to understand that if you do the right thing, then good things will happen to you," Rhee said.

Some in the District are skeptical, including Clarence Cherry, a fourth-generation Washingtonian and father of five. He calls the cash and Rhee's overall direction misguided and reckless.

"It's a very dangerous game that she's playing with," he said.

But Cherry added, "I want to give her an opportunity to prove to me as a parent that she genuinely ... is here for the kids."

Others are fervent supporters of the new superintendent. Dr. Waheedah Shakoor, another teacher at Cardozo, has been in the District since 1979. He says he's been stunned at the amount of change that's happened in just one year under Rhee, from freshly painted walls to improved athletic facilities.

"Things that we've been asking for many, many years have come to fruition within just the last 12 months," Shakoor said.

Rhee is an appointee of Mayor Adrian Fenty, who has backed her every move.

"I had the highest expectations of Michelle Rhee when she came into the job. She has exceeded every expectation," Fenty said. "When you have a system that's been as underperforming as the District of Columbia public schools, you need to shake things up."

Rhee says she'll continue to shake things, working at break-neck speed to improve the education and opportunity for her students and urban students across the country as fast as she can.

All AboutWashington, DC  ·  Higher Education  ·  Education Issues

**Find this article at:**
http://www.cnn.com/2008/LIVING/wayoflife/09/09/dc.schools/index.html

Check the box to include the list of links referenced in the article.

**washingtonpost.com**

# Rhee Has Dismissed 24 Principals

Thirteen Are at Schools That Do Not Meet 'No Child Left Behind' Mandates

By Bill Turque
Washington Post Staff Writer
Friday, May 16, 2008; B05

D.C. Schools Chancellor Michelle A. Rhee has fired 24 principals, including 13 who headed schools deemed to be failing under the federal "No Child Left Behind Act," officials confirmed yesterday.

Principals work on year-to-year agreements. About 15 to 20 principals are let go annually, according to the Council of School Officers, the principal's union.

This year's reshuffling has drawn heightened interest because it provides another window into Rhee's still-new leadership of the school system. The personnel changes also have added urgency because of the federal mandate to make major changes in 26 schools that have failed to show adequate progress under "No Child Left Behind."

Rhee has dismissed principals at five of the 10 high schools subject to restructuring under No Child Left Behind: Lynne Gober of Anacostia; Harriet Kargbo of Dunbar; Monica Taylor of Eastern; Gwendolyn Jones of Woodson; and Jacqueline Williams of Wilson. Five of the 11 middle and junior high schools facing overhaul will also have new principals -- Hart, Lincoln, MacFarland, Garnet-Patterson and Sousa -- as will three of the five elementary schools to be retooled: Moten, Stanton and Truesdell.

Ten other principals either retired or resigned.

Nelson Burton, principal of Coolidge High School and head of the principal's union, said that because principals serve at the will of the chancellor, there is no way to formally appeal the decisions. "There isn't much recourse there," Burton said.



Earn up to 25,000 bonus points on future stays.

• Register now

Marriott
REWARDS

Celebrating 25 years
You've earned more than points.

Word of the dismissals began to circulate last week as principals received form letters over Rhee's signature informing them that their contracts would not be renewed.

Rhee and other school officials have steadfastly refused to discuss specific reasons for the dismissals, citing privacy and personnel regulations. In broad terms, she said yesterday that all the decisions are "absolutely" fair. She has been conducting an aggressive national advertising campaign to attract high-performing principals to the District.

Most of the principals who were not renewed either did not return phone calls or could not be reached for comment.

One of the few who would discuss the matter, Willie Bennett, principal of Hart Middle School in

EXH. 7

Southeast, said that Rhee is targeting older administrators. "Many of the people who were released were in the same predicament. Many of the people were older," said Bennett, who has worked for D.C. schools for 16 years, the last 10 at Hart as assistant principal and principal. Sixteen percent of the school's 508 students demonstrated reading proficiency on tests in the 2006-07 school year, according to school district records, down from 22 percent the year before.

Lucia Vega, principal of Powell Elementary, which is not targeted for changes under No Child Left Behind, said Rhee had a right to do as she wished. Vega said she is also dismayed because she submitted her resignation but was nevertheless listed as one of the principals fired.

Vega complained that during her five-year tenure she has received little support from administrators for a school where more than half the students are English-language learners and half receive free or reduced-price lunches because of their low-income status. In a 2007 Washington Post series on D.C. public schools, she talked about how she was forced to "warehouse" an incompetent literacy coach imposed on her by the central office.

"I just feel the system set us up," Vega, 54, said. "We do have a very failed school system. We all know that they promised us support and it was rarely given." She noted that plans for next year include major staffing increases, including an assistant principal, a full-time business manager, a full-time psychologist and a "functional" literacy coach.

Some of the leadership changes sparked controversy before they were formally announced. Some parents at Oyster-Adams-Bilingual School, where Rhee's two daughters are enrolled, were upset when they learned last week that Principal Marta Guzman would not be retained. Some parents said that Guzman's dismissal was engineered by a small group of parents who dined with Rhee. Other parents say there were serious problems with Guzman's leadership, including disorganization and poor communication.

View all comments that have been posted about this article.

**Post a Comment**

View all comments that have been posted about this article

You must be logged in to leave a comment Login | Register

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post.

EXH 8



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N.E., Suite 4NW02F
Washington, D.C. 20507
(202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Toll Free (866) 408-8075
General Information (800) 669-4000

February 6, 2009

Mr. Richard Patterson
14314 Artic Avenue
Rockville, MD 20853

RE:    Richard Patterson v. DC Public Schools
       Charge Number 570-2008-02098

Dear Mr. Patterson:

This is to inform you that the EEOC has assessed the information received to date from you and the employer. According to your charge filed with the EEOC, you allege that you were discriminated against because of your age. You allege the following:

  I was employed by Respondent from 1970 to 1973 as an Elementary Teacher. In August 1999, I was hired as a Principal. I was qualified to fill the position of Principal. All of my performance appraisals, with respect to my employment as a Principal, reflect that my work performance was either satisfactory or above. On 5/6/08, Chancellor Michelle Rhee informed me that I was being denied a reappointment as Principal for the 2008-2009 school year. I was notified that if I did not provide notification of my intent to exercise my retreat rights by 5/19/08, I would be terminated. I could not exercise my retreat rights. I was replaced by a younger, less qualified individual.

Below, I have summarized DC Public Schools' position statement as follows:

1) At this time, Respondent does not take issue to your statement concerning your performance appraisals.

2) Respondent concurs that all Principals who were non-reappointed were issued a letter from the Chancellor.

3) Supporting data shows that younger employees who were Principals were not treated any different. You were one of 33 Principals non-reappointed. Of that number, 28 were over the age forty and 5 were under the age forty.

4) DCPS Municipal Regulations gives to the Superintendent, now Chancellor, full authority to take all personnel actions of employees under her supervision and authority.

5) Respondent contends that your replacement is qualified and was subjected to a new and more rigorous process.

EXH. 8

6) For the above reason, Respondent maintains that the actions of the non-reappointment of Principals affected were actions taken with the best interest of the school system in mind, and was not an action taken to have a disproportionate adverse impact upon anyone regardless of age.

•

Once the Respondent articulates a non-discriminatory reason for its employment decision, the burden of proof rests with the Charging Party. This is your opportunity to provide information to rebut the Respondent's defense. If you have information which may lead to evidence to overcome Respondent's defense, please call me by **February 25, 2009**. I can be reached at (202) 419-0765 between 10:30a.m. and 7:00 p.m. Monday through Friday. If you reach my voice mail, please leave a message with a telephone number where you can be reached during those hours.

If I do not hear from you by **February 25, 2009**, a determination will be made based on the available information. If your charge is dismissed, you will be issued a Notice of Right to Sue which will allow you to file a private suit in federal court within 90 days of the Notice.

Sincerely,

Megan Hoppe
Federal Investigator


CC: E. Lindsey Maxwell II
     Intersect Law Group PLLC
     1425 K St., NW
     Suite 350
     Washington, DC 20005

Patterson v. DCPS - Charge No. 570-2008-02098                                  Page 1 of 2

*EXH 9*

From: E. Lindsey Maxwell II, Esq. <lmaxwell@intersectdc.com>
 To: megan.hoppe@eeoc.gov
 Cc: rockvilric@aol.com
Subject: Patterson v. DCPS - Charge No. 570-2008-02098
 Date: Thu, 19 Feb 2009 1:17 pm

Ms. Hoppe,

I am in receipt of the copy of your letter to my client dated 6 February 2009. As stated in your letter, once the Respondent articulates a non-discriminatory reason for its employment decision, the burden shifts to the Charging Party. Now that the Respondent has offered its statement with non-discriminatory reasons for its decision, you have requested that we provide information to rebut the Respondent's defense. We offer the following response.

1. We recognize and accept that the burden shifting analysis is the standard for which these cases are investigated and determined pursuant to McDonnell Douglas.
2. We accept items one and two as they relate to DCPS's statement.
3. The supporting documentation noted in item 3 provided to your office by DCPS reveals exactly what we are complaining about. DCPS terminated Mr. Patterson and 27 other principals over the age of forty while only terminating 5 who were under the age of forty. Mr. Patterson and other similarly situated principals have complained that they were terminated primarily based on their age (disparate treatment). However, in addition, based on these numbers, Mr. Patterson may be the victim of disparate impact discrimination as well. Furthermore, the reasons as to why the 5 principals were fired should be further investigated as we are aware that one or more were terminated for misconduct. Moreover, the EEOC should investigate further to determine the ages and backgrounds of those who replaced Mr. Patterson and his colleagues.
4. We agree that 5 DCMR gives the Superintendent the authority to not renew the term appointments of principals. However, it does not give Ms. Rhee the authority to use the regulation in a way which is discriminatory against employees based on age or any other protected class. We also doubt that Ms. Rhee has authority to use this regulation at all as she was appointed to the position of "Chancellor" not "Superintendent". The change in title was done by the DC Council for a purpose to exempt her from the same statutory authority which she is attempting to use now. Please note that the regulation specifically gives this authority to the Superintendent NOT the Superintendent's designee or any other person. Ms. Rhee is NOT the Superintendent of DC Public Schools.
5. DCPS claims that the replacement principals are qualified and subjected to a more rigorous process (we assume they mean selection process). First, by operation of logic, the replacement principals have far less experience than Mr. Patterson and his colleagues. Any educator will support the fact that principalship is qualified by experience. Furthermore, many of the replacement principals went through less of an interview and vetting process than their predecessors. Under Reeves v. Sanderson, in addition to his prima facie case, Mr. Patterson only needs to show "sufficient" evidence that the employer's asserted legitimate non-discriminatory explanation is false. In this case, the fact that the younger principals have less experience and have gone through less of a vetting process is more than "sufficient" evidence to rebut DCPS's defense.
6. Item 6 of DCPS's response is just a simple denial of the facts. The non-reappointment of the principals was not done in the best interests of the school system. Older, more experienced principals were fired to make room for younger less qualified employees.

We are eager to see this case move to mediation and/or for the EEOC to continue a deeper investigation. If we can be of further assistance please let us know. Thank you.


ELM


**E. Lindsey Maxwell II, Esq.**
Managing Partner
The Intersect Law Group PLLC

*EXH. 9*

Patterson v. DCPS · Charge No. 570-2008-02098                                    Page 2 of 2

1425 K Street, N.W.
Suite 350
Washington, D.C. 20005
(202) 587-2725 (p)
(202) 587-5601 (f)
www.IntersectDC.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately via the e-mail address and telephone number above, and delete the original message.

EXH 10

# Council of the District of Columbia

## Committee of the Whole

*mj* &£ ^ & ® ? ♊

## Report

f ☐CE ☐T 7—

The John A. Wilson Building _____ 1350 Pennsylvania Avenue, N.W. _____ Washington, D.C. 20004

To:  Members of the Council of the District of Columbia

From:  Vincent C. Gray, Chairman, Committee of the Whole

Date:        December 18, 2007

Subject: Bill 17-450, the "Public Education Personnel Reform Amendment Act of 2007"

The Committee of the Whole, to which Bill 17-450, the "Public Education Personnel Reform Amendment Act of 2007," was referred, reports favorably on the bill as amended and recommends its adoption by the Council of the District of Columbia.

### Statement of Purpose and Effect

Bill 17-450 amends the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to provide the Mayor with the authority to reappoint all employees within the District of Columbia Public Schools (DCPS) to the Educational Service. This bill also provides the Mayor with the authority to remove any job tenure and appeal rights afforded by the "separation for cause" provision within the Merit Personnel System Act for non-excluded employees. The authority to remove job tenure and appeal rights will not apply to employees in a recognized collective bargaining unit, employees appointed prior to January 1, 1980, employees who are based at a local school or who provide direct services to individual students, or employees required to be excluded pursuant to a consent decree (collectively excluded employees). The authority afforded the Mayor in this legislation also applies to former DCPS employees who were transferred to the Office of the State Superintendent for Education (OSSE) and to the Office of Public Education Facilities Modernization (OPEFM). This legislation provides the affected employees with the option of accepting reappointment under the Mayor's new personnel authority, or, declining it, separating from service, and receiving severance pay in accordance with the law. Except for the Chancellor, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, all employees of DCPS and OPEFM and all employees transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 will be classified as Educational Service. This bill is the permanent version of emergency legislation that will be introduced by the Committee contemporaneously with the second vote on the permanent.

1

EXH 10

**Legislative History**

| October 12, 2007 | "Public Education Personnel Reform Amendment Act" introduced by Chairman Gray at the request of Mayor Fenty |
| --- | --- |
| October 26, 2007 | Notice of intent to act on Bill 17-450 published in *D.C. Register* |
| October 26, 2007 | Notice of public hearing on Bill 17-450 published in *D.C. Register* |
| November 2, 2007 | Public hearing on Bill 17-450 |
| December 18, 2007 | Committee of the Whole consideration of Bill 17-450 |

## Committee Reasoning - Background and Need

Bill 17-450, the "Public Education Personnel Reform Amendment Act of 2007," is the next legislative step in the process of reforming our public education system. As stated above, this bill seeks to provide the Mayor with the authority to reappoint all employees within DCPS to the Educational Service, and to remove any and all job protection and tenure afforded by the "separation for cause" provision within the Merit Personnel System Act for non-excluded employees. The authority to remove job tenure and appeal rights will not apply to employees in a recognized collective bargaining unit, employees appointed prior to January 1, 1980, employees who are based at a local school or who provide direct services to individual students, or employees required to be excluded pursuant to a consent decree. The authority afforded in this legislation applies to former DCPS employees who were transferred to the OSSE and to the OPEFM. This legislation provides the affected employees with the option of accepting reappointment under the Mayor's new personnel authority, or, declining it, separating from service, and receiving severance pay in accordance with the law. Except for the Chancellor, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, all employees of DCPS and OPEFM and all employees transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 will be classified as Educational Service.

Currently, §1-608.01 a of the Merit Personnel System Act, which creates the Educational Service, provides that employees within this service may only be separated from service for cause, and shall have the right to appeal any such decisions. This legislation seeks to remove that right, and provide the Mayor with the unencumbered authority to remove non-performing and under-performing employees. Not surprising, this has become a very controversial piece of legislation. Since direct authority of DCPS was transferred to the Mayor, pursuant to the Public

2

Education Reform Amendment Act of 2007, and probably for quite some time prior to that, the Central Office of DCPS has been widely portrayed as a place replete with poor performance. Indeed, during the hearing on Bill 17-450, the Chancellor testified that calls and emails are ignored and not returned, employees do not show up for work, and others take multiple 10-day absences. She stated that amongst the employees working in the Central Office there is a lack of urgency and customer service, and a lack of attention to detail. She also recounted instances where 1) an employee with diabetes was being charged for health care coverage, but for four weeks was unable to access treatment or obtain medications because of the ineffectiveness of Human Resources personnel; 2) a teacher had not received a pay increase for a promotion received during the summer; 3) a principal was unwilling to hire an aide for which she had the budgetary funds, because three of her teachers have not received paychecks since the beginning of the school year; and 4) a central office employee failed to accurately complete paperwork and process it in a timely manner, resulting in the District's obligation to pay nearly $500,000 for two youths to attend a private school outside of the District.

While no doubt these actions, or lack thereof, are egregious and illustrate a complete lack of a work ethic, they have been widely portrayed as representative of all DCPS employees, instead of illustrative of problem employees. The Committee agrees with the Chancellor that a system of accountability must be established within DCPS, as in all government agencies. But in pursuit of that essential goal, our zeal for excellence should not lead to a conclusion that everyone who works there is incompetent, just because they work there. We know that alongside poor and under-performers, are people who perform well within DCPS. As such, the Committee's primary concern in reviewing and revising this legislation was to ensure that in the course of finding a way to root out ineffectiveness and low performance, we create a fair and objective process.

At the forefront of the controversy surrounding this legislation, is the conversion of all employees within Educational Service and not excluded from this legislation, to an "at-will" employment status. "At-will" is a legal term of art, and though it is not defined in the District of Columbia Code, it is well defined by common law to mean that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all," or alternatively such an employment relationship may be "terminable by either party at any time for any reason." Councilmembers and witnesses voiced concerns that such a provision in the legislation would strip affected employees of any due process rights and place the District on a slippery slope of stripping all government employees of these rights.

The Chairman was particularly concerned about converting all non-excluded employees within the Educational Service to "at-will" employees. As a former Director of the Department of Human Services, he empathized with the need to have the unencumbered authority to terminate poor performers. As he stated in his opening statement, for managers, there are few things more debilitating than to follow a termination process that is protracted to begin with, only to have your action overturned, seemingly arbitrarily, by an outside entity that is not at all familiar with the operations of the organization or the individual's work ethic and performance, not to mention the detrimental effect that such a reversal of management's decision has on

3

organizational morale.  At the same time, as the District embarks on the most radical overhaul of one of our most important institutions, the Committee wants to ensure that the District keeps in its employ talented and dedicated employees.

During the November 2, 2007, hearing on this bill, there was considerable discussion about defining the term "at-will" to include an evaluative process. In fact, both supporters of the bill and dissidents alike agreed that whatever authority is ultimately given to the Mayor, a fair and transparent system of accountability must be established, thereby preserving due process rights. The Committee decided not to redefine the term "at-will" because of the unknown effects such a new definition potentially could have on employment relationships within the District of Columbia. Instead, the Committee removed the term "at-will," and replaced it with the provision that any person appointed or re-appointed to a position within the Educational Service shall serve without job tenure. The Committee also provided the Mayor with the flexibility and authority to terminate without notice or evaluation any employee appointed to the Educational Service for less than one year, during that employee's probationary period, which shall last no longer than one year from the employee's date of hire. And, the Committee provided the Mayor with the authority and flexibility to make temporary and emergency appointments that do not confer the protections of permanent status employees. Finally, the Committee provided the Mayor with the authority to terminate without notice or evaluation, an employee who commits an egregious act, as defined by the Mayor. It is the Committee's belief that such authority and flexibility will permit the Mayor to demand accountability from Educational Service employees, and retain the highest quality and most dedicated employees.

Accountability, though, is a two-way street.  Management cannot hold Educational Service employees, or any employee for that matter, to a high standard of accountability, without setting expectations, delineating deliverables, and ensuring a transparent evaluative process.  To that end, to ensure that an employee's termination is not arbitrary or capricious, the Committee provided the following: First, the Mayor must establish written job descriptions for each position within the Educational Service and a process for updating and maintaining current job descriptions.  Second, all employees within the Educational Service may be terminated at the discretion of the Mayor. However, the Mayor may not terminate any employee once he has completed his one-year probationary period, until and unless that employee is provided with a written 15-day notice of separation, and has had at least one evaluation within the previous 6-month period, a minimum of 30 days prior to the issuance of such notice. This ensures that each employee will have at least an annual evaluation, be provided a minimum of 30 days for remediation of any issues, if applicable, and be provided a separation notice stating the reason for separation.  And third, each employee electing reappointment but subsequently terminated, also must be given a written 15-day notice of separation, provided that he has had at least one evaluation within the previous 6-month period.

The Committee included in its Print the original provision that provides a non-excluded employee currently appointed within the Educational Service the option of accepting reappointment without job tenure, or declining reappointment, separating from service, and receiving severance pay in accordance with the law. The Committee also included the provision

that a non-excluded terminated employee, while retaining veteran preference eligibility, shall be separated without assignment, reassignment, or retreat rights, or rights to an internal or administrative review of the termination, except for review under the Human Rights Act of 1977, federal law, or common law.  The Committee stresses that the Mayor's authority to appoint and reappoint to the Educational Service employees without job tenure does not apply to those employees in a recognized collective bargaining unit as of the effective date of this legislation, employees hired prior to January 1, 1980, school-based employees, or employees required to be excluded pursuant to a consent decree.

Even with these protections in place, the concern that providing the Mayor with the authority to appoint and reappoint employees to the Educational Service without the protection of job tenure could lead to a return to a spoils system, did not fall on deaf ears.  In the October 17, 2007, edition of the *Georgetown Current,* the editors reminded us of the reasons for civil service protections for government workers, and that is to avoid severe problems of "the potential for appointees unqualified for their posts, and a lack of institutional memory or experience whenever a new official comes into office."[1]  The editors recommended waiving the current rules for terminating an employee within the Educational Service for a finite period of two or three years.[2]  The Committee believes that the Mayor urgently needs this authority.  But it also shares the concern about providing this authority, arguably unchecked.  As such, the Committee provides a reauthorization provision, requiring the Mayor to submit to the Council a 4-year assessment of the impact on public education of personnel reform pursuant to this bill, in 2012, coinciding with the Mayor's submission to the Council of a 5-year comprehensive evaluation of the public education system, pursuant to the Public Education Reform Amendment Act of 2007.

hi addition, the Committee made several other revisions.  First, the Committee removed the term and definition of "Central Office Employee," and replaced it with a provision clarifying the applicability of the personnel authority to all non-school-based Educational Service employees except employees in a recognized collective bargaining unit, employees hired prior to January 1, 1980, and employees required to be excluded pursuant to a consent decree.  Second, the Committee required the Mayor to submit to the Council within 180-days of the effective date of this legislation, a list of all employees declining reappointment and thus terminated, and those accepting reappointment, but subsequently terminated.  The Mayor also is required to maintain a database of this information on an on-going basis.  Third, except for the Chancellor of DCPS, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, the Committee classified all employees within DCPS and OPEFM, and all employees transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 as Educational Service.  Fourth, the Committee required the Mayor to establish reduction-in-force procedures that include a prescribed order of separation based on District residency and veteran preference, priority reemployment consideration of separated employees, and job sharing and reduced hours if feasible.  The Committee also included a provision that prevents an excluded employee or a non-school-based employee from being assigned or reassigned to replace a classroom teacher.  The Committee emphasizes that these procedures are in effect when the

1 Kennedy, Davis and Kain, Chris. *The Georgetown Current,* Wednesday, October 17, 2007.
2 *Id.*

Mayor declares a need for a reduction in personnel due to a lack of funding or discontinuance of a department or function of an agency. Fifth, the Mayor is required to promulgate rules and regulations to implement the provisions of this legislation; the rules and regulations are subject to a 45-day period of Council review. Sixth, the Committee required the Mayor to request that the United States Office of Personnel Management authorize voluntary early retirement to employees in the Educational Service hired prior to 1987 and entitled to federal benefits. And seventh, the Committee included the permanent provision of a previously introduced Emergency Bill that provides the Director of the OPEFM maintenance authority.

**Impact on Existing Law and Section-by-Section Analysis**

Section 1 states the short title of Bill 17-450.

Section 2 provides that employees appointed to a position within the Educational Service shall serve without job tenure, except certain excluded persons. The provisions of this section apply to all non-school based employees, who are not otherwise excluded from this paragraph, within DCPS, OPEFM, and OSSE. Non-excluded employees currently employed within the Educational Service, shall be re-appointed noncompetitively. Those employees declining the re-appointment shall receive 15-days written separation notice and severance pay pursuant to section 2409. Those accepting the re-appointment shall serve without job tenure. The Mayor must notify in writing each employee of his or her reappointment within 30 days of the effective date of this legislation. Each employee must accept or decline such reappointment within 10 days of receipt of the reappointment notice. Employees appointed within the Educational Service of DCPS, OPEFM, or OSSE, for less than one year shall be probationary employees for one year from the date of hire, during which they may be terminated without notice or evaluation. Following the probationary period, employees may be terminated provided they have been provided 15-days notice, have had at least one evaluation within the preceding 6 months, at least 30 days prior to the issuance of the separation notice. The Mayor may terminate any employee without notice or evaluation for committing an egregious act as defined by the Mayor. If an employee is terminated, he shall be separated without competition, assignment rights, re-assignment rights, retreat rights, or any right to an internal or administrative review of such termination, subject to any rights under the Human Rights Act, federal law, or common law. The Mayor must establish a recruitment program, a procedure for open competition, written descriptions for each position within the Educational Service and a process for updating those job descriptions. And the Mayor must provide a written copy of the relevant job description to each appointed and re-appointed employee. Appointments to the Educational Service must be made in accordance with the equal employment opportunity principles of Title VII. The Mayor is provided the authority to make temporary, emergency, and other time-limited appointments that do not confer permanent status. The Mayor is required to submit to Council, within 180 days of the effective date of this bill, a list of all Educational Service employees who declined re-appointment and were subsequently separated, and who accepted re-appointment, but were later terminated. The Mayor is required to maintain a database of this information on an ongoing basis. The Mayor is required to establish reduction-in-force procedures that include a prescribed order of separation based on District residency and veteran status, priority reemployment

6

consideration of separated employees, and job sharing and reduced hours if feasible. Neither an excluded employee nor a non-school-based employee can be assigned or reassigned to replace a classroom teacher. The Mayor may appoint 25 persons to the Excepted Service within DCPS. Each person appointed must becomes a District resident within 180 days of appointment and maintain District residency throughout the appointment. The Mayor will endeavor to ensure ward diversity with these appointments. Except for the Chancellor, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, every employee within DCPS and OPEFM and every employee transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 shall be classified as an Educational Service employee. Finally, no unit may be established if it includes employees who serve without tenure within the Educational Service of DCPS, OSSE, or OPEFM.

Section 3 provides that the Mayor promulgate rules and regulations to implement this act; the rules and regulations are subject to a 45-day period of Council review.

Section 4 provides that the Mayor shall request that the United States Office of Personnel Management authorize voluntary early retirement to employees in the Educational Services hired prior to 1987 and entitled to federal benefits.

Section 5 provides that the Mayor shall submit to the Council an assessment of this legislation, including a comprehensive list of employees terminated pursuant to it, and on September 15, 2012, an assessment of the impact this legislation has had on the progress in public education.

Section 6 amends the Public Education Reform Amendment Act of 2007, to provide the Director of the OPEFM maintenance authority on a permanent basis.

Section 7 adopts the fiscal impact statement in the committee report as that required by law.

Section 8 establishes the effective date for Bill 17-450.

**Fiscal Impact**

Attached is a copy of the Chief Financial Officer's fiscal impact statement on Bill 17-450, dated November 9, 2007. The Chief Financial Officer concludes that funds are not sufficient in the approved budget and financial plan to implement the proposed legislation. Specifically, the Chief Financial Officer concludes that $3,133,000 is a one-time, fiscal impact of this legislation - funds that are not available in the approved FY08 budget. However, the Mayor has submitted Bill 17-445, the "Fiscal Year 2008 Supplemental Appropriations Act of 2007" for Council approval, which among other things, requests funds for this personnel action. Once the Council approves Bill 17-445, there will be sufficient funds in the FY08 budget for this proposed legislation.

**Position of the Executive Branch**

Michelle Rhee, Chancellor of the District of Columbia Public Schools testified on behalf of the Executive in support of Bill 17-450. Her testimony is attached to this report.

**Committee Action**

The Committee of the Whole held a public hearing on November 2, 2007, on Bill 17-450, the " Public Education Personnel Reform Amendment Act of 2007," at which the following witnesses testified in support of Bill 17-450: Natasha Kalteis, Education Co-Chair Dupont Circle Citizens Association Education Committee, Ross Elementary School Parent; Anamaria Featherston, Education Co-Chair Dupont Circle Citizens Association Education Committee, Ross Elementary School Parent, LSRT Officer and Charter School Parent; Gabriella Savio, Ross Elementary School Parent, PTA Officer; Maureen Diner, Ross Elementary School Parent, LSRT Chair; Mary Siddall, Ross Elementary School Parent; Robert Vinson Brannum; Cherita Whiting, Ward 4 Education Council; Mary Levy, Director, Public Education Reform Project, Washington Lawyers' Committee for Civil Rights and Urban Affairs; Terry Goings, PTSO President, Calvin Coolidge High School; John Hill, Chief Executive Officer, Federal City Council; James Dinegar, President and Chief Executive Officer, Greater Washington Board of Trade; Barbara Lang, President and Chief Executive Officer, D.C. Chamber of Commerce; Steve Thompson; Maudine Cooper, President and Chief Executive Officer, Greater Washington Urban League; Max Salas; Githa Natarajan, 2007 DC Teacher of the Year; Lovell Saunders, Shepherd Elementary Parent and PTA Member; and Darren Woodruff, Shepherd Elementary Parent.

In addition, the testimonies of Frank Johnson, LTC, US Marines and Ross Elementary School Parent, and Peter Frampton, Ross Elementary School Parent, were read into the record. And, a letter in support of the legislation, signed by the following business leaders was submitted for the record: Dennis Bakke, President and CEO, Imagine Schools; Josh Bernstein, President, Bernstein Management Corporation; Katherine Bradley; John Castellani, President, Business Roundtable; Kevin Chavous, Partner, Sonnenschein Nath & Rosenthal, LLP; Neil D. Cohen, President, District Photo; William T. Coleman, Jr., Senior Partner, Senior Counselor, O'Melveny & Myers, LLP; Maudine Cooper, President and CEO, Greater Washington Urban League; Edmund B. Cronin, Jr., Chairman of the Board of Trustees, Washington Real Estate Investment Trust; Arthur B. Culvahouse, Jr., Chair, O'Melveny & Myers, LLP; Jack Davies, Founder, AOL International; Terry Eakin, Chairman, EYA; mark D. Ein, Founder and CEO, Venturehouse Group LLC; Raul Fernandez, Chairman and CEO, Object Video; George Ferris, Chairman of the Board, Ferris, Baker Watts, Inc.; Terence C. Golden, Chairman and CEO, Bailey Capital Corporation; John Hill, CEO, Federal City Council; James V. Kimsey, Founding CEO and Chairman Emeritus, America Online; Ted Leonsis, Vice Chairman Emeritus, AOL; Anthony Lewis, President, Verizon - Washington, D.C; Jerry A. Moore, III, Chairman, Greater Washington Urban League; W. Russ Ramsey, Chairman and CEO, Ramsey Asset Management; Joseph E. Robert, Jr., Chairman and CEO, J.E. Robert Companies; Roger W. Sant, Chairman Emeritus and Co-Founder, The AES Corporation; Emily Talley, Senior Director, Community Relations, Capital One; J. Rock Tonkel, Jr., President and Chief Operating Officer, Friedman,

8

Billings, Ramsey Group Inc.; George Vradenburg, Executive Vice President ret.), AOL/Time Warner; Curtin Winsor, Chairman, Bank of Georgetown; Richard Woods, Senior Vice President, Corporate Affairs, Capital One Financial Corporation; Roderic L. Woodson, Esq., Partner, Holland & Knight, LLP; and Dennis Wraase, President and CEO, PEPCO.

•

The following witnesses testified against passage of Bill 17-450: Joslyn Williams, President, Metropolitan Council, AFL-CIO; George Johnson, Executive Director, AFSCME Council 20; George Parker, President, Washington Teachers' Union; Nathan Saunders, General Vice President, Washington Teachers' Union; and Thomas Ratliff, President, Local Union 639. All testimony and letters submitted by November 9, 2007, are attached to this report and included as part of the official record.

On December 18, 2007, the Committee of the Whole considered Bill 17-450 at a regularly scheduled meeting of the Committee of the Whole.  Councilmembers Thomas and Barry moved an amendment in the nature of a substitute, which among other things, created at-will employment positions for "management employees" within the Educational Service classification, allowed for the conversion of existing Educational Service employees within the at-will category to the amended classification, and provided for training and retraining opportunities and retreat rights for any at-will employee subject to non-disciplinary separation from service.  This motion failed on a roll call vote of 3 in favor and 10 against, with Councilmembers Thomas, Barry, and Mendelson voting in favor and Chairman Gray and Councilmembers Alexander, Bowser, Brown, Catania, Cheh, Evans, Graham, Schwartz and Wells voting against.

Councilmembers Barry and Thomas offered the following three amendments to Bill 17-450:

1) Amending the applicability of Bill 17-450 from all non-school based personnel within the Educational Service of DCPS, OPEFM, and OSSE, to a maximum of 488 employees within the Educational Service of DCPS, OPEFM, and OSSE. Chairman Gray did not accept this amendment as friendly, and asked Councilmembers Thomas and Barry to withdraw this amendment, allowing staff to work on this issue between first and second reading.  Councilmembers Thomas and Barry withdrew this amendment;

2) Amending the date by which the Mayor must submit an assessment of Bill 17-450 and its impact on public education from September 15, 2012, to September 15 of each year and requiring that the Council re-authorize the authority provided in this bill within 45-days of receipt of the Mayor's assessment. Chairman Gray did not accept this amendment as friendly, stating that the September 15, 2012 date was selected to coincide with the date by which the Mayor is required to submit a 5-year assessment of the Public Education Reform Amendment Act of 2007. Chairman Gray also stated that the Committee would provide ample opportunity for informal assessment of the effectiveness of Bill 17-450 through the Committee's oversight efforts during hearings.  Finally, Chairman Gray requested

9

that Councilmembers Thomas and Barry withdraw this amendment so that staff could work on any unresolved issues during first and second reading. Councilmembers Thomas and Barry withdrew this amendment; and

3)      Amending the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to provide that the Mayor may appoint 25 persons to the Excepted Service within DCPS, provided that each person appointed becomes a District resident within 180 days of appointment and maintain District residency throughout the appointment, and to provide that the Mayor endeavor to ensure ward diversity with these appointments. Chairman Gray accepted this amendment as friendly.

Councilmember Graham expressed concern regarding the provision providing the Mayor with the authority to terminate without notice or evaluation, an employee who commits an egregious act. Specifically, Councilmember Graham expressed concern using a term such as "egregious," which is used elsewhere in the code but is not defined anywhere in the code, and leaving the responsibility of defining such a term to the Executive. Chairman Gray expressed the same concerns and responded that staff had researched the issue the night before and possibly found a suitable replacement, such as "cause," which is defined. Chairman Gray also stated that staff would work with Councilmember Graham to revise that provision before second reading.

Councilmember Schwartz, while supporting the Committee Print of Bill 17-450, expressed concern regarding the conversion of certain non-excluded employees to positions without job tenure. Specifically, she expressed concern that converting civil servants to such categories might threaten the continuity of government services in times of administrative transition. Chairman Gray stated that he expressed that concern to the Chancellor, had already requested data on the number of such civil servant positions subject to conversion, and would work with Councilmember Schwartz on the issue before second reading.

Chairman Gray moved approval of the Committee Print of Bill 17-450 which was approved by roll call vote of 10 in favor and 3 against, with Chairman Gray and Councilmembers Alexander, Bowser, Brown, Catania, Cheh, Evans, Graham, Schwartz and Wells voting in favor of the Committee Print and Councilmembers Thomas, Barry, and Mendelson voting against it. Chairman Gray moved approval of the Committee Report which was approved by voice vote. In attendance were Chairman Gray and Councilmembers Alexander, Barry, Bowser, Brown, Catania, Cheh, Evans, Graham, Mendelson, Schwartz, Thomas, and Wells.

Attachments

(1) **Bill** 17-450
(2) Written record and public hearing testimony
(3) Fiscal impact statement
(4) Committee Print of Bill 17-450

and necessary.  Knowing such information to be false, Defendants launched a national campaign attributing student performance in D.C. to incompetence and lack of effort, effectiveness, and professionalism of the Incumbents,[3] in spite of the fact that issues and concerns with Plaintiffs' performance should have been addressed in their annual performance reviews.[4]

25.    In keeping with their predetermined plan to remove the Incumbents, prior to issuance of the notices of May 5, 2008, the Incumbents were advised that their school's performances would be evaluated, and that student academic improvement would be a factor in their performance ratings.  However, the ultimatum delivered by the Defendants based upon such proposed evaluation improvement was a pretext.  Current and previous performances notwithstanding, the Defendants had already determined the Incumbents would be removed.

26.    As part of the mass firing, it was carefully determined by Rhee and the Officers that age and proximity to retirement would be among the essential determining factors to be applied in replacing the Incumbents. Twenty-eight ("28") of the thirty-three ("33") non-reappointed Incumbents were all over forty years old[5] (most of them being older than fifty).[6]  Their replacements averaged in their thirties.

---

[3]  See Exhibits 6 and 7- Kate Bolduan, "'100 mph' School Chief Seeks 'Radical Changes,'" *CNN*, September 9, 2008; Bill Turque, "Rhee Has Dismissed 24 Principals," *Washington Post*, May 16, 2008.
[4]  Article XI- Evaluation, §§ A1-8 of the Collective Bargaining Agreement with Council of School Officers.
[5]  See Exhibit 8- Letter from Megan Hoppe, Federal Investigator, U.S. Equal Employment Opportunity Commission, to Claimant Richard L. Patterson, dated February 6, 2009.
[6]  See Exhibit 9- Claimant Richard L. Patterson's Response (February 19, 2009) to Investigator Megan Hoppe's Letter of February 6, 2009.

8

27.     It was determined by the Defendants that the mass firings would be carried out irrespective of intervention of the Incumbents' collective bargaining unit (the "Council of School Officers" or "CSO"), and further determined by Defendants that they did not have to bargain with the CSO because the Incumbents were subject to annual reappointment in accordance with CDCR 5-520, et seq., and the aggressiveness and desired impact of their mass firing would freeze other Incumbent principals and assistant principals and weaken their resolve to fight.

28.     In carrying out the mass firings, the Defendants engaged in intimidation; defamation; conspiracy; malicious abuse of process; discrimination based upon race, age, and sex; and wrongful discharge.  They caused irreparable harm to the Incumbents collectively and individually; and to the professional careers of the Incumbents in the present and future.

29.     The Plaintiffs' collective bargaining unit, the Council of School Officers ("CSO") filed class grievances, but was unable to bring about a favorable resolution on the Plaintiffs' behalves.

## THE CLASS

30.     The Incumbents are "Plaintiffs" and "Class Members" as defined under D.C. Superior Court Civil Rule 23, et seq., and heretofore shall be referred to as "Plaintiffs" in this action.  The Defendants collectively shall be referred to as "DCPS."

## STATEMENT OF FACTS

9

31.     Plaintiffs are African American and Hispanic males and females over forty-
("40") years of age.

32.     Plaintiffs, at the time of the actions described herein were employed by DCPS as
annually appointed principals and assistant principals assigned to DCPS schools.

33.     At the time of the matters complained of herein, each of the Plaintiffs had either
risen from the rank of teacher ET-15 to his/ her appointment as Principal or Assistant
Principal, or had been directly employed by DCPS as a principal or assistant principal.
At the time of the matters described herein, each of the Plaintiffs had performed as
Principal or Assistant Principal with DCPS for at least five ("5") or more years.  Up to
the date of notice of their Non-reappointment, each Plaintiff reasonably believed and
expected to be reappointed to their respective positions, unless their assigned school was
scheduled for closing, or he/ she had received prior notice of a significant performance
deficiency.

34.     In late 2007, the Plaintiffs were notified that they would receive performance
evaluations by the end of the academic year, (June, 2008).  DCPS alleged that the
evaluations were for the purpose of determining proficiency, and would include ranking
based on student reading and mathematics test scores, student attendance, and student
improvement in various other academic and scholastic areas.

35.     Some Plaintiffs were administered evaluations during the 2007-2008 academic
year and were notified that if their ratings did not "show improvement" they would be
removed from their positions.

36.     Others of the Plaintiffs were not administered mid-year or final evaluations at all.
And yet, they were also told by DCPS, that they would be removed due to failure to meet

10

performance standards and criteria, for which they were not evaluated, and for which, if

they had been evaluated, would not have been proven to be indicators of poor

administrative performance.                    •

37.    It is undisputed by the parties that each of the Plaintiffs who received

improvement notices, made efforts to improve their scholastic ratings by taking various

actions they believed, and were told by DPCS, would be necessary for improvement of

their respective schools.  Each Plaintiff, in fact, experienced improvement of his/ her

respective statistics in the required evaluation categories.  However, neither DCPS (nor

other known education systems) have proven methods of substantial student

improvement based upon short-term policies and actions.  In addition, most educators

agree that substantial improvement of student performance requires more than efforts

made by assistant principals and principals only.  Notwithstanding their respective

schools' improvements, each of the Plaintiffs was ultimately not reappointed to his/ her

administrative position.

38.    Simultaneous with their demand for improved academic performance during the

2007-2008 school year, DCPS had notice and knowledge that the Plaintiffs' respective

schools were understaffed and lacked sufficient resources.  Notwithstanding, DCPS failed

to take timely and appropriate action to fill vacant teacher, administrator and service

provider positions and withheld and/or delayed requested and needed classroom and

building resources.

39.    On or about May 5, 2008, each Plaintiff was notified by delivery that they would

not be reappointed to their respective positions of employment with DCPS, effective on

June 30, 2008, and each of the Plaintiffs was removed in a mass firing on June 30, 2008

11

(See Exhibit One, "Notice").  Without prior notice of a meeting, on or about May 5, 2008 the Plaintiffs were called and told to report to their respective Cluster Assistant Superintendent.  When they arrived, a designated DCPS Human Resource employee was also present.  No reason for Non-reappointment was specified in the oral or written May 5, 2008 Notice, except that this was by decision of Chancellor Michelle Rhee.  Ostensibly, the removals were effected upon the Plaintiffs based upon their status as annually appointed employees, pursuant to CDCR 5-520.  However, subsequent to serving Plaintiffs with the Notice of Non-reappointment and setting the June 30, 2008 effective date, DCPS' actions revealed that the Plaintiffs were removed for "cause," and the "cause" was identified as failure to improve the statistical performance of students at their respective schools.

40.     Prior to delivery of the Notice of May 5, 2008, DCPS' Chancellor and Officers predetermined that the Plaintiffs would not be reappointed based upon the fact that DCPS had already engaged employees to occupy the positions left vacant due to the mass firing.  Accordingly, at the time the Plaintiffs received the May 5th Notice, a group of replacements, already selected, and under forty- ("40") years old, and with far less experience were available to fill the prospective vacant positions.  Absent negative or materially unacceptable performance evaluations, however, DCPS announced publicly that the Plaintiffs had failed to perform adequately as established in evaluations and/or student performances.  These reasons were baseless pretext.

41.     Each of the Plaintiffs' employment by DCPS as a principal or assistant principal ended on June 30, 2008.  Prior to the Plaintiffs' receipt of Notices of Non-reappointment, DCPS had surreptitiously engaged replacements to occupy the Plaintiffs' soon-to-be

12

vacant positions.  After executing the mass firing, DCPS not only filled each Plaintiffs'

position without delay, but the prior identified and still pending vacant teacher and

school-based positions were filled expeditiously, and previously requested classroom and

building resources were funded, and made readily available to Plaintiffs' successors and

respective schools.

42.     The Plaintiffs collectively raised grievances concerning their mistreatment and

misrepresentation by DCPS through the Council of School Officers ("CSO," i.e.,

Plaintiffs' collective bargaining unit pursuant to CDCR 5-700) without resolution in

favor of the Plaintiffs.  Subsequently, the CSO informed Plaintiffs that the collective

bargaining organization had done all it could on behalf of the members regarding DCPS'

Non-reappointments with respect to the collective bargaining agreement ("CBA").

43.     Simultaneous to CSO's intervention, DCPS intensified its campaign of hostile,

malicious, and retaliatory actions, including: (1) efforts to isolate Plaintiffs from other

employees; (2) efforts to defame Plaintiffs amongst co-workers, neighboring school

systems, and social / community groups; (3) and malicious interference with Plaintiffs'

rights to unemployment compensation and retirement benefits by allegations that

Plaintiffs were removed from their employment due to "Misconduct" or for cause; (4)

evasiveness regarding Plaintiffs' Retreat Rights to other positions; (5) lack of payment

due Plaintiffs during the transition period; and (6) unresponsiveness to Plaintiffs'

inquiries about leave, retirement benefits, and account statements.

44.     But for the actions of DCPS, the Plaintiffs would have been successful in

acquiring suitable alternative employment.  However, DCPS engaged in public

distortions that caused the Plaintiffs to be perceived as pariahs, troublemakers, and lazy,

ineffective administrators, thereby denying Plaintiffs advancement opportunities and
opportunities for hire outside DCPS.

45.     In violation of DCPS personnel rules CDCR 6-3111.1-6-3111.6, DCPS callously
and maliciously violated Plaintiffs' right to privacy by publishing and exposing
Plaintiffs' personnel records and the alleged reasons for Plaintiffs' removal from
employment without the Plaintiffs' permission (CDCR 6-3113.3(d)).  Additionally, in the
process of violating Plaintiffs' right to privacy, DCPS removed and/or lost documents
contained in some of Plaintiffs' personnel files, including performance ratings,
recognitions, and letters of support and commendation.

46.     At the same time the Plaintiffs suffered the adverse activities of DCPS, other
DCPS employees similarly situated to the Plaintiffs, but different in respect to race, age,
and experience  (i.e., white, and aged under forty ("40")), were supported in career
advancement opportunities and afforded opportunities for administrative positions from
which the Plaintiffs had been removed.  They were also given bigger salaries, relocation
and retirement benefits not afforded Plaintiffs.

47.     DCPS used facially legitimate employment policies (i.e., performance ratings),
withholding positive information of the Plaintiffs' positive performances including
special recognition, awards, commendations, and community practices in a deceitful and
treacherous manner to harm Plaintiffs and create a false, misleading employment record
for Plaintiffs such that their opportunities for advancement and opportunity to acquire
administrative positions equivalent to their former DCPS positions in D.C. and other
jurisdictions would be diminished.  Plaintiffs have applied for and sought reemployment

14

with numerous prospective employers in this and other jurisdictions, and have been denied and/or ignored.

48.     The mistreatment from which the Plaintiffs suffered consisted of: (1) reprisal for their participation in protected activities; (2) failure of DCPS to develop, adhere to, and properly use personnel policies and practices pertaining to selections and removals of personnel serving the District of Columbia (D.C. CMPA); (3) purposeful and unfair collusion against Plaintiffs by DCPS and other agents unknown at this time; (4) civil conspiracy for the purpose of an unfair and arbitrary "regime change" perpetuated by mass dismissal; (5) ) defamation to Plaintiffs' career and business reputations; (6) wrongful discharge/ termination;  (7) violation of federal and D.C. Human Rights laws regarding discrimination based on race and age; and (8) violation of federal retirement law (ERISA).

49.     On or around Fall 2007, Michelle Rhee, and other DC and DCPS agents unknown at this time, predetermined the selections for Plaintiffs' replacements in their respective positions.  Because of Defendants' manipulation, DCPS failed to credit the Plaintiffs' performance evaluations, qualifications, and work experience needed to retain their positions.  Instead, those appointed to replace Plaintiffs were chosen based upon illegal cronyism, corruption, conspiracy, and nepotism.

50.     Had a non-discriminatory and properly guided process of selection for the Positions been conducted in compliance with DCPS policies and procedures, the Plaintiffs' rich work experience, performance evaluations, improvement in the ratings of their respective schools, student test scores, and student attendance would have been considered.  Instead, the Defendants conspired and abused their authority  by planning

15

and manipulating the process of Non-reappointment of the Plaintiffs, as if they had unencumbered authority, which they did not.  The Defendants distorted the application of the City Council's ratification of unilateral power to reappoint by implementing the mass firing in such a fashion as to circumvent civil service, due process, and notice protections attached and guaranteed to Plaintiffs as part of their annual appointment status requiring service without tenure.[7]

51.     During the academic year 2007-2008, Plaintiffs signed Declarations of Intent to continue working for DCPS for the upcoming 2008-2009 academic year.  Subsequent to receiving the May 5, 2008 Notice of Non-reappointment, some Plaintiffs met the criteria for "Involuntary Retirement" and felt compelled to retire.  But for the actions of DCPS, the Plaintiffs would not have retired prior to the academic year 2008-2009.  This decision jeopardized Plaintiffs' retirement benefits and subjected them to penalties reducing the monthly and annual benefits amount allotted to them.

52.     After receiving the May 5, 2008 Notice of Non-reappointment, many eligible Plaintiffs attempted to exercise their retreat rights pursuant to CDCR 5-520.3.  DCPS unlawfully denied, created barriers and/or delayed Plaintiffs' ability to exercise these rights to which they were entitled.

## COUNT ONE: DISCRIMINATION BASED ON RACE AND AGE

53.     That Count One incorporates by reference paragraphs One through Fifty-Two of the Complaint.

---

[7] See Exhibit 10, Council of the District of Columbia Committee of the Whole Report, December 18, 2007, regarding the discussion of Bill 17-450, the "Public Education Reform Amendment Act of 2007."

16

54.     Plaintiffs are African-American and Hispanic males and females over forty-("40") years of age, and have accumulated retirement benefits as a result of five ("5") years or more service to DCPS.

55.     Complainants were employed by the District of Columbia Public Schools, classified under the personnel records of DCPS as either Principal or Assistant Principal, and were wrongfully terminated effective June 30, 2008.  Others, while similarly situated with Complainants, but white, younger, less experienced, and/or not near retirement, were appointed to the positions from which Complainants were removed in violation of D.C. Code § 2-1401, 2-1402.11.

**COUNT TWO: VIOLATION OF D.C. HUMAN RIGHTS ACT WITH RESPECT TO RACE AND AGE**

56.     That Count Two incorporates by reference paragraphs One through Fifty-Five of the Complaint.

57.     That in violation of D.C. CMPA, DCPS has engaged in removing employees on the basis of age and race and replacing them with others based upon race and age in violation of D.C. Code § 2-1401, 2-1402.11.

**COUNT THREE: WRONGFUL DISCHARGE**

58.     That Count Three incorporates by reference paragraphs One through Fifty-Seven of the Complaint.

59.     Each of the Claimants had been an administrator of DCPS for five ("5") or more years.

17

60.     Complainants' performance evaluations do not coincide with the process and reasons given for their respective terminations.

61.     Instead of complying with DCMR, CMPA, and CDCR 5-520, et seq., DCPS developed a plan to execute a mass firing of Plaintiffs, incumbent DCPS school administrators, from their positions of employment for arbitrary, capricious, and illegal reasons having nothing to do with Plaintiffs' respective competency, past performance, talent, skills, dedication, and other like qualities, capabilities, and aptitudes.

62.     DCPS' actions in effecting a premeditated "mass firing" of the Plaintiffs and their surreptitious and dishonest actions supportive thereof were contrary to and in violation of public policy, the DC CMPA, CDCR 5-520, et seq., and the Collective Bargaining Agreement ("CBA").


**COUNT FOUR: DEFAMATION AND BUSINESS DEFAMATION**

63.     That Count Four incorporates by reference paragraphs One through Sixty-Two.

64.     DCPS executed a public campaign to tarnish the Plaintiffs' careers and ruin their reputations nationally and in the specific communities wherein Plaintiffs were employed as administrators, by issuing statements (implicit and explicit) to the media and in public meetings that the Plaintiffs were responsible for causing their schools to be "under-achieving schools."

65.     DCPS intentionally executed a campaign to ruin the Plaintiffs' business reputations by making false accusations that they had engaged in misconduct that justified their dismissals.

18

## COUNT FIVE: CIVIL CONSPIRACY

66.    That Count Five incorporates by reference paragraphs One through Sixty-Five.

67.    DCPS engaged in a predetermined plan to dismiss Plaintiffs due to race, age, and other surreptitious and illegal reasons, including unfair and untrue allegations of incompetence and lack of professional skills in order to wrongfully disallow them to compete for positions for which they qualified and to wrongly deprive them of a fair opportunity to remain in or compete.

## COUNT SIX: VIOLATION OF FEDERAL RETIREMENT LAW (ERISA)

68.    That Count Six incorporates by reference paragraphs One through Sixty-Seven.

69.    DCPS intentionally interfered with their retirement benefits by forcing the Plaintiffs out of their respective positions, causing them to seek early retirement, involuntary retirement, or reduced retirement benefits from DCPS.

**Wherefore the premises considered, the Plaintiffs acting as a Class pray** that this Court grant judgment to Plaintiffs:

(a). in the amount of Fifty Million ($50,000,000.00) Dollars for compensatory damages for lost wages and lost benefits (including medical, health, vacation, sick leave, retirement, and all other applicable benefits);

(b). emotional distress damages in the amount of Thirty-Four Million Dollars ("$34,000,000.00");

(c). reinstatement of their respective employment positions as administrators;

(d). promotions to the administrative positions they would have been in, but for the

19

DCPS' wrongful interference with their respective employment contracts, with back pay;

(e). attorney fees, costs, and expenses of litigation;

(f). an order enjoining the Agency and the Defendants from further Acts of

discrimination, abuse of process, and wrongful interference with employment contracts,

retirement benefits, et al.

Respectfully submitted,


John F. Mercer, Esq.
Bar # 184549
Mercer Law Associates, PLLC.
1629 K Street, N.W., Suite 300
Washington, D.C. 20036
Telephone:  202.349.1686
Mobile:  240.535.8758
Email: jmjmercer@aol.com
Attorney for the Plaintiffs

20

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial in this matter pursuant to D.C. Sup. Ct. R. 38(b) and

Fed. R. Civ. P. 5(b).

John F. Mercer

EXH 1

**Affidavit and Statement of DCPS Class Claimant**

## DR. MARY Q. GRANT

I, Dr. Mary Q. Grant, former principal of Takoma Educational Center for grades Pre-K through 8, have been/was employed with the District of Columbia Public Schools ("DCPS") for a total of 28 years and 1 months. I am 55 years old, and have the following educational background.

I was initially employed with DCPS as a Science Teacher at Brown Junior High in 1978 (grades 7-9) and later a Health and Physical Education Teacher at Scott Montgomery Elementary and Barnard Elementary (grades K-6). In 1982, I reported to Lincoln Junior High School as a Science Teacher later I was selected for the Administrative Intern Program in 1988 under the leadership of Dr. Floretta Dukes McKenzie Former Superintendent of DCPS. The intern program prepared me for the leadership for the Local School and Central Administration after a full year of training.

My training and knowledge focused on management, budgeting, instructional programs, personnel issues, school facilities, and implementation of other educational programs. In additional I have qualifications that include:

- Experienced in training in the development of projects involving fact-gathering, analysis, testing, and evaluation.
- Ability to lead and direct a multidisciplinary workforce in planning and conducting highly sensitive and complex reviews or studies focusing on major management challenges.
- Supervising and evaluating instructional and non-instructional staff.
- Promoting an educational environment that encourages change and conflict resolution.
- Using technology for effective school management.
- Curricular decisions driven by data and best practices.

1

EXH 1

- Instruction and assessment appropriate for teaching and learning styles, and student needs.
- Professional development that focuses on improving student learning.
- Budget planning and resource allocation for local school operation and hiring of staff.
- Direct and maintain total facility management.
- Mediating concerns of students, staff, parents and the community.
- Developing a positive district climate and culture.
- Understanding and relating to the various stakeholders in the community.

I have worked in the Washington, DC Metropolitan area as a public school administrator for more than twenty-five years and a public school teacher for five years. Using data to teach and to provide differentiated learning experiences in the classroom, to plan, implement and assess after school programs and to strategically plan professional development and parent training are only a few means by which I and my staff strived to establish, maintain and improve achievement and close the achievement gap.

## PROFESSIONAL EXPERIENCES
### District of Columbia Public Schools:

**Elementary/Middle School Principal**
District of Columbia Public Schools                **August 1998 – August 2008**

- Administered/supervised the instructional programming and provide instructional leadership for the staff, students and community
- Analyzed and disaggregated data to make instructional, programming and management decisions
- Observed and evaluated all faculty and staff continuously
- Site-based managed, to include full design and appropriation of school budget
- Established a safe and inviting climate conducive to all stakeholders
- Defined roles and expectations for school staff, students and parents collaboratively with all stakeholders
- Engaged in ongoing professional development as the instructional leader
- Established and maintained strategic partnerships with the community and other stakeholders

**Elementary School Assistant Principal**                **August 1992 – August 1998**

- Administered and supervised instructional programming and provided instructional leadership for the staff, students and community

2

- Observed and evaluated all faculty and staff
- Realigned and reorganized school resources to provide optimal learning opportunities for students and the most efficient assignments for the staff
- Prepared financial budgets and expenditures on behalf of the school, including School Operating Resources, Title I funds, School Improvement and Accountability funds and local fundraisers and contributions from business partners
- Monitored, observed and evaluated instruction continuously
- Established a safe and inviting climate conducive to all stakeholders
- Defined roles and expectations for school staff, students and parents collaboratively with all stakeholders
- Identified and implemented needed modifications
- Administered changes resulting from local and statewide decisions
- Engaged in ongoing professional development as the instructional leader; planned and facilitated professional development for faculty and staff

**High School Assistant Principal**                    **August 1988 – August 1992**

- Worked with all stakeholders at the direction of the Principal to maintain a safe and orderly environment with proactive discipline
- Worked collaboratively with parents, students, staff and community stakeholders
- Observed teachers at the direction of the principal
- Served as chairperson of the School Instructional Team
- Served as chair of the public relations team
- Continuously participated in personal professional development and conducted professional development training for teachers
- Wrote and presented the school safety plan
- Took on leadership and management responsibilities at the direction of the principal

**Administrative Internship**                    **August 1987 – August 1988**

- Worked collaboratively with parents, students, staff and community stakeholders
- Observed teachers at the direction of the principal
- Wrote and presented the school safety plan
- Presented workshops to parents on how to assist their children with reading and mathematics
- Took on leadership and management responsibilities willingly at the direction of the principal
- Served as chairperson for the Child Study Team
- Prepared/supervised the preparation of reports, records and all required paperwork appropriate to the school's operations

3

**Saturday School - Organized tutoring for parents & students**

- Worked cooperatively with parents, to include giving workshops to assist them in helping their children at home

**Science & Physical Education Teacher**                    **September 1978 – 1988**

- Planned, implemented and assessed instruction for students
- Students earned the highest scores in the department for two consecutive years
- Held conferences and workshops with parents to drive instruction and empower parents to assist their students with reading and literature assignments at home
- Held athletic study hall for athletes and cheerleaders
- Forensics team co-sponsor
- Taught summer school and coordinated summer programs
- Served on division-wide Curriculum and Instruction Committees annually

**Educational Credentials**

- Virginia State University  -  Health & Physical Education  (B.S.)
- Howard University – Administration & Supervision (M.Ed)
- Harvard Summer Institute (Continuing Education)
- Nova Southeastern University  -  Organizational Leadership (Ed.D)

During my tenure as an administrator with DCPS, I received the following

awards, honors, recognitions and achievements locally and nationally.

**Special Assignments, Recognition and Awards**

- Coordinator for the Principals Academy, 2004
- Commander's Community Service Award  2005
- Instructional Leadership Award  2005 - 2006
- Screened and interviewed candidates for the Principalship for the District of Columbia Public School System, 2005 – 2006
- Appointed by Superintendent of District of Columbia Public Schools to the Joint Advisory Council , Plan to Provide Services to English Language Learner Students, 2007 – 2008
- Community Service Award, Fourth District Police Precinct, 2007
- Alumnus, Breakthrough Principals' Academy, 2007 – 2008 academic year
- Technology Trainer for Administrators  & Staff  2004
- Appointed Assessment Trainer for Administrators  2005
- Staff Development Trainer

4

- Superintendent's New Teachers Committee  2000 - 2006
- Superintendents Summer Conference Committee 2000 - 2006
- Professional Principals' Evaluation Plan Co-Chair – Committee Member & Trainer Principals 2001
- National Mentor Principal – 2000 • 2007
- Facilitator at Conferences  -  NABSE, NCNW, Delta Sigma Theta Sorority, Inc., DCPS, Civic and Community organizations  1998 – Present
- National Alliance of Black School educators (NABSE) Board Member 2006 – Present
- Delta Sigma Theta Sorority, Inc – Life Membership
- Washington, DC Continental Society, Inc.  - President
- National Coach & Mentor Certification License  (NAESP 2003)
- State Representative for DCPS (NAESP) 2005 - 2007
- President (Past) DCAESP 2001 - 2005
- Outstanding Leadership Award  2004
- Oxford University – Superintendent's Round Table in London  2003
- Educational International Travel – France Switzerland, Italy, Germany, etc.
- Superintendent's New Teachers Planning Committee  1999 – Present
- Superintendent's Administrative Evaluations Committee (Chair)  2003
- Presenter, Speaker and Trainer – Conferences & Universities

Throughout my tenure as an administrator, there was a system of evaluation for the position of principal which included standards and goals which allowed me to obtain an outstanding rating as a leader.   The evaluations were administered by the Assistant Superintendent.   Upon Michelle Rhee's take over evaluations were not given to me that final year.

I received notification of my termination from DCPS on May 5, 2009.  The reason given for the termination was I was not the right fit for that school.  Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least, questionable.  I was never given notification that my

5

performance as principal was unsatisfactory.  The agreement between the CFO and DCPS states that individuals would be provided assistance to make the necessary improvement.  Also supplies and building repairs would be made at the local school to build a better school climate and that never happened.

After Michelle Rhee became Chancellor of DCPS, rules and regulations were violated, budgets were unfairly distributed to schools and Federal funds illegally sent.

### *Incidents*

- Often principals were verbally attacked doing administrative professional development meetings.  Principals were ordered to sit in a location designed by Rhee separating the local school administrators from individuals that they felt were not their selective group of principals.
- Hired consultants would make comments to us stating that it's this way or the highway during professional development meetings.
- September 2007 principals were required to meet with Rhee for a one on one meeting.  She informed the media that it was a wonderful opportunity to meet with each person in order to meet the school need and support. Most principals were attacked about their test scores, attendance, school climate, incident rate among students, etc.   Some principals were very upset by the greeting they received.  Rhee stated to me that her concern with me was political it had nothing to do with academics and how I successful ran the school.  Present was Richard Ballard, Instructional Superintendent and her secretary.

6

- The Takoma ANC Commissioner complained about the field lights not being on at night to help brighten the community by way of e-mail I responded by thanking her and letting her know that there was a budget cut and maybe the city had decided to cut them off to save money since the schools had just been informed that all budget money was taken sway.  The commissar e-mailed Rhee about the cut in the budget and wanted answers.  Rhee found out about it and attacked me by way of e-mail letting me know that I should not have told them about the budget cut.

- I received call from Francisco Millet's office (Instructional Superintendent) on May 5, 2008 at 2:00 P.M. to meet with him.  Present was Peter Weber the Director of Human Services.  I had no prior knowledge of that meeting when I was told that I would not be reassigned as principal for the 2008-2009 school year.  No one would tell me the reason why and that it was the CEO power let anyone go when she felt the need.  I have never had a discipline letter of reprimand or a letter for need improvement.

- Millet took me to the side to say several things (1) don't let them fire you, just leave (2) that he would testify under auth regarding statements made by Rhee even when the supervisor disagreed with the removal of principals and (3) comments made by Rhee about individual principals that she wanted to get rid of because of age and just because she did not like them.

- A week later Mr. Millet was removed because he supported a principal in the Washington Post who was under attacked by Rhee.

- Millet never met with me regarding my evaluation.

7

- My dismissal letter date was June 30, 2008.  I am the only principal that was dismissed with retreat rights that was placed in a teaching position.  The strategy to get rid of me was also due to the fact that principals looked up to my leadership and therefore again they wanted to use me as an example and move me out.

- I wanted to exercise my retreat right as stated in the letter respond in 5 days.  I was denied a right to apply placement in any administrative position.  The letter also stated that I was to contact Mr. Schakell in HR for placement and retreat rights and that we had to find a vacant position in a school ourselves as teachers.  I was told I could not apply for an Assistant Principals position or any other position.  I identified a vacant position at Takoma as science teacher but was denied.

- Mid-Year evaluation indicated I was on target.

- At the being of the school year I was asked by the Director of Student Services (Dr. Diane Powell) to make a presentation to all schools on my success with student attendance.

- One of Rhee's strategies is going to the homes of any individual person that would host her to talk about how she planned to remove the principal and parents would inform the school of these secret meetings.

- My health became very bad and my doctor made strong recommendations that I go on leave which I ended up doing.

- Comments in the media by Fenty and Rhee destroyed my opportunity to move up in another positions socially as well as my work career.

8

- I was also denied medical leave and directed to report back to work after providing all medical documentation but later after receiving legal assistance I was able to take leave during school year 2008 – 2009.
- I began having problems with money that was due to me.  Including Rhee attempts to have us to retire but interfering with my attempt to obtain another job in another state.
- Additional I as well as my colleagues' experienced problems getting money/checks that was due to us.
- After applying for several jobs and the school district was interested and informed me of such Rhee blocked our/my attempts to get those jobs.
- It is my belief that after the filing of this document that there will be another attempt to remove me from DCPS.

After notifying and meeting with the Council of School Officers, American Federation of School Administrators-Local 4/AFL-CIO regarding non-reappointment issues as a group, the Representatives informed us that the Union had done all it could to pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C. Public Schools.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information.  At no time did I give written or oral consent for DCPS to share documents or information contained in my personnel file.

9

After I was terminated, DCPS continuously published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools.  I feel these statements were damaging to my reputation as evidenced by my career record, as well as the performance evaluation ratings issued by DCPS.  These statements have also affected my ability to find work or be reappointed to an administrative position in the United States.

I have copies of letters and documentation of many events and communications that I will forward after have an opportunity to pull them together (asps).

STATE OF
MARYLAND
PRINCE GEORGE'S Co.

**Name of Potential Claimant**

I, Mary Q. Grant, swear or affirm that this statement of 10 pages is true to the best of my information and belief.

Signed before me this 26 day of August, 2009.

Notary Public

My commission expires *11-1-2010*

10

EXH 2

Affidavit and Statement of DCPS Class Claimant, Marta Guzman

I, _Marta Guzman, previously, Principal of Oyster Bilingual; currently Oyster-Adams Bilingual, (Grade Unknown) have been/was employed with the District of Columbia Public Schools ("DCPS") for a total of _____five___ years and ___0____ months. I am _59_____ years old, and have the following educational background.

I have a Master of Arts Degree in Education (Supervision and Administration) from San Jose State University, in California. I also hold a Bachelor of Arts Degree in Spanish Literature from the University of the Americas in Puebla, Puebla, Mexico. Additionally I have completed 12 credit hours in Linguistics at George Mason University and 12 credit hours in Gifted and Talented Education. I hold an Administrative Services Credential/K-12 from the District of Columbia Public Schools.

I was initially appointed as an administrator by DCPS on August 19, 2002. This is the only position that I held in the system. The promotion occurred when I was given the responsibility of principal at both the Oyster campus and the Adams campus and growing the dual language immersion program to include the middle school; thus, having the responsibility of two campuses, K-8 school.

When I was appointed as principal of Oyster Bilingual and then Adams campus, the written standards of performance applied to the position included 7 Standards of Leadership. The documents listing the standards and my final evaluations for the 5 year employment period are attached.

During my tenure as an administrator with DCPS, I received the following awards and distinctions. 2004 Latino Leadership in Education Award given by the Council of Latino Agencies and the Mayor's Office on Latino Affairs. I also had the honor of

1

EXH 2

achieving the National Blue Ribbon School Award in November, 2006. We received this award because the data demonstrated outstanding academic achievement during a three year period (during this time I was serving as the principal at Oyster Bilingual).

Throughout my tenure as an administrator, there was a system of evaluation for the position of principal, which included site visits mid-year ratings and end of year ratings. The system provided for a certain number of points to be given for each standard met. My evaluations are attached. The evaluations were administered by the Assistant Superintendent assigned to the cluster. The following provides information about the name, title, grade of each of my assistant superintendents.

2002-2003 – Dr. William Whilhoyte, Assistant Superintendent, Cluster II from August – November, 2002

2002-2003 – Dr. John McCoy, Assistant Superintendent

2003-2004 – Dr. John McCoy, Assistant Superintendent

2004-2005 – Francisco Millet, Assistant Superintendent

2005-2006 – Patricia Tucker, Assistant Superintendent

2007-2008 – Francisco Millet, Assistant Superintendent

The result of my ratings and evaluations showed outstanding and very effective depending on the year. I have attached the results of all ratings and evaluations during my respective tenure w/ DCPS.

Also as an administrator, I was issued adverse employment actions consisting of one reprimand issued by Francisco Millet for tardiness in arriving to a meeting. This was the only action that was ever filed against me during my tenure.

2

I received notification of my termination from DCPS on May 5, 2008.  The reason given for the termination was a notice of non renewal that stated Michelle Rhee's decision to not reappoint.  Copies of your notification of termination/ removal/ determination not to reappoint attached.)

After notifying and meeting with the Council of School Officers, American Federation of School Administrators-Local 4/AFL-CIO regarding non-reappointment issues as a group, the Representatives informed us that the Union had done all it could to pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C. Public Schools.

At no time did I give written or oral consent for DCPS to share documents or information contained in my personnel file.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least, questionable.  After I was terminated I received a phone call from a neighboring school district.  I was told that I would be scheduled for an interview—when I didn't receive a call back I called to ask and was told that if they were interested they would contact me.  I was never contacted.  I then began to train for a consultant position.  After completing most of the training I was told that I would be called if they determined that a position was available in the Washington Area. I was not called.  When I called to inquire I was told that they would contact me in the future if I was needed.  During the time of both of these actions there were articles that appeared on the web as well as in the Washington Post that specifically addressed me as having been "fired".  They made reference to "the Chancellor dismissed the principal of her children's own school.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information.  I am aware of the fact that my personnel file did not contain my evaluations nor the letters of support that were sent in by the parents.  When I asked if

3

there was another file at the Cluster office I was told that each employee has only one file. I asked where the missing documents were and was told they were "lost".

After I was terminated, DCPS published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools. I feel these statements were damaging to my reputation as evidenced by my career record, as well as the performance evaluation ratings issued by DCPS. These statements have also affected my ability to find work or be reappointed to an administrative positions. I have inserted evidence of publication of your respective termination and the reasons given for the termination. These statements have affected my ability to find work as an administrator or be reappointed with DCPS.) I have submitted applications to the following: Commonwealth of Virginia, State application, Rosetta Stone, Heritage Education, Educational Testing Service Kaplan Learning, Nobel Learning Communities, Northern Virginia Community College, TeachScape, Victoria Trans-cultural Clinical Center. In addition, I have attempted to work with FOCUS in the development of a Charter School, and I have also sent letters to serve as a Multi-Lingual Consultant in the area of second language learning. The continuous comments made my Michelle Rhee to the public have damaged my reputation, and made it impossible for me to find employment.

4

_____
**Name of Potential Claimant**

I, _Maria Guzman_ (insert name) swear or affirm that this statement of ≤ ___ pages (insert number of pages) is true to the best of my information and belief.

Signed before me this 2 7 ___ day of August, 2009.

_____
Notary Public

My commission expires _____

SAIRA BOONG
Notary Public
Commonwealth of Virginia
7013175
My Commission Expires Dec 31, 2010

5

EXH 3

### Affidavit and Statement of DCPS Class Claimant,
Richard L. Patterson

I, Richard L. Patterson, Principal, River Terrace Elementary School  was employed with the District of Columbia Public Schools ("DCPS") for a total of  11  years and  6 months. I am 62 years old, and have the following educational background

M.A. Educational Administration and Supervision   University of the District of Columbia                                                                    •

B.S.  Elementary Education   District of Columbia Teachers College

I was initially employed with DCPS as a Teacher/ Elementary (probationary), Class 15-Teachers Salary Act, Group A/ Step 1  Salary: $7,800

Date of Initial Employment: September, 1970   Taught mathematics, reading, science, and social studies to Sixth Grade Students.

I left D.C. Public Schools employment in February, 1973 to work in the private sector. I returned to DCPS employment  as an administrator on August 18, 1999. I was initially appointed as an elementary school administrator and assigned to Janney Elementary School. I remained at Janney until June, 2001.  In July, 2001 I was assigned to River Terrace Elementary School where I remained until my non-reappointment effective July 1, 2008.

When I was appointed as  Principal, there were written standards of performance applied to the position. I do not have copies of those standards from the 1999-2000 school year. The identified performance targets for the 2000-2001 included:  Academic Achievement (50), School Climate (5), Leadership (10), Parent and Community Involvement (10), Human Resource Management (15) and Fiscal Resource Management (10).  For the 2004-2005 school year the standards for principal evaluation were revised: I. Leadership for Instruction (28), II. Leadership for Organization Management and Accountability

1

EXH 3

(20), III. Leadership for School Climate (16), IV. Leadership for Professional Development (16), V. Leadership for Parent and Community Involvement (16), VI. Leadership for Effective Communication (12), VII. Leadership for Special Education (12). The numerals represent the maximum number of points an administrator could earn.

Throughout my tenure as an administrator, there was a system of evaluation for the position of <u>Principal</u>, which included: Standards for Principals, Indicators to Support the Standards, Self Assessment completed by the Principal in the Fall and Spring, Review of Expectations, Goals/Plans in a Pre-appraisal Conference with the Assistant Superintendent (Fall of the Year), Principal Achievement Plan/Local School Improvement Plan, Mid-year Review of Accomplishments in Conference with the Assistant Superintendent, Plan of Improvement (as needed), End-of-the-Year Evaluation in Conference with the Assistant Superintendent and Monitoring Performance Criteria – Site Visits and Supporting DocumentationThe evaluations were administered by the assistant superintendents or instructional superintendents, the individual responsible for administering my evaluation during the 2007-2008 school year was Ms. Barbara Adderley, Instructional Superintendent. The result of my ratings and evaluations showed <u>Meets Expectations</u>. Evaluation ratings:

| | | | |
|---|---|---|---|
| 1999-2000 | Satisfactory | 2003-2004 | no documentation |
| 2000-2001 | Satisfactory | 2004-2005 | Effective |
| 2001-2002 | Satisfactory | 2005-2006 | Very Effective |
| 2002-2003 | Marginally Satisfactory | 2006-2007 | Meets Expectations |
| | | 2007-2008 | Meets Expectations |

Note: I do not have documentation for the school years :1999-2000, 2001-2002, 2003-2004, and 2006-2007. No final evaluation conference was held with me for

2

the 2007-2008 school year. The End-of-Year Evaluation document bears the instructional superintendent's (Barbara Adderley) signature only.

I received notification of my termination from DCPS on <u>May 5, 2008</u> . I was notified on that date by telephone call from Ms. Barbara Adderley 's administrative assistant to report to Ms. Adderley's office at 4 pm. No explanation or reason was provided for the meeting. Upon arrival, I met with Ms. Adderley and a representative from Chancellor Michelle Rhee's office. I was handed a letter to read which notified me of Chancellor Rhee's decision not to reappoint me to the position of principal with the DC Public Schools for the 2008-2009 school year, effective June 30, 2008.  No reason was given for the termination.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least, questionable.  During the course of a principal's meeting led by Ms. Adderley she advised those principals present that there was a possibility that some individuals would not continue as principal for the next school year (2007-2008). After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information.  The principals evaluation process was not adhered to. The final evaluation conference was not held and no verbal statement was made as to my end-of-year rating. I was terminated without discussion/review of performance for the school year. Ms. Adderley held principal selection interviews at River Terrace while I was actively carrying out my responsibilities as principal. This was humiliating and reflected Chancellor Rhee's attitude that non-returning principals were no longer of consequence or valued. After I was terminated, DCPS published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools.  I feel these statements were

3

damaging to my reputation as evidenced by my career record, as well as the performance

evaluation ratings issued by DCPS.  These statements have also affected my ability to

find work or be reappointed to an administrative positions.

Richard L. Patterson
Name of Potential Claimant

I, Richard L. Patterson, swear or affirm that this statement of   4   pages is true to
the best of my information and belief.

Signed before me this  24th  day of August, 2009.

Notary Public

My commission expires   8/21/12

EMMY E. FRENZ
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES 8-21-2012

4

EXH 4

## Affidavit and Statement of DCPS Class Claimant,  Jacqueline Williams

I, Jacqueline Williams, Interim Principal, Grade 6 Step 5 was employed with the District of Columbia Public Schools ("DCPS") for a total of 29 years and 9 months. I am 56 years old, and have the following educational background includes a B.A. from Howard University, M.A. from Trinity College, and Certificate of Advanced Graduate Study from Howard University.

In September 1978, I was initially employed with DCPS as an ET-15 Step 1, Teacher of Mathematics and assigned to Sousa Jr. High School. My responsibilities in this position includes: planning and developing a course of study in Algebra and Geometry according to curriculum guidelines of school district; tailored lesson plans (short and long term) for individual students' levels; used a repertoire of effective instructional strategies to support student achievements; planned and prepared the organization of the classroom; monitor student progress and potential; communicate clearly; build relationships with students and parents;  attended faculty meeting, PTA meetings, staff development workshops; submitted students' grade and attendance and performed related duties as required. I became permanent after the probationary period ended and was promoted/transitioned to the position of ET-15 Teacher of Mathematics at Eastern SHS in 1988. Shortly thereafter, I became the Chairperson of the Mathematics Dept. and Coordinator of  Venture in Education at Eastern SHS SY'90-'91 and SY'91-'92. After that experience I was awarded a position as an Administrative Intern at Wilson HS for SY'97-'98.

p 2

EXH 4

On August 24, 1998, I was initially appointed as an administrator by DCPS on August 24, 1998 as Acting Assistant Principal at Wilson HS in the same capacity as Assistant Principal at Wilson HS in 2000. However on November 1, 2004, I was appointed Acting Principal at Eastern SHS and I requested to return to Wilson HS for the SY'06-'07. I was appointed Interim Principal at Wilson HS for SY'07-'08.

In my appointed as Assistant Principal of Wilson HS, Acting Principal at Eastern SHS, and Interim Principal at Wilson HS the written standards of performance applied to the position included: Standard 1: Leadership for Instruction; Standard 2: Leadership for Organization, Management and Accountability; Standard 3: Leadership for School Climate; Standard 4: Leadership for Professional Development; Standard 5: Leadership for Parent and Community Involvement; Standard 6: Leadership for Effective Communication: and Standard 7: Leadership for Special Education. Chancellor Rhee asked for a guarantee on the Adequate Yearly Progress Target (AYP) percentage increase of students Proficient or above in Reading and Math.

During my tenure as an administrator with DCPS. I received the following awards and distinctions for SY'04-'05: Certificates for untiring commitment to the students of Eastern SHS; appreciation for hosting the January Superintendent's Monthly meeting; and DCSTARS training. For SY'05-'06: Certificates for celebrate National Women's History Month; US Dept of Justice certificate of appreciation; FBLA of appreciation; appreciation from DCALA; Reading Across The Curriculum Project, and appreciation from NBCSL.

Throughout my tenure as an administrator, there was a system of evaluation for the positions of Acting Principal, Assistant Principal and Interim Principal, which included Pre-Conference, Mid-Year Evaluation, and Annual Evaluation. The evaluations were administered by Asst. Supt for Acting Principal and Interim Principal and the Local School Principal for the Asst. Principal position. Mrs. Maria Tukeva, Asst. Supt for SHS was the evaluator when I was Acting Principal at Eastern SHS; Dr. Stephen Tarason was the evaluator when I was Assistant Principal at Wilson HS, and Ms. Patricia Tucker, Asst Supt for Div. 5, was the evaluator when I was the Interim Principal at Wilson HS. The result of my evaluations reflected the following ratings for my last three years with DCPS SY'05-'06 ME (Meets Expectations) SY'06-'07 none given and SY'07-'08 Mid-Year ME(Meets Expectations) no final evaluation given.

Also as an administrator, I was issued adverse employment actions: None. I received notification of my termination from DCP on May 5, 2008. I was informed to report to Ms. Tucker's office. Ms. Tucker informed me that I was not reappointed as Principal at Wilson HS and I would be terminated effective June 30, 2008, however, I could exercise my retreat rights. I asked if I would be able to return to my last position as an Assistant Principal. She looked at the HR representative and was informed that I could not. After notifying and meeting with the Council of School Officers, American Federation of School Administrators – Local 4/AFL-CIO regarding non-reappointment issues as a group, the Representatives informed us that the Union had done all it could to

p. 4

pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C.

Public Schools.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred,

which I believe to be wrongful, or in the very least questionable. There was no written

justification for non-appointment, no formal end of the year evaluations done.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or

procedures were violated as to performance evaluations by DCPS and distribution of

personnel information. At no time did I give written or oral consent for DCPS to share

documents or information contained in my personnel file.

After I was terminated, DCPS published statements alleging that the DCPS

administrators who had been terminated were ineffective and at fault for the

underperformance of students in their respective schools. I feel these statements were

damaging to my reputation as evidenced by my career record, as well as the performance

evaluation ratings issued by DCPS. These statements have also affected my ability to find

work or be reappointed to an administrative position.

*Jacqueline Williams*

Jacqueline Williams

I, Jacqueline Williams, swear or affirm that this statement of _5__ pages is true to

the best of my information and belief.

Signed before me this __27th__ day of August, 2009.

CHARLENE W. MARTIN
Notary Public, State of Maryland
Prince George's County
My Commission Expires July 14, 2012

g·d

Notary Public _Charlene W. Martin_

My commission expires _July 14, 2012_

_Notarial Certificate attached_

CHARLENE W. MARTIN
Notary Public, State of Maryland
Prince George's County
My Commission Expires July 14, 2012

pursue our concerns and/or change our status with Chancellor Michelle Rhee and D.C. Public Schools.

Subsequent receipt of the Notice of Termination, this/these incident(s) occurred, which I believe to be wrongful, or in the very least questionable. There was no written justification for non-appointment, no formal end of the year evaluations done.

After Michelle Rhee became Chancellor of DCPS, DCPS rules and regulations or procedures were violated as to performance evaluations by DCPS and distribution of personnel information. At no time did I give written or oral consent for DCPS to share documents or information contained in my personnel file.

After I was terminated, DCPS published statements alleging that the DCPS administrators who had been terminated were ineffective and at fault for the underperformance of students in their respective schools. I feel these statements were damaging to my reputation as evidenced by my career record, as well as the performance evaluation ratings issued by DCPS. These statements have also affected my ability to find work or be reappointed to an administrative position.

*Jacqueline Williams*

Jacqueline Williams

I, Jacqueline Williams, swear or affirm that this statement of _5_ pages is true to the best of my information and belief.

Signed before me this _27th_ day of August, 2009.

CHARLENE W. MARTIN
Notary Public, State of Maryland
Prince George's County
My Commission Expires July 14, 2012

g·d

EXH 5



**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

**Office of the Chancellor**
825 North Capitol Street, NE • 9th Floor
Washington, DC  20002-4232
Tel: (202) 442-4090 • Fax: (202) 442-5315
www.k12.dc.us

May 5, 2008

Re:  Notice of Non-Reappointment as
Principal for the 2008-2009 School Year

Richard Patterson
14314 ARCTIC AVE
ROCKVILLE, MD, 20853

Dear Richard Patterson:

I am writing to provide you with notice of my decision not to reappoint you to the position of principal with the District of Columbia Public Schools (DCPS) for the 2008-2009 school year. The action is effective at the close of business on June 30, 2008.

From now until June 30, 2008, you are expected to continue to perform your current duties as principal.  You will continue to be paid at your current salary and you will accrue both annual and sick leave.

DCPS will honor any valid retreat rights that you may possess.  If you believe you have these rights and wish to exercise them, you must provide written notification by May 19, 2008 to Richard Shackell, Director of School Staffing, 825 N. Capitol Street, NE, 6th Floor, Washington, DC 20002.  We recommend that you obtain a receipt indicating that your written notification was in fact delivered.  Mr. Shackell may also be reached at (202) 442-4090.  However, you may only exercise your retreat rights by providing written notification to Mr. Shackell by May 19, 2008.  If you do not provide written notification by May 19, 2008, your employment with DCPS will terminate on June 30, 2008.

From now until June 30, 2008, your Instructional Superintendent will work closely with you and your school community with respect to budgeting, staffing, purchasing and other key actions necessary to successfully close-out the current school year and position your school for a smooth school opening in August.  To this end, your Instructional Superintendent will share with you a list of transition projects which must be completed prior to June 30th.  Your Instructional Superintendent will also work with you to notify your school communities that there will be a change in leadership at your school for the 2008-2009 school year.

Your Instructional Superintendent will also work with you to arrange for the return of all school property in your possession, including but not limited to all building keys, office keys, passwords

EXH. 5

or account codes. You will be required to return this property prior to June 30, 2008 as determined by your Instructional Superintendent.

If you have any additional questions related to the transition of your school, please contact your Instructional Superintendent. Questions related to retreat rights should be directed to Mr. Shackell as specified above. Any other questions related to employment benefits to which you may be entitled (including health care under COBRA) should be directed to Jaininne Edwards (Jaininne.edwards@dc.gov or 442-5385, HR Specialist).

Thank you for your service on behalf of the children of the District of Columbia Public Schools.

Sincerely,

Michelle A. Rhee
Chancellor



**PERSONNEL ACTION**



| Transaction Code:  888 | | ▲ | Originating Agency: GA - Public Schools | |
|---|---|---|---|---|

| SSN | Employee | | Salutation | Date of Action | Effective Date |
|---|---|---|---|---|---|
| 218482264 | PATTERSON, RICHARD L | | Mr | 6/30/2008 | 6/30/2008 |

| Department | Address | | DOB | Physical Handicap | Vet Pref |
|---|---|---|---|---|---|
| Public Schools | 14314 ARCTIC AVE<br>ROCKVILLE, MD 20853 | | 02/04/1947 | 4 | 0 |

| Nature of Action | NTE Date | Authority | Employment Date |
|---|---|---|---|
| INVOLUNTARY SEPARATION | | Title 5 DC Municipal | 08/18/1999 |

| Service Comp Date | DC Service Comp Date | Fegli-R | Fegli-O | Health Benefits |
|---|---|---|---|---|
| 08/18/1999 | 08/18/1999 | 1 - Covered | | 2G2 |

| From Title and Number | Pay Plan | Series | Grade | Step | Salary | Time Service(TOD) |
|---|---|---|---|---|---|---|
| PRINCIPAL,ES | ET | 012004 | 61 | 06 | $101,725.00 | 80 |
| 0108772 | Org Unit | PROGRAM DEVELOPMENT | | | | |
| | Org Code | 71100306 | | | | |

| To Title and Number | Pay Plan | Series | Grade | Step | Salary | Time Service(TOD) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | Org Unit | | | | | |
| | Org Code | | | | | |

| Pay Group | Retirement | Service Code | CBU |
|---|---|---|---|
| B2 | TEACHER 8% | K02 | PAD |

| Employment Type | Position Type | Termination Type | | | | | |
|---|---|---|---|---|---|---|---|
| FULL - PERMANENT | EDUCATIONAL | 888 - INVOLUNTARY SEPARATION | | | | | |

| Fund | Agency | Year | RespCenter | PDS | PSF | MRU | ARC | DRC | Activity |
|---|---|---|---|---|---|---|---|---|---|
| 100 | GA | 2008 | 5100 | | | 00 | AAFQ | 0304 | AZ05 |

☐ Subject to Satisfactory Medical Examination and X-Ray

☐ Subject to Completion of _____ Year _____ Period Beginning _____

**Remarks:**
To continue health coverage (TCC) Temporary Continuation of Coverage, you must enroll within 60 days from your effective date.
Thank you for your services with DCPS.

| Department Head | Date | Approving Officer  Signature | Approval Date |
|---|---|---|---|
| | 73008 | Dorianne Rotter | 6/30/08 |

λ

*Exhibit 1*     **EXH 6**

# CNN.com

🖶 PRINTTHIS

Powered by 🔵 Clickability

# '100 mph' school chief seeks 'radical changes'

- Story Highlights
- D.C. schools chief Michelle Rhee closed 23 schools, fired 36 principals in first year
- "We are always going to put the best interests of kids above the rights ... of adults"
- Critic says Rhee has created "more chaos and more dysfunction"
- Mayor backs his appointee, says when schools fail, "you need to shake things up"

**WASHINGTON (CNN)** -- Michelle Rhee says she runs at 100 miles per hour. As the chancellor of one of the nation's lowest-performing school districts, she says she has no choice -- too much bureaucracy to cut through, too many problems to fix after decades of neglect.

Rhee closed 23 schools in her first year as the head of the District of Columbia's public schools, fired 36 principals and cut 15 percent -- about 121 jobs -- from the central office staff. And she's making no apologies.

"I think it's that sense of urgency that has been lacking for far too long in our public schools," Rhee told CNN as she began her second year on the job in late August.

"We are always going to put the best interests of kids above the rights, privileges and priorities of adults."

- Watch fighting for "radical changes" »

Rhee said "radical" changes are needed because only 12 percent of the District's eighth graders are proficient in reading and just 8 percent are proficient in math, but was quick to add that they're already seeing improvement. She highlighted gains in elementary reading and secondary level math and reading in the past year that outstripped all of the four prior years put together.

An annual report card by Education Week, a newspaper that follows the nation's education system, earlier this year ranked the District's school system last, giving it a D+ overall and an F for student achievement in kindergarten through 12th grade. Those grades were based on data prior to Rhee's arrival.

"We need to see radical changes because the outcomes for kids that are happening right now are robbing them of their futures," said Rhee, a Democrat who supports President Bush's landmark education law known as No Child Left Behind.

- Watch Rhee describe telling employee: "You need to find another job" »

"We have scores of kids in this city who don't have the advocates that they need in their lives who are able to maneuver and jockey through the public school system. And we can't allow those children to languish in classrooms where teachers are not performing."

Her plan is ambitious: To completely transform the District's system within eight years for its 50,000 children. The plan focuses on top-down accountability, quantitative results like standardized test scores and, ultimately, working to close what she describes as "the achievement gap between wealthy white kids and poor minority kids."

"I think it's absolutely possible within an eight-year period," she said.   • Watch D.C. schools need "urgency" »

Rhee, who is Korean-American, is operating in a largely African-American district. It is a district where 57 percent of the students qualify for the free or reduced lunch program. Rhee said when she first arrived on the job in 2007 she first heard whispers of: "She's not from D.C., she's not African-American. Is she going to be able to relate to students and their

**EXH 6**

families?"

"I think that all dissipated quite quickly after I started getting out into the community and talking to people," said Rhee, a 38-year-old mother of two children attending local public schools. "I think one of the things that comes across very clearly is the fact that I'm very passionate about this work. I'm very focused on it."

But her plan to turn the failing school district on its head has met protest every step of the way, even from teachers.

"I think the people who view her aggressive actions as a positive thing, I think they are missing the boat because if it results in more chaos and more dysfunction, it's not the solution that we need," said Kerry Sylvia, a teacher at Cardozo Senior High School in her ninth year.

Sylvia says the District has seen far too many superintendents over the years and fears Rhee is just another in the long list of those who come in touting their reforms and then leave.

She does offer praise for Rhee holding teachers and administrators accountable for their lack of performance. However, she doesn't always care for Rhee's style, saying Rhee makes it seem like "there's a lot of lazy teachers."

"She's pitting adults against children. She couches things in terms of 'I'm not here to keep jobs for adults. I'm not here to keep people's paychecks. I am here for the children,' " Sylvia said. "Well, guess what? I'm here for the children too."

Before taking on her current role, Rhee founded The New Teacher Project, a non-profit organization that recruits quality teachers to high-poverty schools. Rhee holds a master's degree in public policy from Harvard University.

One of the most controversial programs Rhee has introduced is a joint venture between D.C. schools and Harvard that pays middle school students cash -- up to $100 a month -- for good behavior and attendance.

Rhee says such pilot programs have worked in other cities. She says the District's students have far too many bad incentives on the streets, from hustling to drug dealing, and need something to keep them focused.

"We're preparing them to understand that if you do the right thing, then good things will happen to you," Rhee said.

Some in the District are skeptical, including Clarence Cherry, a fourth-generation Washingtonian and father of five. He calls the cash and Rhee's overall direction misguided and reckless.

"It's a very dangerous game that she's playing with," he said.

But Cherry added, "I want to give her an opportunity to prove to me as a parent that she genuinely ... is here for the kids."

Others are fervent supporters of the new superintendent. Dr. Waheedah Shakoor, another teacher at Cardozo, has been in the District since 1979. He says he's been stunned at the amount of change that's happened in just one year under Rhee, from freshly painted walls to improved athletic facilities.

"Things that we've been asking for many, many years have come to fruition within just the last 12 months," Shakoor said.

Rhee is an appointee of Mayor Adrian Fenty, who has backed her every move.

"I had the highest expectations of Michelle Rhee when she came into the job. She has exceeded every expectation," Fenty said. "When you have a system that's been as underperforming as the District of Columbia public schools, you need to shake things up."

Rhee says she'll continue to shake things, working at break-neck speed to improve the education and opportunity for her students and urban students across the country as fast as she can.

All AboutWashington, DC  ·  Higher Education  ·  Education Issues

**Find this article at:**
http://www.cnn.com/2008/LIVING/wayoflife/09/09/dc.schools/index.html

Check the box to include the list of links referenced in the article.

Rhee Has Dismissed 2      ncipals                                        Page 1 of 3

EXH 7

# washingtonpost.com

## Rhee Has Dismissed 24 Principals
Thirteen Are at Schools That Do Not Meet 'No Child Left Behind' Mandates



By Bill Turque
Washington Post Staff Writer
Friday, May 16, 2008; B05

D.C. Schools Chancellor Michelle A. Rhee has fired 24 principals, including 13 who headed schools deemed to be failing under the federal "No Child Left Behind Act," officials confirmed yesterday.

Principals work on year-to-year agreements. About 15 to 20 principals are let go annually, according to the Council of School Officers, the principal's union.

This year's reshuffling has drawn heightened interest because it provides another window into Rhee's still-new leadership of the school system. The personnel changes also have added urgency because of the federal mandate to make major changes in 26 schools that have failed to show adequate progress under "No Child Left Behind."

Rhee has dismissed principals at five of the 10 high schools subject to restructuring under No Child Left Behind: Lynne Gober of Anacostia; Harriet Kargbo of Dunbar; Monica Taylor of Eastern; Gwendolyn Jones of Woodson; and Jacqueline Williams of Wilson. Five of the 11 middle and junior high schools facing overhaul will also have new principals -- Hart, Lincoln, MacFarland, Garnet-Patterson and Sousa -- as will three of the five elementary schools to be retooled: Moten, Stanton and Truesdell.

Ten other principals either retired or resigned.

Nelson Burton, principal of Coolidge High School and head of the principal's union, said that because principals serve at the will of the chancellor, there is no way to formally appeal the decisions. "There isn't much recourse there," Burton said.

Word of the dismissals began to circulate last week as principals received form letters over Rhee's signature informing them that their contracts would not be renewed.

Rhee and other school officials have steadfastly refused to discuss specific reasons for the dismissals, citing privacy and personnel regulations. In broad terms, she said yesterday that all the decisions are "absolutely" fair. She has been conducting an aggressive national advertising campaign to attract high-performing principals to the District.

Most of the principals who were not renewed either did not return phone calls or could not be reached for comment.

One of the few who would discuss the matter, Willie Bennett, principal of Hart Middle School in

EXH, 7

Southeast. said that Rhee is targeting older administrators. "Many of the people who were released were in the same predicament. Many of the people were older," said Bennett. who has worked for D.C. schools for 16 years, the last 10 at Hart as assistant principal and principal. Sixteen percent of the school's 508 students demonstrated reading proficiency on tests in the 2006-07 school year, according to school district records, down from 22 percent the year before.

Lucia Vega. principal of Powell Elementary. which is not targeted for changes under No Child Left Behind, said Rhee had a right to do as she wished. Vega said she is also dismayed because she submitted her resignation but was nevertheless listed as one of the principals fired.

Vega complained that during her five-year tenure she has received little support from administrators for a school where more than half the students are English-language learners and half receive free or reduced-price lunches because of their low-income status. In a 2007 Washington Post series on D.C. public schools, she talked about how she was forced to "warehouse" an incompetent literacy coach imposed on her by the central office.

"I just feel the system set us up," Vega, 54, said. "We do have a very failed school system. We all know that they promised us support and it was rarely given." She noted that plans for next year include major staffing increases. including an assistant principal. a full-time business manager, a full-time psychologist and a "functional" literacy coach.

Some of the leadership changes sparked controversy before they were formally announced. Some parents at Oyster-Adams-Bilingual School, where Rhee's two daughters are enrolled, were upset when they learned last week that Principal Marta Guzman would not be retained. Some parents said that Guzman's dismissal was engineered by a small group of parents who dined with Rhee. Other parents say there were serious problems with Guzman's leadership, including disorganization and poor communication.

View all comments that have been posted about this article.

**Post a Comment**

View all comments that have been posted about this article

You must be logged in to leave a comment  Login | Register

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post.

EXH 8



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N.E., Suite 4NW02F
Washington, D.C. 20507
(202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Toll Free (866) 408-8075
General Information (800) 669-4000

February 6, 2009

Mr. Richard Patterson
14314 Artic Avenue
Rockville, MD 20853

RE:   Richard Patterson v. DC Public Schools
      Charge Number 570-2008-02098

Dear Mr. Patterson:

This is to inform you that the EEOC has assessed the information received to date from you and the employer.  According to your charge filed with the EEOC, you allege that you were discriminated against because of your age. You allege the following:

      I was employed by Respondent from 1970 to 1973 as an Elementary Teacher. In August 1999, I was hired as a Principal. I was qualified to fill the position of Principal. All of my performance appraisals, with respect to my employment as a Principal, reflect that my work performance was either satisfactory or above. On 5/6/08, Chancellor Michelle Rhee informed me that I was being denied a reappointment as Principal for the 2008-2009 school year. I was notified that if I did not provide notification of my intent to exercise my retreat rights by 5/19/08, I would be terminated. I could not exercise my retreat rights. I was replaced by a younger, less qualified individual.

Below, I have summarized DC Public Schools' position statement as follows:

1) At this time, Respondent does not take issue to your statement concerning your performance appraisals.

2) Respondent concurs that all Principals who were non-reappointed were issued a letter from the Chancellor.

3) Supporting data shows that younger employees who were Principals were not treated any different. You were one of 33 Principals non-reappointed. Of that number, 28 were over the age forty and 5 were under the age forty.

4) DCPS Municipal Regulations gives to the Superintendent, now Chancellor, full authority to take all personnel actions of employees under her supervision and authority.

5) Respondent contends that your replacement is qualified and was subjected to a new and more rigorous process.

EXH. 8

6) For the above reason, Respondent maintains that the actions of the non-reappointment of Principals affected were actions taken with the best interest of the school system in mind, and was not an action taken to have a disproportionate adverse impact upon anyone regardless of age.

Once the Respondent articulates a non-discriminatory reason for its employment decision, the burden of proof rests with the Charging Party. This is your opportunity to provide information to rebut the Respondent's defense. If you have information which may lead to evidence to overcome Respondent's defense, please call me by **February 25, 2009**. I can be reached at (202) 419-0765 between 10:30a.m. and 7:00 p.m. Monday through Friday. If you reach my voice mail, please leave a message with a telephone number where you can be reached during those hours.

If I do not hear from you by **February 25, 2009**, a determination will be made based on the available information. If your charge is dismissed, you will be issued a Notice of Right to Sue which will allow you to file a private suit in federal court within 90 days of the Notice.

Sincerely,

Megan Hoppe
Federal Investigator

CC: E. Lindsey Maxwell II
    Intersect Law Group PLLC
    1425 K St., NW
    Suite 350
    Washington, DC  20005

Patterson v. DCPS - Charg   ). 570-2008-02098                                    Page 1 of 2

                                                                                 *EXH 9*

**From:** E. Lindsey Maxwell II, Esq. <lmaxwell@intersectdc.com>
**To:** megan.hoppe@eeoc.gov
**Cc:** rockvilric@aol.com
**Subject:** Patterson v. DCPS - Charge No. 570-2008-02098
**Date:** Thu, 19 Feb 2009 1:17 pm

Ms. Hoppe,

I am in receipt of the copy of your letter to my client dated 6 February 2009. As stated in your letter, once the Respondent articulates a non-discriminatory reason for its employment decision, the burden shifts to the Charging Party. Now that the Respondent has offered its statement with non-discriminatory reasons for its decision, you have requested that we provide information to rebut the Respondent's defense. We offer the following response.

1. We recognize and accept that the burden shifting analysis is the standard for which these cases are investigated and determined pursuant to McDonnell Douglas.
2. We accept items one and two as they relate to DCPS's statement.
3. The supporting documentation noted in item 3 provided to your office by DCPS reveals exactly what we are complaining about. DCPS terminated Mr. Patterson and 27 other principals over the age of forty while only terminating 5 who were under the age of forty. Mr. Patterson and other similarly situated principals have complained that they were terminated primarily based on their age (disparate treatment). However, in addition, based on these numbers, Mr. Patterson may be the victim of disparate impact discrimination as well. Furthermore, the reasons as to why the 5 principals were fired should be further investigated as we are aware that one or more were terminated for misconduct. Moreover, the EEOC should investigate further to determine the ages and backgrounds of those who replaced Mr. Patterson and his colleagues.
4. We agree that 5 DCMR gives the Superintendent the authority to not renew the term appointments of principals. However, it does not give Ms. Rhee the authority to use the regulation in a way which is discriminatory against employees based on age or any other protected class. We also doubt that Ms. Rhee has authority to use this regulation at all as she was appointed to the position of "Chancellor" not "Superintendent". The change in title was done by the DC Council for a purpose to exempt her from the same statutory authority which she is attempting to use now. Please note that the regulation specifically gives this authority to the Superintendent NOT the Superintendent's designee or any other person. Ms. Rhee is NOT the Superintendent of DC Public Schools.
5. DCPS claims that the replacement principals are qualified and subjected to a more rigorous process (we assume they mean selection process). First, by operation of logic, the replacement principals have far less experience than Mr. Patterson and his colleagues. Any educator will support the fact that principalship is qualified by experience. Furthermore, many of the replacement principals went through less of an interview and vetting process than their predecessors. Under Reeves v. Sanderson, in addition to his prima facie case, Mr. Patterson only needs to show "sufficient" evidence that the employer's asserted legitimate non-discriminatory explanation is false. In this case, the fact that the younger principals have less experience and have gone through less of a vetting process is more than "sufficient" evidence to rebut DCPS's defense.
6. Item 6 of DCPS's response is just a simple denial of the facts. The non-reappointment of the principals was not done in the best interests of the school system. Older, more experienced principals were fired to make room for younger less qualified employees.

We are eager to see this case move to mediation and/or for the EEOC to continue a deeper investigation. If we can be of further assistance please let us know. Thank you.


ELM

**E. Lindsey Maxwell II, Esq.**
Managing Partner
The Intersect Law Group PLLC                                        *EXH.9*

Patterson v. DCPS · Charge    . 570-2008-02098                      Page 2 of 2

1425 K Street, N.W.
Suite 350
Washington, D.C. 20005
(202) 587-2725 (p)
(202) 587-5601 (f)
www.IntersectDC.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately via the e-mail address and telephone number above, and delete the original message.

EXH 10

# Council of the District of Columbia
## Committee of the Whole
## Report

*mj* &£ ^ & ® ?°

f

The John A. Wilson Building        1350 Pennsylvania Avenue, N.W.                    Washington, D.C. 20004

To:  Members of the Council of the District of Columbia

From:  Vincent C. Gray, Chairman, Committee of the Whole

Date:        December 18, 2007

Subject:  Bill 17-450, the "Public Education Personnel Reform Amendment Act of 2007"

     The Committee of the Whole, to which Bill 17-450, the "Public Education Personnel Reform Amendment Act of 2007," was referred, reports favorably on the bill as amended and recommends its adoption by the Council of the District of Columbia.

### Statement of Purpose and Effect

     Bill 17-450 amends the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to provide the Mayor with the authority to reappoint all employees within the District of Columbia Public Schools (DCPS) to the Educational Service. This bill also provides the Mayor with the authority to remove any job tenure and appeal rights afforded by the "separation for cause" provision within the Merit Personnel System Act for non-excluded employees. The authority to remove job tenure and appeal rights will not apply to employees in a recognized collective bargaining unit, employees appointed prior to January 1, 1980, employees who are based at a local school or who provide direct services to individual students, or employees required to be excluded pursuant to a consent decree (collectively excluded employees). The authority afforded the Mayor in this legislation also applies to former DCPS employees who were transferred to the Office of the State Superintendent for Education (OSSE) and to the Office of Public Education Facilities Modernization (OPEFM). This legislation provides the affected employees with the option of accepting reappointment under the Mayor's new personnel authority, or, declining it, separating from service, and receiving severance pay in accordance with the law. Except for the Chancellor, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, all employees of DCPS and OPEFM and all employees transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 will be classified as Educational Service. This bill is the permanent version of emergency legislation that will be introduced by the Committee contemporaneously with the second vote on the permanent.

EXH 10

**Legislative History**

October 12, 2007                            "Public Education Personnel Reform Amendment Act" introduced by Chairman Gray at the request of Mayor Fenty

October 26, 2007   Notice   of   intent   to   act   on   Bill   17-450   published   in *D.C. Register*

October 26, 2007   Notice   of   public   hearing   on   Bill   17-450   published   in *D.C. Register*

November 2, 2007                      Public hearing on Bill 17-450

December 18, 2007   Committee   of   the   Whole   consideration   of   Bill   17-450

## Committee Reasoning - Background and Need

Bill 17-450, the "Public Education Personnel Reform Amendment Act of 2007," is the next legislative step in the process of reforming our public education system. As stated above, this bill seeks to provide the Mayor with the authority to reappoint all employees within DCPS to the Educational Service, and to remove any and all job protection and tenure afforded by the "separation for cause" provision within the Merit Personnel System Act for non-excluded employees. The authority to remove job tenure and appeal rights will not apply to employees in a recognized collective bargaining unit, employees appointed prior to January 1, 1980, employees who are based at a local school or who provide direct services to individual students, or employees required to be excluded pursuant to a consent decree. The authority afforded in this legislation applies to former DCPS employees who were transferred to the OSSE and to the OPEFM. This legislation provides the affected employees with the option of accepting reappointment under the Mayor's new personnel authority, or, declining it, separating from service, and receiving severance pay in accordance with the law. Except for the Chancellor, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, all employees of DCPS and OPEFM and all employees transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 will be classified as Educational Service.

Currently, §1-608.01 a of the Merit Personnel System Act, which creates the Educational Service, provides that employees within this service may only be separated from service for cause, and shall have the right to appeal any such decisions. This legislation seeks to remove that right, and provide the Mayor with the unencumbered authority to remove non-performing and under-performing employees. Not surprising, this has become a very controversial piece of legislation. Since direct authority of DCPS was transferred to the Mayor, pursuant to the Public

Education Reform Amendment Act of 2007, and probably for quite some time prior to that, the Central Office of DCPS has been widely portrayed as a place replete with poor performance. Indeed, during the hearing on Bill 17-450, the Chancellor testified that calls and emails are ignored and not returned, employees do not show up for work, and others take multiple 10-day absences. She stated that amongst the employees working in the Central Office there is a lack of urgency and customer service, and a lack of attention to detail. She also recounted instances where 1) an employee with diabetes was being charged for health care coverage, but for four weeks was unable to access treatment or obtain medications because of the ineffectiveness of Human Resources personnel; 2) a teacher had not received a pay increase for a promotion received during the summer; 3) a principal was unwilling to hire an aide for which she had the budgetary funds, because three of her teachers have not received paychecks since the beginning of the school year; and 4) a central office employee failed to accurately complete paperwork and process it in a timely manner, resulting in the District's obligation to pay nearly $500,000 for two youths to attend a private school outside of the District.

While no doubt these actions, or lack thereof, are egregious and illustrate a complete lack of a work ethic, they have been widely portrayed as representative of all DCPS employees, instead of illustrative of problem employees. The Committee agrees with the Chancellor that a system of accountability must be established within DCPS, as in all government agencies. But in pursuit of that essential goal, our zeal for excellence should not lead to a conclusion that everyone who works there is incompetent, just because they work there. We know that alongside poor and under-performers, are people who perform well within DCPS. As such, the Committee's primary concern in reviewing and revising this legislation was to ensure that in the course of finding a way to root out ineffectiveness and low performance, we create a fair and objective process.

At the forefront of the controversy surrounding this legislation, is the conversion of all employees within Educational Service and not excluded from this legislation, to an "at-will" employment status. "At-will" is a legal term of art, and though it is not defined in the District of Columbia Code, it is well defined by common law to mean that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all," or alternatively such an employment relationship may be "terminable by either party at any time for any reason." Councilmembers and witnesses voiced concerns that such a provision in the legislation would strip affected employees of any due process rights and place the District on a slippery slope of stripping all government employees of these rights.

The Chairman was particularly concerned about converting all non-excluded employees within the Educational Service to "at-will" employees. As a former Director of the Department of Human Services, he empathized with the need to have the unencumbered authority to terminate poor performers. As he stated in his opening statement, for managers, there are few things more debilitating than to follow a termination process that is protracted to begin with, only to have your action overturned, seemingly arbitrarily, by an outside entity that is not at all familiar with the operations of the organization or the individual's work ethic and performance, not to mention the detrimental effect that such a reversal of management's decision has on

3

organizational morale.  At the same time, as the District embarks on the most radical overhaul of one of our most important institutions, the Committee wants to ensure that the District keeps in its employ talented and dedicated employees.

During the November 2, 2007, hearing on this bill, there was considerable discussion about defining the term "at-will" to include an evaluative process. In fact, both supporters of the bill and dissidents alike agreed that whatever authority is ultimately given to the Mayor, a fair and transparent system of accountability must be established, thereby preserving due process rights. The Committee decided not to redefine the term "at-will" because of the unknown effects such a new definition potentially could have on employment relationships within the District of Columbia.  Instead, the Committee removed the term "at-will," and replaced it with the provision that any person appointed or re-appointed to a position within the Educational Service shall serve without job tenure. The Committee also provided the Mayor with the flexibility and authority to terminate without notice or evaluation any employee appointed to the Educational Service for less than one year, during that employee's probationary period, which shall last no longer than one year from the employee's date of hire. And, the Committee provided the Mayor with the authority and flexibility to make temporary and emergency appointments that do not confer the protections of permanent status employees. Finally, the Committee provided the Mayor with the authority to terminate without notice or evaluation, an employee who commits an egregious act, as defined by the Mayor. It is the Committee's belief that such authority and flexibility will permit the Mayor to demand accountability from Educational Service employees, and retain the highest quality and most dedicated employees.

Accountability, though, is a two-way street.  Management cannot hold Educational Service employees, or any employee for that matter, to a high standard of accountability, without setting expectations, delineating deliverables, and ensuring a transparent evaluative process. To that end, to ensure that an employee's termination is not arbitrary or capricious, the Committee provided the following: First, the Mayor must establish written job descriptions for each position within the Educational Service and a process for updating and maintaining current job descriptions. Second, all employees within the Educational Service may be terminated at the discretion of the Mayor. However, the Mayor may not terminate any employee once he has completed his one-year probationary period, until and unless that employee is provided with a written 15-day notice of separation, and has had at least one evaluation within the previous 6-month period, a minimum of 30 days prior to the issuance of such notice. This ensures that each employee will have at least an annual evaluation, be provided a minimum of 30 days for remediation of any issues, if applicable, and be provided a separation notice stating the reason for separation.  And third, each employee electing reappointment but subsequently terminated, also must be given a written 15-day notice of separation, provided that he has had at least one evaluation within the previous 6-month period.

The Committee included in its Print the original provision that provides a non-excluded employee currently appointed within the Educational Service the option of accepting reappointment without job tenure, or declining reappointment, separating from service, and receiving severance pay in accordance with the law.  The Committee also included the provision

4

that a non-excluded terminated employee, while retaining veteran preference eligibility, shall be separated without assignment, reassignment, or retreat rights, or rights to an internal or administrative review of the termination, except for review under the Human Rights Act of 1977, federal law, or common law. The Committee stresses that the Mayor's authority to appoint and reappoint to the Educational Service employees without job tenure does not apply to those employees in a recognized collective bargaining unit as of the effective date of this legislation, employees hired prior to January 1, 1980, school-based employees, or employees required to be excluded pursuant to a consent decree.

Even with these protections in place, the concern that providing the Mayor with the authority to appoint and reappoint employees to the Educational Service without the protection of job tenure could lead to a return to a spoils system, did not fall on deaf ears. In the October 17, 2007, edition of the *Georgetown Current*, the editors reminded us of the reasons for civil service protections for government workers, and that is to avoid severe problems of "the potential for appointees unqualified for their posts, and a lack of institutional memory or experience whenever a new official comes into office."[1] The editors recommended waiving the current rules for terminating an employee within the Educational Service for a finite period of two or three years.[2] The Committee believes that the Mayor urgently needs this authority. But it also shares the concern about providing this authority, arguably unchecked. As such, the Committee provides a reauthorization provision, requiring the Mayor to submit to the Council a 4-year assessment of the impact on public education of personnel reform pursuant to this bill, in 2012, coinciding with the Mayor's submission to the Council of a 5-year comprehensive evaluation of the public education system, pursuant to the Public Education Reform Amendment Act of 2007.

hi addition, the Committee made several other revisions. First, the Committee removed the term and definition of "Central Office Employee," and replaced it with a provision clarifying the applicability of the personnel authority to all non-school-based Educational Service employees except employees in a recognized collective bargaining unit, employees hired prior to January 1, 1980, and employees required to be excluded pursuant to a consent decree. Second, the Committee required the Mayor to submit to the Council within 180-days of the effective date of this legislation, a list of all employees declining reappointment and thus terminated, and those accepting reappointment, but subsequently terminated. The Mayor also is required to maintain a database of this information on an on-going basis. Third, except for the Chancellor of DCPS, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, the Committee classified all employees within DCPS and OPEFM, and all employees transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 as Educational Service. Fourth, the Committee required the Mayor to establish reduction-in-force procedures that include a prescribed order of separation based on District residency and veteran preference, priority reemployment consideration of separated employees, and job sharing and reduced hours if feasible. The Committee also included a provision that prevents an excluded employee or a non-school-based employee from being assigned or reassigned to replace a classroom teacher. The Committee emphasizes that these procedures are in effect when the

---

[1] Kennedy, Davis and Kain, Chris. *The Georgetown Current*, Wednesday, October 17, 2007.
[2] *Id.*

5

Mayor declares a need for a reduction in personnel due to a lack of funding or discontinuance of a department or function of an agency. Fifth, the Mayor is required to promulgate rules and regulations to implement the provisions of this legislation; the rules and regulations are subject to a 45-day period of Council review. Sixth, the Committee required the Mayor to request that the United States Office of Personnel Management authorize voluntary early retirement to employees in the Educational Service hired prior to 1987 and entitled to federal benefits. And seventh, the Committee included the permanent provision of a previously introduced Emergency Bill that provides the Director of the OPEFM maintenance authority.

## Impact on Existing Law and Section-by-Section Analysis

Section 1 states the short title of Bill 17-450.

Section 2 provides that employees appointed to a position within the Educational Service shall serve without job tenure, except certain excluded persons. The provisions of this section apply to all non-school based employees, who are not otherwise excluded from this paragraph, within DCPS, OPEFM, and OSSE. Non-excluded employees currently employed within the Educational Service, shall be re-appointed noncompetitively. Those employees declining the re-appointment shall receive 15-days written separation notice and severance pay pursuant to section 2409. Those accepting the re-appointment shall serve without job tenure. The Mayor must notify in writing each employee of his or her reappointment within 30 days of the effective date of this legislation. Each employee must accept or decline such reappointment within 10 days of receipt of the reappointment notice. Employees appointed within the Educational Service of DCPS, OPEFM, or OSSE, for less than one year shall be probationary employees for one year from the date of hire, during which they may be terminated without notice or evaluation. Following the probationary period, employees may be terminated provided they have been provided 15-days notice, have had at least one evaluation within the preceding 6 months, at least 30 days prior to the issuance of the separation notice. The Mayor may terminate any employee without notice or evaluation for committing an egregious act as defined by the Mayor. If an employee is terminated, he shall be separated without competition, assignment rights, re-assignment rights, retreat rights, or any right to an internal or administrative review of such termination, subject to any rights under the Human Rights Act, federal law, or common law. The Mayor must establish a recruitment program, a procedure for open competition, written descriptions for each position within the Educational Service and a process for updating those job descriptions. And the Mayor must provide a written copy of the relevant job description to each appointed and re-appointed employee. Appointments to the Educational Service must be made in accordance with the equal employment opportunity principles of Title VII. The Mayor is provided the authority to make temporary, emergency, and other time-limited appointments that do not confer permanent status. The Mayor is required to submit to Council, within 180 days of the effective date of this bill, a list of all Educational Service employees who declined re-appointment and were subsequently separated, and who accepted re-appointment, but were later terminated. The Mayor is required to maintain a database of this information on an ongoing basis. The Mayor is required to establish reduction-in-force procedures that include a prescribed order of separation based on District residency and veteran status, priority reemployment

6

consideration of separated employees, and job sharing and reduced hours if feasible. Neither an excluded employee nor a non-school-based employee can be assigned or reassigned to replace a classroom teacher. The Mayor may appoint 25 persons to the Excepted Service within DCPS. Each person appointed must becomes a District resident within 180 days of appointment and maintain District residency throughout the appointment. The Mayor will endeavor to ensure ward diversity with these appointments. Except for the Chancellor, the Director of the OPEFM, the Director of the OSSE, and Excepted Service employees, every employee within DCPS and OPEFM and every employee transferred from DCPS to the OSSE pursuant to the Public Education Reform Amendment Act of 2007 shall be classified as an Educational Service employee. Finally, no unit may be established if it includes employees who serve without tenure within the Educational Service of DCPS, OSSE, or OPEFM.

Section 3 provides that the Mayor promulgate rules and regulations to implement this act; the rules and regulations are subject to a 45-day period of Council review.

Section 4 provides that the Mayor shall request that the United States Office of Personnel Management authorize voluntary early retirement to employees in the Educational Services hired prior to 1987 and entitled to federal benefits.

Section 5 provides that the Mayor shall submit to the Council an assessment of this legislation, including a comprehensive list of employees terminated pursuant to it, and on September 15, 2012, an assessment of the impact this legislation has had on the progress in public education.

Section 6 amends the Public Education Reform Amendment Act of 2007, to provide the Director of the OPEFM maintenance authority on a permanent basis.

Section 7 adopts the fiscal impact statement in the committee report as that required by law.

Section 8 establishes the effective date for Bill 17-450.

**Fiscal Impact**

Attached is a copy of the Chief Financial Officer's fiscal impact statement on Bill 17-450, dated November 9, 2007. The Chief Financial Officer concludes that funds are not sufficient in the approved budget and financial plan to implement the proposed legislation. Specifically, the Chief Financial Officer concludes that $3,133,000 is a one-time, fiscal impact of this legislation - funds that are not available in the approved FY08 budget. However, the Mayor has submitted Bill 17-445, the "Fiscal Year 2008 Supplemental Appropriations Act of 2007" for Council approval, which among other things, requests funds for this personnel action. Once the Council approves Bill 17-445, there will be sufficient funds in the FY08 budget for this proposed legislation.

7

## Position of the Executive Branch

Michelle Rhee, Chancellor of the District of Columbia Public Schools testified on behalf of the Executive in support of Bill 17-450. Her testimony is attached to this report.

## Committee Action

The Committee of the Whole held a public hearing on November 2, 2007, on Bill 17-450, the " Public Education Personnel Reform Amendment Act of 2007," at which the following witnesses testified in support of Bill 17-450: Natasha Kalteis, Education Co-Chair Dupont Circle Citizens Association Education Committee, Ross Elementary School Parent; Anamaria Featherston, Education Co-Chair Dupont Circle Citizens Association Education Committee, Ross Elementary School Parent, LSRT Officer and Charter School Parent; Gabriella Savio, Ross Elementary School Parent, PTA Officer; Maureen Diner, Ross Elementary School Parent, LSRT Chair; Mary Siddall, Ross Elementary School Parent; Robert Vinson Brannum; Cherita Whiting, Ward 4 Education Council; Mary Levy, Director, Public Education Reform Project, Washington Lawyers' Committee for Civil Rights and Urban Affairs; Terry Goings, PTSO President, Calvin Coolidge High School; John Hill, Chief Executive Officer, Federal City Council; James Dinegar, President and Chief Executive Officer, Greater Washington Board of Trade; Barbara Lang, President and Chief Executive Officer, D.C. Chamber of Commerce; Steve Thompson; Maudine Cooper, President and Chief Executive Officer, Greater Washington Urban League; Max Salas; Githa Natarajan, 2007 DC Teacher of the Year; Lovell Saunders, Shepherd Elementary Parent and PTA Member; and Darren Woodruff, Shepherd Elementary Parent.

In addition, the testimonies of Frank Johnson, LTC, US Marines and Ross Elementary School Parent, and Peter Frampton, Ross Elementary School Parent, were read into the record. And, a letter in support of the legislation, signed by the following business leaders was submitted for the record: Dennis Bakke, President and CEO, Imagine Schools; Josh Bernstein, President, Bernstein Management Corporation; Katherine Bradley; John Castellani, President, Business Roundtable; Kevin Chavous, Partner, Sonnenschein Nath & Rosenthal, LLP; Neil D. Cohen, President, District Photo; William T. Coleman, Jr., Senior Partner, Senior Counselor, O'Melveny & Myers, LLP; Maudine Cooper, President and CEO, Greater Washington Urban League; Edmund B. Cronin, Jr., Chairman of the Board of Trustees, Washington Real Estate Investment Trust; Arthur B. Culvahouse, Jr., Chair, O'Melveny & Myers, LLP; Jack Davies, Founder, AOL International; Terry Eakin, Chairman, EYA; mark D. Ein, Founder and CEO, Venturehouse Group LLC; Raul Fernandez, Chairman and CEO, Object Video; George Ferris, Chairman of the Board, Ferris, Baker Watts, Inc.; Terence C. Golden, Chairman and CEO, Bailey Capital Corporation; John Hill, CEO, Federal City Council; James V. Kimsey, Founding CEO and Chairman Emeritus, America Online; Ted Leonsis, Vice Chairman Emeritus, AOL; Anthony Lewis, President, Verizon - Washington, D.C.; Jerry A. Moore, III, Chairman, Greater Washington Urban League; W. Russ Ramsey, Chairman and CEO, Ramsey Asset Management; Joseph E. Robert, Jr., Chairman and CEO, J.E. Robert Companies; Roger W. Sant, Chairman Emeritus and Co-Founder, The AES Corporation; Emily Talley, Senior Director, Community Relations, Capital One; J. Rock Tonkel, Jr., President and Chief Operating Officer, Friedman,

8

Billings, Ramsey Group Inc.; George Vradenburg, Executive Vice President ret.), AOL/Time Warner; Curtin Winsor, Chairman, Bank of Georgetown; Richard Woods, Senior Vice President, Corporate Affairs, Capital One Financial Corporation; Roderic L. Woodson, Esq., Partner, Holland & Knight, LLP; and Dennis Wraase, President and CEO, PEPCO.

The following witnesses testified against passage of Bill 17-450: Joslyn Williams, President, Metropolitan Council, AFL-CIO; George Johnson, Executive Director, AFSCME Council 20; George Parker, President, Washington Teachers' Union; Nathan Saunders, General Vice President, Washington Teachers' Union; and Thomas Ratliff, President, Local Union 639. All testimony and letters submitted by November 9, 2007, are attached to this report and included as part of the official record.

On December 18, 2007, the Committee of the Whole considered Bill 17-450 at a regularly scheduled meeting of the Committee of the Whole. Councilmembers Thomas and Barry moved an amendment in the nature of a substitute, which among other things, created at-will employment positions for "management employees" within the Educational Service classification, allowed for the conversion of existing Educational Service employees within the at-will category to the amended classification, and provided for training and retraining opportunities and retreat rights for any at-will employee subject to non-disciplinary separation from service. This motion failed on a roll call vote of 3 in favor and 10 against, with Councilmembers Thomas, Barry, and Mendelson voting in favor and Chairman Gray and Councilmembers Alexander, Bowser, Brown, Catania, Cheh, Evans, Graham, Schwartz and Wells voting against.

Councilmembers Barry and Thomas offered the following three amendments to Bill 17-450:

1) Amending the applicability of Bill 17-450 from all non-school based personnel within the Educational Service of DCPS, OPEFM, and OSSE, to a maximum of 488 employees within the Educational Service of DCPS, OPEFM, and OSSE. Chairman Gray did not accept this amendment as friendly, and asked Councilmembers Thomas and Barry to withdraw this amendment, allowing staff to work on this issue between first and second reading. Councilmembers Thomas and Barry withdrew this amendment;

2) Amending the date by which the Mayor must submit an assessment of Bill 17-450 and its impact on public education from September 15, 2012, to September 15 of each year and requiring that the Council re-authorize the authority provided in this bill within 45-days of receipt of the Mayor's assessment. Chairman Gray did not accept this amendment as friendly, stating that the September 15, 2012 date was selected to coincide with the date by which the Mayor is required to submit a 5-year assessment of the Public Education Reform Amendment Act of 2007. Chairman Gray also stated that the Committee would provide ample opportunity for informal assessment of the effectiveness of Bill 17-450 through the Committee's oversight efforts during hearings. Finally, Chairman Gray requested

9

that Councilmembers Thomas and Barry withdraw this amendment so that staff could work on any unresolved issues during first and second reading. Councilmembers Thomas and Barry withdrew this amendment; and

3)   Amending the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to provide that the Mayor may appoint 25 persons to the Excepted Service within DCPS, provided that each person appointed becomes a District resident within 180 days of appointment and maintain District residency throughout the appointment, and to provide that the Mayor endeavor to ensure ward diversity with these appointments. Chairman Gray accepted this amendment as friendly.

Councilmember Graham expressed concern regarding the provision providing the Mayor with the authority to terminate without notice or evaluation, an employee who commits an egregious act. Specifically, Councilmember Graham expressed concern using a term such as "egregious," which is used elsewhere in the code but is not defined anywhere in the code, and leaving the responsibility of defining such a term to the Executive. Chairman Gray expressed the same concerns and responded that staff had researched the issue the night before and possibly found a suitable replacement, such as "cause," which is defined. Chairman Gray also stated that staff would work with Councilmember Graham to revise that provision before second reading.

Councilmember Schwartz, while supporting the Committee Print of Bill 17-450, expressed concern regarding the conversion of certain non-excluded employees to positions without job tenure. Specifically, she expressed concern that converting civil servants to such categories might threaten the continuity of government services in times of administrative transition. Chairman Gray stated that he expressed that concern to the Chancellor, had already requested data on the number of such civil servant positions subject to conversion, and would work with Councilmember Schwartz on the issue before second reading.

Chairman Gray moved approval of the Committee Print of Bill 17-450 which was approved by roll call vote of 10 in favor and 3 against, with Chairman Gray and Councilmembers Alexander, Bowser, Brown, Catania, Cheh, Evans, Graham, Schwartz and Wells voting in favor of the Committee Print and Councilmembers Thomas, Barry, and Mendelson voting against it. Chairman Gray moved approval of the Committee Report which was approved by voice vote. In attendance were Chairman Gray and Councilmembers Alexander, Barry, Bowser, Brown, Catania, Cheh, Evans, Graham, Mendelson, Schwartz, Thomas, and Wells.

Attachments

(1) Bill 17-450
(2) Written record and public hearing testimony
(3) Fiscal impact statement
(4) Committee Print of Bill 17-450