UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
**KENNETH DICKERSON, et al.,** )
                              )
      **Plaintiffs,**        )
                              )
      v.                     )   Civil Action No. 09-2213 (RWR)
                              )
**DISTRICT OF COLUMBIA, et al.,** )
                              )
      **Defendants.**         )
_____  )

### MEMORANDUM ORDER

Plaintiffs Kenneth Dickerson and fourteen other principals and assistant principals[1] from the District of Columbia Public Schools ("DCPS") brought this putative class action in the D.C. Superior Court against the District of Columbia, its Mayor, and the Chancellor of the DCPS, seeking damages in an amended complaint for race and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code Ann. § 2-1401.01 et seq., wrongful discharge, defamation, civil conspiracy, and violation of the Employee Retirement Income Security Act ("ERISA"), based upon the termination of their employment in June 2008. (Am. Compl. ¶¶ 53-69.) The defendants removed the action to this court.

---

[1] Wilma Gaines, Janette Johns-Gibson, Charles Harden Jr., Harriet Kargbo, Treva Lindsey, Antonia Peters, Andre Roach, Jacqueline Williams, Donna Edwards, Carol Barbour, Marta Guzman, Mary Grant, Richard Patterson, and Wellington Wilder.

The plaintiffs have moved for leave to file a second amended complaint that would add four new plaintiffs, add new factual allegations, expand the civil conspiracy count, and add new claims of violation of 42 U.S.C. § 1981 and breach of employment contract. (Pls.' Mot. for Leave to File Second Amended Compl. ¶¶ 1-2.) The proposed second amended complaint alleges that before the termination of their employment, the plaintiffs were third party beneficiaries of the Union's collective bargaining agreement ("CBA") with the District, and that the defendants discriminated against the plaintiffs based on race and age by repeatedly failing to follow the procedures and policies set forth in the CBA and preventing the plaintiffs from enforcing their contractual rights. (Notice of Errata Re Pls.' Proposed Second Am. Compl. ("Second Am. Compl.") ¶¶ 74-78, 93-95.)

The defendants oppose the plaintiffs' motion for leave to file, arguing that the plaintiffs' proposed amendments would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and therefore would be futile. However, the defendants fail to demonstrate that leave to file should be denied. "The defendant has the burden of showing why leave to file an amended complaint should not be granted." Smith v. Cafe Asia, 598 F. Supp. 2d 45, 48 (D.D.C. 2009). The decision whether to grant leave to amend a complaint is within the discretion of the court, but leave "should be freely given unless there is a good reason,

such as futility, to the contrary." <u>Willoughby v. Potomac Elec. Power Co.</u>, 100 F.3d 999, 1003 (D.C. Cir. 1996). "An amendment is futile 'if the proposed claim would not survive a motion to dismiss.'" <u>Smith</u>, 598 F. Supp. 2d at 48 (quoting <u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996)). A claim fails to survive a motion to dismiss filed under Rule 12(b)(6) when it does not plead sufficient factual detail to state a claim that is plausible on its face.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007)).

The defendants argue that the plaintiffs' proposed 42 U.S.C. § 1981 count would be futile because it fails to state a claim since plaintiffs had no right to continued employment beyond their one-year contracts; the count neither alleges a contractual relationship with the Mayor or the Chancellor, nor amply alleges a factual basis for municipal liability (Defs.' Opp'n at 3-8); and the claim is barred by the CBA. (Defs.' Opp'n at 8-9.) The defendants also argue that the plaintiffs' claim for breach of

employment contract is barred by the Comprehensive Merit Personnel Act ("CMPA").[2]

I

Section 1981 of Title 42 of the United States Code serves to protect the right to make and enforce a contract free of racial discrimination. The statute defines making and enforcing contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To establish a claim under § 1981, plaintiffs must show that (1) they are members of a racial minority group; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination pertained to one of the activities enumerated in the statute. Mitchell v. DCX, Inc., 274 F. Supp. 2d 33, 44-45 (D.D.C. 2003) (citing Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996)); see also Mazloum v. Dist. of Columbia Metro. Police Dep't, 522 F. Supp. 2d 24, 37 (D.D.C. 2007). Here, the proposed second amended

---

[2] The defendants also argue that the new facts added to the plaintiffs' claim of civil conspiracy in the second amended complaint do not result in a claim that is plausible on its face. Since leave to file a second amended complaint is being granted, thus rendering moot the defendants' pending motion to dismiss the first amended complaint, the defendants will be free to resurrect this argument in any motion to dismiss the second amended complaint they may choose to file. Even if this argument about this one amendment has merit, the court will exercise its discretion to not let one flawed amendment among multiple amendments bar the filing of the second amended complaint.

complaint alleges that the plaintiffs are all African-American or Hispanic males and females (Second Am. Compl. ¶¶ 35, 41), that the defendants discriminated against them based on race (Second Am. Compl. ¶¶ 38, 78), and that the enumerated activity pertained to following contractual evaluation procedures and terminating the employment contracts (Second Am. Compl. ¶¶ 77-78). Whatever limitation may have existed on plaintiff's right to continued employment, plaintiffs have amply alleged that while they were employed, their right to have evaluations and termination decisions be free from racial discrimination was violated.

II

The defendants argue that the proposed amended complaint does not contain a viable cause of action under 42 U.S.C. § 1981 because the second amended complaint does not allege a contractual relationship between the plaintiffs and the Mayor or Rhee. (Defs.' Mem. at 3-4.) However, the defendants do not argue that the second amended complaint fails to allege a contractual relationship between the plaintiffs and the District of Columbia. The lack of a contractual relationship between the plaintiffs and some of the defendants would not be a reason to deem the entire second amended complaint futile. Furthermore, the authority cited by the defendants, Domino's Pizza v. McDonald, 546 U.S. 470 (2006), holds that a plaintiff alleging a claim under 42 U.S.C. § 1981 must "initially identify an impaired

'contractual relationship.'" Domino's Pizza, 546 U.S. at 476. Domino's Pizza does not support the proposition that a plaintiff must allege complete privity of contract with all defendants; instead, it merely requires that a plaintiff have rights under the existing contract, or be a third party beneficiary of the contract. Id.

III

The defendants also argue that the plaintiffs' proposed amended complaint does not allege that a policy or custom of the District of Columbia was the "moving force" that caused the discriminatory interference with their contract rights. (Defs.' Mem. at 4-5.) To allege a claim under § 1981 against a municipality, a plaintiff must allege that the violation of the right to make and enforce contracts protected by § 1981 was caused by the municipality's custom or policy. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978); Smith v. Janey, 664 F. Supp. 2d 1, 9 (D.D.C. 2009). The District's custom or policy may cause a violation of the right to make or enforce contracts under several different circumstances. The District or one of its policymakers may explicitly adopt a policy that is the moving force behind a violation. Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004). Another way to allege that a policy or custom caused the violation is to allege that a policymaker knowingly ignored a practice that was

consistent enough to constitute a custom. Id. The unconstitutional discrimination could also be "so widespread as to constitute a custom, practice or policy . . . ." Reed v. Dist. of Columbia, 474 F. Supp. 2d 163, 168 (D.D.C. 2007). An agency practice need not be "authorized by written law," but may be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell 436 U.S. at 691. Here, the proposed second amended complaint alleges that at all times relevant to the complaint, the DCPS acted "by and through its Chancellor, Michelle Rhee," and that as Chancellor, Rhee had "authority to make operational decisions for DCPS, inclusive of personnel matters affecting the DCPS educational service (including staff, administrative employees, contractors, and others providing services to DCPS)," and that Rhee engineered the discriminatory mass firings. (Second Am. Compl. ¶¶ 26-30.) Therefore, the proposed second amended complaint alleges that a policymaker, Rhee, adopted or actually initiated, the repeated discriminatory practice curtailing the plaintiffs' contract rights.

IV

The defendants assert that the plaintiffs' § 1981 claims are barred by the provision in the CBA that states that "any complaint concerning discrimination as prohibited by the D.C. Human Rights Law shall be processed under procedures provided in

D.C. Official Code § 2-1403.04." (Defs.' Opp'n at 8-9.) However, that provision of the CBA does not state that it applies to claims arising under federal anti-discrimination statutes such as 42 U.S.C. § 1981, and the defendants have presented no authority establishing that the CBA provision does bar § 1981 claims.

V

The defendants maintain that the plaintiffs' breach of contract claims would be futile because plaintiffs failed to pursue their exclusive remedies provided under the Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601.01 et seq. The CMPA assures "that the District of Columbia government shall have a modern flexible system of public personnel administration, which shall . . . [e]stablish impartial and comprehensive administrative or negotiated procedures for resolving employee grievances." D.C. Code § 1-601.2(a)(5); Robinson v. Dist. of Columbia, 748 A.2d 409, 411 (D.C. 2000) (stating that "[w]ith few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind"). With the CMPA, the District "sought to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions -- with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum."

Alexis v. Dist. of Columbia, 44 F. Supp. 2d 331, 349 (D.D.C. 1999) (internal quotation omitted). "Based on the CMPA's administrative scheme, courts in this district have repeatedly dismissed claims that have not been initially pursued under the CMPA's procedures." Payne v. Dist. of Columbia, 592 F. Supp. 2d 29, 35 (D.D.C. 2008).

Here, in the proposed second amended complaint, the plaintiffs allege that they did attempt to exhaust their administrative remedies under the CBA by raising grievances through their collective bargaining unit (Second Am. Compl. ¶ 57, Ex. 2 (Grant Aff.) at 6-7), and proceeding to the Office of Employee Appeals, the organ the defendants cite as being part of the CMPA exhaustion process (Defs.' Opp'n at 10). It is premature to conclude from this briefing that the plaintiffs failed to exhaust their administrative remedies and that permitting their new claims would be futile.

\* \* \* \* \*

Therefore, it is hereby

ORDERED that the plaintiffs' motion [Docket Entry 4] for leave to file an second amended complaint be, and hereby is, GRANTED. The Clerk is directed to docket as the Second Amended Complaint the exhibit attached to the Notice of Errata [Docket Entry 7]. It is further

ORDERED that the defendants' motion [Docket Entry 5] to dismiss the first amended complaint be, and hereby is, DENIED without prejudice as moot. It is further

ORDERED that the plaintiffs' motion [Docket Entry 13] for an extension of time to file a motion for class certification be, and hereby is, GRANTED. The plaintiffs' motion shall be filed 90 days after the defendants file an answer.

SIGNED this 24th day of August, 2011.

                                              _____/s/_____
                                              RICHARD W. ROBERTS
                                              United States District Judge