## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH DICKERSON,  et.al.,** | : |
| | : |
| | : |
| **Plaintiffs,** | : |
| | :   **Civil Action: 09-2213 (RWR)** |
| **v.** | : |
| | : |
| | : |
| **DISTRICT OF COLUMBIA, et.al.,** | : |
| | : |
| | : |
| **Defendants.** | : |
| | : |

### THIRD AMENDED COMPLAINT FOR WRONGFUL DISCHARGE, DEFAMATION, VIOLATION OF RIGHT TO PRIVACY, CIVIL CONSPIRACY, VIOLATION OF FEDERAL RETIREMENT LAW, DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AND D.C. HUMAN RIGHTS  ACT.

Comes now the Plaintiffs Carol Barbour, Willie Bennett, Reginald Burke, Kenneth Dickerson, Donna Edwards, Dr. Reginald B. Elliott, Wilma Gaines, Janette Johns- Gibson, Lynne Gober, Sandra Gonzalez, Dr. Mary Q. Grant, Marta Guzman, Charles Harden, Jr., Harriet Kargbo, Treva Lindsay, Barbara McElwane, Richard Patterson, Andre Roach, Greg Thomas, Gloria Tisdale, Wellington Wilder, Jacqueline Williams, and potential claimants not yet added to the Class of Complainants ("Class"), on behalf of themselves and all others similarly situated, by and through counsel, John F. Mercer, Esq., and state their and the Class' amended complaint against Defendants in the above matters as follows:

1

## JURISDICTION AND VENUE

1.      This action arises under D.C. Code § 11-921; and common law, Fed. R. Civ. P. 3,

Fed. R. Civ. P. 23, and LCvR 23.1 (Class Actions); 42 U.S.C. §§ 2000e 5(f)(1)-2000e,

5(f)(3); 28 U.S.C. § 1331, et.seq.; 29 U.S.C. 623; 28 U.S.C. § 1391; 28 U.S.C. § 1441;

D.C. Code § 12-309; and D.C. Code § 2-1403.16.  The original Complaint was timely

filed within one ("1) year of filing of Notice of Claim to Hon. Adrian Fenty, Mayor,

District of Columbia, pursuant to D.C. Sup. Ct. R. P. 15(a); D.C. Code § 12-309; D.C.

Comprehensive Merit Personnel Act ("CMPA") 1978, (as amended); CDCR 5-1000, et

seq.; D.C. Code §2-1401, 2-1402.11, and other laws and regulations of the District of

Columbia and the United States.  This Court has jurisdiction over all claims for relief,

including state claims under the supplemental and ancillary jurisdiction of the federal

court.  Venue is proper in this Court as shall be set forth herein below.[1]

2.      Subsequent to filing the First Amended Complaint, Defendants, pursuant to 28

U.S.C.§§ 1441 and 1446, provided Notice of Removal of Civil Action No. 09-004756 B

from the District of Columbia Superior Court to the United Stated District Court of the

District of Columbia, dated November 20, 2009.

## THE PARTIES

3.      Plaintiff, Carol Barbour, is a resident of Maryland.  She lives at 4718 Captain

Bayne Court, Upper Marlboro, MD 20772.  At all times pertinent to this Complaint,

Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

---

[1] This "First Amended Complaint" was initially filed by Plaintiffs in the District of Columbia Superior Court on August 29, 2009. However, it was electronically misfiled and subsequently discarded.

4.      Plaintiff, Willie Bennett, is a resident of Maryland. He lives at 12461 Uncle

Charlie's Spur, Dunkirk, MD 20754. At all times pertinent to this Complaint, Plaintiff

was a resident of Maryland and was employed by the Defendant Agency.

5.      Plaintiff, Reginald Burke, is a resident of Maryland. He lives at 2905 Berrywood

Lane, Springdale, MD 20774. At all times pertinent to this Complaint, Plaintiff was a

resident of Maryland and was employed by the Defendant Agency.

6.      Plaintiff, Kenneth Dickerson, is a resident of the District of Columbia. He lives at

4203 Illinois Avenue, NW, Washington, DC 20011. At all times pertinent to this

Complaint, Plaintiff was a resident of the District of Columbia and was employed by the

Defendant Agency.

7.      Plaintiff, Donna Edwards, is a resident of the District of Columbia. She lives at

6920 32nd Street, NW, Washington, DC 20015. At all times pertinent to this Complaint,

Plaintiff was a resident of the District of Columbia and was employed by Defendant

Agency.

8.      Plaintiff, Dr. Reginald B. Elliott, is a resident of the District of Columbia. He

lives at 3724 17th Place, NE, Washington, DC 20018. At all times pertinent to this

Complaint, Plaintiff was a resident of the District of Columbia and was employed by

Defendant Agency.

9.      Plaintiff, Wilma Gaines, is a resident of Maryland. She lives at 7801 Royal Fern

Court, Clinton, Maryland 20735. At all times pertinent to this Complaint, Plaintiff was a

resident of the state of Maryland and was employed by the Defendant Agency.

10.     Plaintiff, Janette Johns-Gibson, is a resident of the District of Columbia. She

lives at 301 G Street, SW, Apt. 423,Washington, DC 20024. At all times pertinent to this

Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

11.     Plaintiff, Lynne Gober, is a resident of the District of Columbia.  She lives at 2706 2nd Street, SW, Washington, DC 20032.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

12.     Plaintiff, Sandra Gonzalez, is a resident of the District of Columbia.  She lives at 6208 32nd Place, NW, Washington, DC 20015.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

13.     Plaintiff, Dr. Mary Q. Grant, ("Dr. Grant") is a resident of Maryland.  She lives at 8107 Maplegate Place, Glenn Dale, MD 20769.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency. Dr. Grant filed an action with the U.S. Equal Employment Opportunity Commission ("EEOC") in 2008. That action has been pending since her filing.  On July 18 EEOC issued a "Right to Sue Letter" to Grant, She and counsel received the Letter July 20, 2011 (See Exhibit 16 A). Grant, by and through the instant "Third Amended Complaint," seeks litigation of her EEOC matter in this U.S. District Court For the District of Columbia.

14.     Plaintiff, Marta Guzman, is a resident of the Commonwealth of Virginia.  She lives at 3800 Dade Drive, Annandale, VA 22003.   At all times pertinent to this Complaint, Plaintiff was a resident of Virginia and was employed by the Defendant Agency.

4

15.     Plaintiff, Charles Harden, Jr. is a resident of Maryland.  He lives at 902 Playford Lane, Silver Spring, MD 20901.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

16.     Plaintiff, Harriet Kargbo,("Dr. Kargbo") is a resident of Maryland.  She lives at 1522 Sherwood Court, Cheverly, MD 20785.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

Kargbo filed an action with the U.S. Equal Employment Opportunity Commission ("EEOC") in 2008. That action has been pending since her filing. On July 18 EEOC issued a "Right to Sue Letter" to Dr. Kargbo, She and counsel received the Letter July 20, 2011 (See Exhibit 16 B). Dr. Kargbo, by and through the instant "Third Amended Complaint," seeks litigation of her EEOC matter of this matter in this U.S. District Court For the District of Columbia.

17.     Plaintiff, Treva Lindsay, is a resident of Maryland.  She lives at 3703 Silver Park Court, Suitland, MD 20746.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

18.     Plaintiff, Barbara McElwane, is a resident of the District of Columbia.  She lives at 5033 13th Street, NE, Washington, DC 20017.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

19.     Plaintiff, Richard Patterson, is a resident of Maryland.  He lives at 14314 Arctic Avenue, Rockville, MD 20853.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

20.     Plaintiff, Andre Roach, is a resident of Maryland.  He lives at 9804 Woodyard Circle, Upper Marlboro, MD 20772.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

21.     Plaintiff, Greg Thomas, is a resident of the District of Columbia.  He lives at 533 47th Street, NE, Washington, DC 20019. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

22.     Plaintiff, Gloria Tisdale, is a resident of the District of Columbia.  She lives at 6101 16th Street, NW, #426, Washington, DC 20011.  At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

23.     Plaintiff, Wellington Wilder, is a resident of the District of Columbia.  He lives at 1419 South Capitol Street, SW, Washington, DC 20003. At all times pertinent to this Complaint, Plaintiff was a resident of the District of Columbia and was employed by the Defendant Agency.

24.     Plaintiff, Jacqueline Williams, is a resident of Maryland.  She lives at 11100 White House Road, Upper Marlboro, MD 20774.  At all times pertinent to this Complaint, Plaintiff was a resident of Maryland and was employed by the Defendant Agency.

25.     Other complainants not yet named are residents of the District of Columbia, Virginia, and/or Maryland.  At all times pertinent to this Complaint, Plaintiffs were residents of the aforementioned states and were employed by the Defendant Agency, until their terminations from employment became effective on either June 30, 2008, or the proceeding year, June 30, 2009.

26.     Defendant, District of Columbia, is a municipality acting herein by and through

the District of Columbia Public Schools ("Defendant," "Agency," "the District," or

"DCPS"), an agency of the government of the District of Columbia which at all times

hereunder, acted by and through its Chancellor, Michelle Rhee, (hereinafter "Rhee") and

various other employees and agents of DCPS and the District of Columbia. DCPS is an

"employer" pursuant to 42 U.S.C. § 2000e, and D.C. Code 1-2502, and was so situated

during all times pertinent herein. Its principal office is located at 825 North Capital

Street, NE, Washington, DC 20002.  That DCPS is a separate, cabinet-level agency

subordinate to the Mayor.  The Mayor governs the public schools in the District of

Columbia and has, among other things, authority over all personnel, labor negotiations,

collective bargaining, and other education-related matters pursuant to "The Public

Education Reform Amendment Act of 2007" (""PERAA").

27.     That Rhee is an employee of DCPS and the District of Columbia, and serves as its

Chief Executive Officer. Her office is located at 825 North Capital Street, NE,

Washington, DC 20002.  At all times during the events set out in this complaint, Rhee

was employed with DCPS and acted as an agent of DCPS.  The Chancellor reports

directly to the Mayor, and has personnel authority as delegated by the Mayor pursuant to

PERAA.

## CASE SUMMARY

28.     On or around June 2007, Rhee was engaged by the District of Columbia to

perform as the Chief Executive Officer for District of Columbia Public Schools.  Her title

is Chancellor of District of Columbia Public Schools ("DCPS").  In her capacity as

Chancellor, she had (and has) authority to make operational decisions for DCPS, inclusive of personnel matters affecting the DCPS educational service (including staff, administrative employees, contractors and others providing services to DCPS). Rhee's authority emanates from the D.C. Code, the D.C. Code of Regulations ("CDCR", CDCR 5, et seq.), and the delegation of authority by the Mayor, pursuant to PERAA.

29.     Shortly after her engagement, Defendant Rhee engaged personnel to serve as her senior executive management officers (the "Officers"). Included among these Officers were employees in areas of personnel management, legal, financial, and other DCPS departments. The Officers assisted Defendant Rhee in developing, determining, and executing DCPS personnel policy.

30.     Between the date of her installation in June 2007 and May 2009, Rhee and the Officers (collectively, the "Defendants") decided that certain current incumbent DCPS educational administrators performing as Principals and Assistant Principals (hereafter, the "Incumbents" or "Plaintiffs"), the number of which is believed to be thirty-three ("33") or more, would not be reappointed to their positions for the fall of the upcoming 2008-2009 and 2009-2010 academic years. The Defendants' objective was to effect a "mass firing" of the Incumbents in order to replace them with persons of her choice. The decision of Defendants to replace Incumbents was not based upon merit or failure of performance, but engineered for the purpose of a premeditated administrative "regime change" and "mass firing."

31.     For those Principals and Assistant Principals non-reappointed effective June 30, 2008, on or about May 5, 2008, Defendants served each of the effected Incumbents with written notice indicating that they would not be reappointed to their respective positions

8

as Principal or Assistant Principal, and that their terms would expire on June 30, 2008.[2]

32.     For those Principals and Assistant Principals non-reappointed effective June 30, 2009, on or about May 15, 2009, Defendants served each of the effected Incumbents with written notice indicating that they would not be reappointed to their respective positions as Principal or Assistant Principal, and that their terms would expire on June 30, 2009.[3]

33.     This "mass firing" would be carried out by manipulating accepted personnel mechanisms to achieve illegal and wrongful purposes. For example, the Defendants used the guise of general poor student performance to justify and make the mass firing appear legitimate and necessary. The Defendants launched a national campaign falsely attributing poor student performance in D.C. to the incompetence and lack of effort, effectiveness, and professionalism of the Incumbents,[4] all the while knowing such information to be false, and in spite of the fact that issues and concerns with Plaintiffs' performance, if factual, should have been addressed in their annual performance reviews.[5] Further, if performance issues were the true and actual reason that Plaintiffs

---

[2] See Exhibits 1-5, Affidavits of: (1) Dr. Mary Q. Grant; (2) Marta Guzman; (3) Jacqueline Williams; (4) Richard Patterson, including EEOC Right to Sue Letter; and (5) Notice of Non-reappointment to Richard Patterson, dated May 5, 2008.

[3] See Exhibits 6-9- Affidavits of: (6) Reginald Burke, including Notice of Non-Reappointment, dated May 15, 2009; (7) Dr. Reginald B. Elliott; (8) Gloria Tisdale; and (9) Letter from Chancellor Rhee to D.C. City Council with grossly negative, and exaggerated reasons for the non-reappointments of Dr. Elliot and Ms. Tisdale, dated June 30, 2009.

[4]  See Exhibits 10 and 11- Kate Bolduan, "'100 mph' School Chief Seeks 'Radical Changes,'" *CNN*, September 9, 2008; Bill Turque, "Rhee Has Dismissed 24 Principals," *Washington Post*, May 16, 2008.

[5]  See Exhibit 12, Collective Bargaining Agreement with Council of School Officers, Article XI- Evaluation, §§ A1-8 provide that deficient job performance will be remedied with support and a plan of improvement jointly developed by the individual officer and his/ her supervisor. §A of the contract also states: "The evaluation process set forth below is intended to provide the individual officer with an opportunity to improve proficiency in deficient areas identified by his/ her supervisor."

were non-reappointed, then pursuant to past customs and practices and the Collective

Bargaining Agreement Articles VIII and XI, they should have been given written notice

of the deficiency, performance improvement plans, mentors, increased support, and

reasonable time to correct performance deficiencies, not simply removed from their

positions as Principals and/or Assistant Principals with no reason, due process, or

mechanism to respond to alleged deficiencies.[6]

34.     In keeping with their predetermined plan to remove the Incumbents, prior to

issuance of the respective Notices of Non-reappointment issued May 5, 2008, and May

15, 2009, the Incumbents were advised that their school's performances would be

evaluated, and that student academic improvement would be a factor in their performance

ratings.  However, the ultimatum delivered by the Defendants based upon such proposed

evaluation improvement was a pretext.  Current and previous performances

notwithstanding, the Defendants had already determined the Incumbents would be

removed.

35.     As part of the mass firing, it was carefully determined by Rhee and the Officers

that race, age, and proximity to retirement would be among the essential determining

factors to be applied in replacing the Incumbents. Twenty-eight ("28") of the thirty-three

("33") non-reappointed Incumbents were all over forty years old[7] (most of them being

older than fifty).[8]  Their replacements averaged in their thirties.  All Class members are

---

[6] See Articles VIII and XI of the Collective Bargaining Agreement with Council of
School Officers (Exhibit 12).
[7]  See Exhibit 13- Letter from Megan Hoppe, Federal Investigator, U.S. Equal
Employment Opportunity Commission, to Claimant Richard L. Patterson, dated February
6, 2009.
[8]  See Exhibit 14- Claimant Richard L. Patterson's Response (February 19, 2009) to
Investigator Megan Hoppe's Letter of February 6, 2009.

either African-American or Hispanic males and females.

36.     Also in keeping with their predetermined plan to remove the Incumbents by mass firing and to bust the union to which Incumbents belonged, it was carefully determined by Rhee and the Officers that union status and membership in the Council of School Officers ("CSO") would be among the essential determining factors to be applied in removing the Incumbents.  All members of the Class were members of CSO.

37.     Moreover, it was determined by the Defendants that the mass firings would be carried out irrespective of: (1) the requirements of the Collective Bargaining Agreement; (2) the intervention of the Incumbents' collective bargaining unit (the "Council of School Officers" or "CSO"; and (3) past customs and practice; and further determined by Defendants that they did not have to bargain with the CSO because the Incumbents were subject to annual reappointment in accordance with CDCR 5-520, et seq., and the aggressiveness and desired impact of their mass firing would freeze other Incumbent principals and assistant principals and weaken their resolve to fight.

38.     In carrying out the mass firings, the Defendants engaged in intimidation; defamation; conspiracy; malicious abuse of process; a pattern and practice of discrimination based upon race, age, proximity to retirement, and union status; and wrongful discharge.  They caused irreparable harm to the Incumbents collectively and individually, and to the professional careers of the Incumbents in the present and future.

39.     The Plaintiffs' collective bargaining unit, the Council of School Officers ("CSO") filed class grievances, but was unable to bring about a favorable resolution on the Plaintiffs' behalves and in compliance with the terms of the Collective Bargaining

Agreement, of which DCPS (through the D.C. Board of Education) and the Class
(through membership to the Council of School Officers) are bound parties.

## THE CLASS

40.     The Incumbents are "Plaintiffs" and "Class Members" as defined under Fed. R.
Civ. P. 23, et seq., and LCvR 23.1, and heretofore shall be referred to as "Plaintiffs" in
this action.  The Defendants collectively shall be referred to as "DCPS."

## STATEMENT OF FACTS

41.     Plaintiffs are African American and Hispanic males and females over forty-
("40") years of age.

42.     Plaintiffs, at the time of the actions described herein, were employed by DCPS as
annually appointed Principals and Assistant Principals assigned to DCPS schools.

43.     Plaintiffs were, at the time of their non-reappointments, members of CSO.

44.     At the time of the matters complained of herein, each of the Plaintiffs had either
risen from the rank of teacher ET-15 to his/ her appointment as Principal or Assistant
Principal, or had been directly employed by DCPS as a principal or assistant principal.
At the time of the matters described herein, each of the Plaintiffs had performed as
Principal or Assistant Principal with DCPS for at least five ("5") or more years.  Up to
the date of notice of their non-reappointment, and in keeping with past performance and
practice of their perspective employment contracts as Principal or Assistant Principal,
each Plaintiff reasonably believed and expected to be reappointed to their respective
positions, unless their assigned school was scheduled for closing, or he/ she had received
prior notice of a significant performance deficiency and placed on a performance
improvement plan, pursuant to the Collective Bargaining Agreement.

45.     Class members who were non-reappointed as Principal or Assistant Principal effective June 30, 2008 include: Carol Barbour, Willie Bennett, Kenneth Dickerson, Donna Edwards, Wilma Gaines, Janette Johns-Gibson, Sandra Gonzalez, Dr. Mary Q. Grant, Marta Guzman, Charles Harden, Jr., Harriet Kargbo, Treva Lindsay, Barbara McElwane, Richard Patterson, Andre Roach, Greg Thomas, Wellington Wilder, and Jacqueline Williams.

46.     Class members who were non-reappointed as Principal or Assistant Principal effective June 30, 2009 include: Reginald Burke, Dr. Reginald B. Elliott, Lynne Gober, and Gloria Tisdale.

47.     In late 2007, the Plaintiffs non-reappointed in 2008 ("2008 Non-Tenured Employees" or "2008 Plaintiffs") were notified that they would receive performance evaluations by the end of the academic year (June, 2008). In late 2008, the Plaintiffs non-reappointed in 2009 ("2009 Non-Tenured Employees" or "2009 Plaintiffs") were notified that they would receive performance evaluations by the end of the academic year, (June, 2009). DCPS alleged that the evaluations were for the purpose of determining proficiency, and would include ranking based on student reading and mathematics test scores, student attendance, and student improvement in various other academic and scholastic areas.

48.     Some 2008 Plaintiffs were administered evaluations during the 2007-2008 academic year and were notified that if their ratings did not "show improvement" they would be removed from their positions.  Some 2009 Plaintiffs were administered evaluations during the 2008-2009 academic year and were notified that if their ratings did not "show improvement" they would be removed from their positions.

49      Some Plaintiffs were issued evaluations *after* (emphasis added) they had already received Notification of Non-reappointment, and were not asked to bring and/or refused consideration of supporting documents of their achievements throughout the school year in their performance evaluation meeting.

50.      Others of the Plaintiffs were not administered mid-year or final evaluations at all. And yet, they were also told by DCPS, that they would be removed due to failure to meet performance standards and criteria, for which they were not evaluated, and for which, if they had been evaluated, would not have been proven to be indicators of poor administrative performance. All the while, Defendants have systematically and publicly alleged that Plaintiffs' terminations were due to poor performance, which a performance evaluation would have shown and the processes established by DCMR, D.C. CMPA, CDCR 5-520, et seq., and/or the Collective Bargaining Agreement ("CBA") would have effectively handled.

51.      It is undisputed by the parties that each of the Plaintiffs who received improvement notices, made efforts to improve their scholastic ratings by taking various actions they believed, and were told by DPCS, would be necessary for improvement of their respective schools. Each Plaintiff, in fact, experienced improvement of his/ her respective statistics in the required evaluation categories. However, neither DCPS (nor other known education systems) have proven methods of substantial student improvement based upon short-term policies and actions. In addition, most educators agree that substantial improvement of student performance requires more than efforts made by Assistant Principals and Principals only, and that it takes three ("3") years of combined efforts to reflect marked student improvement. Notwithstanding their

14

respective schools' improvements, each of the Plaintiffs was ultimately not reappointed to his/ her administrative position.

52.      Simultaneous with their demand for improved academic performance during the 2007-2008 and/ or 2008-2009 school year, DCPS had notice and knowledge that the Plaintiffs' respective schools were understaffed and lacked sufficient resources. Notwithstanding, DCPS failed to take timely and appropriate action to fill vacant teacher, administrator, and service provider positions, and withheld and/or delayed requested and needed classroom and building resources.

53.      On or about May 5, 2008, each 2008 Plaintiff was notified by delivery that they would not be reappointed to their respective positions of employment with DCPS, effective on June 30, 2008, and each of the Plaintiffs was removed in a mass firing on June 30, 2008 (See Exhibit 5, "Notice"). Without prior notice of a meeting, on or about May 5, 2008, the 2008 Plaintiffs were called and told to report to their respective Cluster Assistant Superintendent. When they arrived, a designated DCPS Human Resource employee was also present. No reason for non-reappointment was specified in the oral or written May 5, 2008 Notice, except that this was by decision of Chancellor Michelle Rhee. Ostensibly, the removals were effected upon Plaintiffs based upon their status as annually appointed employees, pursuant to CDCR 5-520. However, subsequent to serving Plaintiffs with the Notice of Non-reappointment and setting the June 30, 2008 effective date, DCPS' actions revealed that the Plaintiffs were removed for "cause," and the "cause" was identified as failure to improve the statistical performance of students at their respective schools.

54.      Similarly, on or about May 15, 2009, each 2009 Plaintiff was notified by delivery

15

that they would not be reappointed to their respective positions of employment with DCPS, effective on June 30, 2009, and each of the Plaintiffs was removed in a mass firing on June 30, 2009 (See Exhibit 6, "Notice"). Without prior notice of a meeting, on or about May 15, 2009, the 2009 Plaintiffs were called and told to report to their respective Cluster Assistant Superintendent. When they arrived, a designated DCPS Human Resource employee was also present. No reason for non-reappointment was specified in the oral or written May 15, 2009 Notice, except that this was by decision of Chancellor Michelle Rhee. Ostensibly, the removals were effected upon the Plaintiffs based upon their status as annually appointed employees, pursuant to CDCR 5-520. However, subsequent to serving Plaintiffs with the Notice of Non-reappointment and setting the June 30, 2009 effective date, DCPS' actions revealed that the Plaintiffs were removed for "cause," and the "cause" was identified as failure to improve the statistical performance of students at their respective schools.

55.      Prior to delivery of the Notices of May 5, 2008 and May 15, 2009, DCPS' Chancellor and Officers predetermined that the 2008 and 2009 Plaintiffs would not be reappointed based upon the fact that DCPS had already engaged employees to occupy the positions left vacant due to the mass firing. Accordingly, at the time the Plaintiffs received the respective Notices of Non-reappointment, a group of replacements, already selected, white, under forty- ("40") years old, and with far less experience were available to fill the prospective vacant positions. Absent negative or materially unacceptable performance evaluations, however, DCPS knowingly and systematically announced publicly that the Plaintiffs had failed to perform adequately as established in evaluations and/or student performances. These reasons were baseless pretext.

16

55.    Each of the 2008 Plaintiffs' employment by DCPS as Principal or Assistant

Principal ended on June 30, 2008.  Each of the 2009 Plaintiffs' employment by DCPS as

Principal or Assistant Principal ended on June 30, 2009.   Prior to the Plaintiffs' receipt of

Notices of Non-reappointment, DCPS had surreptitiously engaged replacements to

occupy the Plaintiffs' soon-to-be vacant positions in violation of Article XII of the

Collective Bargaining Agreement ("CBA")[9], which provides that vacancies shall be listed

so that all have knowledge of the vacancy.

56.    After executing the mass firing, DCPS not only filled each Plaintiffs' position

without delay, but the prior identified and still then pending vacant teacher and school-

based positions were filled expeditiously, and previously requested classroom and

building resources were funded, and made readily available to Plaintiffs' successors and

respective schools.

57.    The Plaintiffs collectively raised grievances concerning their mistreatment and

misrepresentation by DCPS through the Council of School Officers ("CSO," i.e.,

Plaintiffs' collective bargaining unit pursuant to CDCR 5-700) without resolution in

favor of the Plaintiffs.  Subsequently, the CSO informed Plaintiffs that the collective

bargaining organization had done all it could on behalf of the members regarding DCPS'

Non-reappointments with respect to the collective bargaining agreement ("CBA").

58.    Simultaneous to CSO's intervention, DCPS intensified its campaign of hostile,

malicious, and retaliatory actions, including: (1) efforts to isolate Plaintiffs from other

employees; (2) efforts to defame Plaintiffs amongst co-workers, neighboring and national

school systems, prospective employers, social and community groups, and members of

---

[9] Attached as Exhibit 12.

the public in D.C. and nationwide; (3) knowing non-compliance with and violations of

D.C. employment laws, practices, policies under DCMR, D.C. CMPA, CDCR 5-520, et

seq., and the Collective Bargaining Agreement ("CBA"); (4)  malicious interference with

Plaintiffs' rights to unemployment compensation and retirement benefits by allegations

that Plaintiffs were removed from their employment due to "Misconduct" or for cause;

(5) systematic tampering with Plaintiffs' employment and personnel records and

performance evaluations; (6) evasiveness and misinformation regarding Plaintiffs'

Retreat Rights to other positions within DCPS; (7) malicious abuse of Retreat Rights as

means to entrap non-reappointed Principals and Assistant Principals who exercised them

into a veritable trap for future termination; (8) lack of payment due Plaintiffs during the

transition period; (9) calculated misinformation and unresponsiveness to Plaintiffs'

inquiries about leave, retirement benefits, account statements; and (10) a continued

pattern and/or practice of discrimination based upon race, age, proximity to retirement,

and union status, *inter alia*.

59.     But for the actions of DCPS, the Plaintiffs would have been successful in

acquiring suitable alternative employment.  However, DCPS engaged in public

distortions that effectively blacklisted Plaintiffs across the country and caused the

Plaintiffs to be perceived as pariahs, troublemakers, and lazy, ineffective administrators,

thereby denying Plaintiffs advancement opportunities and opportunities for hire within

and outside DCPS.

60.     In violation of DCPS personnel rules CDCR 6-3111.1-6-3111.6, DCPS callously

and maliciously violated Plaintiffs' right to privacy by publishing and exposing

18

Plaintiffs' personnel records and the falsely alleged reasons for Plaintiffs' removal from employment without the Plaintiffs' permission (CDCR 6-3113.3(d)).

61.     Additionally, in the process of violating Plaintiffs' right to privacy, DCPS further victimized Plaintiffs by removing, tampering, misplacing, and/or losing pertinent documents contained in Plaintiffs' personnel files and employment records, including performance ratings, recognitions, and letters of support and commendation for the sole purpose of minimizing their risk of liability and culpability and denying Plaintiffs employment opportunities elsewhere.

62.     At the same time the Plaintiffs suffered the adverse activities of DCPS, other DCPS employees similarly situated to the Plaintiffs, but different in respect to race, age, proximity to retirement, union status, and/or experience  (i.e., white, and aged under forty ("40")), were supported in career advancement opportunities and afforded opportunities for administrative positions from which the Plaintiffs had been removed.  They were also given bigger salaries, relocation and retirement benefits and more support and resources not afforded Plaintiffs.

63.     DCPS used facially legitimate employment policies (i.e., performance ratings), and the withholding of positive information relating to the Plaintiffs' positive performances including special recognition, awards, commendations, and community practices in a deceitful and treacherous manner to harm Plaintiffs and create a false, misleading employment record for Plaintiffs such that their opportunities for advancement and opportunity to acquire administrative positions equivalent to their former DCPS positions in D.C. and other jurisdictions would be diminished.  Plaintiffs

have applied for and sought reemployment with numerous prospective employers in this and other jurisdictions, and have been denied and/or ignored.

64.     The mistreatment from which the Plaintiffs suffered consisted of: (1) reprisal for their participation in protected activities; (2) failure of DCPS to develop, adhere to, and properly use personnel policies and practices pertaining to selections, removals, appointments, and Retreat Rights of personnel serving the District of Columbia (D.C. CMPA); (3) purposeful and unfair collusion against Plaintiffs by DCPS and other agents unknown at this time; (4) civil conspiracy for the purpose of an unfair and arbitrary "regime change" perpetuated by mass firing and dismissal; (5)  defamation to Plaintiffs' career and business reputations; (6) wrongful discharge/ termination; (7) tortious interference with contract (i.e., the Collective Bargaining Agreement); (8) tortious interference with prospective advantage by maligning Plaintiffs' reputations so that they are unable to procure future employment; (8) violation of federal and D.C. Human Rights laws regarding a pattern and practice of discrimination based on race, age, proximity to retirement, and union status; and (9) violation of federal retirement law (ERISA), *inter alia.*

65.     On or around Fall 2007, Michelle Rhee, and other DC and DCPS agents unknown at this time, predetermined the selections for Plaintiffs' replacements in their respective positions.  Because of Defendants' manipulation, DCPS falsified and/ or failed to credit the Plaintiffs' performance evaluations, qualifications, and work experience needed to retain their positions.  Instead, those appointed to replace Plaintiffs were chosen based upon a pattern and/or practice of illegal cronyism, corruption, conspiracy, and nepotism.

66.     Had a non-discriminatory and properly guided process of selection for the

20

Positions been conducted in compliance with DCPS policies and procedures, the

Plaintiffs' rich work experience, performance evaluations, improvement in the ratings of

their respective schools, student test scores, and student attendance would have been

considered.  Instead, the Defendants conspired and abused their authority by planning and

manipulating the process of evaluation and non-reappointment of the Plaintiffs, as if they

had unencumbered authority, which they did not.  The Defendants distorted the

application of the City Council's ratification of unilateral power to reappoint by

implementing the mass firing in such a fashion as to circumvent civil service, due

process, and notice protections attached and guaranteed to Plaintiffs as part of their

annual appointment status requiring service without tenure.[10]

67.    During the academic year 2007-2008, 2008 Plaintiffs signed Declarations of

Intent to continue working for DCPS for the upcoming 2008-2009 academic year.

Similarly, during the academic year of 2008-2009, 2009 Plaintiffs signed Declarations of

Intent to continue working for DCPS for the upcoming 2009-2010 academic year.

Subsequent to receiving the Notice of Non-reappointment on either May 5, 2008, or May

15, 2009, some Plaintiffs met the criteria for "Involuntary Retirement" and felt compelled

to retire.  But for the actions of DCPS, the Plaintiffs would not have retired prior to the

preceding academic year.  This decision jeopardized Plaintiffs' unemployment and

retirement benefits and subjected them to penalties reducing the monthly and annual

benefits amount allotted to them.

68.    After receiving the May 5, 2008 (or May 15, 2009) Notice of Non-reappointment,

---

[10] See Exhibit 15, Council of the District of Columbia Committee of the Whole Report,
December 18, 2007, regarding the discussion of Bill 17-450, the "Public Education
Reform Amendment Act of 2007."

many eligible Plaintiffs attempted to exercise their Retreat Rights pursuant to CDCR 5-520.3. DCPS unlawfully denied, created barriers, manipulated, and/or delayed Plaintiffs' ability to exercise these rights to which they were entitled.

69.    Moreover, the theory of Retreat Rights was intended to return non-reappointed Principals and/or Assistant Principals to the level of teacher that the non-reappointee was before his/ her appointment to the position of Principal or Assistant Principal.  However, in this instance, non-reappointed Principals and/or Assistant Principals who retreated under present circumstances were sent to lower level teaching positions, where their next step was to be "excessed" upon determination that there is no longer a need for them in the schools where they were placed.  In effect, DCPS intentionally and maliciously used Retreat Rights illegitimately to further damage Plaintiffs who exercised them.

**COUNT ONE:**
**RACIAL AND AGE DISCRIMINATION**
**VIOLATIONS OF DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**

70.    That Count One incorporates by reference paragraphs One through Sixty-Nine of the Complaint.

71.    Plaintiffs are African-American and Hispanic males and females over forty-("40") years of age, and have accumulated retirement benefits as a result of five ("5") years or more service to DCPS.

72.    Complainants were employed by the District of Columbia Public Schools, classified under the personnel records of DCPS as either Principal or Assistant Principal, and were wrongfully terminated effective either June 30, 2008 or June 30, 2009.  Others, while similarly situated with Complainants, but white, younger, less experienced, and/or not near retirement, were appointed to the positions from which Complainants were

22

removed in violation of D.C. Code § 2-1401, 2-1402.11.

73.     That in violation of D.C. CMPA, DCPS has engaged in pattern and/or practice of removing employees on the basis of discrimination based on race and age, and replacing them with others of opposite race and age in violation of D.C. Code § 2-1401, 2-1402.11.

### COUNT TWO:
### VIOLATION OF 42 USC §1981
### (PLAINTIFFS AS "CSO" UNION MEMBERS)

74.     That Count Two incorporates by reference paragraphs One through Seventy-Three of the Complaint.

75.     Prior to their termination, Plaintiff Union members enjoyed the benefit of duly accepted employment with the Defendants by virtue of an offer and acceptance of terms of employment and/or as third beneficiaries per the Union's collective bargaining agreement with Defendants.

76.     Plaintiffs are entitled to enjoy the benefits of their contract with Defendants, and the property rights therein without interruption and biased impairments based upon union status, proximity to retirement, age or racially motivated reasons.

77.     Defendant, through its Agency officials, repeatedly failed to implement, follow, and adhere to evaluation, notice, and record keeping procedures and process pursuant to the "CBA", violating Plaintiffs' rights stemming from their employment relationship with the Defendant, as well as those rights enjoyed by virtue of their relationship as third party beneficiaries of the Collective Bargaining Agreement ("CBA").

78. The Defendant's aforementioned practices were racially and aged-based and specifically targeted the Plaintiffs as veteran Incumbents and Union members; and, as a

23

direct and proximate result of these illegal actions, Plaintiffs suffered actual harm including, but not limited to, loss of employment, loss of benefits, embarrassment, malignment of reputation, loss of self-esteem, and significant mental and emotional anguish.

## COUNT THREE:
## WRONGFUL DISCHARGE

79.    That Count Three incorporates by reference paragraphs One through Seventy-Eight of the Complaint.

80.    Each of the Claimants had been an administrator of DCPS for five ("5") or more years.

81.    Complainants' performance evaluations do not coincide with the process and reasons given for their respective terminations.

82.    Instead of complying with DCMR, CMPA, and CDCR 5-520, et seq., DCPS developed a plan to execute a mass firing of Plaintiffs, incumbent DCPS school administrators, from their positions of employment for arbitrary, capricious, and illegal reasons having nothing to do with Plaintiffs' respective competency, past performance, talent, skills, dedication, and other like qualities, capabilities, and aptitudes.

83.    DCPS' actions in effecting a premeditated "mass firing" of the Plaintiffs and their surreptitious and dishonest actions supportive thereof were contrary to and in violation of public policy, the DC CMPA, CDCR 5-520, et seq., and the Collective Bargaining Agreement ("CBA").

## COUNT FOUR:

## DEFAMATION AND BUSINESS DEFAMATION

84.     That Count Four incorporates by reference paragraphs One through Eighty-Three.

85.     DCPS executed a public campaign to tarnish the Plaintiffs' careers and ruin their

reputations (nationally and in the specific communities wherein Plaintiffs were employed

or could reasonably expect to be employed in the future) as administrators, by issuing

statements (implicit and explicit) to the media, neighboring and national school systems,

and in public meetings that the Plaintiffs were responsible for causing their schools to be

"under-achieving schools."

86.     DCPS intentionally executed a campaign to ruin the Plaintiffs' business

reputations by making false accusations that they had engaged in misconduct and/or

deficient performance that justified their dismissals.[11]

---

[11] Examples of DCPS' campaign of false and malicious disparagement include: (1)
"Fixing Washington D.C.'s School System," Jeff Chu, August 7, 2008,
http://www.fastcompany.com/magazine/128/the-iron-chancellor.html?page=0%2C1; (2)
"An Unlikely Gambler," Evan Thomas, *Newsweek*, August 23, 2008; (3) "Rhee Moves to
Dismiss Up to 30 Principals," Bill Turque and V. Dion Haynes, *The Washington Post*,
May 6, 2008; (4) "Rhee Fires Her Children's Principal: Bilingual School Known for High
Achievement," Bill Turque, *The Washington Post*, May 9, 2008; (5) "The Restructuring
Strategy," No Author Identified, *The Washington Post*, May 16, 2008 (*Note: This article
lists each school where Principal will be removed.); (6) "Rhee Has Dismissed 24
Principals," Bill Turque, *The Washington Post*, May 16, 2008, Page B05 (*Note:
Plaintiffs mentioned specifically by name include: Lynne Gober of Anacostia SHS;
Harriet Kargbo of Dunbar SHS; Jacqueline Williams of Wilson SHS; Marta Guzman of
Oyster-Adams Bilingual.  Specific middle and junior high schools include: Hart, Lincoln,
Macfarland, Garnett-Patterson, and Sousa.); (7) "Rhee Offers Plan to Improve D.C.'s
Troubled Schools," V. Dion Haynes and Bill Turque, *The Washington Post*, May 16,
2008, Page B01; (8) "Rhee Defends Firing Her Children's Principal," Bill Turque, *The
Washington Post*, May 20, 2008;  (9) "22 Assistant Principals Are Latest to Be Fired," V.
Dion Haynes, *The Washington Post*, June 19, 2008; "Principals Union Protests Firings,"
V. Dion Haynes, *D.C. Wire Blog (News and Notes on District Politics)*, May 30, 2008;
(10) Letter from Chancellor Michelle Rhee to D.C. City Council, June 30, 2009, attached
as Exhibit 9.

### COUNT FIVE: CIVIL CONSPIRACY

### (Including Conspiracy to Defame and Tortious Interference with Prospective Advantage)

87.   That Count Five incorporates by reference paragraphs One through Eighty-Six.

88.   DCPS engaged in a predetermined plan to dismiss Plaintiffs due to race, age, union status, proximity to retirement, and other surreptitious and illegal reasons, including unfair and untrue allegations of incompetence and lack of professional skills in order to wrongfully disallow them to compete for positions for which they qualified and to wrongly deprive them of a fair opportunity to remain in or compete.

89.   DCPS engaged in a predetermined plan to tamper/ interfere with Plaintiffs' annual performance evaluations leading up to their non-reappointments, personnel and employment records before and after their non-reappointments to disallow fair competition for ongoing and future employment as school administrators.

### COUNT SIX: VIOLATION OF FEDERAL RETIREMENT LAW (ERISA)

90.   That Count Six incorporates by reference paragraphs One through Eighty-Nine.

91.   DCPS intentionally interfered with Plaintiffs' retirement benefits by forcing the Plaintiffs out of their respective positions, causing them to seek early retirement, involuntary retirement, or reduced retirement benefits from DCPS.

### COUNT SEVEN:  BREACH OF EMPLOYMENT CONTRACT

92.   That Count Seven incorporates by reference paragraphs One through Ninety-One.

93.     DCPS intentionally breached Plaintiffs' employment contract by failing to perform annual performance evaluations; give notice and opportunity to respond to records of deficient performance; and following the procedure and policy established to improve deficient performance, should it be deemed necessary.

94.     DCPS failed to exercise Retreat Rights pursuant to the employment agreement and prior customs and practices.

95.     DCPS failed to reappoint Plaintiffs based on fair annual performance evaluations, as had been established as a prior practice.

**Wherefore the premises considered, the Plaintiffs acting as a Class pray** that this Court grant judgment to Plaintiffs:

(a). in the amount of Thirty-Four Million ($34,000,000.00) Dollars for compensatory damages for lost wages and lost benefits (including medical, health, vacation, sick leave, retirement, and all other applicable benefits);

(b). emotional distress damages in the amount of Thirty-Four Million Dollars ("$34,000,000.00");

(c). reinstatement of their respective employment positions as school administrators;

(d). promotions to the school administrative positions they would have been in, but for DCPS' wrongful interference with their respective employment contracts, with back pay/ retroactive effect;

(e). attorney fees, costs, and expenses of litigation;

(f). an order enjoining the Agency and the Defendants from further Acts of

discrimination, abuse of process, and wrongful interference with employment contracts, retirement benefits, *inter alia.*

(g) public apology to mitigate the damage to Plaintiffs' names, careers, and reputations.

Respectfully submitted,

John F. Mercer, Esq.
Bar # 184549
Mercer Law Associates, PLLC.
1629 K Street, N.W., Suite 300
Washington, D.C. 20036
Telephone:  202.349.1686
Mobile:  240.535.8758
Email: jmjmercer@aol.com
Attorney for the Plaintiffs

## **JURY TRIAL DEMAND**

Plaintiffs demand a jury trial in this matter pursuant to Fed. R. Civ. P. 38(b) and Fed. R. Civ. P. 5(b).

_____
John F. Mercer

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Second Amended Complaint for Wrongful Discharge, Defamation, Violation of Right to Privacy, Civil Conspiracy, Violation of Federal Retirement Law, Discrimination in Violation of Title VII of the Civil Rights Act and D.C. Human Rights Act was served by first-class mail and by electronic filing upon:  Bradford C. Patrick, Esq., Counsel for Defendants. this 16th day of October, 2011.

John F. Mercer, Esq.