UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                                    )
KENNETH DICKERSON et al.,                           )
                                                    )
              Plaintiffs,                           )
                                                    )
       v.                                           )        Civil Action No. 09-2213 (PLF)
                                                    )
DISTRICT OF COLUMBIA et al.,                        )
                                                    )
              Defendants.                           )
—————————————————————                               )


OPINION

       This matter is before the Court on the District of Columbia's motion to dismiss

the plaintiffs' Third Amended Complaint.[1]  The twenty-two plaintiffs are former principals and

assistant principals of public schools in the District of Columbia who challenge their non-

reappointment to these positions in 2008 and 2009, during the tenure of former Chancellor

Michelle Rhee.[2]  The plaintiffs also allege that after they lost their positions, Chancellor Rhee

————————————————

       [1]      The papers reviewed in connection with the pending motion include: plaintiffs'
Third Amended Complaint ("3d Am. Compl.") [Dkt. No. 24]; the District's motion to dismiss
the Third Amended Complaint ("Defs.' MTD") [Dkt. No. 25]; plaintiffs' opposition ("Pls.'
Opp.") [Dkt. No. 27]; the District's reply ("Defs.' Reply") [Dkt. No. 30]; the District's notice of
supplemental authority ("Defs.' Not. of Supp. Auth.") [Dkt. No. 35]; the District's supplemental
memorandum concerning ERISA claims ("Defs.' ERISA Supp.") [Dkt. No. 39]; the District's
supplemental memorandum concerning CMPA preemption ("Defs.' CMPA Supp.") [Dkt. No.
42]; plaintiffs' supplemental memorandum concerning CMPA preemption ("Pls.' CMPA
Supp.") [Dkt. No. 44]; the District's motion to dismiss the First Amended Complaint ("Defs.'
MTD 1st Am. Compl.") [Dkt. No. 5]; D.C. Superior Court Documents ("Superior Court Docs.")
[Dkt. No. 1-1]; Notice of Removal [Dkt. No. 1]; Agreement Between the Board of Education of
the District of Columbia and the Council of School Officers ("CBA") [Dkt. No. 25-1].

       [2]      The plaintiffs purport to be a putative class.  See 3d Am. Compl. ¶¶ 1, 40; Pls.'
Opp. at 1.  But they never have filed a motion for class certification.  Although the plaintiffs did

defamed them by making statements to the press that attributed the poor state of the District's schools to their allegedly ineffective performance as administrators.

In their Third Amended Complaint, the plaintiffs assert a number of claims under both federal and District of Columbia law. Count One alleges discrimination on the basis of race and age, in violation of the District of Columbia Human Rights Act. 3d Am. Compl. ¶¶ 70-73. Count Two alleges a violation of 42 U.S.C. § 1981, which protects against racial discrimination in the making and enforcement of contracts. Id. ¶¶ 74-78. Count Three alleges a claim for wrongful discharge, id. ¶¶ 79-83, while Count Four alleges claims for defamation and business defamation. Id. ¶¶ 84-86. Count Five alleges civil conspiracy, "including conspiracy to defame and tortious interference with prospective advantage." Id. ¶¶ 87-89. Count Six alleges violations of the Employee Retirement Income Security Act ("ERISA"). Id. ¶¶ 90-91. Count Seven alleges breach of contract. Id. ¶¶ 92-95. The plaintiffs also purport to advance claims for racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and for age discrimination in violation of the Age Discrimination in Employment Act, although the complaint fails to set forth these claims in distinct counts. See id. ¶¶ 70-95. These two federal statutes are referenced only in introductory sections of the complaint, see id. ¶¶ 1, 26, although the plaintiffs discuss them at length in their opposition to the District's motion to dismiss. See Pls.' Opp. at 25-30.

The District has moved to dismiss the plaintiffs' Third Amended Complaint on several grounds. With respect to the majority of plaintiffs' D.C. law claims, it maintains that this Court lacks subject matter jurisdiction over these claims because the District of Columbia's Comprehensive Merit Personnel Act provides the sole avenue for resolving disputes between the District and its employees. The District further contends that under a provision of the parties'

_____

once seek an extension of time within which to file such a motion, see Dkt. No. 13, no class certification motion was ever filed.

Collective Bargaining Agreement, the plaintiffs' D.C. Human Rights Act claims could be pursued only by filing a complaint with the D.C. Office of Human Rights. The District also raises timeliness defenses to the plaintiffs' claims under D.C. law, and it argues for dismissal of the plaintiffs' various federal claims on a number of other grounds. The Court will grant in part and deny in part the District's motion to dismiss.

## I. BACKGROUND

The twenty-two plaintiffs are former principals and assistant principals of the District of Columbia Public Schools ("DCPS"). 3d Am. Compl. ¶ 42. All of the plaintiffs are either African American or Hispanic, and all were over the age of forty years when they lost their positions. Id. ¶ 41. Because DCPS's principals and assistant principals are appointed for one-year terms without tenure, see 5-E D.C.M.R. § 520.1, none of the plaintiffs was "terminated" from employment; rather, each complains of his or her "non-reappointment" to a previously held position. See 3d Am. Compl. ¶¶ 53-54. Eighteen of the plaintiffs were notified of their non-reappointments in 2008 (at the close of the 2007-08 academic year), while four of the plaintiffs were notified in 2009 (at the close of the 2008-09 academic year). Id. ¶¶ 45-46.

The plaintiffs' non-reappointments occurred on the watch of defendant Michelle Rhee, who in 2007 was appointed as the Chancellor of DCPS. Plaintiffs' basic theory of the case is that Rhee entered the Chancellorship with a premeditated plan to rid the District's schools of many existing administrators, so that they could be replaced with her preferred choices for those positions. See 3d Am. Compl. ¶¶ 30, 34-35, 55, 65.[3] Furthermore, the plaintiffs allege that they were replaced by people who were younger and white, rather than African American or

_____

[3]     The Third Amended Complaint features two paragraphs labeled "55"; all citations in this Opinion refer to the first of these paragraphs.

Hispanic. Id. ¶¶ 35, 55, 72. These differences in personal characteristics, the plaintiffs contend, demonstrate that Rhee acted in a discriminatory manner with respect to their non-reappointments. See id. ¶¶ 71-73, 76, 78; Pls.' Opp. at 29-30.

In addition, the plaintiffs maintain that although the official reason for their non-reappointments was the allegedly poor performance of their schools, in fact Rhee simply desired to bring in her own "cronies" to help her run the District's school system. See 3d Am. Compl. ¶¶ 47-55, 65. And to the extent that genuine performance issues did exist, the plaintiffs argue that they should have been given opportunities to improve, in accordance with the procedures set forth in their Collective Bargaining Agreement. Id. ¶ 33. Moreover, the plaintiffs contend that they did the best they could do in tough circumstances, given inadequate budgets and other impediments to success. See id. ¶ 52.

The plaintiffs' complaints do not end with their non-reappointments as principals and assistant principals. They further argue that the District interfered with their "retreat rights," which should have enabled them to take up preferred alternative positions within the District's school system and to enjoy higher levels of retirement benefits. 3d Am. Compl. ¶¶ 68-69, 91. Although some of the plaintiffs did elect to work in different positions within DCPS after their non-reappointments as principals or assistant principals, see id. ¶ 69, others contend that the District's actions effectively forced them to retire early. Id. ¶ 67. Finally, the plaintiffs argue that Chancellor Rhee and her administration engaged in a media campaign that defamed the plaintiffs by labeling them as poor performers who had been dismissed from their positions for cause. Id. ¶¶ 59, 85-86. This alleged defamation, in turn, has made it nearly impossible for the plaintiffs to find new work as school administrators. Id. ¶ 63.

The plaintiffs filed their original complaint in the Superior Court of the District of Columbia on June 30, 2009; shortly thereafter, they filed an amended complaint in that court. <u>See</u> Superior Court Docs. The District then removed the case to this Court on the basis of federal question jurisdiction. <u>See</u> Notice of Removal. Since removal, the plaintiffs have twice further amended their complaint; the operative pleading is now the Third Amended Complaint. <u>See</u> 3d Am. Compl.[4] The District has moved to dismiss this complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defs.' CMPA Supp. at 3-5; Defs.' MTD at 1.

## II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to them by a grant of power contained either in the Constitution or in an act of Congress. <u>See</u>, <u>e.g.</u>, <u>Beethoven.com LLC v. Librarian of Congress</u>, 394 F.3d 939, 945 (D.C. Cir. 2005); <u>Sierra Club v. Jackson</u>, 813 F. Supp. 2d 149, 154 (D.D.C. 2011); <u>Tabman v. FBI</u>, 718 F. Supp. 2d 98, 100 (D.D.C. 2010). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction. <u>See</u> <u>Tabman v. FBI</u>, 718 F. Supp. 2d at 100; <u>Brady Campaign to Prevent Gun Violence v. Ashcroft</u>, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). In determining whether to grant such a motion, the Court must construe the complaint in the plaintiff's favor and treat all well-pled allegations of fact as true. <u>See</u> <u>Ord v. Dist. of Columbia</u>, 587 F.3d 1136, 1140 (D.C. Cir. 2009); <u>Jerome Stevens Pharms., Inc. v. FDA</u>, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). But the Court need not accept unsupported inferences or legal conclusions cast as factual allegations. <u>See</u> <u>Primax Recoveries, Inc. v. Lee</u>, 260 F. Supp.

---

[4]  The plaintiffs were granted leave to file their Second Amended Complaint over the District's opposition, as explained in <u>Dickerson v. Dist. of Columbia</u>, 806 F. Supp. 2d 116 (D.D.C. 2011). That Memorandum Order was issued when this matter was before now-Chief Judge Richard W. Roberts. On August 29, 2013, the case was transferred to the undersigned by consent under Local Civil Rule 40.6(a).

2d 43, 47 (D.D.C. 2003). Under Rule 12(b)(1), the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case. Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 21 (D.D.C. 2003); Scolaro v. D.C. Board of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Papasan v. Allain, 478 U.S. 265, 286 (1986). On such a motion, the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See id.; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. at 555).

### III. DISCUSSION

#### A. *Claims Against Individual Defendants*

The named defendants in this case are the District of Columbia, former D.C. Mayor Adrian Fenty, and former Chancellor Michelle Rhee. With respect to the individual defendants, Mayor Fenty and Chancellor Rhee, the plaintiffs fail to specify in their complaint whether these parties are sued only in their official capacities or, instead, in both their official and individual capacities. "If a complaint does not specify whether an official is being sued in his individual or official capacity, '[t]he course of proceedings' . . . typically will indicate the nature of the liability sought to be imposed." Bradley v. DeWine, No. 14-110 (JDB), 2014 WL 3056513, at *3 (D.D.C. July 8, 2014) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)) (alteration and omission in original, and quotation marks omitted). The plaintiffs' opposition memorandum clarifies that former Chancellor Rhee is sued in her individual capacity with respect to the claim that she made defamatory statements about the plaintiffs to the media.

With regard to former Mayor Fenty, however, the plaintiffs' only apparent theory of individual liability concerns purported constitutional deprivations pursued under 42 U.S.C. § 1983. See Pl.'s Opp. at 14-15. The plaintiffs' complaint, however, is devoid of constitutional claims and, in any event, they allege no personal involvement on the part of Mayor Fenty with respect to any of the alleged harms that they do identify. Accordingly, the Court will dismiss Adrian Fenty from this case to the extent that he is sued in his individual capacity. The Court also will dismiss the plaintiffs' claims against the individual defendants in their official capacities, which are, in effect, claims against the District government itself. See Holmes-Ramsey v. Dist. of Columbia, 747 F. Supp. 2d 32, 42-43 (D.D.C. 2010). What remains, then, are

claims against the District of Columbia, as well as a defamation claim brought against Michelle Rhee in her individual capacity.

## *B. Common Law Claims*

At an earlier stage of the litigation of this case, the District raised the argument that the District of Columbia's Comprehensive Merit Personnel Act of 1978 ("CMPA") preempted many of the plaintiffs' common law claims. <u>See</u> Defs.' MTD 1st Am. Compl. at 9-14. The Court at that time ruled, in considering the plaintiffs' motion for leave to file a Second Amended Complaint, that it was "premature to conclude from this briefing that the plaintiffs failed to exhaust their administrative remedies [under the CMPA] and that permitting their new claims would be futile." <u>Dickerson v. Dist. of Columbia</u>, 806 F. Supp. 2d 116, 121 (D.D.C. 2011). As a consequence, the District did not raise this argument again in its motion to dismiss the Third Amended Complaint. <u>See</u> Defs.' Reply at 2 n.1. But upon review of the pending motion to dismiss, this Court concluded that the CMPA might implicate the Court's jurisdiction over the plaintiffs' common law claims and therefore directed the parties to submit supplemental memoranda addressing the issue. <u>See</u> <u>Dickerson v. Dist. of Columbia</u>, Dkt. No. 41, Civil Action No. 09-2213, Memo. Op. and Order (D.D.C. Nov. 7, 2013).

The District contends that this Court lacks jurisdiction to entertain nearly all of the plaintiffs' common law claims, arguing that the CMPA "provides the exclusive remedies for Plaintiffs' defamation, breach of contract, and conspiracy claims," as well as for the wrongful termination claims of some of the plaintiffs. Defs.' CMPA Supp. at 2. The plaintiffs respond that their common law claims do not fall within the CMPA's ambit, <u>see</u> Pls.' CMPA Supp. at 4-5, or, in the alternative, that they have "satisfied all administrative procedures necessary for this Court to have proper jurisdiction over all claims." <u>Id</u>. at 1-2; <u>see also</u> <u>id</u>. at 5-7.

1.  Scope of CMPA Preemption

It is an unresolved question in the D.C. Circuit whether the CMPA deprives federal courts of jurisdiction over common law claims brought by District employees against their employer, or whether, instead, exhaustion of CMPA remedies is merely prudential.  See Johnson v. Dist. of Columbia, 552 F.3d 806, 810 n.2 (D.C. Cir. 2008); see also Thompson v. Dist. of Columbia, 428 F.3d 283, 288 (D.C. Cir. 2005).  But the D.C. Court of Appeals has long held that CMPA preemption implicates a court's jurisdiction over the subject matter of such claims.  Coleman v. Dist. of Columbia, 80 A.3d 1028, 1030 n.2 (D.C. 2013) ("This court has consistently understood the question whether claims are foreclosed by the CMPA to go to the subject-matter jurisdiction of the Superior Court."); see also Johnson v. Dist. of Columbia, 552 F.3d at 810 n.2 ("The [CMPA] exhaustion doctrine is jurisdictional as applied by the D.C. Court of Appeals.").[5]  Likewise, members of this Court have almost universally considered the issue to be jurisdictional.  See, e.g., Bowers v. Dist. of Columbia, 883 F. Supp. 2d 1, 9-10 (D.D.C. 2011); Payne v. Dist. of Columbia, 773 F. Supp. 2d 89, 101 (D.D.C. 2011) (Friedman, J.).  But see Mpoy v. Fenty, 870 F. Supp. 2d 173, 178-79 (D.D.C. 2012) (electing to treat the issue as prudential rather than jurisdictional).  This Court will follow its own prior practice and the dominant trend by treating the question whether the CMPA preempts plaintiffs' common law claims as implicating the Court's subject matter jurisdiction over these claims.

"With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."  Robinson v. Dist. of Columbia, 748 A.2d 409, 411 (D.C. 2000).  The statute has been recognized as establishing a

---

[5]    The plaintiffs cite one case to the contrary.  See Pls.' CMPA Supp. at 3 (citing Burton v. Dist. of Columbia, 835 A.2d 1076, 1079 (D.C. 2003)).  But Burton appears to be the lone aberration within the D.C. Court of Appeals' jurisprudence on this issue.  See Johnson v. Dist. of Columbia, 368 F. Supp. 2d 30, 40 n.3 (D.D.C. 2005).

"'comprehensive merit personnel system' intended to create a system of 'efficient administration' that would give courts 'a reviewing role . . . as a last resort, not a supplementary role . . . as an alternative forum.'"  <u>Coleman v. Dist. of Columbia</u>, 80 A.3d at 1033 (quoting <u>Dist. of Columbia v. Thompson</u>, 593 A.2d 621, 632-34 (D.C. 1991)) (omissions in original).  "[P]ermitting parties to 'seek relief outside of the CMPA . . . would frustrate the [CMPA]'s aim to achieve order and efficiency.'"  <u>Id.</u> (quoting <u>Dist. of Columbia Metro. Police Dep't v. Fraternal Order of Police/Metro. Police Labor Comm.</u>, 997 A.2d 65, 77 (D.C. 2010)) (omission and second alteration in original).  The D.C. Court of Appeals therefore routinely has concluded that this statutory regime preempts District employees from bringing their work-related claims to court in reliance on other sources of District law.  <u>See</u>, <u>e.g.</u>, <u>White v. Dist. of Columbia</u>, 852 A.2d 922, 925-27 (D.C. 2004) (CMPA preempts D.C. employee's misrepresentation claim); <u>Baker v. Dist. of Columbia</u>, 785 A.2d 696, 698 (D.C. 2001) (CMPA preempts D.C. employee's emotional distress and defamation claims); <u>Dist. of Columbia v. Thompson</u>, 593 A.2d at 635 (same).  "[T]he sweeping nature of this exemption [encompasses] nearly all employee claims arising out of workplace activity."  <u>Robinson v. Dist. of Columbia</u>, 748 A.2d at 411.

Lying outside the scope of CMPA preemption, however, are claims of workplace discrimination, including sexual harassment, brought under the D.C. Human Rights Act. <u>Robinson v. Dist. of Columbia</u>, 748 A.2d at 411; <u>King v. Kidd</u>, 640 A.2d 656, 664 (D.C. 1993); <u>see also</u> <u>Lewis v. Dist. of Columbia Dept. of Motor Vehicles</u>, 987 A.2d 1134, 1137 n.2 (D.C. 2010).  In addition, some common law claims may be sufficiently intertwined with allegations of discrimination that those claims can be brought to the judicial forum in the first instance.  <u>See</u> <u>Robinson v. Dist. of Columbia</u>, 748 A.2d at 411-13; <u>King v. Kidd</u>, 640 A.2d at 664.  And the CMPA does not — indeed, could not — preclude District employees from pursuing judicial

relief for claims pursued under federal law.  See Kelley v. Dist. of Columbia, 893 F. Supp. 2d

115, 119 n.1 (D.D.C. 2012).[6]  Because the plaintiffs in this case bring discrimination-based

claims under both D.C. and federal law, as to which the CMPA is inapplicable, these claims are

addressed infra at 17-21.

### 2.  Breach of Contract

With this framework in mind, the Court turns to consider each of the plaintiffs'

common law claims.  First, the plaintiffs assert a claim for breach of contract.  Although their

complaint is less than pellucid regarding the source of their asserted contractual rights, it appears

that this claim rests on the theory that the District failed to abide by the terms of the Collective

Bargaining Agreement ("CBA") between it and the plaintiffs' bargaining unit, the Council of

School Officers ("CSO").  See 3d Am. Compl. ¶¶ 33 n.5, 64, 92-95.  The plaintiffs specifically

contend that prior to any decision not to reappoint them as school administrators, they should

have been provided with job performance evaluations and, if their performances were deemed

inadequate, to the opportunity to make improvements in accordance with procedures defined by

the CBA and by prior practice.  See id. ¶¶ 33, 93, 95.  The plaintiffs also appear to maintain that

the District's alleged breach of the CBA interfered with their retreat rights.  See id. ¶ 94.

The Court concludes that it lacks jurisdiction over the plaintiffs' claim for breach

of contract, which falls squarely within the preemptive scope of the CMPA.  "Generally, a

District employee, subject to the [CMPA] or to a CMPA-sanctioned collective bargaining

agreement, may not maintain a common law action in court to remedy a grievance against the

---

[6]        The D.C. Court of Appeals has also recognized that some claims arising from
tortious conduct in the public workplace, such as claims for assault and battery, may not be
preempted by the CMPA, although the scope of this exception has been left undefined.  See
Stockard v. Moss, 706 A.2d 561, 565 n.9 (D.C. 1997).

employer cognizable under CMPA, or under such an agreement, unless the employee has exhausted the administrative procedures provided in that agreement." Bd. of Trustees, Univ. of Dist. of Columbia v. Myers, 652 A.2d 642, 645-48 (D.C. 1995). "[T]he applicable principles of preemption — of exclusiveness of remedy — are the same whether an employee's rights and obligations are governed by a collective bargaining agreement or by the provisions of CMPA itself." Dist. of Columbia v. Thompson, 593 A.2d at 627; see also Wilson v. Dist. of Columbia, 608 A.2d 161, 161 (D.C. 1992) (per curiam) (claim for breach of collective bargaining agreement preempted by CMPA). Accordingly, judges of this Court have held that they lacked jurisdiction over claims for breach of contract asserted by public employees against the District. See Bowers v. Dist. of Columbia, 883 F. Supp. 2d at 9-10; Payne v. Dist. of Columbia, 592 F. Supp. 2d 29, 36-37 (D.D.C. 2008). In the present case, Article VIII of the CBA between the Board of Education and the plaintiffs' bargaining unit defines a "grievance" as "an unsettled complaint concerning any alleged violation, misinterpretation, or misapplication of any of the provisions of this Agreement." CBA, Art. VIII(A). Plaintiffs' claim for breach of contract, therefore, would have been cognizable as a grievance under the CBA; consequently, they were obligated to pursue this claim under the grievance mechanisms provided to them by their Collective Bargaining Agreement. See id. Art. VIII(B).

  The plaintiffs argue that the District should be estopped from relying on the CBA as a defense to their claims, asserting that the District's alleged breach of that agreement amounts to a repudiation of its procedures. Pls.' Opp. at 23-24. But of course, the CBA defines a grievance as a complaint concerning an alleged violation of the agreement itself. See CBA, Art. VIII(A). The plaintiffs' theory would contravene the plain import of the procedures for which

their union bargained and to which it agreed. This argument, therefore, does not alter the Court's conclusion that it lacks jurisdiction over their claim for breach of contract.

### 3. Wrongful Termination

Next, the plaintiffs assert that they were wrongfully terminated from their positions as principals and assistant principals, "in violation of public policy." 3d Am. Compl. ¶ 83. Under District of Columbia law, a claim for wrongful termination will lie where a plaintiff identifies a public policy recognized as supporting such a claim, and demonstrates "a close fit between [that] policy . . . and the conduct at issue in the allegedly wrongful termination." Davis v. Community Alternatives of Washington, D.C., Inc., 74 A.3d 707, 709-10 (D.C. 2013) (quoting Fingerhut v. Children's Nat'l Med. Ctr., 738 A.2d 799, 803 n.7 (D.C. 1999)) (alteration and omission in original, and quotation marks omitted). The D.C. Court of Appeals has held that a claim for wrongful termination brought by a District employee, like most any other work-related complaint, is subject to preemption by the CMPA. See Lewis v. Dist. of Columbia Dept. of Motor Vehicles, 987 A.2d at 1137.

The conclusion of the D.C. Court of Appeals in Lewis, however, rested on the fact that the complaining employee had an administrative remedy available to him under the CMPA. See Lewis v. Dist. of Columbia Dept. of Motor Vehicles, 987 A.2d at 1137; see also Robinson v. Dist. of Columbia, 748 A.2d at 411 ("[G]overnment employees only lose common law rights of recovery if the statute provides redress for the wrongs they assert." (quoting Newman v. Dist. of Columbia, 518 A.2d 698, 704-05 (D.C. 1986))). In this case, it is not clear that the plaintiffs would have such an administrative remedy available to them, as Chancellor Rhee's decision not to reappoint a term appointee may not be challengeable under CMPA procedures. See 5-E D.C.M.R. § 1400.2(a) (exempting "[t]he termination of a temporary appointment upon the

expiration of the stated term of appointment," from procedures for disputing removals and similar actions); 5-E D.C.M.R. § 801.5(d), (f) (providing similar exemptions from Educational Service's definition of "grievance"); see also Coleman v. Dist. of Columbia, 80 A.3d at 1032 n.6 (recognizing that member of Career Service "would not be permitted to file a grievance challenging his 'nonselection from among a group of properly ranked and certified candidates,'" as D.C. Municipal Regulations exempted such action from definition of "grievance" (quoting 6-B D.C.M.R. § 845.4)).[7]

Even assuming that the District's failure to reappoint a school administrator to a new one-year term constitutes a "termination" — an issue on which the Court need not pass — the only public policy identified by the plaintiffs as having been violated is the purported age and race discrimination on which Chancellor Rhee allegedly relied in deciding not to reappoint them. See Pls.' Opp. at 47-48. But the public policy prohibiting discrimination cannot ground a claim for wrongful termination, as this policy is vindicated by statutes such as the D.C. Human Rights Act. See McManus v. MCI Commc'ns Corp., 748 A.2d 949, 957 (D.C. 2000) (court will not recognize additional public policy exceptions that are based on policies for which legislature has provided a remedy). Accordingly, the Court will dismiss the plaintiffs' claim for wrongful termination in violation of public policy.

---

[7]     Neither party has addressed in their briefing the significance of the District's regulations concerning educational employees, located at Title 5E of the Code of D.C. Municipal Regulations.

### 4. Defamation and Civil Conspiracy

Finally, the plaintiffs assert common law claims of defamation, "business defamation," and civil conspiracy.[8]  The defamation claim arises from their allegations that Chancellor Rhee made numerous public statements subsequent to the plaintiffs' non-reappointments, which placed the blame for the District's educational troubles upon them, thus making it nearly impossible for the plaintiffs to find new positions in their professional field.  See 3d Am. Compl. ¶¶ 59, 63, 85-86.  Courts often have concluded that District employees' work-related claims of defamation are preempted by the CMPA.  See, e.g., Baker v. Dist. of Columbia, 785 A.2d at 698; Dist. of Columbia v. Thompson, 593 A.2d at 635.  The plaintiffs argue, however, that Chancellor Rhee's statements were made after their non-reappointments, and in circumstances sufficiently separate from the workplace — such as in interviews given to national media outlets — to carry their defamation claims outside the preemptive scope of the CMPA.  See Pls.' CMPA Supp. at 4-5.

This Court previously has held, in a case involving factual circumstances analogous to those alleged here, that the CMPA divested it of jurisdiction over a District employee's common law claim of defamation.  In Holman v. Williams, 436 F. Supp. 2d 68

---

        [8]        The precise nature of the plaintiffs' civil conspiracy claim is not clear from their complaint.  Count Five of the complaint is titled "civil conspiracy, including conspiracy to defame and tortious interference with prospective advantage."  The Court construes this claim as resting essentially on the underlying allegations of defamation, which, according to the plaintiffs, have damaged their future career prospects.  Moreover, "[i]n the District of Columbia, civil conspiracy 'is not an independent tort but only a means for establishing vicarious liability for an underlying tort.'"  Rawlings v. Dist. of Columbia, 820 F. Supp. 2d 92, 103 (D.D.C. 2011) (quoting Nader v. Democratic Nat'l Comm., 567 F.3d 692, 697 (D.C. Cir. 2009)).  The plaintiffs also appear to cast the alleged discrimination involved in their non-reappointments as part of a "predetermined plan" — thus, a "conspiracy" — but this characterization does not add anything of substance to their discrimination claims.  See 3d Am. Compl. ¶ 88.  And in the final paragraph of Count Five, the plaintiffs refer vaguely to the District's having "tamper[ed]" or "interfere[d]" with their annual performance evaluations and other personnel records, see id. ¶ 89, but this conclusory claim is never substantiated with any specific factual allegations.

(D.D.C. 2006), a former employee of the District of Columbia Office of Human Rights brought a defamation claim against the District's Mayor, arguing that in conjunction with the Mayor's termination of the plaintiff's employment, the Mayor's office provided statements to *The Washington Post* asserting that the termination was for cause. Id. at 71-72. This Court held that it lacked subject matter jurisdiction over this claim, which, it concluded, was preempted by the CMPA. Id. at 74-76. It was of no moment that the allegedly defamatory statements were made after the plaintiff's termination from employment, and in the public sphere rather than in the workplace itself. See id. Accordingly, the CMPA deprives this Court of subject matter jurisdiction over the claim for defamation asserted by the plaintiffs here, as well as over their civil conspiracy claim, which, as indicated supra 15 at n.8, is effectively derivative of their defamation claim.

### 5. Asserted Exhaustion of Administrative Remedies

The plaintiffs argue that they already have exhausted their administrative options under the CMPA, thus enabling them to come directly to court. Pls.' CMPA Supp. at 1-2, 5-7. Specifically, they assert that their union representatives did initiate administrative proceedings on their behalf, but that the union ultimately elected not to pursue these claims. See 3d Am. Compl. ¶¶ 39, 57. As both the D.C. Court of Appeals and the United States Court of Appeals for the District of Columbia Circuit have held, however, one cannot escape CMPA preemption by blaming one's union for not having pursued a work-related complaint to its endpoint. Rather, a District employee in the plaintiffs' position must instead bring an unfair labor practices claim against the union itself; and the proper forum for such a claim is the District of Columbia's Public Employee Relations Board. See, e.g., Johnson v. Dist. of Columbia, 552 F.3d at 810-13; Pitt v. Dist. of Columbia Dep't of Corrections, 954 A.2d 978, 985-86 (D.C. 2008); Bd. of

Trustees, Univ. of Dist. of Columbia v. Myers, 652 A.2d at 646; Dist. of Columbia v. Thompson, 593 A.2d at 628 n.15.

Thus, the union's declination to follow through on the plaintiffs' complaints does not alter this Court's conclusion that the CMPA prevents its exercise of jurisdiction over the plaintiffs' claims for breach of contract, defamation, and civil conspiracy. Nor does the plaintiffs' argument that these claims are "sufficiently linked" to their claims of discrimination brought under the D.C. Human Rights Act. Pls.' CMPA Supp. at 4. None of the plaintiffs' common law claims would require a finding of discrimination as a predicate to their successful prosecution. See Robinson v. Dist. of Columbia, 748 A.2d at 411-13. The Court therefore dismisses for lack of subject matter jurisdiction the plaintiffs' claims for breach of contract, defamation, and civil conspiracy, and dismisses their wrongful termination claim for failure to state a claim on which relief can be granted.

### C. Claims of Race and Age Discrimination

#### 1. D.C. Human Rights Act

"The D.C Human Rights Act requires complainants to choose between an administrative or a judicial forum in which to pursue their claims." Carter v. Dist. of Columbia, 980 A.2d 1217, 1223 (D.C. 2009). The administrative forum provided under the Human Rights Act is the D.C. Office of Human Rights ("OHR"). See D.C. CODE § 2-1403.04. "The jurisdiction of the court and OHR are mutually exclusive in the first instance. Thus, where one opts to file with OHR, he or she generally may not also file a complaint in court." Carter v. Dist. of Columbia, 980 A.2d at 1223 (quoting Brown v. Capitol Hill Club, 425 A.2d 1309, 1311 (D.C. 1981)) (alteration omitted).

In this case, the parties' Collective Bargaining Agreement provides that "[a]ny complaint concerning discrimination as prohibited by the D.C. Human Rights Law shall be processed *only* under procedures provided in the D.C. Official Code § 2-1403.04." CBA, Art. VII(E) (emphasis added). The statutory provision cited in Article VII(E) establishes the procedures for filing complaints of discrimination with OHR. Under the terms of the parties' Collective Bargaining Agreement, therefore, the plaintiffs have opted for the administrative rather than the judicial forum for the pursuit of claims arising under the Human Rights Act. This does not mean, however, that the CBA precludes access to a judicial forum, as "OHR's determination that there is no probable cause to believe that the Human Rights Act has been violated is subject to judicial review." Smith v. Dist. of Columbia Office of Human Rights, 77 A.3d 980, 990 (D.C. 2013). Article VII(E) of the CBA simply requires that the plaintiffs pursue these claims through the pathway administered by the Office of Human Rights, rather than bringing them to the judicial forum in the first instance, as they have done here.

The plaintiffs offer no persuasive reason why this Court should not hold them to the bargain struck by the Council of School Officers. They argue only that because, in their view, the District breached the CBA by failing to provide them with appropriate process prior to their non-reappointments, the District therefore should be estopped from relying on Article VII(E)'s election of OHR as the exclusive forum for bringing Human Rights Act claims. See Pls.' Opp. at 23-24. The plaintiffs rely on Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers Int'l, AFL-CIO, 370 U.S. 254 (1962). But this decision, if anything, supports the opposite view. There, Drake Bakeries asserted that the union had violated the no-strike clause of their collective bargaining agreement, and the company brought an action in federal court. Id. at 255. The Supreme Court held that the union's alleged breach did not excuse

Drake Bakeries of its commitment to arbitrate all disputes arising under the agreement. See id. at 260-67. Similarly here, the plaintiffs have offered no reason to conclude that the District's alleged breach of CBA provisions regarding performance evaluation somehow excuses the plaintiffs from following the procedures set forth in Article VII(E) of the agreement. Accordingly, the Court will dismiss the plaintiffs' claims for discrimination on the basis of race and age brought under the District of Columbia Human Rights Act.

### 2.  Title VII and Age Discrimination in Employment Act

The plaintiffs purport to advance claims for racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and for age discrimination in violation of the Age Discrimination in Employment Act. See Pls.' Opp. at 25-30. But as the District points out, see Defs.' MTD at 18; Defs.' Reply at 3-5, none of the seven distinct counts set forth in the plaintiffs' complaint actually references either of these statutes. The title of the complaint does mention Title VII, and United State Code references for both statutes are provided somewhat cryptically in the paragraph citing the jurisdictional bases for the action. See 3d Am. Compl. ¶ 1. In addition, the plaintiffs note that DCPS "is an 'employer' pursuant to [Title VII]." Id. ¶ 26. And the complaint states that three of the plaintiffs have received "right-to-sue" letters from the Equal Employment Opportunity Commission, which indicates that these plaintiffs have attempted to pursue remedies for alleged discrimination under federal law. See id. ¶¶ 13, 16, 31 n.2. The plaintiffs also have attached these letters as exhibits to their complaint.

The Court agrees with the District that the plaintiffs have failed to state claims under Title VII or the ADEA, given the mere passing references to these two statutes in their Third Amended Complaint. See Smith v. Janey, 664 F. Supp. 2d 1, 8 (D.D.C. 2009) (plaintiff failed to state claim under 42 U.S.C. § 1981 where complaint's introductory paragraph cited the

statute in passing, but did not mention it again).  The Court therefore will dismiss these claims, but it will do so without prejudice, as the complaint makes evident the plaintiffs' intention to pursue claims of race- and age- based discrimination under federal law.   Moreover, despite the careless drafting of the complaint, attached to it are EEOC right-to-sue letters of three of the plaintiffs, which indicate that these plaintiffs — though none of the other nineteen plaintiffs — pursued both Title VII and ADEA claims at the administrative level.  <u>See</u> Dkt. No. 24-1 at ECF pages 28, 70, 72.  Indeed, although the District now contends that the complaint fails to give fair notice of the nature of the plaintiffs' discrimination claims under federal law, in its motion to dismiss the First Amended Complaint, the District responded to the Title VII claim on its merits. <u>See</u> Defs.' MTD 1st Am. Compl. at 17-19.  Accordingly, as the complaint in its present form fails to assert claims under either Title VII or the ADEA, the Court will dismiss those claims, although without prejudice to the plaintiffs' attempting to cure these defects in by seeking to file yet another amended complaint.[9]

### 3.  Section 1981

The plaintiffs also bring a claim under 42 U.S.C. § 1981, which prohibits racial discrimination with respect to "mak[ing] and enforc[ing] contracts."  The District argues for dismissal of this claim, <u>see</u> Defs.' MTD at 8-9; Defs.' Reply at 11-12; Defs.' Not. of Supp. Auth. at 1-2, but the viability of the plaintiffs' Section 1981 claim already has been recognized.  In ruling on the plaintiffs' earlier motion to amend their complaint, Chief Judge Roberts concluded that the addition of a claim for violation of Section 1981 would not be futile.  Specifically, he

---

[9]     As noted, only three of the twenty-two plaintiffs have indicated that they received right-to-sue letters from the EEOC.  The Court notes, therefore, that there may be serious questions regarding exhaustion of administrative remedies if and when the plaintiffs seek leave to file a newly amended complaint.

determined that the "plaintiffs have amply alleged that while they were employed, their right to have evaluations and termination decisions be free from racial discrimination was violated." Dickerson v. Dist. of Columbia, 806 F. Supp. 2d at 119. Thus, the Court already has held that the plaintiffs' claim under Section 1981 is sufficient to withstand a motion to dismiss for failure to state a claim. See Payne v. Dist. of Columbia, 773 F. Supp. 2d at 95 ("Amendment of a complaint is futile . . . where the complaint as amended would 'not survive a motion to dismiss or for judgment on the pleadings.'" (quoting Jung v. Ass'n of Am. Med. Colleges, 226 F.R.D. 7, 9 (D.D.C. 2005))).

The District argues, in its reply brief and in a notice of supplemental authority, that because Section 1981 itself does not provide a cause of action against state actors — as such claims must be pursued through the cause of action provided in 42 U.S.C. § 1983 — the Court should dismiss this claim. See Defs.' Reply at 11-12; Defs.' Not. of Supp. Auth. at 1-2. The Court agrees with the District's statement of the law. See Onyeanusi v. Dist. of Columbia, Civil Action No. 08-1172 (PLF), 2014 WL 4724304, at *1 (D.D.C. Sept. 24, 2014). The Court disagrees, however, that reconsideration of Chief Judge Roberts' earlier ruling is required here. To be sure, the plaintiffs have failed to cite Section 1983 in their complaint, and Chief Judge Roberts did not explicitly address this issue. But he did fully address the substance of the matter, concluding that the plaintiffs had alleged that Chancellor Rhee — a "policymaker" within the District's educational apparatus — had engineered the allegedly discriminatory non-reappointments of the plaintiffs. See Dickerson v. Dist. of Columbia, 806 F. Supp. 2d at 120 (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690-91 (1978)). Accordingly, the Court will deny the District's motion to dismiss the plaintiffs' claim under 42 U.S.C. § 1981.

*D. Employee Retirement Income Security Act*

The plaintiffs contend that the District has caused them to lose valuable retirement benefits, in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq., ("ERISA"). The District, in a supplemental memorandum, argues that ERISA does not apply with respect to government employees. See Defs.' ERISA Supp. It points to language in the statute stating that, "the provisions of this subchapter shall not apply to any employee benefit plan if [] such plan is a governmental plan." 29 U.S.C. § 1003(b)(1). ERISA defines "governmental plan" to include "a plan established or maintained for its employees . . . by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). And "[t]he term 'State' includes . . . the District of Columbia." 29 U.S.C. § 1002(10).

The plaintiffs did not file a response to the District's supplemental memorandum. In any event, the District's position is correct: ERISA unequivocally exempts governmental benefit plans — like those of District of Columbia employees — from the scope of its coverage. Accordingly, the plaintiffs do not enjoy any rights under the statute, and their ERISA claim must be dismissed.

## IV.  CONCLUSION

For the reasons explained in this Opinion, the Court will deny the District's motion to dismiss with respect to the plaintiffs' claim under 42 U.S.C. § 1981, and will grant the motion in all other respects, although the Court's dismissal of the plaintiffs' Title VII and ADEA claims is without prejudice to their seeking leave to file another amended complaint that attempts to cure the present deficiencies with respect to these two claims.  A separate Order, issued this same day, accompanies this Opinion.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 30, 2014