## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KENNETH DICKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-2213 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al*. | ) | |
| A Municipal Corporation | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## FOURTH AMENDED COMPLAINT

**COMES NOW** Plaintiff, Kenneth Dickerson, by and through undersigned counsel, and respectfully files this civil action against the above captioned Defendant based upon violations of his civil rights as asserted below.

## JURISDICTION AND VENUE

This Court has original jurisdiction of plaintiff's claims pursuant to 42 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Venue in this case is based upon 28 U.S.C. §1343(a)(3), as the incidents which give rise to this case occurred in the District of Columbia. Plaintiff has timely filed notice upon the District consistent with D.C. Code § 12-309.

## PARTIES

1.      Plaintiff, Kenneth Dickerson ("Dickerson"), is an African-American male and former D.C. Assistant-Principal for the District of Columbia Public Schools ("DCPS") at Wilson Senior High School ("Wilson"). At the time of his separation from his employment as referenced herein, Dickerson was forty-nine (49) years old. During

1

his tenure at Wilson he simultaneously served as a Dean of Students and as a music teacher. Plaintiff is a D.C. resident and continues to be employed at Wilson as a teacher.

2.      Defendant, District of Columbia, is a municipality acting herein by and through the District of Columbia Public Schools ("Defendant," "Agency," or "DCPS"), a District of Columbia Agency.  At all times hereunder, Defendant acted by and through its prior Chancellor and Chief Executive Officer, Michelle Rhee (hereinafter "Rhee"), and various other DCPS employees and agents.   DCPS is an "employer" pursuant to 42 U.S.C. § 2000e, and D.C. Code 1-2502, and was so situated during all times pertinent herein. Its central office is located at 1200 First Street, N.E. Washington, D.C. 20002. DCPS is also a separate, cabinet-level agency subordinate to the Mayor. The Mayor governs the D.C. public schools and has, among other things, authority over all personnel, labor negotiations, collective bargaining, and other education-related matters pursuant to "The Public Education Reform Amendment Act of 2007" ("PERAA").

3.      At all pertinent times herein, Rhee's authority and duties were delineated in the DCMR §5-E501.

4.      Any and all acts allegedly committed by Defendant includes actions committed by its officers, agents, servants, employees or representatives at the time such act was done, with Defendant's full authorization or ratification done in the normal and routine course and scope of employment.  Plaintiff asserts the theory of *respondeat superior.*

## FACTS COMMON TO ALL COUNTS

5.     Dickerson, an African American male, was forty-nine (49) years of age when he was terminated as Assistant Principal by Defendant in June 2008.  At the time of critical events described herein, DCPS Career Service employee.  Plaintiff is currently fifty-nine years of age.

6.     Plaintiff has been employed by DCPS for approximately twenty-five (25) years.  He was first hired as a teacher in 1993.  In 1999, he was assigned to Wilson Senior High School ("Wilson SHS") and promoted to Dean of Students.  In 2000, he was promoted to Assistant Principal.  He served in that capacity until his termination in June 2008.  During his tenure at Wilson, Plaintiff simultaneously assumed job responsibilities as Assistant Principal, Dean of Students, and music teacher. Further, he was the Senior Assistant Principal, and the designated Administrator placed in charge at Wilson whenever  Jacqueline Williams, it's then Principal had to be out of the building.

7.     Prior to 2006, based on education, leadership skill, and experience, Defendant determined that Dickerson was qualified to serve as a DCPS Principal.  In April 2006, Plaintiff was one of two candidates whose name was submitted to the Superintendent of Schools DCPS Officials to fill the Principal position at Roosevelt Senior High School. The competing candidate was ultimately selected.

8.     In April 2006 Dickerson was enrolled in George Washington University's Doctorate program in its School of Human Development and Education. He had completed all course work, started research on his dissertation, and was on target to obtain his PhD during the 2008-2009 school year. Given his professional and educational

status, Plaintiff anticipated additional offers and promotion to a DCPS Principal position prior to or by the time of the non-reappointment 2008-2009 SY.

9.      Defendant's systemic evaluation processes for school administrators, established by DCMR Section 5-E1306 et seq., the D.C. Comprehensive Merit Personnel Act (CMPA), and/or the Collective Bargaining Agreement ("CBA"), required pre-conference, mid-year and annual end-of-year evaluations.  However, Defendant never administered any such evaluations of Plaintiff during the 2007-2008 SY, the precursor year upon which Defendant would necessarily have relied to objectively determine Plaintiff's poor performance.

10.     During his tenure as Assistant Principal, the customary standards of performance considered and applied as part of Plaintiff's evaluation included the following categories: (a) Leadership for Instruction, (b) Leadership for Organization Management and Accountability; (c) Leadership for School Climate and Professional development; (d) Leadership for Parent and Community Involvement; (e) Leadership for Effective Communication; and (f) Leadership for Special Education.  Plaintiff's annual performance evaluation ratings for school years: 2005-2006 and 2006-2007 reflected, "Exceeds Expectations."   During these school years and until a promotion for a principalship materialized, at minimum, Plaintiff reasonably expected reappointment to his respective position as Assistant Principal at Wilson SHS.

11.     In late 2007, DCPS officials notified Plaintiff that in addition to the above referenced evaluation criteria, Rhee's office would evaluate and rank school officials at the end of the academic year based on students' reading and mathematics test scores,

attendance, and improvement in various other academic and scholastic areas.  Defendant failed to conduct such evaluation of Plaintiff in the 2007-2008 academic school year.

12.    As part of its annual reappointment contractual process, during the spring semester of each school year, Defendant forwarded every school administrator and Union member a Declaration of Intent ("DOI") with a mandate to review, consider and commit. Adherence to this policy is critical because responses provide Defendant notice of whether an administrator intends to return to their position the following school year, or not. Signing off and submission of the DOI by May, signifies an administrator's intent not to return. Not signing and returning a DOI by the deadline, is a commitment to return to the administrator's current position.

13.    At the end of the 2007-2008 school year, DCPS forwarded a DOI to Dickerson via email.  Plaintiff confirmed his acceptance, commitment and expectation to remain in the Assistant Principal position at Wilson SHS for the 2008-2009 SY by not signing and returning the DOL to Defendant by the 2008 May deadline. Defendant acknowledged receipt and Plaintiff's confirmation through their omission to initiate any retirement process on Plaintiff's behalf.

14.    Simultaneous with its demand for improved academic performance during the 2007-2008 school year, Defendant was notified and had knowledge that Wilson SHS was understaffed and lacked sufficient resources. Under Chancellor Rhee's leadership and approval, Defendant chose not to take action to fill vacant teacher, administrator, and service provider positions. DCPS Officers withheld and/or delayed requested and needed classroom and building resources.

15.     Despite Defendant's ongoing failure to provide resources during Plaintiff's tenure as Assistant Principal, Wilson SHS was acknowledged for numerous academic achievements.  While Plaintiff served as the Senior Class Administrator for the 2005-2006 SY, the Wilson SHS Class of 2006 was ranked the highest in Wilson's history for percentage of college acceptances.  During the 2007-2008 SY, Wilson was ranked in the top 1% of all high schools, nationwide on student performance on advance placement testing. In 2008 and 2009, Wilson SHS exceeded its targeted Annual Yearly Progress (AYP) in reading and math and the DCCAS reading and math scores exceeded expected targets.

16.     In early May 2008, Plaintiff was again approached for principalship by a designee from the Chancellor's Office.  The Assistant Superintendent, John Davis, informed Plaintiff that incoming new principals would be paid $149,000 dollars. Defendant, however was only willing to pay Plaintiff an additional $2,400.00 to his current annual salary, far less than salaries offered to new principals. Plaintiff pointed out the obvious unfairness in such an offer and turned it down.

17.     On or about June 24, 2008, Plaintiff received a notification by Fed-Ex delivery indicating that Defendant would not be reappointing him to his Assistant Principal position at Wilson SHS, effective June 30, 2008.  No reason for non-reappointment was provided notice, except that the decision was made by Chancellor Michelle Rhee.  Plaintiff was removed on June 30, 2008.

18.     Defendant initially claimed that Plaintiff's removal was based merely on his status as an annually appointed employee, pursuant to DCMR Section 5-E520,

giving Chancellor Rhee legal authority and freedom to make non-reappointment decisions without cause.

19.     Contrary to this claim, by the time Plaintiff's non-reappointment became effective, Chancellor Rhee and her staff made public statements to the media which defended its non-reappointment of Plaintiff due to laziness, failure to improve the statistical performance and mistreatment of students at Wilson. None of these described characterizations applied to Plaintiff's professional career or his tenure at Wilson SHS in any capacity.

20.     During this time period Dickerson's White counterparts similarly employed as DCPS Principals and Assistant Principals were not subjected to the same previously described CBA or municipal regulation violations and ongoing unfair, hostile and discriminatory non-reappointment processes imposed on Plaintiff.

21.     Prior to Plaintiff's Notice of non-reappointment, Defendant's employees and agents surreptitiously interviewed and engaged replacements for his soon-to-be vacant position at Wilson SHS, in violation of Title 5 of the D.C. Municipal Regulations and Article XII of the Collective Bargaining Agreement ("CBA").  These provisions provide that vacancies shall be listed so that all have knowledge of the vacancy. During the 2007-2008 school year, Defendant accepted job applicants and interviewed candidates for Plaintiff's position among others.

22.     Prior to sending Plaintiff a Notice of non-reappointment, Defendant had already pre-selected its candidates and gone through the application and selection process.   Absent any negative or materially unacceptable performance evaluations,

DCPS systematically continued to publicly announce Plaintiff's failure to adequately perform purportedly consistent with criteria in evaluations and/or student performances. These stated reasons were mendacious and pretextual.

23.     Defendant's 2008-2009 SY decision and reason for not reappointing Plaintiff defy its hiring and promotion policies and practices, which include merit. Defendant's refusal to reappoint or promote Plaintiff ran contrary to Defendants' established policy set forth in *Title 5, Education* of the D.C. Municipal Regulations, specifically, §5-E1110 *et. seq. Merit Promotion Policy*. Pertinent language includes the following: *It shall be the policy of the Board of Education to fill vacancies with the best qualified candidates available* (§ 5-E1110.1).  But for his race, Plaintiff's qualifications exemplified by years of service, administrative leadership and experience, education, including his soon-to-be PhD status, satisfied any and all Defendants' documented objectives for hiring, keeping and promoting qualified DCPS employees.

24.     On information and belief, during the 2007-2008 SY and prior to Plaintiff receiving his Notice of Non-reappointment, Chancellor Rhee and her designees hired Mr. Peter Cahill, a Caucasian male, from Montgomery County Public School to fill the vacant Wilson SHS Principal. Mr. Cahill signed a three-year contract and was joined by an administrative staff member.  One such person, Ms. Mary Beth Waits, a White female, with less education and experience than Plaintiff.  Ms. Waits was hired to replace Plaintiff as Senior Assistant Principal at Wilson.  The other new hire in 2009 was a Hispanic male with less experience and education than Plaintiff. Once the Chancellor's office removed Plaintiff and the other African-American administrators

and replaced the Wilson top administration with white leadership, all previously identified vacant school-based positions were expeditiously filled.

25.    Plaintiff filed grievances concerning his non-reappointment through the Council of School Officers in May 2008.   Subsequently, CSO Officers informed Plaintiff that the Union had done all it could on behalf of non-reappointed administrators and no resolution in favor of members could be reached.  CSO directed Plaintiff to immediately exercise retreat rights in light of Defendant's representation that non-reappointed administrators would be hired first for the 2008-2009 SY.

26.    In July 2008, Plaintiff aggressively applied and interviewed for jobs with the Montgomery and P.G. County school systems. Prospective employers in both jurisdictions demonstrated an interest in hiring him and made respective job offers which were suddenly and unexpectedly withdrawn.  The withdrawals coincided with Chancellor Rhee's increased    negative public declarations regarding the reasons for termination of Dickerson.

27.    Defendant thus frustrated Plaintiff's search for new jobs and frustrated his potential for job opportunities.  Defendant's mishandling of Plaintiff's non-reappointment resulted in either no income or substantial reduction in his salary. Absent professional economic opportunities, Plaintiff had to liquidate mutual funds in order to pay his living expenses, mortgage, school tuitions for his sons, and his Doctorate program at George Washington University ("GWU").  Liquidation also subjected Plaintiff to IRS penalties starting in 2009.

28.     Due to stress-related symptoms, Plaintiff sought medical attention at Washington Hospital Center starting in September 2008.  He was diagnosed and prescribed medication for depression, among other things.  Plaintiff's financial status and health forced him to postpone and delay completion of his Doctorate at GW for two years.  In May 2011, Plaintiff received his Doctorate in Human Development and Organizational Learning from the School of Education, George Washington University.

## CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. §§ 1981 and 1983

29.     Plaintiff hereby incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

30.     42 U.S.C. § 1983 provides that:

> *Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress.*

31.     Plaintiff is a citizen of the United States. Chancellor Michele Rhee, her designees and individual DCPS Officials to this claim are persons for purposes of 42 U.S.C. § 1983.

32.     At all times relevant hereto, Defendant and it agents acted under the color of state law in their capacity as D.C. agents and DCPS Officials and their acts or omissions were conducted within the scope of their official duties or employment.

33.     At the times complained of herein, Plaintiff had the clearly established constitutional right to be free from racial discrimination and to enjoy the equal protection of the laws when entering into contracts.

34.     Title 42 U.S.C. § 1981("Section 1981") provides, in pertinent part:

 *(a) Statement of equal rights*

*All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce con- tracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.*

*(b) ''Make and enforce contracts'' defined*

*For purposes of this section, the term ''make and enforce contracts'' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

35.     Plaintiff is a member of a protected class, and enjoyed the clearly established statutory right to be free to make and enforce contracts and receive all benefits attached thereto without being subjected racial discrimination.

36.     Plaintiff is entitled to enjoy the benefits of his contract with Defendant, and the property rights therein without interruption and impairment based upon racially motivated reasons.

37.     Plaintiff's education, professional experience, years of service and

11

excellent work record with DCPS made him a prime candidate for reappointment and promotion.  Based on race, Defendant intentionally targeted Plaintiff individually and as a member of a group of African American and Hispanic veteran administrators, when publicly branding and failing to implement, follow, and adhere to procedures and process stemming from their employment and contractual relationship by virtue of governing DC Municipal Regulations, implied agreements and as beneficiaries of the Collective Bargaining Agreement.

38.    Defendant acted with malice and reckless indifference by the above-described discrimination against Plaintiff in the face of perceived risk that their actions would violate Plaintiff's rights.

39.    The Defendant's aforementioned practices specifically targeted Plaintiff as an African-American veteran administrator; as a direct and proximate result of these racially-based illegal actions, Plaintiff was discriminated against and suffered actual harm including, but not limited to, loss of employment, loss of income, loss of benefits, embarrassment, malignment of reputation, loss of self-esteem, health-related consequences and significant mental and emotional anguish.

40.    Defendant's racially-based motivation and conduct intentionally deprived Dickerson of the same rights, protections and benefits afforded to similarly situated white employees.

**PRAYER FOR RELIEF**

12

WHEREFORE, Plaintiff seeks judgment against the District of Columbia and respectfully requests this Court to award:

(a)     Compensatory damages to Plaintiff in excess of $1,000,00.00;

(b)     Economic damages, via back pay, interest thereupon, and all corresponding benefits and promotions;

(c)     Appropriate equitable and declaratory relief;

(d)     Attorney's fees, costs and expenses incurred pursuant to 42 U.S.C. § 1988; and,

(e)     Such further relief as this Honorable Court deems just and fair.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_____/s/_____

Donald M. Temple, Esq.
1310 L Street, N.W., Suite 750
Washington, D.C. 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
Email: dtemplelaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March 2018, a copy of the foregoing

Fourth Amended Complaint was served electronically via Case File Express upon and by

first class U.S. mail on:

Gregory M. Cumming
Esther Yong McGraw
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630S
Washington, D.C. 20001

_____/s/_____

Donald M. Temple, Esq.

14