UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KENNETH DICKERSON, et al.,          )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )   Civil Action No. 09-2213 (PLF)
                                    )
DISTRICT OF COLUMBIA,               )
                                    )
            Defendant.              )
_____ )


OPINION

This matter comes before the Court on defendant District of Columbia's motion [Dkt. No. 75] to dismiss plaintiff Kenneth Dickerson's fourth amended complaint, filed April 12, 2018. Mr. Dickerson filed his opposition to the motion on May 10, 2018, and the District of Columbia filed a reply brief on May 24, 2018. For the following reasons, the Court will deny the District of Columbia's motion to dismiss.[1]

I. FACTUAL AND PROCEDURAL BACKGROUND

The Court begins by setting forth the facts alleged in the fourth amended complaint. Mr. Dickerson, an African-American man, began his employment with the District of Columbia Public Schools ("DCPS") as a teacher in 1993. See 4th Am. Compl. at ¶¶ 1, 6. In

---

[1] In connection with the pending motion, the Court has reviewed the following filings, including the exhibits attached thereto: Notice of Removal [Dkt. No. 1] ("Removal Notice"); Joint Notice of Voluntary Dismissal [Dkt. No. 65] ("Dismissal Notice"); Plaintiff's Fourth Amended Complaint [Dkt. No. 73] ("4th Am. Compl."); and Defendant's Motion to Dismiss Fourth Amended Complaint [Dkt. No. 75] ("Mot."), Plaintiff's Opposition [Dkt. No. 79] ("Opp'n"), and Defendant's Reply [Dkt. No. 81] ("Reply").

1999, he was assigned to work at Wilson Senior High School ("Wilson") and promoted to serve as the Dean of Students at Wilson. See id. at ¶ 6. In 2000, DCPS again promoted Mr. Dickerson, this time to a position as an assistant principal at Wilson. See id. Mr. Dickerson served in the assistant principal role until June 2008. See id. at ¶¶ 6, 17. During his time as a school administrator at Wilson, Mr. Dickerson explains that he simultaneously performed his job responsibilities as Dean of Students, assistant principal, and music teacher. See id. at ¶ 6.

Mr. Dickerson asserts that, in light of his "years of service, administrative leadership and experience, [and] education, including his soon-to-be PhD status," he was well-qualified to serve as a school administrator and "satisfied any and all Defendants' documented objectives for hiring, keeping and promoting qualified DCPS employees." See 4th Am. Compl. at ¶ 23. Mr. Dickerson further notes that he received ratings of "Exceeds Expectations" in his annual performance evaluations for both the 2005-06 and 2006-07 school years. See id. at ¶ 10. He also describes how, under his leadership, Wilson gained significant recognition for its students' academic achievements, despite a lack of faculty and other school resources. See id. at ¶¶ 14-15. During the 2007-08 school year, for example, Wilson was "ranked in the top 1% of all high schools, nationwide on student performance on advance placement testing." See id. at ¶ 15.

Beginning in the 2007-08 school year, Mr. Dickerson describes several events evincing unfair and unfavorable treatment by his employer. First, Mr. Dickerson asserts that he was offered a position as a school principal in May 2008, but at a salary "far less" than the salaries offered to other new principals, despite his performance and qualifications. See 4th Am. Compl. at ¶ 16. In response to this offer, Mr. Dickerson alleges that he "pointed out the obvious unfairness in such an offer and turned it down." See id. Although he rejected this offer to be

promoted to school principal, Mr. Dickerson asserts that he communicated his intent to remain in his assistant principal position by following established DCPS policies. See id. at ¶¶ 12-13. He explains that, as part of its "annual reappointment contractual process," DCPS would send a Declaration of Intent ("DOI") form to every school administrator each spring. See id. at ¶ 12. An administrator who did not intend to return to her current position would convey that intent by signing and submitting the DOI form. See id. On the other hand, if an administrator did not sign and return the DOI form by the deadline, that omission represented "a commitment to return to the administrator's current position." See id. By not signing and returning the DOI form by the deadline, Mr. Dickerson represents that he "confirmed his acceptance, commitment and expectation to remain in the Assistant Principal position at Wilson SHS for the 2008-2009 SY." See id. at ¶ 13.

In addition, Mr. Dickerson alleges that during the 2007-08 school year, DCPS failed to administer multiple required evaluations of his performance. See 4th Am. Compl. at ¶¶ 9, 11. First, he points to the "systemic evaluation processes for school administrators" established under the District of Columbia's Municipal Regulations ("DCMR") and the relevant Collective Bargaining Agreement ("CBA"), which he argues "required pre-conference, mid-year and annual end-of-year evaluations." See id. at ¶ 9. During the 2007-08 school year, however, he asserts that DCPS never administered any of these required performance evaluations. See id. Second, Mr. Dickerson alleges that, in late 2007, DCPS officials notified him that Chancellor Michelle Rhee's office would "evaluate and rank school officials at the end of the academic year based on students' reading and mathematics test scores, attendance, and improvement in various other academic and scholastic areas." See id. at ¶ 11. But, he asserts, DCPS also failed to conduct these evaluations. See id.

Mr. Dickerson represents that, on or about June 24, 2008, he received notification that DCPS "would not be reappointing him to his Assistant Principal position at Wilson SHS, effective June 30, 2008." See 4th Am. Compl. at ¶ 17. He states that DCPS did not provide any explanation for his non-reappointment, beyond indicating that Chancellor Rhee had made the decision. See id. On June 30, 2008, Mr. Dickerson explains, he was "removed" from his administrative role. See id.

Prior to receiving his non-reappointment notice, Mr. Dickerson alleges that DCPS's "employees and agents surreptitiously interviewed and engaged replacements for his soon-to-be vacant position at Wilson SHS," in violation of provisions of both the DCMR and CBA that require "vacancies . . . [to] be listed so that all have knowledge of the vacancy." See 4th Am. Compl. at ¶ 21. Mr. Dickerson further asserts that "Chancellor Rhee and her staff made public statements to the media which defended its non-reappointment of Plaintiff due to laziness, failure to improve the statistical performance and mistreatment of students at Wilson," although "[n]one of these described characterizations applied to Plaintiff's professional career or his tenure at Wilson SHS in any capacity." See id. at ¶ 19. Mr. Dickerson alleges that his former colleagues who were white and similarly situated were not subjected to the same treatment he received. See id. at ¶ 20. And while "the Chancellor's office removed Plaintiff and the other African-American administrators," DCPS hired a white woman with less education and experience to fill Mr. Dickerson's former position as Senior Assistant Principal, hired a white man to fill the vacant Wilson principal position, and hired a Hispanic man with less experience and education than Mr. Dickerson to fill an unspecified position. See id. at ¶ 24.

On June 30, 2009, Mr. Dickerson and twenty-one other former DCPS principals and assistant principals filed this discrimination lawsuit in the Superior Court of the District of

Columbia. See Removal Notice Ex. 1. The District of Columbia removed the case to this Court on November 20, 2009, see Removal Notice, where the parties have proceeded to litigate since. After nearly a decade of litigation, every other plaintiff has either settled with the District of Columbia or been dismissed by the Court for failing to prosecute their claims. See Dismissal Notice; Order [Dkt. No. 69] (Jan. 25, 2018). As the sole remaining plaintiff, Mr. Dickerson filed the fourth amended complaint on March 13, 2018, alleging discrimination in violation of Section 1981 of Title 42 of the United States Code. See 4th Am. Compl. Specifically, Mr. Dickerson alleges that DCPS, by breaching the terms of his existing employment contract and failing to reappoint or promote him, violated his rights under Section 1981 to make and enforce contracts free from racial discrimination. See id. at ¶¶ 33-37.

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." See FED. R. CIV. P. 12(b)(6). Generally, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" that "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see also Henok v. Kessler, 78 F. Supp. 3d 452, 457 (D.D.C. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002) (citation omitted); see also Henok v. Kessler, 78 F. Supp. 3d at 457. The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it "liberally in the plaintiffs' favor," see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012). The Court must grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged," although it need not accept plaintiff's legal conclusions or inferences drawn by the plaintiff if those inferences are unsupported by facts alleged. See Hettinga v. United States, 677 F.3d at 476 (citations omitted); Henok v. Kessler, 78 F. Supp. 3d at 457-58.[2]

### III. ANALYSIS

Section 1981 protects the individual "right . . . to make and enforce contracts" free from racial discrimination. See 42 U.S.C. § 1981(a). The statute specifically provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make

---

[2] In arguing that Mr. Dickerson's fourth amended complaint should be dismissed, the District of Columbia relies on decisions applying the McDonnell Douglas framework at the summary judgment stage, where the Court evaluates the evidence proffered by the parties to determine whether any material facts remain in dispute. See, e.g., Mot. Mem. P&A at 12; Reply at 6. But Mr. Dickerson need not provide any evidence in support of his claims to survive a motion to dismiss – at the pleading stage, he need only make allegations. And here, considering the four corners of the complaint in the light most favorable to him, the Court finds that Mr. Dickerson has alleged sufficient facts giving rise to an inference of intentional discrimination to survive a motion to dismiss.

6

and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." See id. The provision defines the phrase "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(b).

To establish a Section 1981 violation, a plaintiff must "identify an impaired 'contractual relationship,' under which the plaintiff has rights." See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006) (citing 42 U.S.C. § 1981(b)). Where such a claim is brought against a municipality, however, Section 1981 itself does not provide for a private right of action. See Onyeanusi v. District of Columbia, 69 F. Supp. 3d 106, 107 (D.D.C. 2014); Olatunji v. District of Columbia, 958 F. Supp. 2d 27, 34 (D.D.C. 2013). Instead, a plaintiff must pursue any such remedy against a municipality under Section 1983. See 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."); see also Onyeanusi v. District of Columbia, 69 F. Supp. 3d at 107; Olatunji v. District of Columbia, 958 F. Supp. 2d at 30-31. Consequently, a municipality is only liable if the complaint satisfies a two-part inquiry: the complaint must state "a claim for a predicate constitutional violation . . . [and] a claim that a custom or policy of the municipality caused the violation." See Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations

7

omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-95 (1978).[3] To satisfy the element of causation, a plaintiff must allege an "'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation." See Baker v. District of Columbia, 326 F.3d at 1306 (citations omitted).

Here, the District of Columbia contends that Mr. Dickerson has failed to satisfy the requirements set forth in both Section 1981 and Section 1983. First, the District of Columbia argues that Mr. Dickerson has failed to establish an impaired contractual relationship under Section 1981. Second, it contends that, even were a valid contractual relationship established, Mr. Dickerson has failed to plead a prima facie case of discrimination under Section 1981 and the McDonnell Douglas burden-shifting framework. Finally, the District of Columbia asserts that any alleged discrimination would not have been caused by a municipal custom or policy, as required to allege a claim under Section 1983.

*A. Impaired Contractual Relationship under Section 1981*

The District of Columbia argues that Mr. Dickerson has failed to identify an impaired contractual relationship under which he has rights. See Mot. Mem. P&A at 7. It points to Mr. Dickerson's fourth amended complaint, in which he alleges that the government failed "to implement, follow, and adhere to procedures and process stemming from their employment and contractual relationship by virtue of governing DC Municipal Regulations, implied agreements and as beneficiaries of the Collective Bargaining Agreement." See id. (citing 4th Am. Compl. at ¶ 37). The District of Columbia argues that neither the DCMR nor the CBA create any

---

[3] Contrary to Mr. Dickerson's assertions, see 4th Am. Compl. at ¶ 4, the legal doctrine of respondeat superior is not a viable means for imposing liability on a municipality. See Monell v. Dep't of Soc. Servs., 436 U.S. at 691; see also Olatunji v. District of Columbia, 958 F. Supp. 2d at 32-33.

8

contractual relationship between the parties upon which Mr. Dickerson could recover. First, the District of Columbia explains, provisions of the DCMR simply do not provide an independent source of individual contractual rights. See id. at 9-10. And second, it maintains that a third-party intended beneficiary of a CBA, such as Mr. Dickerson, cannot establish a contractual relationship under Section 1981. See id. at 7-9. The District of Columbia, however, acknowledges that neither the Supreme Court nor the D.C. Circuit has definitively decided whether a third-party beneficiary has rights under Section 1981. See id. at 7-8 & n.2.

In his attempt to clarify the meaning of his pleadings, Mr. Dickerson expressly disclaims any reliance on the DCMR and the CBA as the source of his contractual rights. See Opp'n at 11 ("Plaintiff does not rely here on the CBA or municipal regulations to establish his predicate contract relationship with Defendant."). Instead, Mr. Dickerson argues that his complaint alleges a Section 1981 claim arising from his employment contract. See id. ("At the outset, Plaintiff's Section 1981 claim is based primarily on Mr. Dickerson's status as a D.C. government employee, which is a distinct contractual relationship.").

Mr. Dickerson's complaint is not as artfully pleaded as it could be, particularly considering the guidance provided by this Court's prior rulings on previous motions to dismiss in this case. Mr. Dickerson's allegations that appear to specifically relate to an impaired contractual relationship – for example, his assertion of an "employment and contractual relationship by virtue of governing DC Municipal Regulations, implied agreements and as beneficiaries of the Collective Bargaining Agreement" – are ambiguous at best. See 4th Am. Compl. at ¶ 37. But although Mr. Dickerson does not clearly and unequivocally state his employment contract as the basis of his Section 1981 claim, the Court still must liberally construe the pleadings and give Mr. Dickerson the benefit of all reasonable inferences. See

9

Hettinga v. United States, 677 F.3d at 476; Kowal v. MCI Commc'ns Corp., 16 F.3d at 1276; Henok v. Kessler, 78 F. Supp. 3d at 457-58.

Mr. Dickerson has clearly alleged the existence of a direct employment relationship between the parties spanning approximately twenty-five years. See 4th Am. Compl. at ¶ 6. And the District of Columbia does not dispute the fact that it employed Mr. Dickerson as a public school teacher and administrator. The District of Columbia further does not dispute that its "employees are not precluded from bringing claims under Section 1981 based on employment relationships with the District." See Reply at 2; see also Torre v. Barry, 661 F.2d 1371, 1374-75 (D.C. Cir. 1981); Kennedy v. District of Columbia, 519 F. Supp. 2d 50, 60-61 (D.D.C 2007). Mr. Dickerson's employment "encompasses the basic elements of a contractual relationship – offer, acceptance, and consideration – needed for a § 1981 claim." See Kennedy v. District of Columbia, 519 F Supp. 2d at 60-61 (citations omitted). As a result, and construing the complaint in the light most favorable to him, the Court determines that Mr. Dickerson has sufficiently pleaded the existence of an employment relationship. And through this employment relationship, the Court infers the existence of an employment contract and a contractual relationship under Section 1981. See Hamilton v. District of Columbia, 720 F. Supp. 2d 102, 114 (D.D.C. 2010) (denying motion to dismiss Section 1981 claim because, when liberally construed, employees' complaint implied an employment contract with their employer, although one was not explicitly alleged); cf. Middlebrooks v. Godwin Corp., 722 F. Supp. 2d 82, 88-89 (D.D.C. 2010) (granting motion to dismiss Section 1981 claim because employee had not alleged any direct employment relationship with the District of Columbia). Accordingly, the Court will not dismiss Mr. Dickerson's complaint for failing to allege an impaired contractual relationship under Section 1981.

In so ruling, the Court notes that it will hold Mr. Dickerson to the representations made in his opposition to the motion to dismiss that his Section 1981 claim is based solely on his direct employment contract with the District of Columbia and not on any contractual relationship allegedly arising from provisions of the DCMR or CBA. See Opp'n at 8, 11. Although the complaint certainly could have been more artfully pleaded, it appears to the Court that Mr. Dickerson's assertions of alleged violations of the DCMR and CBA instead serve as examples of deviations from established policies that support an inference of discrimination. See also infra Part III(B). And as a result, the Court need not resolve the legal issues raised by the District of Columbia as to whether any provision of the DCMR or CBA might also give rise to independent contractual rights protected under Section 1981.

### B. Prima Facie Case of Race Discrimination

The District of Columbia alleges that Mr. Dickerson has failed to state a prima facie case of race discrimination under Section 1981. See Mot. Mem. P&A at 10. Under Section 1981, discrimination must be "purposeful or intentional" to be actionable. See Brannum v. Fed. Nat'l Mortg. Ass'n, 971 F. Supp. 2d 120, 124 (D.D.C. 2013) (citing Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982)). Intentional discrimination actions brought under Section 1981 "are evaluated in the same manner as claims arising under Title VII of the Civil Rights Act of 1964." See Remedios Jose v. Hosp. for Sick Children, 130 F. Supp. 2d 38, 41 (D.D.C. 2000) (citing Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1553 (D.C. Cir. 1997)). Accordingly, a plaintiff may prove a Section 1981 claim by proffering direct evidence of prohibited discrimination or, in the absence of direct evidence, may do so by proffering circumstantial evidence scrutinized "under the familiar McDonnell Douglas burden-shifting framework." See Breen v. Chao, 253 F. Supp. 3d 244, 254 (D.D.C. 2017) (quoting Nurriddin v.

Bolden, 818 F.3d 751, 758 (D.C. Cir. 2016)).  Under the McDonnell Douglas framework, a plaintiff has the initial burden to plead a prima facie case of prohibited discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  To plead a prima facie case, a plaintiff must allege "that (1) [the plaintiff] is a member of a protected class, (2) [the plaintiff] suffered an adverse employment action," and (3) the adverse employment action gives rise to an inference of intentional discrimination (that is, an inference that his employer took the action because of the plaintiff's membership in a protected class).  See Brown v. Sessoms, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002)).

The District of Columbia concedes that Mr. Dickerson belongs to a protected class and has sufficiently alleged an adverse employment action.  See Mot. Mem. P&A at 12.  The District of Columbia argues, however, that Mr. Dickerson has failed to raise a reasonable inference of intentional racial discrimination, the third element of his prima facie case.  See id.  Rather, the District of Columbia contends that Mr. Dickerson has pleaded only conclusory allegations without sufficient facts to link his membership in a protected class to his failure to be promoted or reappointed.  See id. at 12-13.

Reviewing the complaint in the light most favorable to him, the Court finds that Mr. Dickerson has alleged ample facts to raise a plausible inference of intentional discrimination and to survive a motion to dismiss.  He has identified similarly situated employees who were not members of the same protected class and not subjected to the same adverse treatment.[4]  He

---

[4] The Court further notes that although such a showing does substantiate the third prong of the McDonnell Douglas test, a plaintiff is not required to demonstrate that he or she was treated differently from a "similarly situated" employee outside of the protected class in order to establish a prima facie case of racial discrimination.  See Nurriddin v. Bolden, 818 F.3d at 759 (citing Stella v. Mineta, 284 F.3d 135, 146 (D.C. Cir. 2002)); Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 n.2 (D.C. Cir. 2008) (citations omitted).

explains that his position and the positions of other African-American employees similarly terminated were filled largely by employees not belonging to his protected class. See 4th Am. Compl. at ¶ 24. In particular, he alleges that a white woman with less education and experience than Mr. Dickerson was selected to fill his position, while a white man was selected to fill the vacant Wilson principal position for which Mr. Dickerson believed he was qualified and to which he had hoped to be promoted at a competitive salary. See id. at ¶¶ 10, 15, 16, 23, 24. And he further maintains that he "satisfied any and all Defendants' documented objectives for hiring, keeping and promoting qualified [] employees" through his qualifications, including his veteran administrator status, leadership experience, and pending PhD. See id. at ¶ 23. For example, he received multiple performance evaluations of "Exceeds Expectations" and helped lead the school to academic success despite a shortage of staff and resources. See id. at ¶¶ 10, 14-15. These facts give rise to a credible inference that the District of Columbia discriminated against Mr. Dickerson on the basis of race by opting to replace him with a less qualified white employee, despite having knowledge of his competitive qualifications and objectively satisfactory work. See Brown v. Sessoms, 774 F.3d at 1023.

      The District of Columbia argues that any inference of intentional discrimination drawn from the race of Mr. Dickerson's replacement must be minimized in light of DCPS also hiring a Hispanic assistant principal. See Mot. Mem. P&A at 12-13. DCPS's decision to hire a Hispanic man, however, has little effect on Mr. Dickerson's ability to allege that DCPS also had a racial animus towards African-Americans. Indeed, even if DCPS had replaced Mr. Dickerson with another African-American employee, that would not have precluded him from pleading facts giving rise to an inference of discrimination. See Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1150 (D.C. Cir. 2004) ("[I]n order to make out a prima facie case, it is not necessary

for an African-American plaintiff to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, or for a female plaintiff to show that a male was hired in her stead. . . . The employer's hiring of a person of the same race or sex as the plaintiff might be relevant in assessing the merits of a plaintiff's claim beyond the stage of the prima facie case, but it is not a factor in the plaintiff's establishment of a prima facie case."); Stith v. Chadbourne & Parke, LLP, 160 F. Supp. 2d 1, 13 (D.D.C 2001) (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d at 352); see also supra note 4.

Mr. Dickerson also alleges that, unlike in prior years, DCPS failed to conduct the required evaluations of his performance during the 2007-08 school year, see 4th Am. Compl. at ¶ 9, a fact which may suggest a lack of interest in evaluating Mr. Dickerson based on his individual skills and abilities, despite the District of Columbia's merit-based hiring and promotion policies, see id. at ¶ 23. At the very least, it demonstrates a lack of objective evidence of any negative evaluations that might have justified the decision not to reappoint Mr. Dickerson. And viewing these facts in the light most favorable to him, it would appear that DCPS "intentional[ly] and deliberate[ly] exclu[ded]" Mr. Dickerson from the reappointment and principal selection processes and instead "pre-selected non-African-American candidates to fill the principal and assistant principal positions," without regard to performance history and qualifications, raising inferences of intentional discrimination. See Opp'n at 6.

In addition, Mr. Dickerson asserts that "Chancellor Rhee and her staff made public statements to the media which defended [the District's] non-reappointment of Plaintiff due to laziness, failure to improve the statistical performance and mistreatment of students at Wilson," although "[n]one of these described characterizations applied to Plaintiff's professional career or his tenure at Wilson SHS in any capacity." See 4th Am. Compl. at ¶ 19. And he

14

further alleges that, prior to receiving notice of his non-reappointment, DCPS's "employees and agents surreptitiously interviewed and engaged replacements for his soon-to-be vacant position at Wilson SHS," in violation of provisions of both the DCMR and CBA. See id. at ¶ 21. Accepting these facts as true, as the Court must in resolving a motion to dismiss, the Court finds that these allegations only further support an inference that an unsavory motive such as racial discrimination underlay Mr. Dickerson's non-reappointment and that DCPS's stated reasons for Mr. Dickerson's non-reappointment were pretextual. See id. at ¶¶ 19-24; see also Opp'n at 4-7. While the ultimate fact-finder may determine these facts to be benign or unsupported by the evidence, at this stage the Court finds that the allegations regarding DCPS's mischaracterizations to the press and the furtive nature of the process for hiring replacement employees bolster an inference of intentional racial discrimination when viewed in the light most favorable to Mr. Dickerson.

### C. Municipal Liability Under Section 1983

Finally, the District of Columbia argues that Mr. Dickerson has failed to allege a District of Columbia custom or policy that caused his non-reappointment, as required to prevail on a Section 1983 claim. See Mot. Mem. P&A at 13-16. In its prior rulings, however, this Court has already determined that Mr. Dickerson has alleged facts sufficient to support a plausible claim "that Chancellor Rhee – a 'policymaker' within the District's educational apparatus – had engineered the allegedly discriminatory non-reappointments of the plaintiffs." See Dickerson v. District of Columbia, 70 F. Supp. 3d 311, 326-27 (D.D.C. 2014) (citing Dickerson v. District of

15

Columbia, 806 F. Supp. 2d 116, 120 (D.D.C. 2011)). And the Court finds that this reasoning still stands.[5]

To allege a Section 1981 claim against a municipality, a plaintiff must allege that the violation of the right to make and enforce contracts protected was caused by a municipality's custom or policy. See Monell v. Dep't of Soc. Servs., 436 U.S. at 690-91; Hamilton v. District of Columbia, 720 F. Supp. 2d at 112. A municipal custom or policy may be deemed to "cause" such a violation under various circumstances. For example, a municipality or municipal policymaker may explicitly adopt a policy that is the moving force behind a violation. See Dickerson v. District of Columbia, 806 F. Supp. 2d at 120 (citing Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004)). Or a policymaker may knowingly ignore a policy or practice in a consistent enough manner to constitute a custom. See id. (citing Warren v. District of Columbia, 353 F.3d at 39). Unconstitutional discrimination may also be "so widespread as to constitute a custom, practice or policy." See Hamilton v. District of Columbia, 720 F. Supp. 2d at 113 (quoting Reed v. District of Columbia, 474 F. Supp. 2d 163, 168 (D.D.C. 2007)). Of course, a single instance of unconstitutional activity, without more, will likely be insufficient to prove a custom or policy. See id. But the Supreme Court has made clear that a practice need not be "authorized by written law" to give rise to municipal liability, but may be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." See Monell v. Dep't of Soc. Servs., 436 U.S. at 691.

In the fourth amended complaint, Mr. Dickerson states that "[a]t all times hereunder, Defendant acted by and through its prior Chancellor and Chief Executive Officer,

---

[5] Contrary to Mr. Dickerson's assertions, see Opp'n at 17, the law of the case doctrine does not govern here, see Keepseagle v. Perdue, 856 F.3d 1039, 1048 (D.C. Cir. 2017). As a result, the Court addresses defendant's arguments on their merits.

Michelle Rhee . . . , and various other DCPS employees and agents" and that "[a]t all pertinent times herein, Rhee's authority and duties were delineated in the DCMR § 5-E501."  See 4th Am. Compl. at ¶¶ 2-3.  The D.C. Municipal Regulations, in turn, confer various responsibilities on the Chancellor, including "the direction and supervision of the employees of the public schools," as well as "the authority to take all personnel actions affecting those employees . . . her supervision and control . . . ."  See D.C. MUN. REGS. tit. 5, § E501.6-.7 (2018); see also Public Education Reform Amendment Act of 2007, D.C. L. No. 17-9 (2007); D.C. CODE § 38-171 (2007); D.C. CODE § 38-174 (2016); 54 D.C. Reg. 11622 (Nov. 30, 2007).

       Mr. Dickerson has also alleged a series of adverse employment actions taken by and at the direction of Chancellor Rhee, a person with delegated policymaking authority under D.C. regulations, including the authority to direct and supervise all employees of the public schools and take all personnel actions affecting them.  He has alleged that these adverse employment actions were targeted not only at himself, but at other African-American school administrators.  Mr. Dickerson has not simply alleged a "single incident" of discriminatory conduct.  See Reed v. District of Columbia, 474 F. Supp. 2d at 168 (citing Monell v. Dep't of Soc. Servs., 436 U.S. at 694).  He has set forth sufficient facts to allege a policy of replacing African-American administrators with non-African American administrators within the D.C. public school system, implemented through the actions of Chancellor Rhee.  See Baker v. District of Columbia, 326 F.3d at 1306 (explaining that "the action of a policy maker within the government" is one of "a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983").  In doing so, he has adequately pleaded the existence of a discriminatory policy of the District of Columbia, by and through its policymaker, Chancellor Rhee.  See Dickerson v. District of Columbia, 70 F. Supp. 3d at 326-27 (citing Dickerson v.

District of Columbia, 806 F. Supp. 2d at 120); see also Monell v. Dep't of Soc. Servs., 436 U.S. at 694; Reed v. District of Columbia, 474 F. Supp. 2d at 168.

IV. CONCLUSION

For the reasons set forth in this opinion, the Court will deny the District of Columbia's motion to dismiss. An order consistent with this opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: July 26, 2018