**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KENNETH DICKERSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: v. 09-2213 (PLF) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Kenneth Dickerson, by and through undersigned counsel, and respectfully Opposes Defendant's Motion for Summary Judgment.  Reasons are stated more fully below.

## I.    INTRODUCTION AND FACTUAL BACKGROUND

In June 2008, purportedly in the process of restructuring D.C. Public Schools, then school Chancellor terminated 22 DC Public School principals, all of which were African-American.  This mass termination included Kenneth Dickerson, a then 49-year-old African-American male. Dickerson  served as an Assistant Principal at that time at Wilson High School.  Dr. Dickerson, then an Ed.D. candidate at George Washington University, is now age 59 and has been employed by the DCPS for approximately twenty-five (25) years. He was first hired as a teacher in 1993.

In 1996, he was assigned to Wilson Senior High School ("Wilson") and promoted to Dean of Students in 1999. In 2000, he was promoted to Assistant Principal. He served in that capacity until his termination in June 2008. During his tenure at Wilson, Plaintiff simultaneously assumed

job responsibilities as Assistant Principal, Dean of Students, and music teacher. Further, he was the Senior Assistant Principal, and the designated Administrator placed in charge at Wilson whenever Jacqueline Williams, it's then Principal had to be out of the building. Prior to 2006, based on education, leadership skill, and experience, Defendant determined that Dickerson was qualified to serve as a DCPS Principal. In April 2006, Plaintiff was one of two candidates whose name was submitted to the Superintendent of Schools DCPS Officials to fill the principal position at Roosevelt Senior High School. The competing candidate was ultimately selected. .

In April 2006 Dickerson was enrolled in George Washington University's Doctorate program in its School of Human Development and Education. He had completed all course work, started research on his dissertation, and was on target to obtain his Ed. D during the 2008-2009 school year. Given his professional and educational status, Plaintiff anticipated additional offers and promotion to a DCPS Principal position prior to or by the time of the non-reappointment 2008-2009 SY.

Defendant's systemic evaluation processes for school administrators, established by DCMR Section 5-E1306 et seq., the D.C. Comprehensive Merit Personnel Act (CMPA), and/or the Collective Bargaining Agreement ("CBA"), required preconference, mid-year and annual end-of-year evaluations. However, Defendant never administered any such evaluations of Plaintiff during the 2007-2008 SY, the precursor year upon which Defendant would necessarily have relied to objectively determine Plaintiff's poor performance. Further, Plaintiff's earlier year evaluations are conspicuously missing from his personnel records and have not been retrievable during the immediate litigation process.

During his tenure as Assistant Principal, the customary standards of performance considered and applied as part of Plaintiff's evaluation included the following categories: (a) Leadership for Instruction, (b) Leadership for Organization Management and Accountability; (c) Leadership for School Climate and Professional development; (d) Leadership for Parent and Community Involvement; (e) Leadership for Effective Communication; and (f) Leadership for Special Education. Plaintiff's annual performance evaluation ratings for school years: 2005-2006 and 2006-2007 reflected, "Exceeds Expectations."   PLT Ex. 13.

During these school years and until a promotion for a principalship materialized, at minimum, Plaintiff reasonably expected reappointment to his position as Assistant Principal at Wilson SHS. In late 2007, DCPS officials notified Plaintiff that in addition to the above referenced evaluation criteria, Rhee's office would evaluate and rank school officials at the end of the academic year based on students' reading and mathematics test scores, attendance, and improvement in various other academic and scholastic areas. Defendant failed to conduct such evaluation of Plaintiff in the 2007-2008 academic school year.

As part of its annual reappointment contractual process, during the spring semester of each school year, Defendant forwarded every school administrator and Union member a Declaration of Intent ("DOI") with a mandate to review, consider and commit. Adherence to this policy is critical because responses provided Defendant notice of whether an administrator intended to return to their position the following school year, or not. Signing off and submission of the DOI by May, signified an administrator's intent not to return. Not signing and returning a DOI by the deadline, constituted a commitment to return to the administrator's current position. At the end of the 2007-2008 school year, DCPS forwarded a DOI to Dickerson via email. Plaintiff confirmed his

acceptance, commitment, and expectation to remain in the Assistant Principal position at Wilson SHS for the 2008-2009 SY by not signing and returning the DOL to Defendant by the 2008 May deadline.  Defendant acknowledged receipt and Plaintiff's confirmation through their omission to initiate any retirement process on Plaintiff's behalf.

Simultaneous with its demand for improved academic performance during the 2007-2008 school year, Defendant was notified and had knowledge that Wilson SHS was understaffed and lacked sufficient resources. Under Chancellor Rhee's leadership and approval, Defendant chose not to take action to fill vacant teacher, administrator, and service provider positions. DCPS Officers withheld and/or delayed requested and needed classroom and building resources.  Despite Defendant's ongoing failure to provide resources during Plaintiff's tenure as Assistant Principal, Wilson SHS was acknowledged for numerous academic achievements. While Plaintiff served as the Senior Class Administrator for the 2005-2006 SY, the Wilson SHS Class of 2006 was ranked the highest in Wilson's history for percentage of college acceptances. During the 2007-2008 SY, Wilson was ranked in the top 1% of all high schools, nationwide on student performance on advance placement testing. In 2008 and 2009, Wilson SHS exceeded its targeted Annual Yearly Progress (AYP) in reading and math and the DCCAS reading and math scores exceeded expected targets.

In early May 2008, Plaintiff was again approached for principalship by a designee from the Chancellor's Office. The Assistant Superintendent, John Davis, informed Plaintiff that incoming new principals would be paid $149,000 dollars. Defendant, however, was only willing to pay Plaintiff an additional $2,400.00 to his current annual salary, far less than salaries offered to new principals. Plaintiff pointed out the obvious unfairness in such an offer and turned it down.

On or about June 24, 2008, Plaintiff received a notification by Fed-Ex delivery indicating that Defendant would not be reappointing him to his Assistant Principal position at Wilson SHS, effective June 30, 2008. No reason for the non-reappointment was provided, except that the decision was made by Chancellor Michelle Rhee. Plaintiff was removed on June 30, 2008. Defendant initially claimed that Plaintiff's removal was based merely on his status as an annually appointed employee, pursuant to DCMR Section 5-E520, giving Chancellor Rhee legal authority and freedom to make non-reappointment decisions without cause.   Contrary to this claim, by the time Plaintiff's non-reappointment became effective, Chancellor Rhee and her staff made public statements to the media which defended her non-reappointment of principals, including Plaintiff, for "laziness, failure to improve the statistical performance and mistreatment of students at Wilson."   None of these described characterizations applied to Plaintiff's professional career or his tenure at Wilson SHS in any capacity.

Prior to receiving the Official DCPS Notice of Non-Reappointment, dated June 30, 2008, Dickerson reapplied for his Assistant Principal position at Wilson per the mandatory process posted inside the Wilson SHS school building by Rhee's Executive Team "designees"  Dr. John Davis and Mr. Thomas Whittle. They were assigned to Wilson and on site starting on or around January 2008. On or around the week of June 16, 2008, Dickerson notified DCPS of his intent to reapply and signed up to be interviewed by Davison and Whittle. Additionally, Maureen Thompson, Building Union Rep. at  Wilson  was present during the interview.  At that less than ten-minute interview Dickerson  was asked three leadership-type questions. He never received any response or reply to his reapplication and interview. Instead, within days thereof, he received his official Notice of Non-reappointment, effective June 30, 2008.

The record revealed certain disparities in the government's employment of Mary Beth Waits, a White female, during the last week of June 2008,  at the exact same time that it decided not to reappoint Plaintiff.  In the first instance, her hiring was subjective and not competitive. Rather, Cahall and Rhee collaborated to ensure her hiring and precluded her engagement in a process that should have allowed equal opportunity for consideration for the Assistant Principal Position,  particularly since Dr. Dickerson, contrary to Dr. Rhee's accusations and basic stereotypes, demonstrated exceptional credentials and performance that was consistent with her restructuring goals.  Absent an equal consideration process consistent with applicable DC law, Ms. Waits was hired to replace Plaintiff as Senior Assistant Principal at Wilson. The other new hire in 2009 was a Hispanic male with less experience and education than Plaintiff.

Defendant's employees and agents' surreptitious engagement of Waits to fill his soon-to-be vacant position at Wilson SHS violated Title 5 of the D.C. Municipal Regulations and Article XII of the Collective Bargaining Agreement ("CBA"), which essentially provide that vacancies shall be listed/posted so that all have knowledge of the vacancy. Prior to sending Plaintiff a Notice of non-reappointment, Defendant had already pre-selected his comparator, Mary Beth Waits,  without benefit of a similar interview and competitive evaluation process. Additionally, absent any negative or materially unacceptable performance evaluations, DCPS systematically continued to publicly announce Plaintiff's failure to adequately perform purportedly consistent with criteria in evaluations and/or student performances including an initial representation that he was terminated for "misconduct", which was dismissed when challenged by Plaintiff. PLT Ex. 10.

Further, according to DCPS, Dickerson's evaluation performance was never considered and irrelevant to Rhee's nonappointment decision. (So, DT, in that vein Dickerson was rendered "invisible"). Defendant's 2008-2009 SY decision and reason for not reappointing Plaintiff defy its hiring and promotion policies and practices, which include merit. Defendant's refusal to reappoint or promote Plaintiff ran contrary to Defendants' established policy set forth in Title 5, Education of the D.C. Municipal Regulations, specifically, §5-E1110 et. seq. Merit Promotion Policy. Pertinent language includes the following: It shall be the policy of the Board of Education to fill vacancies with the best qualified candidates available (§ 5-E1110.1). But for his race, Plaintiff's qualifications exemplified by years of service, administrative leadership and experience, education, including his soon-to-be PhD status, satisfied all Defendants' documented objectives for hiring, keeping, and promoting qualified DCPS employees.

During the 2007-2008 SY and prior to Plaintiff receiving his Notice of Non-reappointment, Chancellor Rhee and her designees hired Mr. Peter Cahill, a Caucasian male, from Montgomery County Public School to fill the vacant Wilson SHS Principal. Mr. Cahill signed a three-year contract and was joined by an administrative staff member. Once the Chancellor's office removed Plaintiff and the other African-American administrators and replaced Wilson's top administrative leaders with white leadership, all previously identified vacant school-based positions were expeditiously filled.

Plaintiff filed grievances concerning his non-reappointment through the Council of School Officers in May 2008. Subsequently, CSO Officers informed Plaintiff that the Union had done all it could on behalf of non-reappointed administrators and no resolution in favor of members could be reached. CSO directed Plaintiff to immediately exercise retreat rights considering Defendant's

representation that non-reappointed administrators would be hired first for the 2008-2009 SY. 26. In July 2008, Plaintiff aggressively applied and interviewed for jobs with the Montgomery and P.G. County school systems. Prospective employers in both jurisdictions demonstrated an interest in hiring him and made respective job offers which were suddenly and unexpectedly withdrawn. The withdrawals coincided with Chancellor Rhee's increased negative public declarations regarding the reasons for termination of Dickerson. Defendant thus frustrated Plaintiff's search for new jobs and frustrated his potential for job opportunities.

Due to stress-related symptoms, Plaintiff sought medical attention at Washington Hospital Center starting in September 2008. He was diagnosed and prescribed medication for depression, among other things. Plaintiff's financial status and health forced him to postpone and delay completion of his Doctorate at GW for two years. In May 2011, Plaintiff received his Doctorate in Human Development and Organizational Learning from the School of Education, George Washington University.

## II.   LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

Courts evaluating motions for summary judgment in discrimination cases are advised to proceed with additional caution and to apply a heightened degree of scrutiny. *Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 4 (D.D.C. 2000), aff'd, 353 U.S. App. D.C. 205, 298 F.3d 989 (D.C. Cir. 2002). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." ' *Id.* at 324. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986))).

In deciding a motion for summary judgment, a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Washington Post Co. v. U.S. Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989). Ultimately, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52. "If material facts are susceptible to divergent inferences, summary judgment is not available." *Coward v. ADT Sec. Sys. Inc.,* 194 F.3d 155, 158 (D.C.Cir.1999).

The rules of this court instruct parties how to oppose motions for summary judgment. Fed. R. Civ. P. 56(e)(2) states in relevant part, "an opposing party may not rely merely on allegations or denials in its own pleading rather, its response must…set out specific facts showing a genuine issue for

trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." The local rules complement FRCP 56 as follows: "An opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated…" LCvR7(h)(1).

### III. ARGUMENT

Defendant's argument is based, in part, upon the predicate fact that Plaintiff has not identified and even lacks a comparator. At no point does the District claim that Plaintiff has not met his *prima facie* case.

Plaintiff was terminated along with numerous other predominantly African-American principals and assistant principals. The significant time for purpose of Plaintiff's discrimination claim was June 1, 2008, through July 30, 2008. During that period, his comparator, a newly hired white female, was presented with a distinct employment opportunity for the assistant principalship job from which he was terminated, to which he competently performed. At no time prior and after his termination did Defendant review Plaintiff's personnel file or his performance evaluations; in fact, his performance evaluations are now missing from the government's record of his personnel file. See PLT Ex. 3 at 88:14-22.

Plaintiff was excluded from consideration for his employment while the government sidestepped applicable DC personnel laws and simultaneously facilitated the employment of his comparator. Attorney Donielle Powe ("Powe"), in her capacity as Defendant's Rule 30(b)(6) witness proffered reasons for its exclusion of Dickerson from consideration for the position. Ms. Rhee, the former Chancellor, and decision maker neither testified nor gave an Affidavit. Powe was

deposed and presented an Affidavit to support the District's arguments.   According to her deposition testimony, Rhee's decision to not re-hire Plaintiff for his former position was based upon the restructuring of  Wilson High School, and specifically that the LSRT recommended his removal.   In her Affidavit, she states otherwise.   As argued below, Defendant's reasons for its decision to effectively terminate Dickerson (to not reappoint him) is riddled with inconsistencies which implicate its credibility and invites appropriate jury attention.

A. **Attorney Powe's Declaration Should be Stricken.**

On February 8, 2021, Powe presented testimony as the District's 30(b)(6) witness. On July 1, 2021,   she prepared a sworn declaration in support of the District's Rule 56 motion. Notwithstanding her designation, Powe admits that she did not directly discuss the matters at issue with either Rhee.  PLT Ex. 2 at 11:1-13.   Hence, she does not have personal knowledge about the issues in which she affirmed about the June 2008 events referenced in her declaration. PLT Ex. 2 at 8:16-21.

Notably, Powe's declaration states that "Mr. Dickerson did not reapply to serve at Wilson for the next year." Powe Decl. at 13. She also states that: "Mr. Dickerson exercised his retreat rights…" *Id.*   Nothing in Powe's declaration confirms that she had personal knowledge of the facts and circumstances regarding Rhee's separation of Dickerson and ultimate decision not to rehire him.   Powe simply failed to establish any foundation upon which she could establish personal knowledge about these affirmations; nor can any foundation be established that shows that Powe who started working for the District in 2016, eight years after Dickerson's non-reappointment would have reason to know whether or not Mr. Dickerson reapplied to serve at Wilson or "exercised his retreat rights." Powe Decl. at paragraphs 13 and 15.   "It is axiomatic that

a declarant has personal knowledge of facts contained in his or her declaration." *Vondran v. McLinn,* 1995 U.S. Dist. LEXIS 21974 *9 (N.D. Cal. July 5, 1995).   Absent such personal knowledge here,  Powe's Declaration should be stricken.

B. **Powe's Declaration is Inconsistent with her Sworn Deposition Testimony.**

Powe's declaration, which also contradicts her previous deposition testimony, violates the sham deposition rule and should be stricken. *See Pyramid Sec. Ltd v. IB Resolutions, Inc.,* 924 F.2d 1114, 1123 (D.C. Cir. 1991) (recognizing principle that a party "may not create a material issue of fact simply by contradicting its prior sworn testimony); *accord Galvin v. Eli Lilly & Col*, 488 F.3d 1026, 1030 (D.C. Cir. 2007). In her deposition on February 8, 2021, Powe stated that Rhee's reason for Dickerson's non-reappointment was based upon the Wilson High School's LSRT recommendation. (PLT Ex. 2 at 25:5-7).   By comparison, Powe's declaration asserts that Rhee's decision not to re-appoint. Dr. Dickerson was based on "other information gathered in 2007-2008 through a process called Quality School Review…"  Powe Decl. at para. 11. This affirmation directly contradicts her deposition testimony.   Further, she did not state this information in her deposition.  If she had, Plaintiff would have enjoyed an opportunity to explore this assertion in greater detail.   The conflicting statements affect material facts regarding the reasons for Rhee's actions.  The Quality School Review ("QSR") referenced by Defendant at its Exhibit AB is distinct from the May 13, 2008, Restructuring Memo at Defendant's Exhibit AC, and the Restructuring Plan for Wilson HS.   The contradictory representations between her Declaration and deposition testimony come within  controlling precedent.  This is a further reason to strike her declaration.   *See Pyramid Sec. Ltd supra* at 1113.

C. **Spoilation of Evidence Justifies Adverse Inferences Against Defendant.**

Spoilation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *See Silvestri v. General Motors Corp*., 271 F.3d 583 (4th Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing Black's Law Dictionary 1401 (6th ed. 1990)).  The duty to preserve material evidence "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri,* 271 F.3d 583 at 591. In this instance, Defendant's duty is clearly articulated in applicable federal regulations. 29 C.F.R. § 1602.31 provides:

> Any personnel or employment record made or kept by a political jurisdiction (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, layoff, or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the political jurisdiction for a period of 2 years from the date of the making of the record or the personnel action involved, whichever occurs later…. Where a charge of discrimination has been filed, or an action brought by the Attorney General against a political jurisdiction under title VII or the ADA, the respondent political jurisdiction shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.
>
> The term "personnel record relevant to the charge," for example, would include personnel  or employment records relating to the person claiming to be aggrieved and to all other employees holding positions similar to that held or sought by the person claiming to be aggrieved; and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the person claiming to be aggrieved applied and was rejected. The date of final disposition of the charge or the action means the date of expiration of the statutory period within which a person claiming to be aggrieved may bring an action in a U.S. district court or, where an action is brought against a political jurisdiction either by a person claiming to be aggrieved or by the Attorney General, the date on which such litigation is terminated.

13

In this case, Plaintiff's critical performance evaluations are missing from his file.  PLT. Ex. 3 at 88: 14-22; see also Ex. 4 at para. 12.   At no point does Defendant explain the absence of these evaluations and how it reconciles objectively and impartially ascertaining Dickerson's performance in the absence of a review of his missing performance evaluations.  The absence of these evaluations is damning to Defendant's argument.

Applicable law requires that "an employer notified of a charge of discrimination preserve relevant personnel records until the charges' final disposition." *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1418 (10th Cir. 1987). The duty to preserve relevant documents and evidence is triggered by a reasonably foreseeable Department investigation.  *See Gerlich, et al. v. U.S. Dept. of Justice, et al.*, No. 09-5354 (D.C. Cir., Mar. 29, 2013).  Plaintiff herein was terminated based upon his inability to purportedly contribute to the academic success of  Wilson HS students.  Such an analysis could not have occurred either in his termination or in the Defendant's decision not to re-employ Dr. Dickerson.  Defendant failed to adequately preserve Dickerson's personnel file.

The spectrum of sanctions includes an "adverse inference" jury instruction, prohibition of expert testimony, dismissal, and monetary sanctions in the form of punitive damages.   In accordance with Fed. R. Civ. P. Rule 37(c)(1), if a party fails to provide information, as required, *the party is not allowed to use that information or witness to supply evidence on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. (Emphasis added) Sanctions authorized by Fed. R. Civ. P. Rule 37 also include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."   Fed. R. Civ. P. Rule 37(b)(2)(A).   Additional sanctions include, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or

from introducing designated matters in evidence." *Id.* The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct "which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process).

In this instance, Defendant was required to preserve Dr. Dickerson's personnel files which would have verified his competitive performance, and that he should not have been terminated in the first instance. There was no evidence in this record that showed an evaluation of Dickerson, his failure to contribute to the success of the students that he served to with Dickerson's relationship to Wilson's AYP. Reference to his earlier evaluations, which are peculiarly still in his file show that he consistently "exceeded expectations." PLT Ex. 13. Given his competitive performance, there was no reason that he should have been precluded from competing for the vacancy created by Rhee's restructuring. Spoilation in this instance obviates the credibility of Defendant's legitimate business reason, implicates its credibility, and requires a jury decision to ascertain its significance.

D. **Genuine Issues of Material Fact Exist Regarding whether the District's purported Legitimate Business Reason was Pretextual.**

**The District's Pretextual Business Reason**

The District does not challenge that Dickerson satisfied his initial burden of establishing a prima facie case, meaning that it can't refute that he has proven by a preponderance of the evidence "that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). Rather, it asserts that it has a legitimate business reason for its decision.

Thusly, Plaintiff proceeds directly to *McDonnell Douglas's* third step at which point the burden shifts to Plaintiff to demonstrate that the District's asserted non-discriminatory reason for its decision to  terminate him and to exclude Dr. Dickerson from consideration for the Wilson H.S. Assistant Principalship was pretextual.  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. At the trial  stage, Dr. Dickerson would be afforded the opportunity to prove by a preponderance of the evidence that the District's reason for not terminating and not employing him  was "not its true reason[ ], but w[as] a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc*.,530 U.S. 133, 143, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted).

However, with inferences being made in his favor, he need only show the existence of genuine issues of material facts at this summary judgment stage.  The illegal and racially biased termination and decision not to reemploy Plaintiff was a direct result of Rhee's restructuring policy at Wilson HS. The way it was accomplished it minimized, if not dismantled Plaintiff's meaningful competitive years of service at Wilson HS, years in which he performed three distinct positions: Assistant Principal,  Dean of Students, and music teacher, and received considerable commendations. PLT. Ex. 11.  This record of performance, however, omits his most recent performance evaluations.  The government fails to show in its contradictory arguments regarding why it terminated Plaintiff, or in any of its cited materials how it scrutinized Plaintiff and decided to terminate him beyond the vague generalization that it pointed to in the May 13, 2008, LSRT Memo.   Glaringly, there is not a single reference to the removal of Dr. Dickerson in the LSRT's 2008 minutes.  PLT. Exhs. 7 and 8.  This record raises credibility tensions once again.   These tensions flow into the District's ultimate replacement of Dickerson by a white female, after eviscerating his qualifications and accomplishments, and thereby essentially making him invisible

in the consideration process and obviating his equal opportunity to compete for his own job that was illegally taken from him for that exact purpose.

The District's discriminatorily orchestrated the filling of the immediate vacancy created by Rhee's effective termination of Plaintiff and thereafter her ensuring that his competitive qualifications were not considered.  This case goes beyond the traditional qualification analysis upon which Defendant relies. In such cases the circuit refined the qualifications standard to be used in pretext cases by declaring, "a disparity in qualifications, standing alone, can support an inference of discrimination only when the qualifications gap is 'great enough to be inherently indicative of discrimination'—that is, when the plaintiff is 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate." *Hamilton v. Geithner*, 399 U.S. App. D.C. 77, 85, 666 F.3d 1344, 1352 (2012) (citing *Holcomb v. Powell*, 369 U.S. App. D.C. 122, 130, 433 F.3d 889,   The District strategically effectuated its discrimination by removing a demonstrably well-qualified African-American man holding down three jobs, supported by the affected parental stakeholders, from decision making for the forced vacancy. The record shows that it told him that he could not reapply for that position.  Notably, PLT Ex. 15,  a June 25, 2008, letter from Aona Jefferson to Rhee stated the following:  "When the principals and assistant principals received their letter s of non-reappointment they were told they would not be eligible to apply for any principal or assistant-principal vacancies respectively within DCPS.  This bolsters what Dickerson testified to in his deposition and refutes the District's factual allegation number 20 that Dickerson did not apply for his job.  The District's citation in its argument does not reference his application for his assistant principal job that was taken from him.

Part of Rhee's restructuring and pushing him out from his position with certainty was forbidding him to reapply and be reconsidered for the position.   This too is an issue of credibility which should be decided by a jury.  *Barnett v. Pa Consulting Grp. Inc.,* 715 F.3d 354, 358 (D.C. Cir. 2013) ("Credibility determinations, the weighing of evidence, and drawing of legitimate inferences from facts are jury functions, not those of a judge at summary judgment. Thus, we do not determine the truth of the matter, but instead decide only whether there is a genuine issue for trial.") (*quoting Pardo-Kronemann v. Donovan,* 601 F.3d 599, 604, 390 U.S. App. D.C. 178 (D.C. Cir. 2010) (internal quotation marks and citations omitted

### Evidence of Pretext

The following demonstrates significant factual contradictions and evidence of pretext.  To begin, there is no direct evidence that any writing in this case specifically mentions Kenneth Dickerson by name, or states that he or any specific assistant principal of Wilson HS should be terminated. See Def. Ex. AC.   Additionally, Dickerson's non-reappointment and re-appointment consideration should have been governed by DCPS policies and procedures, as well as demonstration of his non-performance as an Assistant Principal; the record is void of a revised job description as per the restructuring; there was never a posted vacancy announcement for the position; DCPS management instructed Dickerson that he should not re-apply for his position; and the period in which he was not reappointed was parallel to the period in which his comparator was considered and fast tracked to the Assistant Principal position. Dickson was terminated effective June 30, 2008; Mary Beth Waits was hired on July 7, 2008. PLT Ex. 5.

Furthermore, the District gave multiple shifting reasons for its non-reappointment of Dickerson: a) the purported recommendation of the LSRT, the QSR recommendations, and finally

18

"misconduct", which divergency implicates Defendant's credibility. Compare Powe's deposition regarding LSRT at Ex. 2, 26:3-8;Powe's Declaration at Defendant's Ex. A, para. 11;  and Plaintiff's. Exhibit 10.  These factual discrepancies are exacerbated by the absence of Dickerson's most recent performance evaluations from his personnel file.

The District concedes that it deemed Dr. Dickerson's performance irrelevant to the non-reappointment  and re-employment process altogether:

> Q…. *Did Ms. Rhee rely or review Mr. Dickerson's performance evaluations in making her decision? Do you know the answer to that question?*
> *A.  And that's what I'm saying. Ms. Rhee's reasoning for non-reappointment was based on the Wilson LSRT recommendation.*
> *Q. My question still is do you know whether she reviewed Mr. Dickerson's performance evaluations?*
> *A. Not that I'm aware of.*
> *Q. Do you know if the restructuring team reviewed Mr. Dickerson's performance evaluations?*
> *A. Not that I'm aware of.*
> *Q. Would his performance, if he were performing at an exceptional level, had anything -- made a difference in terms of whether he was removed or not?*
> *A. And Mr. Temple, your question was whether if he were an exceptional employee would that have made a difference?"*
> *Q. Yes."*
> *A.  No, because the recommendation from the LSRT was to remove the leadership team as a whole."* (PLT Ex. 2 at 26: 3-8).

The Local School Restructuring Team, however, did not recommend removal of "the leadership team as a whole. Rather, in its May 13, 2008, Memo it stated that only the principal should be removed:  See Defendant Ex. AC.  See Also Ex. AA at 8. Between June 15, 2008, and July 7, 2008, Rhee and the new Wilson HS principal effectively circumvented the institutionalized DCPS employment process, isolated and neutralized Dickerson, and totally ignored and minimized his credentials, commendations, and   performance history, thereby virtually castigating him to a status of invisibility and creating a solidified double-standard

informed pathway to ensure his competitor's appointment, and his non-reappointment. See Def.

Ex. G.  Rhee and Cahall dialogued to ensure that Waits would be employed without any

consideration of Dickerson for the position.

The disputed record here shows that Rhee continuously interposed unfounded subjective,

speculative  assumptions about Dickerson without once ever reviewing his credentials and

performance history to ascertain his competitiveness and competencies. The District's decision-

making process presumed that his competitor enjoyed superior qualifications without benefit of

equal scrutiny and an equal opportunity process. Defendant cannot rebut this record. In this

connection, DCPS corporate designee, Powe, testified as follows:

> *Q.  What were the factors relied upon to hire the candidates, the assistant principal who*
> *came in 2008?*
> *A. I don't know the answer to that question.*
> *Q. But as a policy, you do know that principals and assistant principals are appointed*
> *based upon their qualifications; is that correct?*
> *A. You said they're appointed and reappointed.*
> *Q. No, appointed based upon their qualifications?*
> *A .Yes.*
> *Q. And they're reappointed based upon their qualifications and their performance; is that*
> *correct?*
> *A. They're reappointed based on the chancellor's decision.* (Emphasis added).
> PLT Ex. 2 at 61:  2-22;  62: 1-2.

The absence of the vacancy announcement, the violation of government regulations, and

the failure to review Plaintiff's performance evaluations, constitute a double standard and create

an inference of discrimination sufficient to overcome summary judgment.   The developed factual

record contradicts any notion of consistency, impartiality, objectivity, and fairness in the selection

process.  Accordingly, Plaintiff, as the nonmoving party, is entitled to all reasonable inferences, as

the court is required to do. *See Anderson*, 477 U.S. at 255; *Shekoyan v. Sibley Int'l*, 366 U.S. App.

D.C. 144, 409 F.3d 414, 422-23 (D.C. Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Moreover, "a reasonable juror *could* conclude that Defendant would posted a Vacancy Announcement as high priority consideration given the assertion of a restructuring purportedly with a different job description if it believed it was of primary importance for the creation of a new (and improved) Assistant Principal position. *Courtney v. Biosound, Inc*., 42 F.3d 414, 421 (7th Cir. 1994) (emphasis added) (citing *Gallo v. Prudential Residential Servs*., 22 F.3d 1219, 1225 (2d Cir. 1994)).

### E. DEFENDANT'S LEGITIMATE BUSINESS REASON DISPUTED, A REASONABLE JURY COULD FIND FOR PLAINTIFF.

Defendant's argument is meritless.  In the first instance, it concedes, as this court found, that Plaintiff properly asserted his discrimination noting the following:

> (7) "DCPS 'intentional[ly] and deliberate[ly] exclu[ded]' Mr. Dickerson from the reappointment and principal selection processes and instead 'pre-selected non-African-American candidates to fill the principal and assistant principal positions,' without regard to performance history and qualifications." *(quoting* Pl.'s Opp'n to Def.'s Mot. to Dismiss, [79] at 6).

Additionally, Plaintiff notes in his declaration that he personally interacted with Chancellor Rhee on two separate and distinct occasions, face to face.  Thus, she clearly knew him and his race.  Moreover, the discovery record reveals that during the exact same time in which Defendant effectively terminated Mr. Dickson,  it facilitated, considered, and accelerated employing Mary Beth Waites, a white woman, to fill the vacant Senior Assistant Principal position previously held by Plaintiff.   Defendant misses the point of Plaintiff's victimization.  Chancellor Rhee terminated Plaintiff in a group firing in which she effectively racially stereotyped Plaintiff's competency.  According to Defendant's 30(b)(6) witness, at no time did Rhee review or consider Plaintiff's personnel file and performance evaluations. Further, Defendant prohibited Plaintiff

from re-application.  It then filled his position without giving him an opportunity to compete for that position, a fact which it denies.  Defendant claims that he did not apply for the position but fails to acknowledge that it precluded him from doing so.

Further, that the school did not satisfy "documented NCLBA objectives for hiring, keeping and promoting qualified employees does not necessarily implicate Plaintiff's performance."   In this connection, Defendant claims that Rhee's decision was based exclusively upon the LSRT's May 13, 2008, recommendation. Neither that correspondence nor any LSRT minutes specifically reference Dickerson or removing the Assistant Principal based upon any identified performance failings attributed to him.  On the contrary, there is not a scintilla of evidence in this record that impugns Mr. Dickerson's performance.  But for his racially biased termination and rehiring process directly connected thereto,  Dickerson credentials and re-application would have been dutifully and equally considered.  In this instance, his professional existence and accomplishments were summarily negated and his efforts to compete for the position in which he was patently qualified, experienced and trained nullified.  Despite a record of achievement and successful pursuit of his doctorate, Dickerson became invisible. See Ex.  (Commendations).

Defendant's footnote 4 also misses the mark.   A discussion of Waits competitive qualifications in a vacuum do not undo the alleged discrimination here.   The immediate record confirms the absence of a vacancy announcement between June 16 and July 7, 2008,  Waits' start date, thereby obviating the mandated competitive process for the position.  See D.C.  Municipal Regulation Section 5-E1110.  Further, Defendant's 30(b)(6) witness testified that she had no knowledge about any vacancy announcement regarding an Assistant Principal position at Wilson:

Q After Dr. Dickerson was not reappointed was there a posted job announcement for the
vacancy
MS. KELLEY: Objection; beyond the scope. But you may
answer.
A. I cannot speak to whether there was a posting at the
time.
 Q. What do your policy and procedures
require?
A. Say that again.
Q What do your policies and procedures require for vacancies?
MS. KELLEY: Objection;
vague.
A. So we have -- for school leaders if there is a vacancy at a school we have a
school leader recruitment and retention team and they go through the country to
recruit school leaders, and then we also post on different websites when we have a
school leader vacancy available.

The absence of a formal vacancy announcement further supports Plaintiff's discrimination claim and muddies Defendant's credibility.  To the extent that Defendant argues that Plaintiff should have re-applied for the position, it fails to show that the position was ever posted.   Most importantly, as argued above, Plaintiff sufficiently established a factual basis to demonstrate that Defendant's posited reasons for its actions are disputed.   Based thereupon, this issue is ripe for jury consideration.

II.   PLAINTIFF CANNOT SHOW EVIDENCE DEMONSTRATING A VIOLATION OF SECTION 1983.

To allege a claim under § 1981 against a municipality, a plaintiff must allege that the violation of the right to make and enforce contracts protected by § 1981 was caused by the municipality's custom or policy. *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *Smith v. Janey,* 664 F.Supp.2d 1, 9 (D.D.C.2009). The District's custom or policy may cause a violation of the right to make or enforce contracts under several different

circumstances. The District or one of its policymakers may explicitly adopt a policy that is the moving force behind a violation. *Warren v. Dist. of Columbia,* 353 F.3d 36, 39 (D.C.Cir.2004).

In the immediate case, Chancellor Rhee's restructuring policy effectively removed multiple African American principals and Assistant Principals, of which Plaintiff was one.   See Def. Ex. AB. (Restructuring Plan).  Further, Plaintiff has demonstrated how this policy played out in his removal or non-reappointment, and effectively the District's systematic exclusion of him pertinent to any race neutral equal opportunity to be considered for re-employment in his position. Defendant by concession attributes the actions at hand, which resulted in Plaintiff's non-reappointment to be Rhee's restructuring decision up to and including the way his successor was considered for and appointed during June-July 2008 when restructuring at Wilson was operationalized. "Therefore, construing the facts and all reasonable inferences in [Plaintiff's] favor, [Plaintiff] has…present[ed] sufficient evidence raising a genuine dispute as to the material fact that the [District] has a custom or policy within the meaning of *Monell* embodying unlawful race discrimination as required under section[] 1981…." *Morris v. Office Max,* 89 F.3d 411, 413 (7th Cir. 1996).  Defendant's argument lacks merit and should be denied.

## IV.     CONCLUSION

It is not the district court's role to "weigh the evidence and determine the truth of the matter" but instead to determine whether there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Plaintiff has sufficient record evidence to support the claim that there are numerous issues of material facts in dispute.  It is the essence of the jury's function to select,

24

from among conflicting inferences and conclusions, that which it finds most reasonable.

*Metrocare v. Washington Metropolitan Area Transit Authority*, 679 F.2d 922, 925 (D.C. Cir. 1982).  For the foregoing reasons, Plaintiff respectfully requests that the court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

By:  /s/ Donald M. Temple

Donald M. Temple #408749

1310 L Street, NW Suite 750
Washington, DC 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
dtemplelaw@gmail.com
*Attorney for Plaintiff*

26