# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH DICKERSON | ) |
| Plaintiff, | ) ) ) |
| | ) Civil Action No.: 09-2213 (PLF) |
| | ) ) ) ) |
| DISTRICT OF COLUMBIA, *et al.* Defendant. | ) ) ) |

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

Plaintiff submits the following responsive statement of disputed facts in compliance with LCvR 7(h)(1).

1. Michelle Rhee was Chancellor of the District of Columbia Public Schools (DCPS) in the 2007-2008 school year. Fourth Am. Compl., [73] ¶ 2; Ex. A ¶¶ 7, 8, 11.

    FACT #1 NOT DISPUTED.

2. At all relevant times, Principals and Assistant Principals (APs) have served in DCPS schools by appointment, for one-year terms. 5E DCMR § 520.1.

    FACT #2 NOT DISPUTED.

3. In 2008, Chancellor Rhee had authority to reappoint or to not reappoint Principals and APs at the end of their term. 5E DCMR § 520.2; [84] at 17.

    FACT #3 NOT DISPUTED.

4. In 2008, Chancellor Rhee was responsible for selecting an alternative governance option for schools put into restructuring. Ex. A ¶ 11; Ex. AA at 6, 8; Ex. AB at 2; [84] at 17; 115 Stat. 1485.

    FACT #4 DISPUTED

1

This asserted fact is contradicted by the record's divergent evidence/testimony. The decision-making process, the parties thereto, and purported supporting documents, including the Government's 30(b)(6) witness's testimony are contradictory pertinent to the selection process for an alternative governance option for Wilson SHS for the 2008-2009 SY; this includes Chancellor Rhee's non-reappointment of Dr. Kenneth Dickerson. Defendant's corporate designee, Donielle Powe ("Powe"), testified at the 30(b)(6) deposition on February 8, 2021, that: "Ms. Rhee's reasoning for the non-reappointment was based on the Wilson LSRT recommendation"[1] PLT. Ex. 2 at 25:5-7. According to Powe, the Wilson SHS Local School Restructuring Team (LSRT) recommendations were the "sole" basis of Rhee's decision-making process. Despite being questioned on this point more than once during the 30(b)(6) deposition, Powe never referenced or mentioned any other persons, documents or processes upon which Rhee relied in her decision-making process to restructure Wilson and not to reappoint Dr. Dickerson. Powe testified that Rhee relied exclusively upon the Wilson HS LSRT, dated May 13, 2008: "Restructuring Proposal Update." Memo to Chancellor Rhee. (See Def. Ex. AC)

Ms. Powe's corporate designee's Declaration, dated, July 1, 2021, states: "At the end of the 2007-2008 school year, after considering the LSRT's recommendation, and other information gathered in 2007-2008 through a process called Quality School Review, Chancellor Rhee decided that, as a part of Wilson's restructuring plan, a new Principal would be selected, and all of the Assistant Principals would have to reapply for their jobs if they wanted to stay on under the new leader and under the new plan." (Def. Ex. A ¶ 11) (Emphasis added) Contrary to her deposition testimony, Ms. Powe references "other information" including the QSR which was omitted from Powe's deposition testimony.

---

[1] / LSRT means Local School Restructuring Team.

2

Additionally, Defendant's cited exhibits for its assertion #4 peculiarly omits the Wilson LSRT May 13, 2008, Memo (Def. Ex. AC), upon which Powe claims Chancellor Rhee relied in the exercise of her authority.

5. Wilson Senior High School (Wilson) was put into restructuring in the 2007-2008 school year. Ex. B at 178:10-20; Ex. AA; Ex. A ¶ 7.

   FACT #5 NOT DISPUTED

6. Schools put into restructuring in the 2007-2008 school year, including Wilson, engaged in a school-year-long process known as "Quality School Review" (QSR). Ex. AB at 3, 6; Ex. AA at 6; Ex. A ¶ 11.

   FACT #6 DISPUTED

   There is no reference to the QRS process as part of Rhee's decision-making process regarding Plaintiff's effective termination. Despite Wilson SHS 2007-2008 restructuring status, Defendant's exhibits, and the corporate designee's testimony state that Wilson's LSRT was not fully engaged in any year-long QSR process whatsoever. According to the QSR Report Executive Summary (Def. Ex. AB at page 2), the purpose of the QSR is summarized as follows:

   > "The QSR is a 3-stage process which will involve intense analysis of key indicators centered on 3 primary elements which are as follows:
   >
   > 1) Teaching and Learning 2) A Safe and Effective Learning Environment 3) Parent and Community Involvement.
   >
   > Upon completion of the QSR review process, a comprehensive report which strategically measures progress in each of the 3 primary elements will be forwarded to the Chancellor for a final decision on which restructuring option is best suited for each particular building. In order to assist schools with the process, the following is a complete guidebook for the entire QSR process

3

The District's corporate designee also testified that neither Wilson's LSRT nor Chancellor Rhee incorporated any consideration or legitimate review of Dickerson's qualifications, leadership skills, performance evaluations and/or value added to Wilson SHS in the areas identified as "primary elements" in the QSR Executive Summary into their decision-making process. Powe's deposition testimony is instructive and confirms that there was no consideration or evaluation of Plaintiff's qualifications:

> "Q. Is there a correlation between the leadership problems that were identified in the report and Mr. Dickerson's performance?"
> "A. No." PLT. Ex. 2 at 44:13-18

Further, narrowing in on Dr. Dickerson's leadership skills, the following deep-dive inquiry took place and confirms that the LSRT at no time considered Dr. Dickerson's employment status:

> "Q. To what extent of his leadership skills and contributions to the leadership at the school to ascertain whether he was contributing to the well-being of the students? And that means academic and other development issues.
> A. As far as I'm aware, Dr. Dickerson's contributions were not assessed by the LSRT, the LSRT and his nonreappointment was a part of the recommendation to nonreappoint to the school leadership team. PLT. Ex. 45: 6-16

Powe further testified:

> Q.... Did Ms. Rhee rely on or review Mr. Dickerson's performance evaluations in making her decision? Do you know the answer to that question?
> A. And that's what I'm saying. Ms. Rhee's reasoning for nonreappointment was based on the Wilson LSRT recommendation.
> Q. My question still is do you know whether she reviewed Mr. Dickerson's performance evaluations?
> A. Not that I'm aware of.
> Q. Do you know if the restructuring team reviewed Mr. Dickerson's performance evaluations?
> A. Not that I'm aware of.
> Q. Would his performance, if he were performing at an exceptional level, had anything -- made a difference in terms of whether he was removed or not?
> A. And Mr. Temple, your question was whether if he were an exceptional employee would that have made a difference?"
> Q. Yes."
> A. No, because the recommendation from the LSRT was to remove the leadership team as a whole." PLT. Ex. 2 at 26:3-8

4

The LSRT recommended that the Wilson H.S. school principal be replaced but did not recommend that Plaintiff be replaced or removed. (Def. Ex. AA at 8; Def. Ex. AC #1) If in fact the LSRT and Chancellor Rhee followed and relied upon the Quality School Review process as claimed, there would have been specific documentation in the record regarding Dr. Dickerson. There is not. Additionally, adherence to that process should have informed the non-existing competitive process required by the DCPS regulations and policies. *See* D.C. Municipal Regulation section 5-E1110 *et. seq.*

7. Among other things, the QSR process required multiple conversations with the principal and "Local School Restructuring Teams" (LSRTs) at each school, including at the very beginning and the end. Def. Ex. AB at 6, 10.

FACT #7 DISPUTED (SEE ALSO RESPONSE TO FACT #6)

With respect to restructuring at Wilson SHS, and specifically the decision by Chancellor Rhee to non-reappoint Dr. Dickerson, the District's corporate designee, Donielle Powe did not indicate Rhee had any conversations with the Wilson SHS principal or their Wilson Local School Restructuring Team.

8. At the end of the QSR process, Chancellor Rhee used the information provided by the process to select an alternative-governance option for each school from among those in the No Child Left Behind Act (NCLBA). Ex. AB at 10-11; Ex. AA at 3; Ex. A ¶ 11; 115 Stat. 1485.

FACT #8 DISPUTED (SEE ALSO RESPONSE TO FACT #6)

As previously indicated, Defendant's corporate designee Powe testified that Chancellor Rhee relied solely on the Wilson LSRT recommendations for restructuring set out in the May 13, 2008, Memo (Def. Ex AC). On the other hand, absent authority Defendant argues that Rhee "used the information" from the QSR process, which the Wilson LSRT failed to follow.

5

9. In May 2008, Wilson's Local School Restructuring Team wrote a memo to Chancellor Rhee recommending "partial reconstitution of the Wilson staff/function, specifically to include: Assistant Principals, Guidance counseling, Attendance, as well as recruitment of a new Principal." Def. Ex. AC at 2; Ex. A ¶ 11.

FACT #9 DISPUTED

Contrary to Defendant's May 13, 2008, Memo to Chancellor Rhee, which expressly recommends "partial reconstitution" to include Assistant Principals, during her deposition testimony, Powe testified as follows with respect to the non-reappointment of Dickerson as part of the restructuring plan:

> A. I said the memo that I talked about was a recommendation from the LSRT to Chancellor Rhee about how to restructure Wilson and included in that memo with recommendations was how -- was a recommendation on how to address school leadership, and he was a part of school leadership.
> Q. Okay. And what did it say about how to address school leadership?
> A. That school leadership should be replaced. There should be a new structure for school leadership.
> Q. And did it say why school leadership should be replaced?
> A. It talked about the reasons for -- through the restructuring process there are several ways to address how to improve the school, and one of those ways is by replacing staff. And so, the recommendation was to replace the staff that had to do with the lack of progress of student academics it says. So as a part of school leadership it was recommended that that team be removed and replaced. PLT. Ex. 2 at 22:9-22; 23:1-9

Powe went onto testify:

> A. And Mr. Temple, your question was whether if he were an exceptional employee would that have made a difference?"
> Q. Yes."
> A. No, because the recommendation from the LSRT was to remove the leadership team as a whole." PLT. Ex. 2 at 26:3-8.

None of Defendant's exhibits support Powe's testimony because the Wilson LSRT never made any such recommendation. Defendant's May 13, 2008, LSRT Memo to Rhee, in pertinent part Recommendation 2 states:

6

Recommendation 2. Develop small learning communities for each grade level. This would include continuing the 9th grade teams and expanding that concept into the 10th grade. Note: we would continue the successful Academy structure, with the option of enhancing it in the future. Each grade level will consist of an Assistant Principal, a guidance counselor, and an attendance counselor that will follow the students through the four-year period. Def. Ex AC at 2.

The only position proposed and recommended for replacement by the Wilson LSRT was the Principal. The LSRT did not hesitate to unequivocally recommend "The Principal will be replaced" (Def. Ex. AA at 8). No such terminology was used when referencing assistant principals. No reference was made about Dr. Dickerson in any manner.

10. The LSRT also recommended a new administrative model, with each grade-level to be assigned its own AP, guidance, and attendance counselors, who would follow the cohort through their years at Wilson. Def. Ex. AC at 2. The LSRT felt that reconstitution of those positions would "allow the new principal to establish a new leadership team for the school that will ... build the grade-level teamwork that will be essential between each assistant principal and counselor." Id.

FACT #10 DISPUTED (SEE RESPONSE TO FACT # 9)

Defendant's representation and interpretation of Ex. AC at 2, set forth as Fact # 10 is not only selective but distorts the actual LSRT recommendation for "partial reconstitution." Again, a recommendation that prescribes "reconstitution" is not synonymous with a removal or replacement recommendation. The details outlined in Recommendation 2 are inconsistent with the testimony given by Defendant's corporate designee, Donielle Powe. See response to Fact #9

11. DCPS finalized the plan for Wilson's restructuring (the Plan) in May 2008. (Def. Ex. E at 2).

FACT #11 DISPUTED

7

Defendant's Exhibit E (a distorted email) is confusing to say the least and not conclusive of anything.

12. In the Plan, Rhee selected the second alternative-governance option from the NCLBA's list of options, corresponding to a replacement of school staff relevant to the school's failure to make adequate yearly progress. Def. Ex. AA at 8-9; Ex. A ¶ 11; P.L. 107-110, Sec. 1116 (b)(8)(B), 115 Stat. 1485.

FACT #12 DISPUTED

The "second alternative-governance option" selected by Rhee according to Defendant Exhibit AA reads as follows: *Replace school staff relevant to AYP failure (Option 2B: Instructional Staff Reconstitution)*. Def. Ex AA at 8.

As Assistant Principal, Dr. Dickerson did not hold an "instructional staff" position. To legitimately determine Dr. Dickerson's specific relationship to Wilson's adequate yearly progress (AYP) and whether, how and if he impacted or was relevant to Wilson's failure to meet AYP, the LSRT and Chancellor Rhee would have to have considered and reviewed his leadership skills and performance evaluations as an Assistant Principal at Wilson leading up to the 2008 non-reappointment decision as part of the restructuring process. They admittedly did no such review according to Defendant's corporate designee, Donielle Powe. Nor was he given an opportunity to compete for the vacant position. See also Response to Fact # 12. The Plan provided that all "instructional staff will have the option to reapply if they wish to remain at the school," with "[n]o more than 20% of teachers" to be ultimately replaced; that the principal would be replaced; and that "[o]ther administrators have the option to reapply if they wish to remain at the school." Ex. AA at 8.

FACT #13 IS DISPUTED

Exactly what the "Plan" is, is unclear. Defendant's selective excerpts above are incomplete and taken out of context. The "Plan" as referred to in Defendant's Ex. AA at 8 in pertinent part reads: Instructional staff relevant to AYP failure will be replaced or required to reapply for their positions. This option does not include non-instructional staff.

- All instructional staff will have the option to reapply if they wish to remain at the school. No more than 20% of teachers may be replaced through the reconstitution process.
- Principal will be replaced.
- Other administrators have the *option to reapply if they wish to remain at the school.*

Def. Ex AA at 8.

At no point did Dr. Dickerson, as an administrator enjoy, an opportunity to reapply. PLT Ex. 15

See also Responses to Facts Numbers #19 and #20.

13. The Plan stated that "[b]oth the school team and the district believe that significant changes in the administrative structure at Wilson Senior High School are necessary," and explained that the new school leader would "work with the district to develop a leadership team focused on addressing the specific needs of the school in relation to restructuring." Ex. AA at 15.

FACT #14 DISPUTED (SEE ALSO REPONSES TO FACTS #13, 19 and 20)

This contradicts Defendant's 30(b)(6) witness' testimony. Nothing in this excerpted language from 'The Plan' (Def. Ex AA) suggests or recommends that Dr. Dickerson, in his capacity as Assistant Principal be summarily removed, replaced, or could not have remained at Wilson as a member of the 'reconstituted' leadership team at Wilson SHS for the 2008-2009 SY. Powe testified as follows:

> A And, Mr. Temple, your question was whether if he were exceptional an employee would that have made a difference?

9

Q. Yes.
A No, because the recommendation from the LSRT was to remove the leadership team as a whole.  PLT Ex. 2 at 26:3-8

14. Kenneth Dickerson was appointed to, and did, serve as an AP at Wilson from September 2000 to June 2008. Ex. B at 18:8-11; Ex. C at 3; Ex. A ¶¶ 5, 6.

FACT #15 NOT DISPUTED

15. Mr. Dickerson was aware that Wilson was in restructuring at least by February or March 2008. Ex. B at 179:21-180:1.

FACT #16 NOT DISPUTED

16. In late June 2008, Mr. Dickerson was officially notified that Chancellor Rhee had decided not to reappoint him as AP at Wilson. Ex. AD at 2; Ex. B at 44:8- 45:5.

FACT #17 NOT DISPUTED

18. The Principal and all APs serving at Wilson in the 2007-2008 school year were not reappointed to serve at Wilson the next year. Ex. B at 119:3-13; Ex. A ¶ 12.

FACT #18 NOT DISPUTED.

19. Mr. Dickerson was aware that the APs could have reapplied to serve at Wilson again the next year. Ex. B at 178:10-179:2; Ex. AA at 8.

FACT #19 DISPUTED.  (SEE RESPONSE TO FACT # 20)

Whether Dr. Dickerson was or wasn't aware that APs could reapply to serve at Wilson SHS for the 2008-2009 is irrelevant since Defendant's agents in the DCPS HR Office on or around July 1, 2008, specifically instructed Dr. Dickerson that he could not apply and would not be considered for any administrative position within the DCPS system for the 2008-2009 SY. PLT. Ex. 4 ¶15.

20. Mr. Dickerson did not apply to serve as Principal or AP at Wilson for the 2008-2009

10

school year. Ex. B at 178:10-179:7; id. at 79:11-82:10; Ex. A ¶ 13.

FACT #20 DISPUTED

First, prior to termination in June 2008, Dr. Dickerson had applied and was already in the DCPS pool of eligible candidates to serve in a Principal capacity during the 2008-2009 SY. (PLT. Ex. 3 at 66:10-16); PLT. Ex. [ 17] Answer to No. 6. His eligibility status during the 2007-2008 SY comported to the legitimate DCPS hiring process Defendant's corporate designee testified to when deposed. *See* PLT Ex. 4 ¶ 14.

Second, in July 2008, Defendant's agents in the HR personnel prevented Plaintiff from pursuing any DCPS administrative position. Plaintiff was informed in-person that he could not apply and would not be considered for any such position when he went in to discuss his retreat rights subsequent to termination. Dr. Dickerson did not apply after he was terminated. PLT Ex. 4 at ¶ 15.

Third, during the week prior to Dr. Dickerson receiving the Notice of Non-reappointment, dated, June 30, 2008, while DCPS was simultaneously selecting his comparator, Mary Beth Waits, to replace him as the Senior Assistant Principal at Wilson SHS, Chancellor Rhee's designees, Dr. Davis and Mr. Whittle initiated and staged a pretextual abbreviated interview process onsite at Wilson SHS and encouraged Dr. Dickerson to participate, which he did. The interview lasted 5-10 minutes and Dickerson never received oral or written feedback. Peter Cahall's email to Chancellor Rhee, dated June 26, 2008, supports the overlap in time of this event and his selection of Waits. *See* PLT Ex. 12. DCPS had onboarded and signed a salary contract with Mary Beth Waits by her starting date of July 7, 2008. *See* PLT Ex. 5

In order to complete the necessary HR paperwork, the hiring process with Mary Beth Waits had begun and was well on its way prior to the aforementioned pretextual interview. If, on the

11

other hand, Peter Cahall's June 26, 2008, email to Michele Rhee was sufficient to trigger and circumvent the hiring process pursuant to DCPS procedure and policy coupled with the D.C. Comprehensive Merit Personnel Act (CMPA) D.C. Municipal Regulation section 5-E1110.1, then this was in fact a classic case of discrimination. During DCPS' corporate designee's deposition, Donielle Powe testified to the following:

Q. And do you know the process for appointing vice principals or assistant principals?
A. Sure. So, they have to apply to go into a pool of candidates and if they're accepted into that pool of candidates then they participate in a panel interview, and if they pass that then they can select or they can be selected to interview at -- this is the general process -- they can be. PLT Ex. 2 at 52:4-22; 53:1-2

If the process testified to by the DCPS corporate designee, Donielle Powe, is the legitimate DCPS hiring process then Mary Beth Waits' selection and assignment to Wilson SHS for the 2008-2009 SY was fast-tracked and conducted in a separate and distinct manner, one which violated established protocol.

21. Patrick Pope was Principal of Hardy Middle School in the 2007-2008 school year. Ex. B at 105:13-106:4.

   FACT #21 NOT DISPUTED

22. Hardy Middle School was not in restructuring in the 2007-2008 school year. Ex. D at 11.

   FACT #22 NOT DISPUTED

23. Mary Beth Waits was appointed to serve as an AP at Wilson for the 2008-2009 school year; Mr. Dickerson has no knowledge of her qualifications, although he believes he was more familiar with DCPS policies and procedures, and Wilson students. 25; Ex. F at 4 (Response No. 6); Ex. A ¶ 14.

   FACT #23 IS DISPUTED.

12

Dr. Dickerson never received an opportunity to compete or to be considered for the position from which he was removed. Further, he was removed and not reconsidered for hire without any reference to his qualifications. Absent his candidacy for the position, he intentionally confined to an "invisible" or non-existent status whereupon his credentials were not reviewed and his ability to compete was nullified. The timing of and status provided given Mary Beth Waits as an Assistant Principal at Wilson for the 2008-2009 are relevant and raise material factual issues.

Powe expounds on the process for appointing Mary. Beth Waits. Further, Mary Beth Waits was selected to take Dr. Dickerson's place once terminated is supported by Defendant's exhibits and Donielle Powe's testimony. In response to this line of inquiry, Powe testified as follows:

Q. Do you know who replaced Mr. Dickerson as assistant principal at Wilson?
A. Her name was -- there were -- so when the principal -- I'm sorry, when the school leadership team was replaced, the principal was appointed and then two assistant principals were also appointed. One was Mary Beth something, I can't remember -- Mary Beth, her last name is escaping me right now. PLT. Ex. 2 at 50:15-22.

Powe's continued response is instructive:

MR. TEMPLE: All right.
Q. So that would be for 2008-2009?
A. Correct.
Q. But -- so name -- you mentioned Mary Beth person. Is that the first person that came
A. Yes.
Q. Okay. And who would hire these assistant principals?
A. The assistant principals are appointed by the chancellor, the same as principals.
Q. And do you know the process for appointing vice principals or assistant principals?
A. Sure. So, they have to apply to go into a pool of candidates and if they're accepted into that pool of candidates then they participate in a panel interview, and if they pass that then they can select or they can be selected to interview at -- this is the general process -- they can be PLT Ex.2 at 52:4-22; 53:1-2.

In her Declaration, Powe is not specific about the order of selection or onboarding for each of the identified newly appointed Assistant Principals. Powe declares: The following individuals were hired to serve as Assistant Principals at Wilson in the 2008-2009 school year: Charlette Butler, Mary Beth Waits, Jaime Merlos and Sah-u-ra Brown. Ms. Butler and Mr. Brown are African-American. (Def. Ex.A ¶ 13)

13

Additionally, the newly appointed Wilson Principal, Peter Cahall, emailed Chancellor Rhee, dated June 26, 2008, and explicitly articulated his selection and designation of Mary Beth Waits to serve as the Wilson Assistant Principal who he expected to hold the status of second-in-command and in charge when he was out of the Wilson SHS building. (Def. Ex. G) This 'second-in-command' role was also Dr. Kenneth Dickerson's Assistant Principalship status under Principal Jacqueline Williams during the entire 2007-2008 SY.

Assuming the assistant principal appointment process testified to by Donielle Powe, in her capacity as DCPS' corporate designee is the legitimate DCPS hiring process, Defendant's exhibits implicate that Mary Beth Waits' application consideration, selection and assignment to Wilson SHS for the 2008-2009 SY was fast-tracked and conducted in a fashion outside mandated DCPS hiring policies and procedures. Mary Beth Waits start date was July 7, 2008. PLT Ex. 5 at page 832.

24. Mr. Dickerson does not know how many APs in total were appointed to serve at Wilson in the 2008-2009 school year. Def. Ex. B at 139:14-19, 142:2-7; 142:18-20.

NOT DISPUTED to the extent that Dr. Dickerson did not know how many APs hired to serve at Wilson for a period of time. He eventually learned that a white woman was hired to an Assistant Principal at Wilson for the 2008-2009 SY.

25. Charlette Butler and Sah-u-ra Brown, who are both African-American, were both hired to serve as APs at Wilson for the 2008-2009 school year. Ex. A ¶ 14; Ex. G at 2-3; Ex. B at 142:9-11, 143:18-144:3.

FACT #25 NOT DISPUTED

What is unknown and unclear is exactly when during the 2008-2009 SY these 2 newly appointed APs were onboarded at Wilson SHS and assumed AP responsibilities.

14

26. Mr. Dickerson does not know the race of other administrators newly hired to serve as school administrators at other DCPS for the 2008-2009 school year, or whether they were "less seasoned." Ex. B at 176:10-19.

FACT #26 NOT DISPUTED

Dr. Dickerson did know the race and experience of at least 2 of the newly appointed Assistant Principals at Wilson for the 2008-2008 SY. Specifically, Jaime Merlos and Sah-u-ra Brown. He absolutely knew they were "less seasoned" than he. PLT Ex. 3 at 137-140.

27. In Mr. Dickerson's experience, the evaluation process for APs at Wilson included a mid-year conversation with Wilson's Principal, and a final evaluation, consisting of a second conversation and written evaluation. Ex. B¶¶ 6 at 87:5-16; 89:6- 90:22. The final evaluation was conducted in the end of June, after school was closed and after graduation. Id. at 91:1-14.

FACT # 27 DISPUTED

During the 2007-2008 SY at Wilson SHS, the fact of the matter is that there was no mid-year or final performance evaluations conducted on Dr, Dickerson. Dr. Dickerson did not participate in either and received no documentation that any such evaluation was initiated. Further, there were performance evaluations conducted on Dr. Dickerson in his capacity as Assistant Principal at Wilson during Principal Stephen Tarason's tenure from 2000-2001 SY through the 2006-2007 SY. As indicated during his deposition, Dr. Dickerson's performance evaluations for the 2003-2004, 2004-2005, 2005-2006, and 2006-2007 were all missing from his personnel file. PLT Ex. 3 at 88:14-22.

15

Respectfully submitted,

/s/Donald M. Temple
Donald M. Temple #408749
1310 L Street NW, Suite 750
Washington, DC 20005
Tel: (202) 628-1101
Fax: (202)217-2774
dtemplelaw@gmail.com

*Attorney for Plaintiff*