# EXHIBIT

# 16

*PERSONNEL ACTION REQUEST FORM (PARF)*

**REQUESTING SCHOOL/DEPARTMENT:**

Instructions: Complete Part A. Then complete either Part B, Part C, or Part D or Parts B, C, D before signing (Part E).

## A. Type of Action

| | | | | | |
|---|---|---|---|---|---|
| [ ] | New Appointment | [ ] | Transfer | [x] | Change Assignment |
| [ ] | Leave of Absence | [ ] | Return From Leave | [ ] | Funding Change |
| [ ] | Termination | [ ] | Paygrade Change | [ ] | Change Org.Code/Cost Center |
| [ ] | FTE Change | [ ] | Reduction-in Force | [ ] | Recall from Reduction-in-Force |
| [ ] | Suspension | [ ] | Title Change | [X] | Promotion |
| [ ] | Adverse Action | [ ] | Demotion -Involuntary | [ ] | Demotion Voluntary |

## B. Position Information

Division/Area **Secondary**   School/Department: **Wilson HS**   Responsibility Center: **5300**

Position # (PCN/UPPS, or CAPPS) _____   Date of Request **07/31/00**

Budget Account # _____

Pay Plan & Grade **ET-08   Assistant Principal**

## C. Employee to Vacate Position

Name _____
     Last              First            Middle       Maiden

Social Security # _____ Reason for Vacancy _____

Effective Date of Vacancy _____ Replacement Requested? Yes_____ No_____

## D. Applicant to Fill Position

Applicant to Fill Position - Attach Appropriate Documents (See Reverse Side for Instructions)

Name: **DICKERSON,**          **KENNETH**       **D.**
      Last              First            Middle       Maiden

Social Security # **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**    Telephone # **202 829-5020**

Address **4203 Illinois Avenue NW Washington, DC 20011**
        Street            City           State     Zip Code

Requested Start Date **08/30/00**    Requested End Date _____

## E. Authorization Information

Authorized Signature _____
                    *Principal/Department Head*              Date

Authorized Signature _____
                    *Special Education, ESL, Categorical Programs,etc.*   Date

## Budget Office Only

Budget Analyst Clearance _____   Date _____

CFO. Budget Director or Designee Clearance _____   Date _____

## Human Resources Office Only

Employee Name  (if changed from above) _____

Health Benefits Code _____   Birthdate _____   Oath Date _____

Union/Non-Union _____   CBU Code _____   Step & Salary _____

Service Code _____   Change # _____

### This is not a Personnel Action!
*READ INSTRUCTIONS ON  REVERSE SIDE BEFORE COMPLETION*

Dickerson v. DCPS - Dickerson 00000200

Page: 1 Document Name: untitled

```
PERSONNEL              ***PERSONNEL ACTION DATA***                    PERI003
                DICKERSON,KENNETH D              D.C. PUBLIC SCHOOLS
   NAME SUFFIX            NAME PREFIX
      NOA CD              NOA REMARKS                   CFO INDICATOR
   EMPLMT STAT A            STATUS DT 08/25/1999      DIST EMPL DT 09/01/1993
   SEPART RESN         COP/LWOP RTN DT               COP/LWOP RESN
   REG OR TEMP R       FULL/PART TIME F              EMPLOYEE TYPE N
    PAY STATUS S               LEI DT 08/30/2002       SENORITY DT
                          DIST SERV DT 09/01/1993      FLSA STATUS 4
      ANN SAL   69650.00   DEPT NUMBER 72107-976    AGENCY START DT
    SPCL STAT              SPCL STAT DT
   REHIRE ELIG           REHIRE ELIG DT                RETREAT RIGHTS

                    --ORGANIZATIONAL DATA--
      SPC IND          RESP CNTR 5300    COMPANY ID 000     CORPORATION

                    --INFORMATIONAL DATA--       LAST NOA CD 133 133 049
     LAST ACTNS 11              LAST ACTN DT 08/30/2002    MINIMUM REC OK
   CROSS-REF:    FROM ID                    FROM ORG
                   TO ID                      TO ORG
 COMPLETE NEXT TRANSACTION REQUEST.
 TRANS      EMPL                          JOB 1 ORG  GA            QTR
 PA2=TRAN MENU   PF7=INQUIRY
 PF1=HELP TEXT   PF8=TABLE INQ   PF9=DET EDITS   PF11=FUNC MENU   PF12=SIGN OFF
```



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Associate Superintendent*
*for Administrative Services*
825 North Capitol Street, N.E.,
Sixth Floor
Washington, D.C. 20002-4232
202-442-4080, fax: 202-442-5315
www.k12.dc.us

| | |
|---|---|
| **TO** | : Processing |
| **FROM** | : Karen Boone |
| **DATE** | : October 12, 1999 |
| **RE** | : Kenneth Dickerson |

Please process the below step increases for Mr. Kenneth Dickerson:

| YEAR | STEP |
|------|------|
| 94-95 | 2 |
| 95-96 | 3 |
| 96-97 | 4 |
| 97-98 | 5 |
| 98-99 | 6 |

Retro is due for the above years.

In addition, Mr. Dickerson has been promoted from an ET 15 Teacher to an ET 10 Dean of Students. Please process a promotion to Class 10 Group B Step 6 effective 8-25-99. Retro is due.

Thanks in advance.

40240.00

10.20.99

Sign In | Register Now



# The Washington Post

TODAY'S NEWSPAPER
Subscribe | PostPoints

Advertisement
Advertisement

| NEWS | POLITICS | OPINIONS | BUSINESS | LOCAL | SPORTS | ARTS & LIVING | GOING OUT GUIDE | | JOBS | CARS | REAL ESTATE | RENTALS | CLASSIFIEDS |

**SEARCH:**  (go) ● washingtonpost.com ○ Web : Results by Google™ | Search Archives

washingtonpost.com > Education > District

» THIS STORY:  READ +  |  💬 Comments

Advertisement
Advertisement » Your Ac» Your Ad Here
Advertisement
Advertisement

**D.C. EDUCATION**

## Rhee Has Dismissed 24 Principals

Thirteen Are at Schools That Do Not Meet 'No Child Left Behind' Mandates

*By Bill Turque*
Washington Post Staff Writer
Friday, May 16, 2008; Page B05

D.C. Schools Chancellor Michelle A. Rhee has fired 24 principals, including 13 who headed schools deemed to be failing under the federal "No Child Left Behind Act," officials confirmed yesterday.

.IS STORY
Rhee Offers Plan To Improve D.C.'s Troubled Schools
The Restructuring Strategy
D.C. EDUCATION: Rhee Has Dismissed 24 Principals
View All Items in This Story




D.C. Schools Chancellor Michelle A. Rhee said all of the dismissals are "absolutely fair.
(Lois Raimondo - The Washington Post)

⊞ Enlarge Photo    Buy Photo

Principals work on year-to-year agreements. About 15 to 20 principals are let go annually, according to the Council of School Officers, the principal's union.

This year's reshuffling has drawn heightened interest because it provides another window into Rhee's still-new leadership of the school system. The personnel changes also have added urgency because of the federal mandate to make major changes in 26 schools that have failed to show adequate progress under "No Child Left Behind."

Rhee has dismissed principals at five of the 10 high schools subject to restructuring under No Child Left Behind: Lynne Gober of Anacostia; Harriet Kargbo of Dunbar; Monica Taylor of Eastern; Gwendolyn Jones of Woodson; and Jacqueline Williams of Wilson. Five of the 11 middle and junior high schools facing overhaul will also have new principals -- Hart, colin, MacFarland, Garnet-Patterson and Sousa -- as will three of the five elementary schools to be retooled: Moten, Stanton and Truesdell.

Ten other principals either retired or resigned.

**TOOLBOX**



▥▥ Resize    Print    E-mail
Yahoo!    ⊞ Save/Share +
Buzz  Yahoo!
Buzz  Constant Contact  TRY EMAIL MARKETING FREE FOR 60 DAYS!
Constant Contact  TRY EMAIL MARKETING FREE FOR 60 DAYS!

COMMENT 💬

**19** Comments | View All »

COMMENTS ARE CLOSED
COMMENTS ARE CLOSED

WHO'S BLOGGING powered by **sphere** 
» Links to this article

- Business Jobs
- Computer Jobs
- Construction Jobs
- Education Jobs
- Engineering Jobs
- Healthcare Jobs
- Legal Jobs
- Management Jobs
- Media Jobs
- Non-Profit Jobs
- Sales Jobs
- Science Jobs

**Find Your Dream Job Now!**

keywords    location

Jobs by SimplyHired

- Business Jobs
- Computer Jobs
- Construction Jobs
- Education Jobs
- Engineering Jobs
- Healthcare Jobs
- Legal Jobs
- Management Jobs
- Media Jobs
- Non-Profit Jobs
- Sales Jobs
- Science Jobs

**Find Your Dream Job Now!**

keywords    location

Jobs by SimplyHired

**FEATURED ADVERTISER LINKS**

Lawyer: Fentanyl, Advanced Bionics, Pain pumps, Zimmer Durom

Attorney: Asbestos, Lung Cancer, Mesothelioma, Compensation

Save Up To 75% On Cruises at Vacations To Go

Debt destroying your day?New Debt Wise helps you decrease your debt!

**Ads by Google**

Nelson Burton, principal of Coolidge High School and head of the principal's union, said that because principals serve at the will of the chancellor, there is no way to formally appeal the decisions. "There isn't much recourse there," Burton said.

Word of the dismissals began to circulate last week as principals received form letters over Rhee's signature informing them that their contracts would not be renewed.

..rtisement

Rhee and other school officials have steadfastly refused to discuss specific reasons for the dismissals, citing privacy and personnel regulations. In broad terms, she said yesterday that all the decisions are "absolutely" fair. She has been conducting an aggressive national advertising campaign to attract high-performing principals to the District.

Most of the principals who were not renewed either did not return phone calls or could not be reached for comment.

Earn a Bible Degree
Study The Bible Online. Earn a Degree Today. Request Free Info!
www.eLearners.com/Bible

Teacher Certification
Earn your teacher's certification or license online. Fast & flexible.
www.Online-Education.net

No Teacher Left Behind
Captivating Generation Next Book Available $14.99
www.getumotivated.com

Ads by Google

Earn a Bible Degree
Study The Bible Online. Earn a Degree Today. Request Free Info!
www.eLearners.com/Bible

Teacher Certification
Earn your teacher's certification or license online. Fast & flexible.
www.Online-Education.net

No Teacher Left Behind
Captivating Generation Next Book Available $14.99
www.getumotivated.com

One of the few who would discuss the matter, Willie Bennett, principal of Hart Middle School in Southeast, said that Rhee is targeting older administrators. "Many of the people who were released were in the same predicament. Many of the people were older," said Bennett, who has worked for D.C. schools for 16 years, the last 10 at Hart as assistant principal and principal. Sixteen percent of the school's 508 students demonstrated reading proficiency on tests in the 2006-07 school year, according to school district records, down from 22 percent the year before.

Lucia Vega, principal of Powell Elementary, which is not targeted for changes under No Child Left Behind, said Rhee had a right to do as she wished. Vega said she is also mayed because she submitted her resignation but was nevertheless listed as one of the principals fired.

Vega complained that during her five-year tenure she has received little support from administrators for a school where more than half the students are English-language learners and half receive free or reduced-price lunches because of their low-income status. In a 2007 Washington Post series on D.C. public schools, she talked about how she was forced to "warehouse" an incompetent literacy coach imposed on her by the central office.

"I just feel the system set us up," Vega, 54, said. "We do have a very failed school system. We all know that they promised us support and it was rarely given." She noted that plans for next year include major staffing increases, including an assistant principal, a full-time business manager, a full-time psychologist and a "functional" literacy coach.

Some of the leadership changes sparked controversy before they were formally announced. Some parents at Oyster-Adams-Bilingual School, where Rhee's two daughters are enrolled, were upset when they learned last week that Principal Marta Guzman would not be retained. Some parents said that Guzman's dismissal was engineered by a small group of parents who dined with Rhee. Other parents say there were serious problems with Guzman's leadership, including disorganization and poor communication.

» THIS STORY:  READ +  |  💬 Comments

Understand more about:

Michelle A. Rhee    Lucia Vega    No Child Left Behind Act

People who read this also read...

Robert D. Novak: A Knack for Compelling Reporting and Provoking Critics.

D.C. Families Rally to Restore 216 Lost Tuition Vouchers

Age-Old Problem, Perpetually Absent Solution: Fitting Education to Kids' Needs

Sign In | Register Now

# The Washington Post

**TODAY'S NEWSPAPER**
Subscribe | PostPoints

Sign In | Register Now

# The Washington Post

**TODAY'S NEWSPAPER**
Subscribe | PostPoints

Advertisement

CLICK TO OPEN
2009 CTS Sedan **$398/MO.**
Stk#8293 Automatic, V6, BOSE Cd,
OnStar & More! MSRP: $37,850

Cadillac

| NEWS | POLITICS | OPINIONS | BUSINESS | LOCAL | SPORTS | ARTS & LIVING | GOING OUT GUIDE | | JOBS | CARS | REAL ESTATE | RENTALS | CLASSIFIEDS |

**SEARCH:** Try Our New Search  [go]  ⦿ washingtonpost.com  ○ Web : Results by Google™ | Search Archives

| NEWS | POLITICS | OPINIONS | BUSINESS | LOCAL | SPORTS | ARTS & LIVING | GOING OUT GUIDE | | JOBS | CARS | REAL ESTATE | RENTALS | CLASSIFIEDS |

**SEARCH:** Try Our New Search  [go]  ⦿ washingtonpost.com  ○ Web : Results by Google™ | Search Archives

washingtonpost.com > Metrowashingtonpost.com > Metro

Advertisement



★ ★ ★ **D.C. Wire**
News and Notes on District Politics

...ut this Blog & the Writers | Search the Archives | RSS Feed

**Missing Plug-in**



**RECENT POSTS**

Searching For The "It" In School Reform

Release of Test Data Delayed

Gray Pushes to Remove All Earmarks from Budget

Council Gets Testimony from Dominican Official

Barry Ex-Girlfriend Seeking Lawyer

**Stories By Category**

**GOP**

2008 District Election

2008 Presidential Race

About This Blog

Affordable Housing

At the Convention

Bill Turque

Browse By Writer

Budget

Church and State

City Finances

City Hall Aides

City Life

...olumbia Heights

Congressional Oversight

Crime and Public Safety

D.C. Council

D.C. Democrats & Republicans

## Principals Union Protests Firings



Officials at the D.C. principals union are protesting Schools Chancellor Michelle A. Rhee's recent decision to let go about two dozen principals.

The union is planning to ask the D.C. Council to investigate whether the firings were fair, said Aona Jefferson, executive vice president of the Council of School Officers.

"We want [the D.C. Council] to know that her decision appears to be arbitrary, personal, political and potentially discriminatory," Jefferson told D.C. Wire.

Jefferson said she sent Rhee a letter yesterday demanding a complete list of the principals whose contracts were not renewed and reasons that they were not reinstated. The principals work on a year-to-year contract.

According to this article by Bill Turque in The Post, Rhee has dismissed principals at five of the 10 high schools subject to restructuring under No Child Left Behind: Lynne Gober of Anacostia; Harriel Kargbo of Dunbar; Monica Taylor of Eastern; Gwendolyn Jones of Woodson; and Jacqueline Williams of Wilson. Five of the 11 middle and junior high schools facing overhaul will also have new principals -- Hart, Lincoln, MacFarland, Garnet-Patterson and Sousa -- as will three of the five elementary schools to be retooled: Moten, Stanton and Truesdell.

Rhee and other school officials have refused to discuss specific reasons for the dismissals, citing privacy and personnel regulations. In broad terms, she has said that all the decisions are "absolutely" fair. She has been conducting an aggressive national advertising campaign to attract high-performing principals to the District. Ten other principals either retired or resigned.

"This has affected the lives of people who've given valuable service to

**Ads by Google**

**Save on K12 Curriculum**
Enroll in August and save 10% with K12 Online Home School Curriculum.
www.K12.com

**Principal Certification**
Masters Degree in Educational Admin Active or Certified Teachers Only!
www.uScranton.com

**Diploma Mills and Scams**
Helping people and institutions harmed by false academic degrees
www.stopdegreefraud.com

**Ads by Google**

**Save on K12 Curriculum**
Enroll in August and save 10% with K12 Online Home School Curriculum.
www.K12.com

**Principal Certification**
Masters Degree in Educational Admin Active or Certified Teachers Only!
www.uScranton.com

**Diploma Mills and Scams**
Helping people and institutions harmed by false academic degrees

www.stopdegreefraud.com

the school system ... and affected the lives of children," Jefferson said.

### Dion Haynes

By Dion Haynes | May 30, 2008; 5:00 PM ET | Category: **Education**
Previous: **Who's Making Noise?** | Next: **A D.C. View of Historic DNC Meeting**

---

| Comments | Please **email us** to report offensive comments. |

""This has affected the lives of people who've given valuable service to the school children . . . and who've affected the lives of children.""

Is that the best that the principals' union can do? The service of any principal, even one who is incompetent, is "valuable" insofar as the school system is required to pay him or her -- the real question is whether that service improved the education of children, isn't it?

Can't the principals' union actually document what the principals who lost their jobs accomplished?

Posted by: William | May 30, 2008 8:27 PM

---

What kind of name is Aona? Anyway, get jobs in the real world, you nincompoops. Give the kids a change to get educated. Government schools. And they ask me why I drink.

Posted by: Karl | May 30, 2008 9:46 PM

---

What "test" is being used by Rhee to determine the competence of a principal or teacher?

The public should be informed as to the standard being applied.

Posted by: Jonathan R. Rees | May 31, 2008 12:59 AM

---

The comments to this entry are closed.

### D.C. Employees
D.C. Taxis
D.C. United
David Nakamura
Dion Haynes
conomic Development
education
Gun Ban Case
Hamil R. Harris
Inauguration
Life at TWP
Mayor Fenty
Nationals
Nikita Stewart
Obama
Questions
Soccer Stadium
Sylvia Moreno
The Homeless
Theola Labbé-DeBose
Tim Craig
Voting Rights
transportation
Stories By Date
Full Story Archive

### SUBSCRIBE TO THIS BLOG

**RSS Feed**





### ABOUT THE WRITERS
Tim Craig
Darryl Fears
Hamil R. Harris
Theola Labbé-DeBose
David Nakamura
Nikita Stewart
Bill Turque

### ELECTED OFFICIALS
Mayor's Office
D.C. Council
Vincent C. Gray
Jack Evans
Michael A. Brown
David Catania
Phil Mendelson
Kwame R. Brown
Jim Graham
Mary M. Cheh
uriel Bowser
Harry Thomas Jr.
Tommy Wells
Yvette Alexander
Marion Barry

# EXHIBIT

# 17

B4  WEDNESDAY, NOVEMBER 14, 2007      S    MD

**The District**

SCHOOLS

# Nonprofits Might Manage Low Performers

*By THEOLA LABBÉ*
*and V. DION HAYNES*
*Washington Post Staff Writers*

D.C. Schools Chancellor Michelle A. Rhee is considering bringing in national nonprofit charter school operators to manage at least two dozen of the city's lowest-performing schools, one of the first indications of how she might proceed in reforming the 49,600-student school system.

The charter operators were one of several options for improving failing schools that Rhee outlined Monday to school leaders at Roosevelt and Cardozo high schools, according to Rhee spokeswoman Mafara Hobson. The Northwest schools are among those in the system that have not reached benchmarks in reading and math test scores in the past five years.

Under No Child Left Behind, schools that fail to reach benchmarks for five straight years enter into "restructuring" mode. In that phase, the school system must devise a plan that changes the schools' governance structure, replaces most of their staff, contracts with an education management organization to operate the schools or turns the schools over to the state. In the meeting with school leaders, Rhee outlined how those options could work in the District.

Hobson emphasized yesterday that Rhee was not leaning toward any particular option and that no decisions had been made on how to handle the low-performing schools.

"This was the first meeting, and it was basically to get input from



**Chancellor Michelle A. Rhee is not leaning toward any one option, a spokeswoman said.**

the community," Hobson said. "All she did was talk through the options under the U.S. Department of Education."

Cardozo teacher Kerry Sylvia, who chairs the school's Local School Restructuring Team, which includes teachers, parents and administrators, said that if she had been given more notice about the meeting, held on the morning of Veterans Day when schools were closed, she could have been better prepared to discuss the options.

"If I had known that we were going to have this kind of meeting, I would have looked up the law to see exactly what it said and seen what other school systems similar to us have done," Sylvia said. "I just felt like she was coming to the table with something and we were empty-handed."

Sylvia said that the discussion at Cardozo lasted for a little more than an hour and that there were four teachers and one parent present. Hobson said a larger series of citywide meetings is planned.

Cathy Reilly, a school advocate at Roosevelt and director of Senior High Alliance of Parents, Princi-

pals and Educators, a nonprofit group focused on high school reform, wrote in an e-mail yesterday to alliance members that Rhee talked with the restructuring team to "get their thoughts and preferences prior to her decision."

"She was very clear, however, that the decision was her decision," Reilly wrote.

State Superintendent Deborah A. Gist, who monitors how the school system addresses its failing schools, said yesterday that she was not surprised by any of the options Rhee was weighing. She said she had spoken to her twice yesterday and that her staff was working closely with school officials on the plans Rhee was considering.

Hobson said there are 25 traditional public schools in the restructuring phase, while state education officials put the number at 27. Four charter schools have also failed to meet testing benchmarks.

The charter schools and the D.C. system must turn in their restructuring plans to Gist by the end of the month.

"This is the planning year, but there is no more room for talk," Gist said. "I expect to see action."

According to Hobson, Rhee told the parents and teachers she met with Monday that three nonprofits potentially could run some D.C. schools: St. Hope, a charter operator in Sacramento; Green Dot, which operates 12 charter schools in the Los Angeles area; and Philadelphia-based Mastery Charter Schools.

Rhee has a personal connection with St. Hope. She recruited teachers for St. Hope in her former position as chief executive and presi-

dent of the nonprofit New Teacher Project. She also was a board member of St. Hope for about a year until she was appointed chancellor, according to a St. Hope official.

At her confirmation hearing before the D.C. Council in June, former NBA star Kevin Johnson, who serves as president and chief executive of St. Hope, flew from California to testify on her behalf.

St. Hope recently started operating in New York City. In a statement, a St. Hope spokeswoman said the organization is "certainly open to considering Washington, D.C., as another expansion site given the great things that are happening."

Steve Barr, chief executive of Green Dot Public Schools, said a woman from the District called him about four months ago inquiring about his services. The organization offers a prep school program for 4,000 students at formerly failing traditional public schools in troubled urban areas such as Watts. "I talked to . . . somebody with D.C. public schools. We had a half-hour conversation," Barr said, adding that the woman, whose name he couldn't recall, never asked the group to work with D.C. schools and never called back.

Mastery has 1,500 students in grades seven to 12 in four charters, three of which were converted from failing traditional schools. Ben Rayer, chief operating officer for Mastery, said Rhee contacted the organization.

"All I know is the chancellor has e-mailed the CEO of Mastery," Rayer said. "I'm sure there is no contract or agreement."

WEDNESDAY, MARCH 19, 2008

THE CURRENT

# Rhee addresses transition problems

**By ELIZABETH WIENER**
Current Staff Writer

Chancellor Michelle Rhee last week acknowledged "significant issues" with student disruptions at Wilson High School and pledged to improve transition programs for ninth-graders new to the high school, including some from the Oak Hill detention center and others much older than their classmates.

At Thursday's meeting of the Cleveland Park Citizens Association, Rhee said "transitioning is a problem citywide" this year, with ninth-graders moving out of smaller middle schools and into big high schools. She said she is looking into a "more centralized transition" program to put in place next year.

Rhee's spokesperson, Mafara Hobson, elaborated Monday in an interview with The Current. Hobson said school officials will be working with the Department of Youth Rehabilitation Services, which runs Oak Hill and

See **Rhee**/Page 46



Bill Petros/The Current
**Chancellor Michelle Rhee visited Murch Elementary Monday morning to celebrate the school's success. At a recent Cleveland Park meeting, questions to Rhee focused largely on safety at Wilson High.**

# RHEE

### From Page 1

other group facilities that are now sending students to Wilson and other city high schools, on a "comprehensive transition plan."

"These kids are coming from a place with a lot more supervision and restrictions," Hobson said. "We need to get these kids ready for a larger building, larger classes, changing classes, to put them at ease" in a busy urban high school. She said plans are not yet firm but will be in place before fall.

Some of these students are transferring from smaller middle schools, while others have been attending class at group facilities.

Wilson, whose ninth grade mushroomed from about 100 students last school year to 350 now — largely because junior high schools have been converted to middle schools — was the most heated topic at the session. But Rhee also fielded other questions that concern many Ward 3 parents, on such subjects as Deal, classes for gifted students and the choice between public and private schools.

In her ninth month on the job, Rhee has won over audiences citywide with assurances that school reform is the mayor's highest priority and pledges to attack the worst problems — low achievement, incompetent administrators, dingy buildings and missing books.

"Public education is the great equalizer, but it's not the reality in Washington," Rhee said. "If you live in Cleveland Park, versus Anacostia, you get a wildly different education. Color of skin and Zip code should not determine the outcome."

Some controversies that dominate meetings in other parts of the city were barely mentioned. No public schools face closure in Ward 3. No one in the audience asked about the recent firings of 98 central office employees.

But recent assaults, petty crime and other disruptions at Wilson were big concerns of the speakers. They said five students assaulted a boy in the gym on Feb. 26, a girl was slammed into her locker two weeks earlier and the school had two lockdowns in recent weeks in a vain search for a gun — possibly a water pistol.

The problem, Cleveland Park resident Ann Loikow told Rhee, is that "Wilson is the only high school in Ward 3; it's above capacity. You're putting in kids who are unprepared, who should not be thrown into the largest, most unstructured school in the city. It is a catastrophe."

Of Wilson's 350 ninth-graders this year, according to school statistics, 50 are "over-age" — some as old as 17 or 18, because they have repeated grades several times. Roughly 30 ninth-graders are enrolled from juvenile facilities like Oak Hill or have transferred from Choice, an alternative school for students who have been suspended or expelled from traditional schools.

"I have never seen it worse than this year," said Mai Abdul Rahman, who said her son was assaulted. "A lot of kids from Oak Hill have been socially promoted. They need services. We have kids going at night to a jail cell and during the day to the most unstructured school in the city. They can't cope."

Others have different takes on the situation at Wilson, but most say the large increase in ninth-graders was a challenge there and at other city high schools.

Mary Froning, chair of Wilson's local school restructuring team, said a summer bridge program for rising ninth- and 10th-graders worked well, but perhaps it should be made mandatory for all students entering those grades.

The biggest problem, Froning said in a telephone interview, is the "over-age kids" coming from group homes or other juvenile facilities. "These are kids who have failed and failed, 18 years old in ninth grade, who are not academically prepared, and humiliated" when they cannot keep up academically. One solution would be a separate track or curriculum designed for ninth-grade "repeaters," perhaps a "twilight school" from 3 to 6:30 p.m., she said.

But Froning also said she is optimistic that new security measures and a more consistent policy on student behavior instituted in recent weeks will solve some of the clashes and behavior problems.

Rhee also fielded questions about other school issues on Thursday.

One parent from Deal asked about rumors that the current renovation will actually reduce the number of classrooms, and that Bancroft and West elementary schools may be removed from the list of feeder schools. "It looks like the best middle school in the city is being downsized, and children of color moved out," he said.

Rhee said reducing the number of classrooms at Deal "wouldn't make sense." She said her staff is "in the midst of looking at feeder patterns" and has made no decisions for next year.

Another asked whether the chancellor's decision-making style is too "top down."

"Some decisions have to be made by me," Rhee replied. "If the community could decide which schools to close, it just wouldn't happen." But she also said she wants to "make sure that schools that have capacity [for it] are given autonomy."

Citizens association president George Idelson asked about the choice between public and private school. "In this market, many parents with school-age kids are frankly ambivalent. Will the public schools be there for them?"

Rhee said she has heard from parents who want to support the public schools but feel guilty because they choose a private or charter school. "They shouldn't feel guilty," she said. "My goal is, that it's not a sacrifice, but in the best interest of the child."

# EXHIBIT

# 18

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KENNETH DICKERSON,                          :

Plaintiff,                                          :

v.                                                  :  **Civil Action No. 09-2213 (PLF)**

DISTRICT OF COLUMBIA,                       :

Defendant.                                        :

_____   :

**PLAINTIFF'S ANSWERS TO**
**DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**

The Plaintiff, by undersigned counsel, respectfully submits these Answers to

Interrogatories in accordance with Rule 33 of the Federal Rules of Civil Procedure.

**GENERAL OBJECTIONS**

1.  Plaintiff objects to the Interrogatories to the extent that they call for the disclosure of
    materials and information protected by the attorney-client privilege and/or work-product
    doctrine and will not disclose such information.

2.  Plaintiff objects to the Interrogatories to the extent that they call for disclosure of
    materials prepared in anticipation of litigation and/or trial preparation material.

3.  Plaintiff objects to the Interrogatories to the extent that they are so vague, overly broad,
    and unduly burdensome as to render it impossible to respond in any reasonable manner or
    amount of time.

4.  Plaintiff objects to the Interrogatories as unduly burdensome and oppressive insofar as
    they seek information or materials already within Defendant's knowledge, possession,
    and/or control.

1

5. Plaintiff objects to the Interrogatories to the extent that they purport to require Plaintiff to locate or produce information or materials that are not in his possession, custody, or control.

6. Plaintiff reserves the right to supplement or amend his responses after discovery is concluded in this action.

7. Plaintiff objects to the instructions contained and within Defendant's Interrogatories to the extent that they seek to extend the obligations beyond those set forth in the Rules of this Court.

8. Plaintiff incorporates by reference all of the above General Objections into his Answers to the individual Interrogatories below.

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

1. **Identify each person having discoverable information that supports a position you have taken or intend to take in this action and state the subject matter of the information possessed by that person.**

**Answer No. 1.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks identifications, information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its personnel records. This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration. Additionally, the extent that discovery is ongoing, and Plaintiff has not decided exactly which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. Notwithstanding objections persons having information include:

2

a.   Living Plaintiffs, previously identified as a "Party" in the original Complaint filed in December 2009. **See Interrogatory No. 20,** *supra.*

b.   DCPS Human Resources (HR) Officers and Administrative Employees responsible for supervising, monitoring and evaluating Plaintiff during his tenure at Wilson Senior High School

c.   Defendant agency Department of Employment Services and Unemployment Compensation employees responsible for Plaintiff's unemployment compensation claims and resolution between June 2008 to October 2008. (Names unknown at this time)

2. **Identify each person you expect to call as an expert witness, state the subject matter on which the expert is expected to testify, the substance of the findings and opinions to which the expert is expected to testify, a summary of the grounds for each opinion, and attach to your answers any written report made by the expert concerning those findings and opinions.**

**Answer No. 2.**      Objection to the extent that discovery is ongoing, and Plaintiff has not identified and decided exactly which expert witnesses will be called at the trial in this matter but will do so in the pre-trial statement.  Notwithstanding this objection, we do intend to call:

a.  Dr. Richard B. Edelman
Economic Analyst
8515 Whittier Boulevard
Bethesda, MD 20187-6816
Knowledge regarding the valuation of Dickerson's lost income and benefits since termination in 2008.

b.  Dr.  Michael Strong MD (general practitioner)
Washington Hospital Center (last known address)
Knowledge related to Plaintiff's stress and kidney stones.

c.  Dr.Amir Patel, MD (General Practitioner)
Medical Associates

George Washington University Hospital
2150 Pa. Ave., NW
D.C. 20037
Knowledge related to stress, kidney stones and high-blood pressure

d.  Dr. Pleasant, MD ( Clinical Psychologist)
Medical Associates
George Washington University Hospital
2150 Pa. Ave., NW
D.C. 20037
Knowledge regarding emotional stress.

e.  Dr. Wilma Bonner, Ed.D
Director of Teacher Education
Howard University, School of Education
Washington, D.C. 20001
Knowledge regarding Educational Administration and Curriculum Development DCPS'
educational administration during Plaintiff's tenure at Wilson SHS.

f.  E. Lindsey Maxwell, II, Esq
Intersect Law Group, PLLC
Labor specialist and Union Representative
Testimony provided to the Workers Rights Board Hearing, November 20, 2008

3.  **If you contend that the District (or anyone acting on its behalf) has made any admission or declaration against interest regarding this litigation, describe each admission or declaration against interest, identifying any person involved, the date the admission or declaration was made, and all documents relating or referring to any admission or declaration against interest.**

**ANSWER NO. 3.**   Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks identifications, information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its personnel records.  This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration.  Additionally, to the extent that

4

discovery is ongoing, and Plaintiff has not decided exactly which witnesses will be called at the trial in this matter but will do so in the pre-trial statement Notwithstanding this objection **see Answers to Interrogatories No. 7 and No. 8.** *supra,* which are wholly incorporated into this Answer.   Additionally:

a. Defendant's agents, specifically former Chancellor Michele Rhee, made public statements with contradictory and conflicting reasons for the 2008 terminations of D.C. Public School Administrators which included Plaintiff.

b. Defendant agents inaccurately claimed persons hired to fill vacancies at Wilson SHS in 2008, were qualified and/or better qualified than Plaintiff.

c. Pursuant to Plaintiff's claim to obtain previously denied unemployment compensation, in September 2008, Defendant's employees admitted to an Office of Administrative Hearing Officer, that DCPS erred when it submitted employment-related documents designating "misconduct" as the basis for Plaintiff's 2008 termination.

4. **Identify each person who has been contacted or has supplied information in responding to these interrogatories, identifying each particular interrogatory for which each person was contacted or supplied information.**

**ANSWER NO. 4.**

a. Jacqueline Williams, former Wilson SHS Principal.  Names, dates, sequencing of events prior to termination. **See Interrogatories No.6 and No. 7.**

5. **Identify the duties you performed while serving in each of your distinct roles at Wilson, as alleged in paragraph 6 of the Fourth Amended Complaint, including "Dean of Students," "Assistant Principal," "music teacher," "Senior Assistant Principal," and "designated Administrator placed in charge."**

**ANSWER NO.5.**        Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its personnel records.  This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration.  Notwithstanding this objection.

   a. **Dean of Students** duties included but not limited to  safety and security; disciplinary decisions; liaison between parent and teachers.

   b. **Assistant Principalship** duties included, but not limited to  administrative decisions related to   school's budget, academic curriculum, hiring, teacher evaluations, enforcement of school policy

   c. **Music Teacher**. Teaching and supervision revitalized Wilson's music department; created marching band, partnered with national and international organizations, including Thelonious Monk Institute of Jazz to provide in-school and after-school musical programs, exposure and opportunities for Wilson students.

   d. **Sr. Assistant Principal:**  DCPS policy required designation of an in-charge administrator when Principal left the premises.  Plaintiff routinely designated to serve in this capacity with concomitant responsibilities and duties when Wilson Principal left the building.


6. **Describe how DCPS determined that you were "qualified to serve as a DCPS Principal" as alleged in paragraph 7 of the Fourth Amended Complaint.**

**ANSWER NO. 6**        Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant

than to Plaintiff, as the Agency has this information within its job vacancy announcements, Principals Standard Operating and Procedure Handbook & Manual and personnel records. This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration. Notwithstanding this objection this is how DCPS demonstrated Plaintiff's competence to serve as Principal:

    a.  By end of SY 2004-2005 Plaintiff completed all course toward Doctorate Degree in Human Development and Organizational Learning at George Washington University.

    b.  Summer of 2005 Plaintiff filed application with DCPS HR Office to interview for and fill pending Principalship vacancies.  Subsequently, DCPS HR Office determined Plaintiff eligible as a competing principal candidate and placed him on the list of, "eligible principal selection pool of candidates."

    c.  July 2005 DCPS HR Office contacted Plaintiff to interview with a Principal Selection Committee  to fill a principalship vacancy at Roosevelt SHS for SY 2005-2006.  Subsequent to interviewing all candidates, one of the selection panel member informed Plaintiff his name was one of two, selected as qualified for the position and sent to Superintendent, Dr. Clifford Janey.

    d.  DCPS HR Office also contacted Plaintiff to interview for the upcoming vacancy at Banneker SHS.

    e.  Summer 2006 DCPS HR Officer called and requested Plaintiff serve as summer school Principal at Dunbar SHS. Plaintiff's unable to take on fulltime employment but he assisted on a part-time basis.

7

f.   DCPS hired Plaintiff as the fulltime 2007 summer school Principal at Wilson SHS.  Simultaneously, the outgoing Principal at the Duke Ellington School of the Arts, Mitzi Yates-Lizarraga, contacted Plaintiff,  based on Dr. Stephen Tarason's recommendation. She identified Plaintiff's credentials and experience as "perfect" to fill her upcoming vacancy and encouraged Plaintiff to apply.

g.   DCPS HR management personnel identified and encouraged Plaintiff to apply for the Principalship vacancy at Eastern SHS.

h.   May 2008, Chancellor Rhee's designee and executive team member, Mr. Thomas Whittle, told Plaintiff, "you'd make an excellent principal and should apply to be included in the principal selection pool."  Plaintiff was in the selection pool at that time.

i.   May 2008, Dr. John Davidson, Assistant Superintendent for Senior High Schools, endorsed Plaintiff's qualifications to be a principal and encouraged him to pursue vacancies.  Notwithstanding, Davidson informed Plaintiff, he would not compensate a comparable salary to  new incoming principals, rather his Assistant Principal salary would only reflect an increase of $2,400.00.

**7.  Identify the specific reasons supporting your claim in paragraph 8 of the Fourth Amended Complaint that you "anticipated additional offers and promotion to a DCPS Principal position prior to or by the time of the non-reappointment 2008-2009 SY."**

**ANSWER NO. 7.**     Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant

than to Plaintiff, as the Agency has this information within its and personnel records.  This

information can be accessed through the Division of Human Resources within the D.C. Public

Schools Administration. Additionally, the extent that discovery is ongoing, and Plaintiff has not

identified or decided which witnesses will be called at the trial in this matter but will do so in the

pre-trial statement.  Notwithstanding this objection see **Answer to Interrogatory No. 6,** *infra*

which is wholly incorporated into this Answer.   Defendant officials and employees involved in

those selection processes include:

    a.  Dr. John Davidson, Assistant Superintendent for DPCS High Schools, SY 2007-
       2008

    b.  Mr. Thomas Whittle, Chancellor Rhee's Executive Team, SY 2007-2008

    c.  Dr. Stephen Tarason, former Principal, Wilson SHS

    d.  Dr. Maria Tukeva, former DCPS Instructional Superintendent

    e.  Dr. Ralph Neal, Assistant Superintendent, DCPS

    f.  Mitzi Yates-Lizarraga, former Principal, Duke Ellington School of the Arts

**8.**    **Identify the specific bases for your understanding of the District's evaluation**
**processes in place for Assistant Principals during the 2007-2008 school year, including but**
**not limited to:**
**a. Your claim in paragraph 9 of the Fourth Amended Complaint that the District's**
**"systematic evaluation processes for school administrators, established by DCMR Section**
**5-E1306 et seq., the D.C. Comprehensive Merit Personnel Act (CMPA), and/or the**
**Collective Bargaining Agreement ("CBA"), required pre-conference, mid-year and annual**
**end- of-year evaluations"; b. Your claim in paragraph 10 of the Fourth Amended**
**Complaint that "the customary standards of performance" stated in that paragraph**
**"applied as part of Plaintiff's evaluation"; and, c. Your claim in paragraph 11 of the**

Fourth Amended Complaint that "[former DCPS Chancellor] Rhee's office would evaluate and rank school officials," including plaintiff, based on academic performance measures.

**ANSWER NO. 8.**      Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks identifications, information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its Standard Operations and Procedures Manual, Directives and personnel records.  This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration. Notwithstanding this objection

    a.  From 1999 through termination in 2008, DCPS' policy and practice for evaluating school officials and administrators were the same: beginning school year preconference to set individual goals and objectives; mid-year evals to revisit goals and objectives; end-of-year face-to face to evaluate Plaintiff's annual performance and rating.

    b.  For the first time during Plaintiff's administrative tenure, during SY 2007-2008 SY Chancellor Rhee sent designees from her Executive team to maintain a presence and remain on-site at Wilson SHS.

**9.**      **Identify the specific bases for your claim in paragraph 10 of the Fourth Amended Complaint that you "reasonably expected reappointment to [your] respective position as Assistant Principal at Wilson SHS."**

**ANSWER NO. 9.**   Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks identifications, information or materials already within Defendant's

10

knowledge, possession, and/or control.  The information requested is more readily accessible to

Defendant than to Plaintiff, as the Agency has this information within its personnel records.  This

information can be accessed through the DCPS Division of Human Resources.

    a.  All conducted performance evaluations in his capacity as Assistant Principal, rated

        Plaintiff as "exceeds expectations."

    b.  DCPS was notified of Plaintiff's intent to return to the Assistant Principalship

        position at Wilson SHS by March 15, 2008 when, as with previous years, he did not

        submit a completed and signed Declaration of Intent, signifying his intent to return as

        Assistant Principal at Wilson SHS.

    c.  Between March 15 and June 30, 2008, DCPS issued no Personnel Action

        acknowledging "retirement" status or any warning to Plaintiff  that he should do

        anything other than prepare to serve in his capacity as Assistant Principal for the SY

        2008-2009.


**10. Identify all facts and circumstances, including communications, supporting your
allegation in paragraph 19 of the Fourth Amended Complaint that "Chancellor Rhee and
her staff made public statements to the media which defended its non-reappointment of
Plaintiff due to laziness, failure to improve the statistical performance and mistreatment of
students at Wilson."**

**ANSWER NO 10.**

      Plaintiff read, watched and heard about numerous Washington Post and magazine

articles; DC local News Channels' reporting; John Merrow's 2008 Learning Matters Series; John

King's CNN and Oprah's interviews of Chancellor Rhee. Plaintiff did not create any file of these

documents, but they are archived and can be accessed and collected.

**11. Identify all facts and circumstances supporting your allegation in paragraph 20 of the Fourth Amended Complaint that "Dickerson's White counterparts similarly employed as DCPS Principals and Assistant Principals were not subjected to the same previously described CBA or municipal regulation violations and ongoing unfair, hostile and discriminatory non-reappointment processes imposed on Plaintiff."**

**ANSWER NO 11.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records.  This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration. Additionally, to the extent that discovery is ongoing, and Plaintiff has not identified all personnel, documents or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement.  Notwithstanding this objection, Patrick Pope, Principal, at Hardy Middle School is an example of one white DCPS Administrator not terminated during Rhee's 2007-2009 tenure.

**12  Identify all facts and circumstances supporting your allegation in paragraph 21 of the Fourth Amended Complaint that "[p]rior to Plaintiff's Notice of non-reappointment, Defendant's employees and agents surreptitiously interviewed and engaged replacements for his soon-to-be vacant position at Wilson SHS."**

**ANSWER NO 12.**  Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant

than to Plaintiff, as the Agency has this information within its and personnel records. Additionally, to the extent that discovery is ongoing, and Plaintiff has not identified all relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. Notwithstanding the objection, Plaintiff remembers potential candidates, including Mr. Cahill, subsequently hired as Wilson's Principal, visiting Wilson SHS before Plaintiff received any termination notice.

**13. Identify all facts and circumstances supporting your allegation in paragraph 24 of the Fourth Amended Complaint that you were replaced by "Mary Beth Waits, a White female, with less education and experience than Plaintiff" and "a Hispanic male with less experience and education than Plaintiff."**

**ANSWER NO 13.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records. This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration. Notwithstanding objection, Plaintiff worked with Haime Merlos was the Wilson SHS Guidance Counselor during SY 2007-2008. Merlos got his Master's in Education Leadership at George Mason that same year, pursuant to Plaintiff's encouragement and assistance. Plaintiff got his Masters from the same program in 2000. In SY 2007-2008, Plaintiff was working on completing the Doctorate Program at George Washington University. Also **see Answer to Interrogatory No. 6,** *infra,* which is wholly incorporated into this Answer.

**14. Identify all communications with the Council of School Officers regarding the grievances you filed as described in paragraph 25 of the Fourth Amended Complaint.**

**ANSWER NO 14.** Plaintiff had limited telephone communications with Aona Jefferson, President of the CSO to inquire whether the Union intended to file a class grievance against the Defendant or whether individual attorneys should be hired. CSO shared written June 2008 communications to Chancellor Rhee with Union members. See **Response to Request for Documents No.2.** *supra,* which is wholly incorporated into this Answer.

**15. Identify all facts and circumstances supporting your allegation in paragraph 26 of the Fourth Amended Complaint that "[p]rospective employers" "demonstrated an interest in hiring [you] and made respective job offers which were suddenly and unexpectedly withdrawn."**

**ANSWER NO. 15.** In addition to seeking retreat rights and unemployment compensation, Plaintiff sought employment outside the D.C. jurisdiction immediately following the June 2008 termination in other jurisdictions including the following:

    a.  Submitted Applications to both Montgomery and P.G. County School Systems. The Plaintiff was contacted and identified as qualified during interviews (listed below) and endorsed by the school building Administrators. Both Montgomery and PG Central Administrations reversed this position when Plaintiff followed up without explanation. Additionally, Plaintiff overheard exchange between HR Montgomery employees that no DCPS Administrator was being hired. Interviews included:

    b.  Interviewed for Arts Director position by the then Principal of Art School, A. Mario Loiederman MS in Upper Montgomery County.

    c.  Interviewed by Principal Sharif Salim, at PG County Elementary School for a principalship at that school.

**16. Identify all facts and circumstances supporting your allegation that you "had to liquidate mutual funds in order to pay [your] living expenses, mortgage, school tuitions for [your] sons, and [your] Doctorate program at George Washington University ("GWU")" as alleged in paragraph 27 of the Fourth Amended Complaint.**

**ANSWER NO 16.**  Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records.  This information can be accessed through the Division of Human Resources within the D.C. Public Schools Administration. Notwithstanding objection, Defendant has a copy of Dr. Richard B. Edelman's Valuation Report which addresses Plaintiff's finances subsequent to termination.  In addition to liquidating funds, due to the uncertainty regarding employment and reduction in expected income, Plaintiff acted to supplement income due to following circumstances:

    a.  July 2008 through October 2008, Plaintiff was unemployed with no income and sought unemployment compensation.

    b.  Reduction in salary based on temporary teaching placements at: Brown MS; Sousa MS; and, Smothers ES.

    c.  Received workman's compensation for a short period due to stress in fall 2008.

    d.  In addition to teaching music at Roosevelt SHS from August 2009 through June 17, 2019, starting 2009-2015, Plaintiff taught music at Roosevelt Stay (3-4 hours per night); and, Saturday School at Roosevelt (3-4 hours) starting 2014.

**17. Identify all facts and circumstances supporting your allegation in paragraph 37 of the Fourth Amended Complaint that the District "intentionally targeted" you "[b]ased on race."**

**ANSWER NO 17.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records. Additionally, to the extent that discovery is ongoing, and Plaintiff has not identified all personnel, data, relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. **See Answers to Interrogatories No. 5, No. 6, No. 7 and No. 13**, *infra*, which are wholly incorporated into this Answer. Notwithstanding the objections relevant facts and circumstances include:

    a.   By June of SY 2007-2008 terminated twenty-four (24) Principals and twenty-two (22) Assistant Principals, the majority of whom were seasoned and Africa-American or Latinx.

    b.   A significant number of persons hired to replace the aforementioned forty-six(46) school administrators were Caucasian and less seasoned.

**18. Identify all facts and circumstances supporting your allegation in paragraph 40 of the Fourth Amended Complaint that the District's "racially-based motivation and conduct intentionally deprived Dickerson of the same rights, protections and benefits afforded to similarly situated white employees."**

**ANSWER NO 18.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records. Additionally, to the extent that discovery is ongoing, and Plaintiff has not identified all personnel, data, relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. Notwithstanding the objections, **see Answers to Interrogatories No. 5, No. 6, No. 7, No. 13 and No. 17,** *infra*, which are wholly incorporated into this Answer.

**19. Identify all communications with the District regarding the reasons for your non-reappointment.**

**ANSWER NO 19.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records. Additionally, to the extent that discovery is ongoing, and Plaintiff has not identified all personnel, data, relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. Notwithstanding the objection, Plaintiff made the following inquiries:

    a.  July 2008, Plaintiff spoke to DCPS' Director of HR, Peter Weber and Assistant HR Director. In response to "why was I terminated," the Assistant HR Officer stated "I don't have an answer for that, but I can help you get placed…"

  b. Plaintiff contacted President Jefferson at the Council for State Officers to encourage the Union to follow-up with Defendant agency to secure reasons for termination and get status updates. CSO sent communications to Chancellor Rhee on behalf of Union members, including Plaintiff.

**20. Identify and describe all communications with any other individuals regarding the allegations in this lawsuit, including Carol Barbour, Willie H. Bennett, Donna M.N. Edwards, Reginald B. Elliott, Wilma L. Gaines, Lynne Gober, Mary Q. Grant, Marta Guzman, Charles H. Harden, Jr., Janette Johns-Gibson, Harriet F. Kargbo, Treva S. Lindsey, Barbara McElwain, Richard L. Patterson, Gloria A. Tisdale, Wellington Wilder, and Jacqueline Williams.**

**ANSWER NO 20. .**  Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records. Notwithstanding the objection, prior to the firm of  Jones Day's involvement with mediation and settlement, Plaintiff spoke to all aforementioned Plaintiffs.  Since sole representation by Attorney Temple, Plaintiff has had limited communications with Jacqueline Williams and attempted communication with Dr. Mary Grant.  **See Answer to Interrogatory No. 4** *infra,* which is wholly incorporated into this Answer.

**21. Identify and describe any instances where you were considered for a position as a principal or assistant principal at DCPS, including the circumstances of your application or solicitation, job requirements, expected duties, proposed terms for benefits and**

**compensation, and the substance of any negotiations between you and DCPS concerning employment terms.**

**ANSWER NO 21.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks identifications, information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its Standard Operations and Procedures Manual, Directives and personnel records. This information can be accessed through the DCPS Division of Human Resources, Notwithstanding the objections **see Answer to Interrogatories No. 6 and No 7,** *infra,* which is wholly incorporated into this Answer.

**22. Identify by type, category, and amount the damages you seek in this lawsuit, including in your response an explanation of the method by which each amount was calculated and the basis for claiming the type or category of damages and the specified amount. If you have taken any steps to mitigate these damages, identify and describe all steps you have taken from June 2008 to the present.**

**ANSWER NO 22.** Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks identifications, information or materials already within Defendant's knowledge, possession, and/or control. The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its Standard Operations and Procedures Manual, Directives and personnel records. This information can be accessed through the DCPS Division of Human Resources, Notwithstanding this objection **see Answer to Interrogatories No.15 and No. 16,** *infra,* which are wholly incorporated into this Answer.

**23. Identify your periods of employment—including the employer, your position, the days you were employed, typical hours work ed each week, rate of pay, and pay received—and unemployment for each month from June 2008 to the present.**

**ANSWER NO 23.**   Objection to the extent that this Interrogatory is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  The information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within its and personnel records through the Division of Human Resources within the D.C. Public Schools Administration as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  Dr. Dickerson has remained employed with Defendant agency, D.C. Public Schools as a teacher since October 2008. Additionally, to the extent that discovery is ongoing, and Plaintiff has not identified all personnel, data, relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. Notwithstanding the objections, **see Answer to Interrogatories No. 16,** *infra,* which is wholly incorporated into this Answer.


## REQUESTS FOR PRODUCTION OF DOCUMENTS


1. **Produce any documents that support or contradict your answers to Defendant's First Set of Interrogatories, and all documents referred to or reviewed in preparing the responses to those Interrogatories not otherwise called for in these document production requests.**

**Response No. 1:**      Objection to the extent that this Request is unduly burdensome and

oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  Including Plaintiff's work records.  Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Additionally, Defendant's discriminatory conduct at issue in this lawsuit has caused Plaintiff to suffer economic loss, mental and emotional work-related stress and other impacts, including depression that has affected Plaintiff's overall health.  These issues are documented through a written assessment by economic analyst, Dr. Richard B. Edelman, and primary care physicians Drs. Michael Strong and Amir Patel, and psychotherapist Dr. Pleasant, all of whom are identified in **Interrogatory No. 2.  Also see Response No.** 2, *supra.* which is wholly incorporated into this Answer.  Documents include:

a.  Report of Valuation of Lost Income and Benefits of Dr. Kenneth Dickerson, prepared by Richard B. Edelman, PhD

b.  Medical records from Washington Hospital Center

c.  Medical records from George Washington University Hospital

**2.  Produce any documents you intend to use at trial.**

**Response No. 2:**  Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  Including Plaintiff's work records.  Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  The majority of this information can be accessed through the District of Columbia's Public Schools Division of

Human Resources. **See Response No. 1,** *infra,* which is wholly incorporated into this Answer. Additionally, to the extent that discovery is ongoing, Plaintiff has not identified all personnel, data, relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement.  Notwithstanding the objections, documents include:

a. Notice of Non-reappointment, dated, June 16, 2008 (Delivered June 30, 2008)
   **EXHIBIT NO. 1**

b. Dr. Dickerson's Resume **EXHIBIT NO. 2**

c. Medical Records (Requested and forthcoming)

   i. Washington, Hospital Center. **EXHIBIT NO. 3**

   ii. George Washington University Hospital Center **EXHIBIT NO. 4**

d. Valuation of Lost Income and Benefits of Dr. Kenneth Dickerson, prepared by Richard B. Edelman, PhD. And documents relied on and referenced in said Report. Report to be updated prior to trial
   **EXHIBIT NO. 5**

e. D.C. Public Schools Job Announcements with description of eligibility requirements, duties and attached salaries for vacancy positions of Principalship and Assistant Principalship for the period of time relevant to this action. **EXHIBIT NO. 6  (In Defendant's Possession. Not Attached)**

f. Plaintiff's Personnel File (Includes Applications and Performance Evaluations, Wilson SHS) **EXHIBIT NO. 7 (In Defendant's Control and Possession.  Not Attached)**

g. Plaintiff's DCPS W-2s. (Years 2007-2018) **EXHIBITS NOS. 8-19 (12 Documents)**

h.  403(b) Multi-Fund Account, Lincoln Financial Group/ **EXHIBIT NO. 20**

i.  DCPS Personnel Action Form, July 23, 2008. **EXHIBIT NO. 21**

j.  DCPS Grade Salary Charts (Fiscal Year 2017

       i.  DCPS Principals **EXHIBIT NO. 22**

       ii.  DCPS Assistant Principals **EXHIBIT NO. 23**

k.  Plaintiff's DCPS Compensation History (1993-2013) (Excel Sheet) **EXHIBIT NO. 24**

l.  Collective Bargaining Agreement, October 1, 2004-September 30, 2007 **EXHIBIT NO. 25**

m.  DCPS HR documents pertaining to Plaintiff's claim for unemployment compensation generated by D.C Public Schools and submitted to the D.C. Department of Employment Services and Unemployment Compensation and OAH, 2008. **EXHIBIT NO. 26 (In Defendant's Possession and Control.  Not Attached)**

n.  Letters from Aona Jefferson, Executive Vice President, Council of School Officers to Michelle Rhee regarding non-reappointment grievance issues, dated:

       i.  June 17, 2008 **EXHIBIT NO. 27**

       ii.  June 25, 2008 **EXHIBIT NO. 28**

       iii.  June 26, 2008 **EXHIBIT NO. 29**

o.  Applications filed with to fill vacancies in Montgomery County, MD and Prince Georges County, MD. **EXHIBITS NOS. 30 and 31 (Documents Requested and Forthcoming)**

p.  George Washington University Doctorial File/Records **EXHIBITS NOS. 32(A)-(E) (Documents Requested and Forthcoming)**

      i.   Acceptance Letter, Spring 2001

      ii.   Proof of Complete Comprehensive Exams, Spring 2005

     iii.   Proof of Successfully Defended Doctorate Proposal, Fall l2005

     iv.   Proof of Dissertation Research Begun, Fall 2005

      v.   Letter from Dissertation Chair, Dr. Clyde Croswell

q.   Testimony Before Workers Rights Board, E. Lindsey Maxwell, Esq., November 20, 2008 **EXHIBIT NO. 33**

r.   The List of Article Citations, Referencing the 2008 and 2009 Terminations by Chancellor Rhee **EXHIBIT NO. 34**

s.   All documents attached to, referenced in, and relied on in Defendant's Answer to Interrogatories.

t.   All of the documents attached to, referenced in, and relied on in Defendants' Responses to Requests for Production of Documents.

u.   Discovery documents and supplementation, yet to be discovered and/or produced.

v.   Notwithstanding and without waiving objection, these Responses may be supplemented, as discovery is ongoing.

**3.  Produce any documents relied upon, or generated by, any expert you plan to call as a witness at trial.**

**Response No. 3.**

a.   Report of Valuation of Lost Income and Benefits of Dr. Kenneth Dickerson, prepared by Richard B. Edelman, PhD. All documents referred to and relied on in that Report include: Plaintiff's DCPS W-2 Forms (2009-2016); DCPS salary tables (FY 2014 through FY 2017); Life and Workforce Expectancy Table. **EXHIBIT NO. 5**

b.   Records generated by primary care physicians Dr. Michael Strong, Dr. Amir Patel

and Dr. Pleasant, psychotherapist, all of whom are identified in Interrogatory No. 2.

See Response No 1, *infra,* which is wholly incorporated into this Answer.

EXHIBITS NOS. 3 and 4

c.  Testimony by E. Lindsey Maxwell, II, Esquire provided to the Workers' Rights

Board Hearing, November 20, 2008.  EXHIBIT  NO. 33

4.  Produce all documents related to the allegations in the Fourth Amended Complaint.

Response No. 4.  Objection to the extent that this Request is unduly burdensome and oppressive

insofar as it seeks information or materials already within Defendant's knowledge, possession,

and/or control.  Including Plaintiff's work records.  Objection to the extent that the information

requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this

information within Dr. Dickerson's personnel file and work-related records.  This information

can be accessed through the District of Columbia's Public Schools Division of Human

Resources.  Notwithstanding and without waiving objection, this Response may be

supplemented, as discovery is ongoing. See Response to No. 1, No. 2 and No 3, *infra*, which are

wholly incorporated into this Answer.

5.  Produce all documents that either support or contradict any of the allegations in the
Fourth Amended Complaint.

Response No. 5. Objection to the extent that this Request is unduly burdensome and oppressive

insofar as it seeks information or materials already within Defendant's knowledge, possession,

and/or control.  Including Plaintiff's work records.  Objection to the extent that the information

requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this

information within Dr. Dickerson's personnel file and work-related records.  This information

can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing See **Response Nos. 1-4,** *infra,* which are wholly incorporated into this Answer.

6. **Produce all documents showing or related to communications with the District or any other individuals, that support your allegations or position in this lawsuit.**

**Response No. 6.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. See **Response Nos. 1-4,** *infra,* which are wholly incorporated into this Answer.

7. **Produce all documents supporting your allegation in paragraph 6 of the Fourth Amended Complaint that you were "the Senior Assistant Principal, and the designated Administrator placed in charge" at Wilson.**

**Response No. 7.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information

26

requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this

information within Dr. Dickerson's personnel file and work-related records.  This information

can be accessed through the District of Columbia's Public Schools Division of Human

Resources. Notwithstanding Objections, Plaintiff believes there were emails sent out to all

Wilson SHS building personnel indicating that in absence of Principal Jacqueline Williams, Dr.

Dickerson was the school administrator in charge.  Notwithstanding and without waiving

objection, this Response may be supplemented, as discovery is ongoing

**8. Produce all documents regarding your allegation in paragraph 8 of the Fourth Amended Complaint that you "were on target to obtain [your] PhD during the 2008-2009 school year."**

**Response No. 8.** Plaintiff has requested copies of supporting documents from GWU Student Affairs/Records Office providing the following information:

    a.  Acceptance into the George Washington Doctorate Program, Spring 2001 **EXHIBIT NO. 32(A)**

    b.  Proof of Completion of Comprehensive Exams, Spring 2005 **EXHIBIT NO. 32(B)**

    c.  Proof. Successfully Defended his Doctorate Proposal, Fall 2005 **EXHIBIT NO. 32(C)**

    d.  Proof. Dissertation Research Begun Fall 2005 **EXHIBIT NO. 32(D)**

    e.  Letter from Dissertation Chair, Dr. Clyde Croswell **EXHIBIT NO. 32(E)**

**9. Produce all documents regarding evaluations of your performance by DCPS.**

**Response No. 9.**  Objection to the extent that this Request is unduly burdensome and oppressive

insofar as it seeks information or materials already within Defendant's knowledge, possession,

and/or control.  Including Plaintiff's work records.  Objection to the extent that the information

requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this

information within Dr. Dickerson's personnel file and work-related records.  This information

can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. **SEE EXHIBIT NO. 7**

**10. Produce all documents and communications regarding DCPS's "Declaration of Intent" as described in paragraphs 12 and 13 of the Fourth Amended Complaint.**

**Response No. 10.**     Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  Including Plaintiff's work records.  Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding the objection, Plaintiff does not possess but recalls receiving annual communications from DCPS Administration notifying School Administrators of deadline for submission of DOI's.  The communications included the following information:  (1) do not complete and submit DOI Form if you intend to return in your current position for SY 2008-2009; and, (2) if you intend to retire before the start of SY 2008-2009, you must fill out the DOI Form and submitting to HR by mid-April 2008. Similar to prior years, Plaintiff notified Defendant of his intent by not submitting a completed DOI. DCPS did not trigger a retirement process for Plaintiff but responded two (2) months later by issuing the Non-reappointment letter, dated, June 30, 2008.  Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing

**11.Produce all documents and communications regarding your allegation in paragraph 16 of the Fourth Amended Complaint that in May 2008 you were offered a position as a principal at DCPS.**

**Response. No. 11.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  Including Plaintiff's work records.  Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Aside from application filed with DCPS HR Office, major communications were oral and in person.  **See Answer to Interrogatories No. 6 and No. 7,** *infra,* which are wholly incorporated into this Answer. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing.

**12.Produce the notification of non-reappointment referenced in paragraph 17 of the Fourth Amended Complaint.**

**Response No. 12.**  Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control.  Including Plaintiff's work records.  Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. **SEE EXHIBIT NO. 1.**

**13. Produce all documents and communications regarding your allegation in paragraph 26 of the Fourth Amended Complaint that "[p]rospective employers" "made respective job offers which were suddenly and unexpectedly withdrawn."**

**Response No. 13.** Plaintiff exchanged oral communications with Principals at both PG and Montgomery County Schools. **See Interrogatory No. 15.** Additionally, Plaintiff remembers receiving an email from the Montgomery County Administration scheduling the interview with Principal Sharif Salim. **(Documents Requested and Forth-coming) EXHIBITS NOS. 31 and 32.**

**14.Produce all documents and communications regarding your allegation in paragraph 28 of the Fourth Amended Complaint that "[d]ue to stress related symptoms, Plaintiff sought medical attention at Washington Hospital Center starting in September 2008."**

**Response14.** Medical Records from Washington Hospital Center. ( Document requested and Forthcoming) **SEE EXHIBIT NO. 31**

**5. Produce all communications with DCPS regarding the reasons for your non-reappointment in 2008.**

**Response No. 15.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding the objection, Plaintiff received a Notice of Non-reappointment,

dated, June 30, 2008, which provided no reasons for non-reappointment. The CSO communicated with DCPS on behalf of Plaintiff, seeking reasons for non-reappointment. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. **EXHIBITS NOS. 26, 27-29 and 34.**

**Produce all documents and communications regarding your allegation in paragraph 37 of the Fourth Amended Complaint that DCPS "intentionally targeted" you "[b]ased on race."**

**Response No 16.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Additionally, to the extent that discovery is ongoing, Plaintiff has not identified all personnel, data, relevant documents, communications or decided which witnesses will be called at the trial in this matter but will do so in the pre-trial statement. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. **SEE Response # 2,** *infra,* which is wholly incorporated into this Response.

**17. Produce all communications with any other individuals regarding the allegations in this lawsuit, including Carol Barbour, Willie H. Bennett, Donna M.N. Edwards, Reginald B. Elliott, Wilma L. Gaines, Lynne Gober, Mary Q. Grant, Marta Guzman, Charles H. Harden, Jr., Janette Johns-Gibson, Harriet F. Kargbo, Treva S. Lindsey, Barbara McElwain, Richard L. Patterson, Gloria A. Tisdale, Wellington Wilder, and Jacqueline Williams.**

**Response No 17.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Other than limited oral communications with Jacqueline Williams, Plaintiff does not communicate with the above-referenced former Plaintiffs.

**18. Produce all documents regarding your claims for damages in this lawsuit.**

**Response No 18.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. **See Responses No 2, No. 3 and No 8,** *infra* which are wholly incorporated into this Answer. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. Documents Include:

> Washington, Hospital Center. **EXHIBIT NO.  3**
>
> George Washington University Hospital Center      **EXHIBIT NO.4**
>
> Valuation of Lost Income Report      **EXHIBIT NO. 5**
>
> Dickerson W-2'S      **EXHIBITS NOS. 8 –19**

32

Grade Salary Charts   **EXHIBITS NOS. 22 AND 23**

403(b) Multi-Fund Account **EXHIBITS NO. 20**

Unemployment Compensation Document   **EXHIBIT NO.26**

**19. Produce all documents for any application you submitted for a position as a principal or assistant**

**principal at DCPS.**

**Response No 19.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. **EXHIBITS NOS. 2 AND 7.**

**20. Produce all documents regarding your allegation that you "had to liquidate mutual funds in order to pay [your] living expenses, mortgage, school tuitions for [your] sons, and [your] Doctorate program at George Washington University ("GWU")" as alleged in paragraph 27 of the Fourth Amended Complaint.**

**Response No 20.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession, and/or control. Including Plaintiff's work records. Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records. This information

can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding objections, see **Responses No 2, No. 3 and No 8,** *infra* which are wholly incorporated into this Answer.

a. Report of Valuation of Lost Income and Benefits of Dr. Kenneth Dickerson, prepared by Richard B. Edelman, PhD. All documents referred to and relied on in that Report include: Plaintiff's DCPS W-2 Forms (2007-2018); DCPS Principal and Assistant Principal Salary Tables (Fiscal Year 2017); 403(b) Multi-Fund Account, Lincoln Financial Group.
**SEE EXHIBITS NOS. 5, 8-19; 20, 21, 24.**

**21. Produce all documents regarding the grievances you filed as described in paragraph 25 of the Fourth Amended Complaint.**

**Response No 21.** Documents generated by the Council for School Officers pursuant to grievances filed:

a. Communications from Aona Jefferson, Executive Vice President, Council of School Officers to Michelle Rhee regarding non-reappointment grievance issues.  Letters are dated: June 17, 2008; June 25, 2008; and, June 26, 2008.  **EXHIBITS NOS. 27, 28, 29.**

**22.  Produce all documents regarding your allegation in paragraph 19 of the Fourth Amended Complaint that "Chancellor Rhee and her staff made public statements to the media which defended its non-reappointment of Plaintiff due to laziness, failure to improve the statistical performance and mistreatment of students at Wilson."**

**Response No. 22.** Objection to the extent that this Request is unduly burdensome and oppressive insofar as it seeks information or materials already within Defendant's knowledge, possession,

and/or control.  Including Plaintiff's work records.  Objection to the extent that the information requested is more readily accessible to Defendant than to Plaintiff, as the Agency has this information within Dr. Dickerson's personnel file and work-related records.  This information can be accessed through the District of Columbia's Public Schools Division of Human Resources. Notwithstanding and without waiving objection, this Response may be supplemented, as discovery is ongoing. **EXHIBIT NO. 34.**

**Dated: June 25, 2019**

Respectfully submitted,

*/s/ Donald M. Temple*
Donald Temple [408749]
Temple Law Offices
1310 L Street, N.W., Suite 750
Washington, D.C. 20005
202-628-1101
Dtemplelaw@gmail.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on June 25, 2019, a copy of the foregoing was sent to counsel of record in the above-captioned matter via electronic mail:

Gregory M. Cumming,  Esq.
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 S
Washington, D.C. 20001
Gregory.cumming@dc.gov


/s/ Donald M. Temple
Donald Temple

36