**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KENNETH DICKERSON,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 09-2213 (PLF)** |
| **DISTRICT OF COLUMBIA,** | |
| *Defendant*. | |

**DEFENDANT'S REPLY IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

After more than ten years of litigation, in opposition to defendant's motion for summary judgment, plaintiff offers essentially a repeat of the allegations in his complaint—filled with suspicion and suggestion but devoid of admissible evidence supporting his theory of the case. Plaintiff appears to genuinely believe that he was not reappointed as Assistant Principal because of his race, but he appears equally unable to even consider another explanation for the decision. His opposition utterly fails to grapple with the legitimate, nondiscriminatory reason for his non-reappointment—namely, the restructuring process. He ignores the undisputed fact that federal law forced the District of Columbia (the District) to make major changes at his school that year, including to school governance, and confusingly insists instead that the District's engagement in that process itself, *instead of* the business-as-usual reappointment processes, shows he was harmed because of his race. This is simply not true; plaintiff's beliefs are wholly unsupported, and, for the reasons below and discussed in the District's motion for summary judgment, this Court should finally end this matter by granting summary judgment for the District.

**ARGUMENT**

I.     **Defendant Fails To Show a District Custom or Policy of Racial Discrimination.**

Plaintiff acknowledges that in order to make out his claim for discrimination, he must show that his non-reappointment was caused by a District custom or policy. *See* Opp'n at 23. In denying the District's motion to dismiss in this case, this Court found that plaintiff's complaint sufficiently alleged a "policy of replacing African-American administrators with non-African American administrators within the D.C. public school system, implemented through the actions of Chancellor Rhee." *Dickerson v. District of Columbia*, 315 F. Supp. 3d 446, 457 (D.D.C. 2018). In his opposition to the District's motion for summary judgment, plaintiff does not argue such a policy existed. Opp'n at 23-24. Instead, plaintiff argues only that "Chancellor Rhee's restructuring policy effectively removed multiple African American principals and Assistant Principals, of which Plaintiff was one." *Id*. at 23. Plaintiff has not supported even this argument with evidence.

Plaintiff cites only one exhibit in support of this argument. The sole citation is to Defendant's Exhibit AB, which is a copy of "A Principal's Guide to Conducting a Comprehensive School Quality Review." *See* [138-6] (guide); Opp'n at 24. Plaintiff's parenthetical to that citation, "(Restructuring Plan)," *id.*, suggests counsel intended to cite to Defendant's Exhibit AA, which is a copy of the "LEA School Restructuring Plan 2008-2009" for Wilson Senior High School, *see* [138-5] (plan). Neither of these documents says anything about the racial composition of DCPS principals or assistant principals. *See generally* [138-5], [138-6]. Thus, neither of these documents even possibly supports the argument that these "polic[ies] effectively removed multiple African American principals and Assistant Principals." Opp'n at 23.

The District is therefore entitled to summary judgment on plaintiff's claim for discrimination because plaintiff has failed to support—with evidence—the argument he would like

2

to make with respect to a required element of his claim. *See* Fed. R. Civ. P. 56(c)(1)(B) (party may show fact is not genuinely disputed by showing "that an adverse party cannot produce admissible evidence to support the fact"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (reiterating that moving party can prevail at summary judgment by establishing that nonmoving party cannot "make a showing sufficient to establish the existence of an element essential to that party's case").

Even if plaintiff *had* submitted evidence that the 2007-2008 restructuring process resulted in the removal of multiple African-American school administrators, this would not suffice to show the District had a policy or custom of racial discrimination, for at least two reasons. First, plaintiff does not dispute that he "does not know the race of other administrators newly hired to serve as school administrators at other DCPS [schools] for the 2008-2009 [school year], or whether they were 'less seasoned.'" *See* Pl.'s Statement of Material Facts in Dispute, [141-2] at 16, ¶ 26. Accordingly, he does not argue or show that African-American administrators were replaced with non-African-American administrators, and it is hard to see how any inference of discrimination could be drawn.

Second, plaintiff does not argue that the policy of restructuring was itself illegal. He does not argue, in other words, that the policy of restructuring, on its face, directed or required the non-reappointment of school administrators based on race. Opp'n at 23-24; *cf also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (stating *Monell* creates liability for municipal policies "which affirmatively command" that the "deprivation of rights at issue … occur"). Therefore, in order to show that a District custom or policy was the moving force behind plaintiff's non-reappointment, plaintiff must point to facts from which a reasonable juror could find that a particular decision by a District policymaker was deliberately discriminatory, or that the policymaker was "deliberately indifferent" to the consequences of a facially neutral policy, or that the discriminatory act was a

part of a "longstanding practice or custom." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-30 (1988) (single action of policymaker may establish liability); *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."); *Jett*, 491 U.S. at 737 (municipal liability may be shown by policy commanding occurrence of violation, or "longstanding practice or custom"); *Blue v. District of Columbia*, 811 F.3d 14, 18-19 (D.C. Cir. 2015) (summarizing grounds for municipal liability).

Plaintiff has not pointed to any facts suggesting a reasonable juror could find for him under any of these theories. Again, he cites only the existence of a District document outlining procedures for the restructuring process in support of his claim (whether he meant that to be the Principal's Guide, Def.'s Ex. AB, or the Wilson Restructuring Plan, Def.'s Ex. AA). Even assuming that Chancellor Rhee knew who plaintiff was, and his race, there is absolutely no evidence that Chancellor Rhee herself decided plaintiff should be non-reappointed because of his race.[1] There is no evidence that she was aware of the racial composition of DCPS administrators before and after the 2007-2008 school year, or that she had any reason to believe the restructuring process, or even any other unnamed DCPS policies, were resulting in racial discrimination. There is, in short, nothing upon which a reasonable juror could find plaintiff was non-reappointed because of a

---

[1]     The District does not concede that Chancellor Rhee knew who Kenneth Dickerson was, by name, or his race. Plaintiff states in a declaration that he had two "face-to-face interactions" with Chancellor Rhee, one "when she visited" his school "to meet the Wilson administrative team face to face," and a second involving "a one-on-one conversation." *See* [141-5] at 4, ¶ 13. Even if this is true, it does not show that Chancellor Rhee knew who he was, or that she believed he was African-American, such that she could have later decided to non-reappoint him, at a later date, because of his race. Plaintiff bears the burden to prove this fact and he has not carried it.

District policy or custom of racial discrimination. The District is thus entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(B); *Celotex*, 477 U.S. at 322.

## II.  <u>Plaintiff Fails To Raise a Triable Issue of Fact That Would Prevent Judgment for the District.</u>

Plaintiff's evidentiary failings permeate his opposition on both basic elements of his claim—he has failed to produce evidence from a which a reasonable juror could find a District policy or custom of racial discrimination, as discussed above, and he has failed to produce facts that could support a finding he was non-reappointed because of his race.

Plaintiff's opposition is thin on citations to the record, and never cites to a supporting statement of material facts. *Cf.* LCvR 7(h)(1) (requiring oppositions to include "a separate concise statement of genuine issues setting forth all material facts …"). Plaintiff provided a seven-page narrative, for example, titled "Introduction and Factual Background" that cites only one piece of evidence (Pl.'s Ex. 13, a collection of his performance evaluations). *See* Opp'n at 1-8. A document titled Plaintiff's Statement of Material Facts in Dispute, [141-2] at 2-17, responds to the District's Statement of Material Facts, but does not include any facts plaintiff separately believes are material. Considering plaintiff's opposition and all exhibits, it is unclear which facts plaintiff believes are material, which he believes are undisputed, and which have any support at all. This Court is not required to pore through the record to make plaintiff's case for him. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) ("[A] district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact.").

In its motion for summary judgment, the District argued that discovery revealed that seven allegations in plaintiff's complaint, which this Court had previously highlighted as collectively

supporting a *prima facie* case of discrimination, were not true, or were immaterial. *See*. Def.'s Mem. Supp. Mot. for Summ J. at 16-17 (listing seven points); 17-20 (argument). In his opposition, plaintiff has suggested a dispute of fact on only one of those points—plaintiff argues that 1) he *did* re-apply to serve as an Assistant Principal at Wilson for the school year following his non-reappointment, contrary to the facts asserted in the District's motion, and 2) he was not *permitted* to re-apply for that position. Opp'n at 5 (describing purported attempt to re-apply); *id*. at 17 (stating plaintiff could not re-apply for his position). But no reasonable juror could find that plaintiff did re-apply for his job, or was prevented from doing so, on this record.

In deposition, plaintiff testified that he did *not* re-apply for his position as an Assistant Principal at Wilson SHS:

> Q. Do you know what it means for a school to be in restructuring?
> A. Yes, sir.
> Q. Okay. And what does that mean?
> A. I don't know totally, but that everybody is going to have to I think reapply for their job or something like that.
> Q. Okay. Was Wilson in restructuring?
> A. I think during that year, yes, sir.
> Q. Okay. Would that have meant that you would have had to reapply for your job?
> A. Yes, sir.
> Q. Okay, were you told that you would need to?
> A. *I didn't reapply*. They just sent me the letter. *I didn't do any application process or anything like that, sir*.

Def.'s Mot. for Summ. J., Ex. B, [138-9] at 178:10-179:7 (emphasis added).

Mr. Dickerson was also asked, by interrogatory, to "[i]dentify and describe any instances" when he was "considered for a position as a principal or assistant principal at DCPS, including the circumstances of your application or solicitation … ." Ex. H, Excerpt of Plaintiff's First Written Discovery Responses, Response to Interrogatory No. 21, at 8-9. In response, plaintiff incorporated his answer to two other questions. *See id*. (incorporating response to Interrogatory Nos. 6 and 7).

Neither of those incorporated responses make any mention of plaintiff applying during the 2007-2008 school year to serve as an Assistant Principal at Wilson for the 2008-2009 school year, or having any interviews with DCPS in 2008. *Id.*, Responses to Interrogatory Nos. 6, 7, at 4-7.

Now, for the first time, in opposition to the District's motion for summary judgment, plaintiff suggests in a declaration that he did re-apply for his position. He states that, sometime in early June 2008, a "sign-up sheet" was posted "for any Wilson personnel interested in remaining at Wilson for the 2008-2009 SY." Pl.'s Ex. 4, Dickerson Decl., [141-5] at 4, ¶ 14.[2] Plaintiff states he signed the sheet and "was interviewed for not more than 10 minutes by both Rhee's designees." *Id.* Plaintiff does not state what position he "was interviewed for." *Id.*

Plaintiff's newly asserted evidence should not be admitted, and cannot therefore support his case, for two reasons. First, "[c]ourts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony." *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) (collecting cases). That is exactly what plaintiff is attempting to do here—his declaration directly contradicts his sworn deposition testimony—and it should not be permitted. *Id.* ("[T]he prior sworn statement will receive controlling weight unless the shifting party can offer persuasive reasons for believing the supposed correction."). Although the deposition testimony quoted above was cited in the District's statement of undisputed material facts (SUMF), plaintiff offers no explanation for the contradiction. *See* [141-2] at 11-12 (plaintiff's response to District's SUMF); Opp'n at 17.

Second, plaintiff failed to include these assertions in response to an interrogatory, described above, that expressly called for identification of every application he made for an administrator

---

[2]     Plaintiff actually states in his declaration that he received notice of non-reappointment in June of 2016. *See* [141-5] at 4, ¶ 14. The District assumes the year was typed incorrectly.

position with DCPS; failed to supplement that response at any time; and did not otherwise produce any documents or other evidence suggesting these facts prior to filing his opposition papers. *See* Ex. H at 4-9; *see also* Ex. I, Excerpt of Plaintiff's Second Written Discovery Responses, Response to Request for Production No. 29, at 5 (listing all documents produced "concerning any applications you made for a principal or assistant principal position" and not listing anything pertinent to an application for an Assistant Principal role at Wilson for the 2008-2009 school year). Thus, even if plaintiff could somehow explain his contradictory deposition testimony, plaintiff is "not allowed" to use this information "to supply evidence on a motion" because he failed to provide that information in discovery. *See* Fed. R. Civ. P. 37(c)(1).

In the face of plaintiff's sworn testimony, and admissions by interrogatory, no reasonable juror could find that plaintiff did in fact reapply for his position at Wilson.

Plaintiff also cannot show with admissible evidence that he was not *permitted* to reapply for his position. In support of this assertion, plaintiff cites only to a June 25, 2008 letter "from Aona Jefferson to Rhee stat[ing] the following: 'When the principals and assistant principals received their letters of non-reappointment they were told they would not be eligible to apply for any principal or assistant-principal vacancies respectively within DCPS.'" Opp'n at 17 (quoting Pl.'s Ex. 15). This offering is not admissible, and could not be put into admissible form, because it is triple hearsay. *See* Fed. R. Evid. 801 (defining out-of-court statements offered to prove the truth of the matters asserted as hearsay); Fed. R. Evid. 802 (stating hearsay not generally admissible); Fed. R. Civ. P. 56(c)(2) (providing that a party may show a fact is not genuinely disputed by objecting that the material cited cannot be presented in a form that would be admissible in evidence). The letter purports to be from a union official, who reports that certain other unnamed school administrators told her that certain other unnamed persons told them they could not apply

for administrator vacancies with DCPS. *See* Opp'n at 17. That is three levels of hearsay, and no exception could possibly cure them all (if any). The letter is therefore inadmissible and cannot be used to support plaintiff's case.

Finally, even if the cited letter were admissible, no reasonable juror could find that plaintiff was not permitted to re-apply for his job on this record. The cited letter does not specify that plaintiff was told he could not re-apply, or that Wilson administrators were told they could not re-apply, or that any administrators could not re-apply for their own former positions before they were refilled. *See* Opp'n at 17. At best, it supports that idea that maybe some other DCPS administrators were told they could not re-apply for their positions, or some other administrator positions. In contrast, the District has provided an express, written policy statement from DCPS showing that for the 2008-2009 school year, the Principal at Wilson would be replaced, but that "[o]ther administrators have the option to reapply if they wish to remain at the school." Def.'s Ex. AA (Wilson Restructuring Plan), [138-5] at 8. Given this, no reasonable juror could find that plaintiff was not permitted to reapply for his job.[3]

---

[3]     Although it is not cited in plaintiff's opposition, plaintiff also states, in his declaration, that in the "first week of July 2008" he "was told by H.R. personnel, Jasmine Jose, that I could not apply and would not be considered for any DCPS administrative position." [141-5] at 4, ¶ 15. In a prior interrogatory response, plaintiff stated that "Jasmine Jose" informed him "in person and on the phone in July 2008, that DCPS would not offer" him "an administrative-level *retreat rights* position." Ex. I, Response to Interrogatory No. 24, at 4 (emphasis added). This was in response to the question, "[i]dentify whether you ever applied for a position as an assistant principal or principal following your non-reappointment … ." *Id*. In deposition, plaintiff was also asked if he tried to "secure a new position at DCPS" after his non-reappointment. Ex. J, Dickerson Dep. Tr. at 45:17-21. In response, he did not say that he tried to re-apply for his former position, or that he applied for any other administrator position at DCPS; rather, he again recounted that Ms. Jose told him he could not exercise his retreat rights to become an administrator (Dean of Students) at a different school. *Id*. at 45:20-46:15.

Plaintiff has overall failed to proffer any evidence from which a reasonable juror could find that he was non-reappointed because of his race. *See* Def.'s Mem. at 16-20. There is thus no triable issue of fact, and the District is entitled to summary judgment. Fed. R. Civ. P. 56.

## IV.    Plaintiff's Other Arguments Are Immaterial.

Plaintiff's opposition also argues that the declaration of Ms. Powe should be excluded, because she lacks personal knowledge, or because it contradicts her previous deposition testimony, and that he is entitled to some sort of favorable inference because some of his performance evaluations are missing from his personnel file. *See* Opp'n at 11-15. Even if the Court agreed with each of these arguments, they are immaterial, and the District is still entitled to summary judgment.

The District is entitled to summary judgment with or without Ms. Powe's declaration. It is plaintiff's burden to produce evidence sufficient to convince a reasonable juror that he was non-reappointed because of his race, and as a result of a District custom or policy. As discussed above, after years of discovery, he has failed to do so. Moreover, and in contrast, the District has indisputably shown that it had a legitimate, nondiscriminatory reason for non-reappointing plaintiff, namely, the federally required restructuring process and the categorical, non-individualized, non-race-based decision during that process to remove the entire Wilson administrative team, with permission for everyone but the Principal to reapply. All of this is clear from the documentary evidence alone. *See* Def.'s SUMF, [138-2] ¶¶ 6-14. Although he disagrees with the District's reading of their plain texts, plaintiff does not dispute the admissibility of these documents or offer any contrary evidence as to the overall process or substantive decisions made. *See generally* [141-2]. Indeed, plaintiff does not dispute that Wilson was in restructuring that year, and he himself relies upon the key document outlining the outcome of that process as evidence in

his own case. *See* [141-2] at 4, ¶ 5; Opp'n at 24. Thus, even if Ms. Powe's declaration were excluded, the District would still be entitled to summary judgment.[4]

Similarly, although plaintiff does not specify what inference he believes he is entitled to as a result of allegedly missing evaluations, even if the Court assumed that all of evaluations he says are missing showed exemplary performance, the District is still entitled to summary judgment. For the same reasons discussed just above, plaintiff's individual performance evaluations were not a factor in the District's decision to non-reappoint plaintiff. Confusingly, plaintiff acknowledges and even embraces this fact in his own opposition. *See* Opp'n at 19. Yet he fails to explain, then, why the allegedly missing evaluations, or what they would show, make any difference in this case. *See* Opp'n at 15 (asserting that the missing evidence "implicates" the District's credibility and "requires a jury decision to ascertain its significance").[5] The missing evaluations would not make any difference in this case; the District is thus entitled to summary judgment with or without the requested inference.

---

[4]     Plaintiff insists that Ms. Powe's deposition testimony is in conflict with some of the statements in her declaration and some of the documents cited by the District. *E.g.*, Opp'n at 12; [141-2] at 6, ¶¶ 7, 13. This is not true; this is simply another consequence of plaintiff's failure to conduct discovery, including his failure to ask more than a question or two about the restructuring process during his deposition of Ms. Powe. *See generally* Powe Dep. Tr., [134-1]. And, as this Court has already held in this case, "30(b)(6) witnesses … are not expected to base their testimony on matters entirely within their personal knowledge." *Dickerson v. District of Columbia*, Civil Action No. 09-2213, 2021 WL 1840396, at *4 (D.D.C. May 7, 2021) (quoting *Buie v. District of Columbia*, 327 F.R.D. 1, 8 (D.D.C. 2018).

[5]     In any event, there is also no evidence that the District failed to preserve these evaluations after the initiation of this suit. All of the documents plaintiff points to predate plaintiff's non-reappointment, and before any duty to preserve evidence potentially relevant to his claims would have arisen. Plaintiff noticed the topic of records preservation for his deposition of the District's Rule 30(b)(6) witness but asked zero questions on this topic at the deposition. The District was thus never asked to "explain" the situation and need not do so now.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's motion for summary judgment, and the entire record, the District is entitled to summary judgment on plaintiff's claim.

Dated:  September 9, 2021.              Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Mateya B. Kelley*
MATEYA KELLEY [888219451]
Assistant Attorney General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-7854
(202) 730-0626 (fax)
mateya.kelley@dc.gov

*Counsel for Defendant*